UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN FENERJIAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NONG SHIM COMPANY, LTD, et al.,<br><br>Defendants. | Case No. 13-cv-04115-WHO<br><br>**ORDER DENYING SAMYANG KOREA'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 142 |

## INTRODUCTION

Defendant Samyang Foods Company. Ltd. ("Samyang Korea") moves to dismiss indirect purchaser plaintiffs' antitrust, unfair competition, and unjust enrichment causes of action for failure to plausibly allege that Samyang Korea was part of the price-fixing conspiracy alleged in this matter. Samyang Korea also argues that indirect purchaser plaintiffs' purported nationwide class under California's Cartwright Act is unconstitutional because the Cartwright Act conflicts with other states' laws and because indirect purchaser plaintiffs' have not alleged sufficient contacts between California and the claims of non-California plaintiffs.

Samyang Korea's motion is DENIED. Indirect purchaser plaintiffs allege that Samyang Korea conspired with the other Korean defendants to raise factory-level prices of its noodles in Korea, that it imported its price-fixed noodles to the United States where they were sold to class members, and that the prices of Samyang's Korean noodles in the United States increased as a result of the conspiracy. That is sufficient at the pleadings stage.

At a minimum, indirect purchaser plaintiffs have plausibly pleaded a Cartwright Act claim on behalf of California residents. Whether indirect purchaser plaintiffs can also state a Cartwright Act claim on behalf of plaintiffs from other states is better resolved at class certification when the

parties have a better sense of the other states at issue and the contacts between the claims of plaintiffs from those states and California.

## BACKGROUND[1]

Defendants Samyang Korea, Nong Shim Company, Ltd., and Ottogi Ltd. (collectively, the "Korean defendants") manufacture and sell Korean noodles in Korea. Amended Consolidated Indirect Purchaser Compl. ("AIPC") ¶¶ 25-28 [Dkt. No. 121]. On July 12, 2012, the Korean Fair Trade Commission issued an order finding that the Korean defendants conspired to increase the prices of Korean noodles in Korea. *Id*. at ¶ 3. Following that order, various direct and indirect purchasers of defendants' Korean noodles in the United States filed price-fixing conspiracy actions against the Korean defendants and their alleged American distributors, alleging that the defendants conspired to raise the prices of Korean noodles sold in the United States.[2] The indirect purchaser plaintiffs are individuals who purchased the defendants' noodles from non-party food retailers in Massachusetts, Michigan, Florida, New York, California, and Hawaii. *Id*. at ¶¶ 10-24.

I previously granted in part and denied in part defendants' motion to dismiss indirect purchaser plaintiffs' original consolidated complaint. Dkt. No. 115. Indirect purchaser plaintiffs subsequently filed an amended indirect purchaser complaint, alleging causes of action for (i) price-fixing conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (ii) price-fixing conspiracy in violation of California's Cartwright Act, Cal. Bus. & Code §§ 16700, *et seq*.; (iii) violations of antitrust and restraint of trade laws of California, Michigan, Hawaii, and New York; (iv) violations of state consumer protection laws of California, Florida, and Massachusetts; and (v) unjust enrichment and disgorgement under the common laws of Hawaii and Massachusetts. Dkt. No. 121. ¶¶ 170-214. Samyang Korea moves to dismiss indirect purchaser plaintiffs' amended consolidated complaint. Dkt. No. 142. I heard argument on March 25, 2015.

---

[1] I assume the truth of plaintiffs' allegations for the purpose of this motion. A fuller background is included in my order on defendants' motions to dismiss the original direct and indirect purchaser complaints. Dkt. No. 115.

[2] Defendants Nongshim America, Inc., and Ottogi America, Inc. are subsidiaries or affiliates of Nong Shim Company, Ltd., and Ottogi Ltd., respectively. *Id*. ¶ 29-31.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," drawing all "reasonable inferences from those facts in the nonmoving party's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and brackets omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**DISCUSSION**

Samyang Korea argues that: (i) indirect purchaser plaintiffs' federal and state antitrust and consumer protection claims fail because indirect purchaser plaintiffs have not plausibly alleged that Samyang Korea was a member of the conspiracy to raise prices in the United States; (ii) the state consumer protection claims rely on the antitrust claims and therefore also fail; (iii) a nationwide class under California's Cartwright Act is unconstitutional; and (iv) the unjust enrichment claims under Hawaii and Massachusetts law fail because plaintiffs do not allege that any plaintiff purchased Samyang Korea's noodles in Hawaii or Massachusetts. I address each argument in turn.

**I.  ANTITRUST AND CONSUMER PROTECTION CLAIMS UNDER FEDERAL AND STATE LAW**

Samyang Korea argues that "[b]ecause Plaintiffs have failed to allege that a Samyang subsidiary or affiliate imported Samyang products into the United States, or that Samyang otherwise has the capacity to conspire to fix prices in the United States, Plaintiffs' antitrust claim against Samyang fails." Dkt. No. 142 at 7. I rejected Samyang Korea's similar argument in its

3

motion to dismiss the original complaint. As I explained:

> But plaintiffs allege that Samyang Korea conspired *in Korea* to fix prices on Korean Noodles and that it imported price-fixed Korean Noodles into the United States. It is accordingly beside the point that Samyang Korea could not control the Korean Noodles once they arrived in the United States; plaintiffs allege that the prices had already been fixed at that point. As discussed above, whether plaintiffs can prove that that is the case is not presently before me.[3]

Dkt. No. 115 at 18 n.23 (emphasis in original).

Samyang Korea argues that the Sherman Act and state law antitrust and consumer protections claims[4] in the amended complaint should nonetheless be dismissed because "Plaintiffs' theory that the functioning conspiracy depends on the ability to control a U.S. Subsidiary/Affiliate was not highlighted in prior briefing or argument." Dkt. No. 151 at 4 n.1. Samyang Korea relies on indirect purchaser plaintiffs' allegation that:

> It was important for the Defendants to maintain the pricing relationships between Korean and U.S. pricing of Korean Noodles in order to prevent arbitrage. This required coordination between the Subsidiary/Affiliate Defendants and the Korean Defendants to ensure that the conspiracy achieved its desired result of increased worldwide prices for consumers of Korean Noodles.

AIPC ¶ 154. Samyang Korea also notes that indirect purchaser plaintiffs allege that "the Korean Defendants closely oversaw the pricing policies of their respective United States subsidiaries and affiliates." *Id.* ¶ 152.

---

[3] I further explained that:

> [P]laintiffs have plausibly pleaded that Samyang Korea participated in a conspiracy to fix factory-level prices of Korean Noodles. Plaintiffs further allege that Samyang Korea shipped its price-fixed Korean Noodles to the United States and that the prices of Samyang Korean Noodles in the United States did indeed increase in correlation to the price increase in Korea. Plaintiffs have accordingly plausibly pleaded that Samyang Korea was part of the conspiracy to fix prices of Korean Noodles sold in the United States. Samyang Korea is therefore jointly liable for any injury caused by the conspiracy, and it is beside the point that Samyang Korea did not itself sell directly to plaintiffs.

Dkt. No. 115 at 18-19.

[4] Indirect purchaser plaintiffs allege state law antitrust, restraint of trade, and consumer protection claims under the laws of Massachusetts, Michigan, Florida, New York, California, and Hawaii. AIPC ¶¶ 191-210.

4

Samyang Korea may not have highlighted these allegations in its prior argument, but the same allegations were included in the original indirect purchaser complaint. *See* Dkt. No. 62 ¶¶ 152, 154. They do not render indirect purchaser plaintiffs' allegations against Samyang Korea implausible. Like the original indirect purchaser complaint, the amended complaint asserts that Samyang Korea conspired with the other Korean defendants to raise factory-level prices of its noodles in Korea, that it imported its already price-fixed noodles to the United States where they were sold to class members, and that the prices of Samyang's Korean noodles in the United States increased as a result of the conspiracy. AIPC ¶¶ 27, 107, 139, 150, 151. Samyang Korea's lack of control over Sam Yang USA has no bearing on indirect purchaser plaintiffs' allegation that Samyang Korea shipped price-fixed noodles to the United States.

The allegations on which Samyang Korea relies merely state that it was "important" for the defendants to maintain the pricing relationships between the Korean and U.S. pricing of the noodles and that this required coordination between the Korean defendants and their U.S. affiliates. I do not read this to mean that indirect purchaser plaintiffs allege that the conspiracy required each Korean defendant to control its American distributor. It is sufficient that Samyang Korea conspired to raise prices, did in fact raise prices, and shipped its price-fixed goods to the United States where they were purchased by members of the class. As I noted previously, whether plaintiffs can prove that this occurred is not the question now. It may well be that the facts, once developed, will contradict the allegations, but that is a determination for a different day. *See Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal quotation omitted).

At oral argument, counsel for Samyang Korea argued that the antitrust claims against Samyang Korea fail because indirect purchaser plaintiffs did not allege that any plaintiff purchased noodles whose prices had actually risen as a result of the price-fixing conspiracy. I disagree. Indirect purchaser plaintiffs allege that Samyang Korea increased factory-level prices in

1   2001, 2002, 2004, 2005, 2007, and 2008 and that the price increases were reflected in the prices of
2   noodles exported for sale in the United States. AIPC ¶¶ 75, 84, 95, 98, 107, 114, 131, 139.
3   Indirect purchaser plaintiffs further allege that named plaintiffs An and Kang purchased Samyang
4   Korea's noodles in the United States regularly from 2001 (An) or 2007 (Kang) to the present.
5   AIPC ¶¶ 14, 17. Those allegations are sufficient to draw the reasonable inference that indirect
6   purchaser plaintiffs purchased price-fixed noodles. *See Iqbal*, 556 U.S. at 678 ("A claim has facial
7   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
8   inference that the defendant is liable for the misconduct alleged.") (citing *Twombly*, 550 U.S. at
9   556).

10   I also reject Samyang Korea's argument that indirect purchaser plaintiffs cannot bring
11   claims under the antitrust laws of Hawaii, Michigan, and New York because plaintiffs did not
12   allege that anyone within those states purchased Samyang Korea's noodles. Indirect purchaser
13   plaintiffs allege that plaintiffs purchased price-fixed Korean noodles in Hawaii, Michigan, and
14   New York from Samyang Korea's co-conspirators. AIPC ¶¶ 11, 13, 20-22, 24. As an alleged co-
15   conspirator, Samyang Korea is liable for those sales; it does not matter that no named plaintiff in
16   those states purchased Samyang Korea's noodles. *See, e.g., Paper Sys. Inc. v. Nippon Paper*
17   *Indus. Co.*, 281 F.3d 629, 634 (7th Cir. 2002) ("If Nippon Paper participated in a cartel of thermal
18   fax paper (something that remains to be determined) then it is jointly and severally liable for the
19   cartel's entire overcharge. That plaintiffs did not buy from Nippon Paper directly, or at all, does
20   not matter."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal.
21   2011) ("A defendant who joins a conspiracy is jointly and severally liable for any actions taken in
22   furtherance of the conspiracy.").

23   **II.    NATIONWIDE CLASS ACTION UNDER CALIFORNIA LAW**

24   Indirect purchaser plaintiffs allege a cause of action under California's Cartwright Act[5] on
25   behalf of a nationwide class defined as "[a]ll persons and entities that purchased Korean Ramen

---

[5] The Cartwright Act generally prohibits conspiracies that unreasonably restrain trade. Cal. Bus. and Prof. Code § 16700 *et seq.*

1    Noodle Products indirectly from one or more Defendants in the United States for their own use
2    and not for resale from May 2001 to the present." AIPC ¶ 36(a). Samyang Korea contends that a
3    nationwide class under the law of a particular state is constitutional only if *both* (1) the chosen
4    state's law does not conflict with the laws of other states that have an interest in the case and (2)
5    the chosen state has significant contact or a significant aggregation of contacts to claims asserted
6    by each member of the plaintiff class. Dkt. No. 142 at 9-10 (citing *Phillips Petroleum Co. v.*
7    *Shutts*, 472 U.S. 797, 821-22 (1985); *In re Graphics Processing Units Antitrust Litig.*, 527 F.
8    Supp. 2d 1011, 1028 (N.D. Cal. 2007)). Samyang Korea argues that the proposed nationwide
9    class fails to meet either prong because California law conflicts with the laws of non-California
10   class members' home states and indirect purchaser plaintiffs have not alleged that California has
11   sufficient contacts with the non-California class members' claims.

12   I disagree with Samyang Korea's analysis. As an initial matter, *Shutts* does not provide
13   that a nationwide class under a particular state's law is only constitutional if there is no conflict of
14   law *and* the state has significant contacts with the claims of all class members. Rather, *Shutts*
15   teaches that there is no injury in applying out-of-state law if there is no conflict between the laws
16   at issue. *Shutts*, 472 U.S. at 816 ("We must first determine whether Kansas law conflicts in any
17   material way with any other law which could apply. There can be no injury in applying Kansas
18   law if it is not in conflict with that of any other jurisdiction connected to this suit."); *see also In re*
19   *St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) ("There is, of course, no constitutional
20   injury to out-of-state plaintiffs in applying Minnesota law unless Minnesota law is in conflict with
21   the other states' laws. Therefore, we must first decide whether any conflicts actually exist.")
22   (citing *Shutts*, 472 U.S. at 816). Similarly, in *In re Graphics Processing*, the Court only analyzed
23   contacts between California and the claims of non-California class members after determining that
24   the laws at issue conflicted. *In re Graphics Processing*, 527 F. Supp. 2d at 1027-28.

25   Accordingly, the second step—determining whether the forum state has sufficient contacts
26   with the claims—is only relevant if the laws at issue are in conflict. If the forum state has
27   sufficient contacts with the claims, the nationwide class may be maintained even if the laws
28   conflict. Assuming sufficient contacts, the parties cannot be surprised by the application of the

7

forum state's conflicting law. *See, e.g., Allstate Ins. Co. v. Hague*, 449 U.S. 302, 318 n.24 (1981) ("There is no element of unfair surprise or frustration of legitimate expectations as a result of Minnesota's choice of its law. Because Allstate was doing business in Minnesota and was undoubtedly aware that Mr. Hague was a Minnesota employee, it had to have anticipated that Minnesota law might apply to an accident in which Mr. Hague was involved.").

Just because I *can* constitutionally apply California law to non-residents does not mean that I *should*. I must still consider California's choice-of-law analysis to determine whether application of California law is appropriate in this case. *See In re Graphics Processing*, 527 F. Supp. 2d at 1027 ("The *Shutts* test, however, deals with whether the application of a certain state's law to a nationwide class violates due process and the full faith and credit clause, while a choice-of-law analysis is a nonconstitutional question under the common law of the state, here California."). If the class action proponent meets its initial burden of showing that California has sufficient contacts to the claims of each class member, "the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-590 (9th Cir. 2012) (internal quotations omitted). "California law may only be used on a class-wide basis if the interests of other states are not found to outweigh California's interest in having its law applied." *Id*. at 590.

California courts apply a three-step governmental interest test to determine whether the interests of other states outweigh California's interest:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

8

1  *Id.* (citing *McCann v. Foster Wheeler LLC,* 48 Cal.4th 68, 81–82 (Cal. 2010)).

2      While it is sometimes appropriate to determine at the pleadings stage whether a plaintiff can maintain a nationwide class under California law, this question is more appropriately addressed here in connection with the class certification process.  *See, e.g., Mazza*, 666 F.3d at 589-94 (applying California choice-of-law analysis on motion for class certification to determine whether plaintiff could maintain nationwide class under California consumer protection laws).  First, the motion to dismiss is improper procedurally since Samyang Korea does not dispute that indirect purchaser plaintiffs may assert a Cartwright Act claim on behalf of California residents.  *See* Dkt. No. 151 at 11 (stating that "Samyang does not dispute that a court sitting in California may apply California law to California residents or individuals injured in California.").  Second, whether indirect purchaser plaintiffs' Cartwright Act claim may extend to claims of residents of other states is better resolved at class certification when the parties know (i) which other states are at issue, (ii) what the laws of those states are, and (iii) what the contacts between the claims of plaintiffs from those states and California are.

    Relatedly, if indirect purchaser plaintiffs meet their burden of establishing sufficient contacts, the burden shifts to Samyang Korea to demonstrate that California's governmental interest test directs that foreign law, rather than California law, should apply to those claims.  *See Mazza*, 666 F.3d at 589-90 (citations omitted).  The governmental interest test was not developed to any extent in the briefs.[6]  Finally, given that indirect purchaser plaintiffs have stated a nationwide Sherman Act claim, Samyang Korea's counsel conceded at oral argument that if I defer resolution of the scope of the Cartwright Act class until class certification it will have no practical impact on discovery or the cost of the litigation.

    Defendants may challenge indirect purchaser plaintiffs' nationwide Cartwright Act class in connection with the class certification briefing.  I will not dismiss this claim now.

### III.  HAWAII AND MASSACHUSETTS UNJUST ENRICHMENT CLAIMS

    Indirect purchaser plaintiffs allege a cause of action for unjust enrichment on behalf of the

---

[6] Indirect purchaser plaintiffs only raised the governmental interest test in their reply brief.

9

Hawaii and Massachusetts subclasses. AIPC ¶¶ 211-214. Samyang Korea moves to dismiss these claims on the grounds that indirect purchaser plaintiffs have not alleged that any members of the class purchased Samyang Korea's noodles in those states. But indirect purchaser plaintiffs allege that named plaintiffs purchased defendant Nongshim's noodles in Hawaii and Massachusetts. AIPC ¶¶ 10, 23-24. That is sufficient to state an unjust enrichment claim against Samyang Korea because, as noted previously, Samyang Korea is liable for the conduct of its co-conspirators, including their sales in those states. *See, e.g., Paper Sys*, 281 F.3d at 634; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d at 1059.

## CONCLUSION

Samyang Korea's motion to dismiss the amended consolidated indirect purchaser complaint is DENIED. Dkt. No. 142.

**IT IS SO ORDERED**.

Dated: March 30, 2015



WILLIAM H. ORRICK
United States District Judge