February 17, 2016

The Honorable Donna M. Ryu
United States District Court for the Northern District of California
Oakland Courthouse, Courtroom 4, 3rd Floor
1301 Clay Street
Oakland, California 94612

      Re:    ***In re Korean Ramen Antitrust Litigation, No. 3:13-CV-4115-WHO-DMR***

Dear Judge Ryu:

Defendants Ottogi Corporation, Ltd., Ottogi America, Inc., Nongshim Co., Ltd. and Nongshim America, Inc. (collectively Defendants) and Indirect Purchaser Plaintiffs (IPPs) respectfully submit this joint discovery letter to resolve a dispute between the parties regarding (1) the location of the depositions of IPPs and (2) search terms to be applied to IPPs' custodians. The parties met and conferred regarding all issues presented in this letter prior to its filing.

**I.    Relevant Case Management Deadlines**

Fact discovery concludes on April 29, 2016. (Dkt. #252). Deadline for class certification expert disclosure is May 11, 2016 and August 10, 2016, for Plaintiffs and Defendants respectively, with depositions to occur promptly after disclosure. *Id*. Opening briefs on class certification are due on May 11, 2016 and opposition briefs are due August 10, 2016. *Id.* Deadline for summary judgment motion, other expert discovery and trial have not yet been set.

**II.    Location of IPP's Depositions**

A.    <u>Defendants' Position</u>

Consistent with the general rule that plaintiffs, including class representatives, should appear for deposition in the district in which they filed suit absent undue burden or exceptional circumstances, Defendants request that IPP class representatives be ordered to appear for deposition in San Francisco (or, if they prefer, Los Angeles). IPPs have neither agreed to this deposition location nor adequately justified a departure from this general rule.[1]

On January 29, 2016, Defendants' counsel requested dates in February and March 2016 when IPPs would be available for depositions in San Francisco. When IPPs' counsel declined to provide dates unless Defendants agreed to depose the plaintiffs in the communities in which they reside, Defendants offered to take some depositions in Los Angeles near where some plaintiffs

---

[1] Despite repeated requests by Defendants, IPPs continuously refused to offer any reasons why they could not appear for depositions in San Francisco or Los Angeles. In this letter, IPPs' counsel have stated for the first time that three of the eight out-of-state plaintiffs are too busy to appear for depositions in this district. These three plaintiffs have offered no declarations and their explanation is devoid of any details. There has been no explanation at all as to the remaining five plaintiffs.

reside and where some plaintiffs originally filed their cases.  Defendants also requests that IPPs provide a detailed explanation if some undue burden or compelling circumstance justified IPPs' refusal to appear in San Francisco or Los Angeles

On February 3, 2016, the parties met and conferred.  IPPs counsel declined to provide any reasons for IPPs' refusal to appear for depositions in San Francisco.  Instead, IPPs requested that depositions take place via videoconference and contended that the onus was on Defendants to establish the necessity for IPPs to appear in person in San Francisco.  Defendants declined to conduct their depositions of IPPs by videoconference and explained that there are credibility issues that warrant live depositions.[2]  IPPs said that they would send Defendants case law to support their position and Defendants agreed to continue the discussion.  The parties met and conferred again on February 11, 2016, at which time Defendants explained why the cases cited by Plaintiffs were inapposite and that IPPs should either appear in San Francisco or justify their refusal.  IPPs continued to argue that the law was to the contrary.[3]

The law on this issue is clear.  As Your Honor has observed, "[g]enerally, ***a plaintiff will be required to make himself or herself available for examination in the district in which suit was brought***."  *Mullins v. Premier Nutrition Corp*, 2014 U.S. Dist. LEXIS 113840, *4-5 (N.D. Cal. Aug. 15, 2014) (internal quotations omitted, emphasis added).  "This general rule applies to class action suits." *Id.*  "***To avoid the application of this rule, a plaintiff has the burden of proving that undue hardship or exceptional or compelling circumstances justify his refusal to travel to his chosen forum***." *Id.* (emphasis added).

The cases offered by IPPs as contrary authority do not support their position.  In *Guillen v. Bank of Am. Corp.,* 2011 U.S. Dist. LEXIS 97966 (N.D. Cal. Aug. 31, 2011) and *In re Willingham*, 2014 Bankr. LEXIS 3180 (Bankr. M.D. Fla. July 18, 2014), for instance, the ***noticing party*** chose to conduct depositions by videoconference and the deponents opposed.  The court therefore stated that the burden is on the opposing party to show how they would be prejudiced by the videoconference.  *Guillen,* 2011 U.S. Dist. LEXIS 97966, *2-3.  Here, the IPPs are opposing Defendants' choice of deposition location and therefore, they must justify their refusal to appear in San Francisco or Los Angeles as requested, not the other way around.

*Kelora Sys., LLC v. Target Corp.,* 2011 U.S. Dist. LEXIS 96733 (N.D. Cal. Aug. 29, 2011) is equally inapposite.  In that case, plaintiffs requested that the court order the defendant's Rule 30(b)(6) witness to be deposed in California where the lawsuit was pending instead of Texas where defendant's headquarters was located.  *Kelora*, 2011 U.S. Dist. LEXIS 96733, at *6.  The court declined to so compel and ordered deposition by videoconference instead because

---

[2]  For instance, Defendants have the right to question and test, among other things, the IPPs' claims that they purchased Defendants' products despite not having any proof of purchase during the putative class period; their alleged ability to remember their purchases, some of which occurred over ten years ago; IPPs' recollection as to the prices they paid and whether each IPP paid the same price; IPPs fitness to serve as class representatives; IPPs' purchasing patterns and other products that are substitutes for ramen; allegations that IPPs were deceived by Defendants and the basis of the factual allegations in their complaint.

[3]  At the conclusion of the February 11th meet and confer, Defendants concluded that the parties are at an impasse and informed IPPs that they would file this letter the following Tuesday or Wednesday.  This letter is thus timely.

the general presumption is that the deposition of the designee of a corporate **defendant** should be conducted at the corporation's principal place of business.  *Id.* at \*9-11.  The presumption relied on by the court in *Kelora*, however, applies to **defendants**, not plaintiffs.  *See Lexington Ins. Co. v. Commonwealth Ins. Co.,* 1999 U.S. Dist. LEXIS 23428, \*28-29 (N.D. Cal. Sept. 17, 1999); *Rulo v. Ricoh Ams. Corp.,* 2015 U.S. Dist. LEXIS 153432, \*2 (N.D. Cal. Nov. 12, 2015).[4]

Finally, the fact that the cost of travel may outweigh the class representatives' claims does not present the degree of hardship which would warrant departure from the general rule that plaintiffs should be deposed where the lawsuit is pending.  *See Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 1990 U.S. Dist. LEXIS 16361, 3-4 (D. Or. Nov. 29, 1990).

B.      IPP's Position

**Defendants' Attempt to Raise Both of These Issues is Untimely.**  The Parties completed their meet and confer on *both* of the issues raised in this letter on February 3, 2016, when Defendants definitively rejected Plaintiffs' position.  Defendants did not notify Plaintiffs that they intended to brief these issues until Sunday evening, February 14, eleven days after the meet and confer ended.  This exceeds the five business days specified in the Court's Notice of Amended Discovery Procedures [ECF No. 288].  Thus, Defendants' effort to raise these issues is untimely.  The February 11 discussion added nothing to the meet and confer process.  Defendants presumably raised these issues again to restart the five-day clock.  They are too late.

**Class Plaintiffs Should Not Have to Travel to California to Be Deposed.**  Plaintiffs Fenerjian, Beamer, Martin, Halloran, Noble, Heiferman, Choi and Chung should be deposed via videoconference.  Or if defense counsel want to depose them in person, they should  do so at a location near where these plaintiffs live, in Massachusetts, Michigan, New York, Florida and Hawaii.  Requiring them to be deposed in California would impose an extreme burden on them in light of work and family commitments and health issues.[5]  That would cost each plaintiff  3 days – 2 travel days and one day to be deposed.  Moreover, travel expenses would exceed the tiny value of each individual's claims by orders of magnitude.

Plaintiffs are unlikely to have material knowledge.  If they do, a videoconferenced deposition is sufficient to enable Defendants to elicit it.  The case is about price-fixing *by*

---

[4]  IPPs' reliance on *Shockey v. Huhtamaki, Inc.,* 280 F.R.D. 598, 601-603 (D. Kan. 2012) and *Gee v. Suntrust Mortg., Inc.*, 2011 WL 5597124 at \*3 (N.D. Cal. 2011) are equally misplaced.  These cases involved FLSA collective actions.  Courts have generally excused opt-in plaintiffs in such actions from being deposed in the forum state due to the unique nature and purpose of FLSA claims.  *See Gee*, 2011 WL 5597124 at \*2-3

[5] The IPPs can provide evidence documenting their contention that requiring out-of-state Plaintiffs to travel to California to be deposed would impose extreme burdens on them.  Because we learned that Defendants intended to raise this issue only last Sunday evening, we had insufficient time to assemble declarations from class members on that issue.  At this time, we are prepared to submit the Declaration of Nicole Veno regarding the burdens facing 3 of the 8 affected plaintiffs, a draft of which has been provided to defendants' counsel.  The IPPs request leave to submit that declaration pursuant to this Court's Amended Discovery Protocol, and any other declarations they are able to gather from Plaintiffs themselves.  However, the burden, disruption and expense of cross-country travel in a case in which each Plaintiff's individual claim amounts to perhaps a few dollars or tens of dollars is so obvious, even without such declarations, we submit, that this Court should take judicial notice of it.

- 3 -

*Defendants* that inflated U.S. ramen prices.  No retail consumer could have personal knowledge of that.  Thus, no purpose would be served by bringing plaintiffs to California.  Their depositions will be brief and straightforward, with few, if any, exhibits.  Requiring them to come to California would disrupt their lives without any corresponding benefit to the Defendants.

The Court may prescribe a deposition's time, place and terms "to protect a party … from annoyance, … oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).   "Ample case law recognizes that a videoconference deposition can be an adequate substitute for an in-person deposition, particularly when significant expenses are at issue." *In re Willingham,* 2014 WL 3697556 (M.D. Fl. 2014).  In *Shockey v. Huhtamaki, Inc.,* 280 F.R.D. 598, 601-603 (D. Kan. 2012), the court ordered videoconference depositions for out-of-state plaintiffs where Plaintiff's monetary claims were less than the travel costs of coming to Kansas.  *See Gee v. Suntrust Mortg., Inc.*, 2011 WL 5597124 at *3 (N.D. Cal. 2011) (ordering depositions by videoconference or in cities proposed by plaintiffs due to the financial burden of travel); *Guillen v. Bank of Am. Corp.,* 2011 WL 3939690 at *1 (N.D.Cal. 2011) ("A desire to save money constitutes good cause to depose out-of-state witnesses [by] telephone or remote means.").

Holding the depositions of the 8 class representatives who live far from the court by videoconference is particularly appropriate after the amendment of Fed. R. Civ. P. 26, which provides that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  The 3-day burden and the expense of travelling to California is not proportional to Plaintiffs' small monetary claims and the fact that Plaintiffs do not have material information.  A videoconference is a "logical, economical solution."  *Shockey,* 280 F.R.D. at 603.

### III.    Search Terms for IPP Custodians

A.    <u>Defendants' Position</u>

The defendants request an order requiring plaintiffs to use as search terms, in addition to the word "ramen," five other common spellings or variations of that word.  Following the December 17th hearing, and pursuant to Your Honor's orders, Defendants attempted to engage IPPs in discussions about search terms to be applied to IPPs' custodians.  On December 18, 2015, Defendants sent IPPs a list of 20 proposed search terms consisting of (1) different spellings and forms of "ramen" and (2) the names of various Korean ramen manufacturers.  IPPs' counsel rejected Defendants' search terms, contending that Your Honor had ordered the search be limited to the term "ramen" only.  As a compromise, Defendants offered to further limit the proposed search terms to common spellings and synonyms for ramen, which consisted of six words. The parties met and conferred on February 3 and February 11, 2016.  IPPs' counsel stated that the class representatives had already run a search with only "ramen" and that it was burdensome to run additional searches.  IPPs' counsel declined to provide information on how the search was conducted or how IPPs' counsel supervised it.

Your Honor has already ruled that a search for ESI regarding ramen is relevant and IPPs

have not articulated why it is burdensome to conduct the search using five other common spellings of the word; if no responsive document is returned, the search should take very little time. Defendants therefore respectfully request that the Court order IPPs to conduct a search using the following terms: 라면 (ramen written in Korean), ramen, ramyon, ramyun, udon, and noodle. Defendants further request that the Court order IPPs' counsel to disclose the process by which they plan to supervise the IPPs' search of their emails using the proposed search terms.

B.    IPP's Position

The Parties dispute the search terms to be used by indirect purchaser plaintiffs. On December 17, 2015, the Court explained the following with respect to search terms:

> …[I]t would be a very simple search. I wouldn't expect anything that would be elaborate. But if it's something like running the word "ramen" on your client's e-mail, then that's something they should do. That's not burdensome. (RT at 9:2-7).

Defendant contended that this search is insufficient, and proposed *nineteen* additional search terms on December 18, 2015, seven of which are written in the Korean alphabet, Hangu, as follows: 라면, ramen, ramyon, ramyun , udon, noodle, nongshim, nong shim, 농심 , Ottogi , 오뚜기, Sam Yang, Samyang, 삼양, Paldo, 팔도, Yakult, 야쿠르트, Binggrae, 빙그래.

As pointed out at the December 17 hearing, Defendants have not articulated any rationale for why having Plaintiffs run searches for any of these terms could lead to any relevant evidence. However, running the search for "ramen" was, as this Court suggested, a reasonable compromise. To avoid further delays in the case, counsel requested that the Plaintiffs run the search the Court had ordered, and many Plaintiffs have now searched their computers for "ramen." Now, one month later, well after many Plaintiffs completed their searches, Defendants seek to expand the searches. Given Plaintiffs' small claims in this case, and the fact that there is no way any additional searches could lead to relevant information, Defendant's position should be rejected. Their effort to require additional searches serves no function other than harassment.

Under Rule 26(b)(1), a party may obtain discovery regarding matter that is *relevant* to a claim or defense and "*proportional to the needs of the case…*" The party seeking discovery has the burden of establishing that it satisfies the relevancy requirements. *Eusse v. Vitela,* 2016 WL 455698, at *2 (S.D. Cal. Feb. 4, 2016). Requiring Plaintiffs to run more searches that are not even relevant or proportional to the needs of this case, especially in view of the small size of each Plaintiff's individual monetary claim.

Defendants now say they would be satisfied with a search for six words – one in Korean, five in English. But additional searches of any kind would be pointless and time-wasting. But Defendants have proffered no explanation as to how the existence of one of these terms in an email to a retail consumer would be relevant to their defenses, particularly since Plaintiffs made no purchases online. Indeed, Defendants all but admitted the irrelevance of the new search terms by the fact that they did nothing on this issue for one month. Accordingly, no additional searches should be required.

Respectfully submitted ,

DATED: February 17, 2016        /s/ *Daniel Birkhaeuser*_____
Daniel E. Birkhaeuser
BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER, LLP

Robert A. Izard
IZARD NOBEL LLP

Interim Lead Counsel for the Indirect
Purchaser Plaintiffs

DATED: February 17, 2016        /s/ *Joel Sanders*_____
Joel S. Sanders
Minae Yu
GIBSON DUNN & CRUTCHER LLP

Attorneys for Defendants
Ottogi Corporation, Ltd. and Ottogi
America, Inc.

DATED: February 17, 2016        /s/ *Mark C. Dosker*_____
Mark C. Dosker
SQUIRE PATTON BOGGS (US) LLP

Attorneys for Defendants
Nongshim Co. Ltd. and Nongshim America,
Inc.