SQUIRE PATTON BOGGS (US) LLP
Mark C. Dosker (CA Bar #114789)
Joseph P. Grasser (CA Bar #255156)
Kate E. Kim (admitted *pro hac vice*)
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 954-0200
Facsimile: (415) 393-9887
E-Mail: mark.dosker@squirepb.com
joseph.grasser@squirepb.com
kate.kim@squirepb.com

Attorneys for Defendants
NONGSHIM CO., LTD. and
NONGSHIM AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE KOREAN RAMEN ANTITRUST LITIGATION, | Case No. 3:13-cv-04115-WHO<br><br>**DECLARATION OF YOUNG LEE IN SUPPORT OF NONGSHIM CO., LTD.'S AND NONGSHIM AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: June 21, 2017<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**REDACTED VERSION**

I, Young Lee, declare as follows,

1. I work at Nongshim America, Inc. ("NSA"), and have worked there for 16 years -- since 2001. I have served as the General Manager of the West coast region of NSA since 2012, and before that I was the person at NSA in charge of sales overall. I have personal knowledge of the following facts and could and would testify competently thereto if called as a witness. I submit this declaration in support of Nongshim Co., Ltd.'s and Nongshim America, Inc.'s Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment.

2. My native language is Korean. I speak and read English somewhat, but I am not fluent in English. I am signing this Declaration in Korean and I am also signing a certified translation of this Declaration in English.

3. This declaration is based on my personal knowledge, my review of the relevant documents produced in this litigation, my preparation prior to my deposition as a designee of NSA for purposes of testifying on the company's behalf in that deposition for two full days, and my personal knowledge of and experience with how NSA operates.

4. Nongshim America. Inc. ("NSA") is a California corporation located in Rancho Cucamonga, California. NSA is a wholly owned subsidiary of Nongshim Holdings USA Inc., also a California corporation, which is in turn owned by NSK. At NSA's factory and headquarters in California, NSA produces, sells and distributes ramen products throughout the United States. NSA does not have, and never had, any employees, operations or sales in Korea.

5. I am informed that the class period in this case is from March 1, 2003 through January 31, 2010. Since 2005, the vast majority of the Nongshim brand products sold in the U.S. were U.S. Domestic Products, by which I mean products made and sold in the U.S. by NSA. In most years in the class period, such U.S. Domestic Products accounted for over 80% of Nongshim brand product sales in the U.S. and overall in the class period accounted for over 65%.

6. At all times during the class period and continuing at all times since then NSA's day-to-day operations, decision making and management, including pricing decisions, are wholly independent of Nongshim Co. Ltd. ("NSK"). NSA independently and unilaterally decided the prices of the U.S. Domestic Products it produced and sold, and used the following basic approach

1

1 for determining its selling price (before customer-specific discounts or promotions): ███
2 ████████████████████████████████████████████████████████████
3 ███████████████████████████████████████ NSK did not have any role
4 in setting the price of the U.S. Domestic Products.

5     7.    NSA raised prices in the U.S. market in both 2005 and 2006.

6     8.    U.S. Import Products from NSK were very much a minority of Nongshim brand
7 ramen products sold in the U.S. during the class period. By U.S. Import Products, I mean
8 products manufactured by NSK in Korea for sale in the U.S. In most years of the class period,
9 they were less than 20% of Nongshim brand ramen products sold in the U.S. For such products
10 as were imported from Korea during the class period, NSA used the following basic approach for
11 determining its selling price before customer-specific discounts or promotions: ███
12 ████████████████████████████████████████████████████████████
13 ███████████████ The "landed cost" includes ocean freight, duty, customs clearance, and
14 drayage cost (for example, trucking costs from port to warehouse).

15     9.    As to the U.S. Domestic Products, at all times during the class period and
16 continuing at all times since then the prices were unilaterally set by NSA. As to U.S. Import
17 Products, at all times during the class period and continuing at all times since then, the prices of
18 U.S. Import Products (before customer-specific discounts and promotions) were the result of
19 negotiations between NSA and NSK's export department.

20     10.    At all times during the class period and continuing at all times since then, NSA
21 had structural, decisional and operational independence from NSK such that the manufacture and
22 pricing of products for the two markets (Korea and the U.S.) were fully separated and NSA
23 targeted its marketing, sales and promotional activities within the United States only.

24     11.    At all times during the class period and continuing at all times since then, NSA's
25 pricing decisions for all products it sold in the U.S. – both U.S. Domestic Products and U.S.
26 Import Products, and including the profit margin – were independent and unilaterally made by
27 NSA without any input from NSK.

28

12. At all times during the class period and continuing at all times since then, NSA was a wholly independently operated and managed entity: there is little or no overlap between the employees, managers, and officers of NSA and NSK.

13. At all times during the class period and continuing at all times since then, there were no overlapping personnel between NSK and NSA in charge of pricing decisions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 29, 2017, at Rancho Cucamonga, California.

_____
Young Lee

1   SQUIRE PATTON BOGGS (US) LLP
2   Mark C. Dosker (캘리포니아 변호사 자격증 #114789)
3   Joseph P. Grasser (캘리포니아 변호사 자격증#255156)
4   Kate E. Kim (임시 허용)
    275 Battery Street, Suite 2600
    San Francisco, California 94111
5   전화번호:   (415) 954-0200
6   팩스:       (415) 393-9887
7   이메일:     mark.dosker@squirepb.com
               joseph.grasser@squirepb.com
8              kate.kim@squirepb.com
9   피고 (주) 농심 및 농심 아메리카의 변호사

10
11                          연방지방법원
12                        캘리포니아 북부 지구
13                        샌프란시스코 부서
14

| 한국 라면 반독점 소송 관련, | 사건번호. 3:13-cv-04115-WHO |
|---|---|
|  | **(주)농심과 농심 아메리카의 약식판결, 또는 대안적으로 부분약식판결 신청을 지지하기 위한 이영의 진술서; 지지 사항 및 당국의 메모** |
|  | 일자:   2017 년 6 월 21 일<br>시간:   오후 2:00<br>법정:   2, 17 층 |
| 본 서류는 모든 소송건에 관련함. |  |

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    본인 이영은 다음과 같이 진술합니다.

2    1.    본인은 농심 아메리카("NSA") 에서 2001 년부터 16 년간 근무하고 있습니다.

3    2012 년부터 NSA 의 서부지역의 부장을 맡고 있으며, 그 전에는 NSA 의 총 판매

4    책임자였습니다. 저는 하기 기재된 사실에 대해 개인적으로 알고 있으며, 증인으로 소환된다면

5    선서하에 충분히 증언할 것 입니다. 저는 (주)농심과 농심 아메리카의 약식판결, 또는

6    대안적으로 부분약식판결 신청을 지지하기 위해 본 진술서를 제출합니다.

7    2.    제 모국어는 한국어입니다. 어느정도 영어를 읽고 말할 수 있지만, 능숙하게

8    구사하지는 않습니다. 저는 한국어로 된 본 진술서에 서명하고 영어로 공인 번역된 진술서에도

9    서명합니다.

10    3.    본 진술서는 제가 개인적으로 알고 있는 것, 본 소송에 제출된 관련 문서에 대한

11    제 검토사항, NSA 의 지명자로서 회사를 대리하여 진술한 이틀동안의 선서증언 전에 준비한

12    것, 그리고 NSA 의 운영방식에 대한 제 개인적 지식 및 경험을 기반으로 하고 있습니다.

13    4.    농심 아메리카("NSA")는 캘리포니아주 란초 쿠카몽가에 소재한 캘리포니아

14    법인입니다. NSA 는 NSK 가 소유한 캘리포니아 법인인 농심 홀딩스 USA 에 온전히 소유된

15    자회사입니다. 캘리포니아에 있는 NSA 의 공장 및 본사에서 NSA 는 미국 전 지역에

16    라면제품을 제조, 판매, 그리고 배포합니다. NSA 는 한번도 한국에 직원, 사업, 또는 판매를 한

17    적이 없습니다.

18    5.    전 본 소송의 피해기간이 2003 년 3 월 1 일에서 2010 년 1 월 31 일까지라는

19    정보를 받았습니다. 2005 년부터 미국에서 판매된 대부분의 농심 브랜드 제품은 미국내 생산

20    제품이였으며, 이는 NSA 가 미국에서 제조하고 판매한 제품입니다. 피해기간의 대부분 동안

21    미국에서 판매된 농심 브랜드 제품의 80% 이상이 미국내 생산 제품이였으며, 전체

22    피해기간동안에 65% 이상이 미국내 생산 제품이였습니다.

23    6.    집단소송기간 내내, 그리고 그 후 지속적으로 NSA 의 일상 업무와 가격 결정을

24    포함한 의사 결정 및 관리는 (주) 농심 ("NSK") 으로부터 온전히 독립된 과정이였습니다.

25    NSA 는 제조 및 판매한 미국내 생산 제품의 가격을 독자적 및 일방적으로 결정하였고, 다음과

26    같은 기본 방법으로 판매가격을 책정했습니다 (특정 고객 할인 및 프로모션 전) :

27    

28    NSK 는 미국내 생산 제품의 가격을 결정하는데 아무런 역할이 없었습니다.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1

(주)농심과 농심 아메리카의 약식판결, 또는 대안적으로 부분약식판결 신청을 지지하기 위한 이영의 진술서

1    7.     NSA 는 2005 년 및 2006 년에 미국 시장에서 가격을 올렸습니다.

2    8.     집단소송기간동안 미국에서 판매된 농심 브랜드 라면 제품중에 NSK 의 미국
3  수입 제품은 아주 극소수였습니다. 미국 수입 제품이란 미국에서 판매하기 위해 한국에서
4  NSK 가 제조한 제품을 말합니다. 집단소송기간의 대부분 동안 미국 수입 제품은 미국에서
5  판매된 농심 브랜드 라면 제품의 20% 미만이였습니다. 그러한 제품은 집단소송기간에
6  한국에서 수입되었기 때문에 NSA 는 다음과 같은 기본 방법으로 특정 고객 할인 및 프로모션
7  전의 판매가격을 책정했습니다: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
8  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ "양륙포함가격"은 해상운임, 세금, 통관, 및 이송비용 (예를
9  들어, 항구에서 창고까지 화물트럭 운송비용)을 포함합니다.

10   9.     미국내 생산 제품에 관련하여, 집단소송기간 내내, 그리고 그 후 지속적으로
11 NSA 가 일방적으로 가격을 책정하였습니다. 미국 수입 제품에 관련하여, 집단소송기간 내내,
12 그리고 그 후 지속적으로 미국 수입 제품의 가격 (특정 고객 할인 및 프로모션 전)은 NSA 와
13 NSK 의 수출부서 사이에 협상을 통해 책정되었습니다.

14   10.    집단소송기간 내내, 그리고 그 후 지속적으로 NSA 는 NSK 로부터 독립된 구조,
15 의사 결정 및 운영 체제를 가지고 있었고 그로 인해 두 시장(한국과 미국)의 제품 제조 및
16 가격책정 과정은 온전히 분리되어 있었고 NSA 는 미국내에서만 마케팅, 판매, 및 프로모션
17 작업을 했습니다.

18   11.    집단소송기간 내내, 그리고 그 후 지속적으로 미국에서 판매한 모든 제품—
19 미국내 생산 제품과 미국 수입 제품 모두, 그리고 이윤을 포함—에 대한 NSA 의 가격 책정
20 결정은 NSK 의 의견 없이 독자적 및 일방적으로 결정했습니다.

21   12.    집단소송기간 내내, 그리고 그 후 지속적으로 NSA 는 온전히 독자적으로 운영 및
22 관리된 독립체입니다: NSA 와 NSK 사이에 겹치는 직원, 매니저, 및 임원은 거의 없습니다.

23   13.    집단소송기간 내내, 그리고 그 후 지속적으로 NSA 와 NSK 사이에 가격책정에
24 관련된 책임자가 겹친적이 없습니다.

25

26   미합중국법 하, 위증죄의 처벌 하에 상기 내용이 진실이며 정확한 것임을 선서합니다.
27 2017 년 3 월 ____일, 캘리포니아주 랜초 쿠카몽가에서 서명함.

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111



이영

3

(주)농심과 농심 아메리카의 약식판결, 또는 대안적으로 부분약식판결 신청을 지지하기 위한 이영의 진술서

X.X.65.211  jae
2017/03/27 13:04:41

# CERTIFICATION OF TRANSLATION

## and

## DECLARATION

State of California        )
                           )    S. S.
Los Angeles County         )

I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated **3 pages of DECLARATION OF YOUNG LEE IN SUPPORT OF NONGSHIM CO., LTD.'S AND NONGSHIM AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** from English to Korean in accordance with Fed. R. Evid. 901 and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on 23rd of March 2017,

*[signature]*

Soomi Ko
California State Certified Court Interpreter
#300732
Direct: (213) 999-7848
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

KO & MARTIN Certified Interpreters and Translators www.komartin.com (213) 999-7848

X.X.65.211  jae
2017/03/27 13:04:41