SQUIRE PATTON BOGGS (US) LLP
Mark C. Dosker (CA Bar #114789)
Joseph P. Grasser (CA Bar #255156)
Maria A. Nugent (CA Bar #306074)
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 954-0200
Facsimile: (415) 393-9887
E-Mail: mark.dosker@squirepb.com
joseph.grasser@squirepb.com
maria.nugent@squirepb.com

Attorneys for Defendants
NONGSHIM CO., LTD and
NONGSHIM AMERICA, INC.

GIBSON, DUNN & CRUTCHER LLP
Rachel S. Brass (CA Bar # 219301)
Minae Yu (CA Bar # 268814)
Julian W. Kleinbrodt (CA Bar #302085)
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8206
e-mail: rbrass@gibsondunn.com
myu@gibsondunn.com
jkleinbrodt@gibsondunn.com

Attorneys for Defendants
OTTOGI CORPORATION, LTD., and
OTTOGI AMERICA, INC.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE KOREAN RAMEN ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

Case No. 3:13-cv-04115-WHO

**DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF SANG-HUN LEE**

Date: January 12, 2018
Time: 2:00 p.m.
Place: Courtroom 2, 17th Floor

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

**NOTICE OF MOTION AND MOTION**

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 12, 2018 at 2:00 p.m. in the United States District Court, Northern District of California, 450 Golden Gate Ave., San Francisco, California, Courtroom 2 before the Honorable William H. Orrick III, Defendants Nongshim Co., Ltd., Nongshim America, Inc., Ottogi Co., Ltd., and Ottogi America, Inc., will and hereby do move the Court for an order excluding the testimony of Sang-Hun Lee on the grounds that his opinions are speculative, unreliable, irrelevant, and unduly prejudicial under Federal Rules of Civil Procedure 402, 403, and 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the declaration of Maria A. Nugent in support of Defendants' Motion to Exclude the Testimony of Sang-Hun Lee, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

Dated: October 17, 2017

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Mark C. Dosker*
Mark C. Dosker

Attorneys for Defendants
NONGSHIM CO., LTD. and NONGSHIM AMERICA, INC.

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel S. Brass*
Rachel S. Brass

Attorneys for Defendants
OTTOGI AMERICA, INC. and OTTOGI CORPORATION, LTD.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION ..... 1

II. SUMMARY OF MR. LEE'S OPINIONS ..... 3

A. Mr. Lee's Background and Relevant Experience ..... 4

B. Mr. Lee Opines That Article 69-2, Paragraph 1, Subparagraph 7 of the FTA is not Limited to Conduct Occurring During "Onsite Investigations" by the KFTC ..... 5

C. Mr. Lee Opines That the Standard for Destruction of Evidence in Criminal Cases is "Certainly Applicable" to Document Destruction Under the FTA ..... 8

D. Mr. Lee Opines that Nongshim America and Ottogi America are Subjects of the KFTC Investigation and are "Covered" by the FTA ..... 9

III. LEGAL STANDARD ..... 12

IV. ARGUMENT ..... 14

A. Mr. Lee Lacks Any Expertise In KFTC Investigations, the FTA, or Document Preservation Obligations in a Civil Case Under Korean Law or U.S. Law ..... 14

B. Mr. Lee is Not Qualified to Provide Expert Testimony on KFTC Investigations or on the Meaning of Any Provision of the FTA ..... 16

C. Mr. Lee is Not Qualified to Provide Expert Testimony on the Non-Existent but Purported "Duty to Preserve Evidence" Under the FTA ..... 18

D. None of Mr. Lee's Opinions Will Offer Assistance to the Trier of Fact ..... 20

V. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barabin v. AstenJohnson, Inc.*,
700 F.3d 428 (9th Cir. 2012) (en banc)....................12

*Bassam Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan ("Nabulsi")*,
No. H-06-2683, 2009 LEXIS 49661 (S.D. Tex. June 12, 2009), *aff'd*, 383 Fed. Appx. 380 (5th Cir. 2010)....................13

*Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*,
No. 05 Civ. 9485, 2007 U.S. Dist. LEXIS 10138 (S.D.N.Y. Feb. 13, 2007)....................13, 16

*Bostrom v. Seguros Tepeyac, S.A.*,
225 F. Supp. 222 (N.D. Tex. 1963), *modified on other grounds*, 347 F.2d 168 (5th Cir. 1965)....................13, 16, 17

*In re Canvas Specialty Inc. ("Canvas Specialty")*,
261 B.R. 12 (C.D. Cal. 2001)....................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)....................1, 12, 19

*DePaepe v. Gen. Motors Corp.*,
141 F.3d 715 (7th Cir. 1998)....................14, 20

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997)....................14, 20

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
87 F. Supp. 3d 928, 939 (N.D. Cal. 2015)....................14

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)....................12

*Morin v. United States*,
534 F. Supp. 2d 1179 (D. Nev. 2005)....................13, 19

*Rogers v. Raymark Indus., Inc.*,
922 F.2d 1426 (9th Cir. 1991)....................19

*Spiewak v. Kinowhita (In re Spiewak)*,
No. 95-56535, 1997 U.S. App. LEXIS 5886 (9th Cir. Mar. 26, 1997)....................13

*Stevenson v. Union Pac. R.R. Co.*,
354 F.3d 739 (8th Cir. 1993)....................8

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*United States v. Chang*,
207 F.3d 1169 (9th Cir. 2000)....................12, 13, 16

*United States v. Christophe*,
833 F.2d 1296 (9th Cir. 1987)....................14

*Whiting v. Boston Edison Co.*,
891 F. Supp. 12 (D. Mass. 1995)....................13, 17

**Statutes**

Federal Rule of Evidence
401....................19
402....................19
403....................19
702.................... *passim*

Federal Rules of Civil Procedure Rule 44.1....................1

FTA (Fair Trade Act).................... *passim*

**Other Authorities**

Hon. Jack B. Weinstein, Rule 702 of the Federal Rules Is Sound; It Should Not Be Amended, 138 F.R.D. 631 (1991)....................12

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## I. INTRODUCTION

Despite this Court's denial of Plaintiffs' motion for sanctions because Nongshim Co., Ltd. ("Nongshim Korea"), Nongshim America, Inc. ("Nongshim America"), Ottogi Co., Ltd. ("Ottogi Korea") and Ottogi America, Inc. ("Ottogi America") (collectively Defendants) "did not have a duty as of 2008 to preserve evidence for potential use in litigation in the United States," (ECF 502) Plaintiffs now attempt to take a second bite at the apple by arguing that a negative inference should nevertheless be drawn *under Korean law*. As Defendants' expert Daesik Hong opined, however, there is no duty under Korean law to implement a litigation hold following the start of an investigation by the Korean Fair Trade Commission ("KFTC"). In response, Plaintiffs offer the "expert" opinions of Sang-Hun Lee who has no experience with KFTC investigations, never litigated any cases involving the Korean Monopoly Regulation and Fair Trade Act ("FTA") and has no special training or experience in this area of the law. Mr. Lee admitted that he does not base his conclusions on any existing Korean statute or legal precedents. Instead, he just believes that this is how the Korean law should be. This aspirational view of Korean law is not an expert opinion on the state of Korean law offered for the purpose of assisting this Court to determine issues of foreign law, but instead is an unsupported, misleading and unfounded argument designed to inappropriately influence the jury. Mr. Lee's opinions should thus be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.[1]

---

[1] During his deposition, Mr. Lee unequivocally testified that he did not know anything about the underlying facts of this case and that he had no opinions concerning whether the employees of Ottogi Defendants or Nongshim Defendants actually acted improperly or when the alleged duty to preserve documents under Korean law actually started or ended in this particular case. *See, e.g.*, Declaration of Maria A. Nugent in Support of Defendants' Motion to Exclude the Testimony of Sang-Hun Lee ("Nugent Decl."), Ex. B at 103:10-105:1, 107:17-24, 113:9-20, 164:21-165:6, 177:15-179:17, 188:7-191:7, 194:18-195:4. To the extent Plaintiffs offer Mr. Lee's opinion solely on the issue of Korean law pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Defendants reserve the right to oppose such opinion in a subsequent motion. In contrast to his deposition testimony, however, Mr. Lee's Report suggests that Defendants in this particular case acted improperly. Nugent Decl., Ex. A at A ¶11, B ¶ 2. To the extent Plaintiffs intend to offer Mr. Lee's testimony to the jury, it must be admissible under Federal Rules of Evidence and standards set forth under *Daubert*.

First, Mr. Lee lacks the relevant experience to opine on the specific area of law that is the subject of his rebuttal report.  Mr. Lee was retained by Plaintiffs for the purpose of providing an opinion on whether and to what extent there is a duty to preserve evidence under the FTA during the pendency of an investigation by the Korean Fair Trade Commission (hereinafter referred to as the "KFTC").  Mr. Lee, however, admitted to having no experience, training, knowledge, or skill relating to the FTA, KFTC investigations, or duties to preserve evidence in civil matters generally, nor has he authored scholarship in these areas.  Instead, Mr. Lee relies entirely on his limited experiences in criminal matters, which he admitted have different procedures and standards compared to civil and administrative matters, and his personal "academic interest" in "KFTC-related laws" as a basis for his proffered "expertise" in document preservation duties during a pending KFTC investigation.  This will not suffice under U.S. law to support qualification as an expert in these subject areas.

Mr. Lee's lack of expertise in the subject areas about which he opines is glaring when comparing his expert report to his deposition testimony that tries to explain it.  While making bold claims in his Report that "duty to preserve that matches the level of a [U.S.] litigation hold does exist when it comes to criminal proceedings and fair trade procedures," Nugent Decl., Ex. A at ¶ 10, he admitted that no Korean statute or precedent actually supported his conclusion.  In an apparent effort to overcome the admitted shortcomings of his opinions, Mr. Lee's deposition testimony mostly consists of convoluted, self-contradictory and speculative explanations of bases for his opinions.  Indeed, where the actual law would not support a certain opinion of Mr. Lee, he would take it upon himself to just make one up and pass it off as a legal standard in his "expert" opinion.  Such conduct by a purported expert should not be countenanced by this Court.

An expert's purpose is to assist the trier of fact in understanding issues that are beyond the understanding of a layperson.  Mr. Lee is not qualified to opine on matters or laws that he has no prior experience with, and his opinions are so perplexing that they would actually mislead, rather than assist the trier of fact here. There is thus no value to the Court in the opinions offered by Mr. Lee, and his testimony should be excluded from trial in its entirety.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## II. SUMMARY OF MR. LEE'S OPINIONS

Mr. Lee was retained by Plaintiffs to opine on whether and to what extent a duty to preserve documents exists under Korean law, especially the FTA, in relation to KFTC investigations. Nugent Decl., Ex. A at II; Nugent Decl., Ex. B at 73:21-74:4 and 75:22-76:4 (his opinions on "the document preservation obligation" are pursuant to the FTA); *see also id.* at 189:19-24 (stating that the issues he is opining on are "limited to whether there was a [] violation of the [FTA]."). Mr. Lee's report is intended to rebut the opinions of Professor Dae Sik Hong, Defendants' expert on document preservation duties under Korean law. Nugent Decl., Ex. A at II, III; Nugent Decl., Ex. B at 74:6-10. The two experts offer competing interpretation of the following provisions of the FTA that sets forth specific investigative tactics that the KFTC may employ:

> (1) **<u>Article 50, paragraph 2</u>**: "The [KFTC] may, where it deems necessary to enforce this Act, have public officials under its control…access the office or place of business of businesses or business related organizations in order to examine the business and management situation, books of account, documents, electronic materials, voice-recording materials, video materials, and other materials or items as prescribed by Presidential Decree, and hear statements from the parties concerned, interested parties or witnesses at a designated place under conditions prescribed by Presidential Decree."

Nugent Decl., Ex. A at III, A, ¶ 7, n.6; *see also* Nugent Decl., Ex. C at ¶ 12 (Hong Report).

> (2) **<u>Article 50, paragraph 1, subparagraph 3</u>**: "The [KFTC] may, if it deems it necessary to enforce this Act . . . [issue] an order to a business, a business related organization, officer or employees thereof, for the submission of a report on the cost and business situation or for the presentation of other necessary materials or things, or detention of presented materials or things"

Nugent Decl., Ex. A at III, A, ¶ 7, n.6; *see also* Nugent Decl., Ex. C at ¶ 11 (Hong Report).

Mr. Lee and Prof. Hong also differ in their interpretation of the following provisions of the FTA that proscribe conduct that interferes with each of the above investigative tactics:

> (1) **<u>Article 69-2, paragraph 1, subparagraph 7</u>**[2]: "Anyone who [] refuses, obstructs or avoids an investigation by concealing, destroying, refusing access to, altering or

[2] The FTA was amended on April 18, 2017. Nugent Decl., Ex. A at III, A, ¶ 1. Article 69-2, paragraph 1, subparagraphs 6 and 7 of the FTA refer to provisions that existed *prior to* the amendment. *Id.*; Nugent Decl. Ex. B at 76:2-77:16. Those former provisions of the FTA are now reflected in the amended version of the FTA in Article 67, paragraphs 9 and 10. *Id.* The only

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

> forging material during the investigation as set forth in ***Paragraph 2 of Article 50***."

Nugent Decl., Ex. A at III, A, ¶ 1, n.1 (emphasis added); Nugent Decl., Ex. C at ¶ 12 (Haggard Report).

> (2) **Article 69-2, paragraph 1, subparagraph 6**: "In accordance with ***Subparagraph 3, Paragraph 1 of Article 50*** (Investigation of Violations, etc.) or Paragraph 3, any person who fails to report or submit required materials or items or made a fraudulent report or submit fraudulent materials or items."

Nugent Decl., Ex. A at III, A, ¶ 7, n.3 (emphasis added); Nugent Decl., Ex. C at ¶ 11 (Hong Report).

Finally, Mr. Lee also opines on the FTA provision that sets forth the limits of the law's jurisdiction:

> (3) **Article 2-2**: The FTA "shall be also applied to the case ***where the act committed overseas influence[s] the Korean market***."

Nugent Decl., Ex. A at III, B, ¶ 2 (emphasis added).

**A. Mr. Lee's Background and Relevant Experience**

Mr. Lee is a former judge who is currently employed as the managing partner at the Samwoo law firm in Seoul, South Korea. Nugent Decl., Ex. A at ¶ I. He has never represented any clients in connection with an investigation by the KFTC. Nugent Decl., Ex. B at 20:6-10. He has never represented any clients in any matters involving the FTA and the KFTC. *Id.* at 20:6-14. He has never published anything on the KFTC or the FTA. *Id.* at 15:12-16:1. He has never presided over any matters involving a KFTC investigation. *Id.* at 28:12-20. He does not have any actual experience with KFTC investigations, but he is "personally" "very much interested in the laws and regulations involving the KFTC and the cases involving KFTC." *Id.* at 28:21-29:18.

---

difference between the former and current provisions is that Article 67, paragraph 10 now includes a fine *and* a criminal punishment as the potential consequences for violating that provision, whereas the under the pre-amendment provision, Article 69-2, paragraph 1, subparagraph 7, the only consequence for violating it was a fine. Nugent Decl., Ex. B at 77:18-79:3. For purposes of this motion, Defendants will be citing to the previous version of the FTA that was in place during the 2008 KFTC investigation. *See id*. at 76:4-16.

He received his bachelor of law degree at Seoul National University in 1985 and thereafter earned an LL.M. degree from Duke University in 1999. Nugent Decl., Ex. A at ¶ I. While Mr. Lee is able to read and write in English "to a certain degree," he concedes that he is not able to do so at a professional level. Nugent Decl., Ex. B at 17:17-18:10. Mr. Lee did not receive any education or training in U.S. law other than his one year at Duke University where he admittedly did not study any specialized field of law. Nugent Decl., Ex. B at 19:4-12.

**B. Mr. Lee Opines That Article 69-2, Paragraph 1, Subparagraph 7 of the FTA is not Limited to Conduct Occurring During "Onsite Investigations" by the KFTC**

Mr. Lee disagrees with Prof. Hong's opinion that Article 69-2 paragraph 1, subparagraph 7 "applies only when [the acts proscribed in this provision] occurred during the 'onsite investigation' by the KFTC." Nugent Decl., Ex. A at III, A, ¶ 1; *see also id.* at III, A, ¶ 7; Nugent Decl., Ex. B at 74:11-22 and 115:20-116:6. Instead, Mr. Lee opines that Article 69-2, paragraph 1, subparagraph 7 of the FTA "should be viewed as applicable to 'the overall investigation process,' as opposed to 'during the onsite investigation' only." Nugent Decl., Ex. A at III, A, ¶ 7; *see also id*. at III, A, ¶¶ 2-6. He claims that even though "it may appear that it is talking about onsite investigation[s]," the "investigation as set forth in Paragraph 2 of Article 50" is not only applicable to "onsite investigations." Nugent Decl., Ex. A at III, A, ¶ 2; Nugent Decl., Ex. B at 82:4-18. Mr. Lee admits that Paragraph 2 of Article 50 only specifies two investigative tactics that the KFTC may employ: (1) conducting an onsite investigation and (2) summoning witnesses to testify at a specified location. Nugent Decl., Ex. B at 140:21-142:12. He also admits that the latter only refers to securing testimonial evidence, not documentary evidence. *Id.* at 142:19-143:25. Nevertheless, Mr. Lee asserts that Article 69-2, paragraph 1, subparagraph 7, which only prohibits interference with KFTC investigative tactics specified in Paragraph 2 of Article 50, prohibits interference with "the overall investigation process," thus imposing a general duty to preserve documents throughout the pendency of a KFTC investigation. (Nugent Decl., Ex. A at III, A, ¶ 7; *see also* Nugent Decl., Ex. B at 82:20-83:3). Mr. Lee admits that there "there isn't any statute that would directly specify that or -- nor is there any case law that was rendered by the

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Supreme Court" that would support imposing a broad, general duty on companies to suspend normal document retention practices and policies. Nugent Decl., Ex. B at 136:23-137:15. Although Mr. Lee admitted to having no experience or involvement with any KFTC investigation or litigated any matters involving the FTA (*id*. at 29:14-23), he claims that his review of just three cases where the KFTC imposed a fine on a corporation supports his assertion of what the KFTC's "actual interpretation" of Article 69-2, paragraph 1, subparagraph 7 of the FTA is. *Id*. at 84:20-85:25 and 182:1-183:16; *see also* Nugent Decl., Ex. A at III, A, ¶¶ 3-5. Importantly, however, one of the cases he relies on to support his interpretation of Article 69-2, paragraph 1, subparagraph 7, does not even mention this provision of the FTA, but instead relies entirely on Article 67, paragraph 9 (the amended version of Article 69-2, paragraph 1, subparagraph 6), which sets forth an entirely different investigative tactic. Nugent Decl., Ex. B at 129:5-130:21; *see also* Nugent Decl., Ex. A at III, A, ¶ 5. The other bases for this opinion are belied by Mr. Lee's admitted lack of experience or involvement with KFTC investigations of the FTA. *See* Nugent Decl. Ex. B at 29:14-18, 15:12-15, 15:22-16:1, 20:6-14, 28:4-20. And the two other cases he relies on relate to onsite investigations. Nugent Decl., Ex. A at III, A, ¶¶ 3, 4. Thus, grasping for something on which he can base this unfounded opinion, Mr. Lee suggests that "it is difficult to find any attorneys or scholars who agree" that Article 69-2, paragraph 1, subparagraph 7 was limited to "onsite investigations." *Id*. at III, A, ¶ 6. Mr. Lee does not cite to anything as support for this baseless assertion, and none of the materials Mr. Lee purportedly relied on in preparing his report support this assertion either. *See id*. at Ex. 1 attached thereto ("List of References").

Notably, Mr. Lee offers no explanation of how a company would comply with his expansive view of Article 69-2, paragraph 1, subparagraph 7. Nor could he offer any because as he admits, "[t]here aren't any laws that would clearly specify [] this type of obligation as I described. And so far, there hasn't been any case law as rendered by the Supreme Court as to this point as of yet." Nugent Decl., Ex. B at 89:16-20; *see also id.* at 136:23-137:15 ("So as to any obligation in a general sense when it comes to document retention, there isn't any statute that would directly specify that [] nor is there any case law that was rendered by the Supreme Court,

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

to my understanding"). Although he has no experience with KFTC investigations, he surmises that the KFTC will not be "secretive" and that he assumes that the company would be informed about the specific issues that the KFTC is investigating. *Id.* at 134:22-136:13. He offers no bases for his beliefs, and he did not review any of the record in this case that demonstrates that the KFTC in fact does conduct its investigations covertly and does not inform the companies of specific issues that it is investigating. *See, e.g.*, ECF 431-1¶¶ 6-12, 15; ECF 431-3 ¶4. Mr. Lee also does not know how long this supposed duty to preserve documents would last and offers no means for a company to ascertain what is to be preserved or for how long. Nugent Decl. Ex. B at 188:7-191:7. He claims that that is outside the scope of his opinion. *See id.* at 88:17-19 ("[I]t would be difficult for me to say that a company would be obligated to preserve documents continuously"); *id.* at 135:21-24 (admits that he himself has no on-hand experience with the application of this standard in the civil context and is instead just providing his "thoughts"); *id.* at 160:9-161:19 (when asked to explain what he means by reasonable anticipation, Mr. Lee admits that he "do[es]n't have on-hand experience. So it would be difficult for [him]").

Mr. Lee then goes on to apply this concocted "standard" to his understanding of the facts in this case, and in doing so suggests that certain alleged conduct by "Nongshim and Ottogi" would violate Article 69-2, paragraph 1, subparagraph 7 if this standard was applied to the FTA. Nugent Decl., Ex. A at ¶ 11.

Mr. Lee argues that "Nongshim and Ottogi" would be in violation of this provision if they destroyed relevant e-mails or documents *after* the start of the KFTC's investigation in June 2008. Nugent Decl., Ex. A at III, A, ¶ 11. He further opines that if emails or documents of "Nongshim and Ottogi" were destroyed because of a computer update or deleted pursuant to an automatic delete policy of the company that was put in place "during" the KFTC investigation, this too "shall be considered an act violating said provision." *Id.* This unqualified interpretation of the FTA is the only basis for his application of this provision to the hypothetical conduct of "Nongshim and Ottogi." Also, Mr. Lee does not specify which Nongshim or Ottogi entities he

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

was referring to in this portion of his opinion, instead referring to them as "Nongshim and Ottogi," which is misleading. *See id.*; *see also id.* at III, B.

**C. Mr. Lee Opines That the Standard for Destruction of Evidence in Criminal Cases is "Certainly Applicable" to Document Destruction Under the FTA**

Lacking any bases under the FTA for the alleged duty to preserve some unknown scope of documents for an unknown amount of time, Mr. Lee appeals to criminal law. The only support offered by Mr. Lee for this opinion is his baseless argument that the same standard applied to the destruction of evidence in criminal cases in Korea "shall be applied with respect to the punishment for destruction of documents under the [FTA]" because Article 67-2 paragraph 1, subparagraph 7 was amended to include a criminal punishment in 2017. Nugent Decl., Ex. A at III, A, ¶ 9; *see also* Nugent Decl. Ex. B at 152:21-155:17 (admitting the "precedent" that he believes "shall" apply to document retention obligations under the FTA relates to criminal or disciplinary acts). Mr. Lee ultimately contradicts himself on this point when he admits that "these precedents that are described here in connection with the criminal cases or disciplinary actions, **whether these precedents can be readily applicable to**…the cases that might be relevant to the [FTA], **I cannot be sure of that**." Nugent Decl., Ex. B at 155:19-25 (emphases added); *see also id*. at 151:17-152:11 (testifying that in Korea, different laws apply to civil, criminal and administrative proceedings), 194:24-195:2.

After admitting that there is no legal basis under Korean law for the standard he concocted for a company's document preservation duties under the FTA, he next opines:

> While a litigation hold as implemented in the U.S. would not apply to the same extent in a civil litigation in Korea, a duty to preserve that matches the level of a litigation hold [in the U.S.] does exist when it comes to criminal proceedings and fair trade procedures, at a minimum.

Nugent Decl., A at III, A, ¶ 10. The basis for his unqualified opinion regarding litigation holds under U.S. law is his review of a single out-of-circuit case[3] that his research assistant cherry-

[3] *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 1993). Mr. Lee did not provide the appropriate citation for the only case he relied on to support this opinion. Indeed, the citation

picked for use in Mr. Lee's report. *See id.*; Nugent Decl., Ex. B at 165:10-166:7 (became aware of this case through the assistance of Mr. Cha); *see also id.* at 170:6-21 (admitting "the litigation hold is not something that is directly related to the issues that we're discussing here"); *but see id.* at 16:18-22 (never published anything about document preservation obligations under U.S. law), 19:13-21 (never received any education or training in U.S. discovery rules or document preservation obligations), 19:4-12 (cannot read or write in English at a professional level), 59:4-20 (His research assistant Mr. Cha is not admitted to practice law anywhere but Korea, and Mr. Cha is not competent in English), and 166:15-21 (admits that he reviewed in English the U.S. case he cited).

**D. Mr. Lee Opines that Nongshim America and Ottogi America are Subjects of the KFTC Investigation and are "Covered" by the FTA**

Finally, Mr. Lee asserts, albeit in an extremely convoluted manner, that he disagrees with the following opinion of Prof. Hong:

> [T]he U.S. corporations, Nongshim America and Ottogi America, were not the subjects of the KFTC investigation and are not under the jurisdiction of Korean law. Thus, no duty to preserve documents could be imposed on them based on Korean law.

Nugent Decl., Ex. C at III, ¶ 6 (Hong Report); *see* Nugent Decl., Ex. A at III, B, ¶ 1; *see also* Nugent Decl., Ex. B at 74:25-75:10 and 90:22-91:9. Mr. Lee opines that the aforementioned opinion of Prof. Hong "does not comport with the provisions of the Fair Trade Law." Nugent Decl., Ex. A at III, B, ¶ 2.

Contrary to Prof. Hong's opinion, Mr. Lee generally asserts that Nongshim America and Ottogi America were among the subjects of the KFTC investigation and were "covered by the FTA." *See* Nugent Decl., Ex. A at III, B, ¶¶ 1-2. In an effort to support this opinion, he claims that "[t]he KFTC launched an investigation against 'the businesses' including 'Nongshim,' 'Ottogi,' etc. under the [FTA]." *Id.* at III, B, ¶ 2. He then asserts that because the FTA does not

provided in his report is off by 11 years. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004) (this is the appropriate citation to the case Mr. Lee relied on).

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

limit "businesses" to those located in Korea, and because Nongshim America and Ottogi America are subsidiaries of Korean domestic corporations, then "certainly" they can be seen as "covered by the FTA." *See id*.

Mr. Lee's own deposition testimony eviscerates his position that Nongshim America and Ottogi America *were* subjects of the KFTC's investigation and were covered by the FTA. *See* id. at III, B, ¶¶ 1-2. First, Mr. Lee agrees that pursuant to Article 2-2 of the FTA, "conduct abroad will be subject to the [FTA] if there is an impact on the Korean domestic market." Nugent Decl., Ex. B at 101:10-102:5 and 91:11-18; *see also* Nugent Decl., Ex. A at III, B, ¶¶ 2-3. Mr. Lee admits, however, that he does not know of any conduct by Nongshim America or Ottogi America that impacted the Korean domestic market. Nugent Decl., Ex. B at 103:10-105:1 (conceding that "[a]s to what actually happened, I do not know," and then admitting "it's not like I wrote this report based on facts…[s]o I'm not saying I'm aware of any such facts."); *id*. at 104:6-9 (clarifying that his opinion on this subject "is not something that I intended to mean that what we are talking about here is exactly applicable to this regulation or law that we're talking about"). Then, when asked if there are instances *other than where foreign conduct by foreign corporations has an impact on the Korean domestic market* when the FTA would apply to foreign conduct or foreign corporations, Mr. Lee responds, "as to what occurred in actuality, I do not know." *Id*. at 105:2-10.

Even so, Mr. Lee cites the language of Article 2-2 in his report, and then in the sentence immediately following, he argues:

> **As a result**, as long as the documents destroyed by the U.S. local corporations of Nongshim and Ottogi respectively are relevant to the collusive acts in the Korean market, it certainly violates the provisions of the [FTA] in Korea.

Nugent Decl., Ex. A at III, B, ¶ 2 (emphasis added). Mr. Lee does not cite to any provision of the FTA to support this opinion. *See id*. This is yet another legal standard that Mr. Lee concocted in an attempt to show that Nongshim America and Ottogi America were covered by the FTA. After presenting his concocted legal standard, Mr. Lee cites the ruling in a Korean Supreme Court case that merely conforms to what is set forth in Article 2-2 of the FTA. *See id*. at III, B, ¶ 3.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

The positioning of this purported standard in his report (sandwiched between two legal authorities that comport with one another) is extremely misleading and confusing when one considers Mr. Lee's deposition testimony where he admits that Article 2-2 is ***not*** the basis for his opinion that Nongshim America and Ottogi America are covered under the FTA. Nugent Decl., Ex. B at 110:4-111:1 (stating that when he makes his argument about the applicability of the FTA to U.S. subsidiaries "it is not based upon [Article 2-2].")

Barring an ability to show that Article 2-2 of the FTA supports his claim that Nongshim America or Ottogi America violated a purported duty to preserve documents under the FTA, Mr. Lee turns to baseless assumptions and pure conjecture under the guise of a purported legal standard for support. He asserts that the "main basis" for his "argument about the applicability of the [FTA] to U.S. subsidiaries or corporations is the relevance of the [] main office [] located in Korea when it comes to setting forth pricing." Nugent Decl., Ex. B at 110:4-9; *see also* Nugent Decl., Ex. A at III, B, ¶ 2. He then provides examples of this purported "relevance" between a Korean parent and U.S. subsidiary in the context of an alleged price-fixing conspiracy that he believes supports application of the FTA to the subsidiaries: (1) a significant likelihood that there is a correlation between those two in terms of the pricing of the product, (2) communication between employees of the parent and subsidiary, (3) some control when managers of the Korean office manage the overseas market, and (4) high relevance in terms of the work between the Korean parent and U.S. subsidiary. *Id.* at 105:12-107:4; *see also id.* at 93:19-94:22 (providing another confusing explanation for this opinion).

Mr. Lee concludes his perplexing explanation of this opinion by asserting that the aforementioned examples of "relevance" apparently may lead the KFTC to identify the U.S. subsidiary as a subject of their price-fixing investigation, "if they deem it's necessary." *Id.* at 106:21-107:4. Then, he argues that "in such circumstances," if a foreign subsidiary like Nongshim America or Ottogi America conceals, destroys, or tampers documents during a KFTC investigation, they will be subject to punishment under the FTA. *See id.* at 107:6-12. Mr. Lee thus appears to be opining that (1) the KFTC has discretion to make a U.S. subsidiary a "subject"

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

of its investigation if any of the aforementioned examples of "relevance" exist; and (2) if the KFTC decides that the U.S. subsidiary *is* a "subject" of its investigation and that U.S. subsidiary destroys documents during the investigation, the U.S. subsidiary will be punished under the FTA. *See id.* at 106:21-107:12. This is nothing more than an unfounded expansion of the purported legal standard invented by Mr. Lee.

Mr. Lee then concedes that his bases for the standard he concocted clarifies are also not based on facts or law. *See id*. at 107:17-24 (admitting he is "not aware of any facts here, so [he is] not contending that these things actually happened"), 110:18-111:1 (conceding that this argument is not based on Article 2-2 of the FTA). Mr. Lee also admits that he was unaware that the KFTC issued a public statement stating that U.S. ramen products were not the subject of their investigation. *Id*. at 113:9-20. Not surprisingly, Mr. Lee's ignorance of this fact undermines his entire speculative and confusing opinion about why he believes Nongshim America and Ottogi America were the subjects of the KFTC investigation and covered by the FTA. Mr. Lee contrived this legal standard that is admittedly not based in law or fact in an effort to bring Nongshim America and Ottogi America under the purview of the FTA.

## III. LEGAL STANDARD

Expert testimony must be both reliable and relevant. *Daubert,* 509 U.S. at 589. The District Court is the "gatekeeper" and must determine whether an expert is qualified and whether his testimony is reliable and relevant. *Barabin v. AstenJohnson, Inc.*, 700 F.3d 428, 431 (9th Cir. 2012) (en banc); *see* Fed. R. Evid. 702. The purpose is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The obligation to ensure that opinions are relevant and not confusing, misleading, or unduly prejudicial is particularly potent over experts, whose testimony can "be both powerful and quite misleading." *Daubert*, 509 U.S. at 595 (quoting Hon. Jack B. Weinstein, Rule 702 of the Federal Rules Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

First and foremost, a testifying expert must be qualified. Fed. R. Evid. 702; *In re Canvas Specialty Inc. ("Canvas Specialty")*, 261 B.R. 12, 18 (C.D. Cal. 2001) ("Evidence of a purported expert's qualifications is required."). "To qualify as an expert, a witness must have 'knowledge, skill, experience, training or education', relevant to such evidence or fact in issue." *See United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000). "It is not enough that the proposed expert have expertise in an area of knowledge. The expertise must be relevant to the determination of the facts in issue." *Canvas Specialty*, 261 B.R. at 19. If the proposed expert's training, experience, or specialized knowledge is *not* sufficiently related to the subject matter about which he seeks to offer an opinion, then his testimony should be excluded. *Chang*, 207 F.3d at 1172-73 (upheld district court's decision to reject the qualifications of purported expert in identification of counterfeit securities because "he did not testify as to any training or experience, practical or otherwise, detecting counterfeit securities").

If a purported expert on the substance of foreign law lacks expertise in that foreign law, his opinion testimony is properly excluded. *See Bassam Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan ("Nabulsi")*, No. H-06-2683, 2009 LEXIS 49661, at *9-10 (S.D. Tex. June 12, 2009), *aff'd*, 383 Fed. Appx. 380 (5th Cir. 2010) (district court excluded testimony of a professor of law regarding service of process under the laws of the United Arab Emirates because the evidence showed his experience with these laws was very limited); *Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*, No. 05 Civ. 9485, 2007 U.S. Dist. LEXIS 10138, at *63, n.21 (S.D.N.Y. Feb. 13, 2007) (district court excluded purported expert's testimony on apparent authority under Venezuela law because the so-called expert conceded he was not an expert on this topic). Indeed, "[i]t takes more than some schooling in law, custody of law books, a general interest in the subject, and a willingness to testify on any phase of the laws of any foreign country to make a real expert witness on whose opinions a court can rely with reasonable safety." *Bostrom v. Seguros Tepeyac, S.A.*, 225 F. Supp. 222, 230 (N.D. Tex. 1963), *modified on other grounds*, 347 F.2d 168 (5th Cir. 1965); *see Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995) ("[A] witness must be qualified in the *specific* subject for which his testimony is

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

offered… a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law...") (emphasis in original); *Spiewak v. Kinowhita (In re Spiewak)*, No. 95-56535, 1997 U.S. App. LEXIS 5886, at *2 (9th Cir. Mar. 26, 1997) (not selected for publication) (finding that attorney who had practiced for more than 20 years in the "employee benefits area" did not qualify as an expert in "substantive employee benefits law").

If the Court determines that "an individual is not qualified to render an opinion on a particular question or subject, it follows that his opinion cannot assist the trier of fact with regard to that particular question or subject." *Morin v. United States*, 534 F. Supp. 2d 1179, 1185 (D. Nev. 2005). If, on the other hand, the Court determines that an expert an individual is qualified, then the Court's inquiry should focus on "whether the jury will receive appreciable help from expert testimony." *United States v. Christophe*, 833 F.2d 1296, 1299 (9th Cir. 1987) (internal quotations omitted). Expert "testimony must be grounded in the methods and procedures of science and signify something beyond subjective belief or unsupported speculation." *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 939 (N.D. Cal. 2015) (internal quotation marks omitted). Each opinion must have "analytically sound bases." *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). And those bases must be "connected to existing data" through reliable means, not "the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## IV. ARGUMENT

### A. Mr. Lee Lacks Any Expertise In KFTC Investigations, the FTA, or Document Preservation Obligations in a Civil Case Under Korean Law or U.S. Law

The evidence unequivocally shows that Mr. Lee is not an "expert" in (1) matters involving KFTC investigations, (2) the FTA, or, more generally, (3) a private party's document retention obligations in a civil matter under Korean law. Nugent Decl. Ex. B at 29:14-23, 31:3-38:12, 15:12-15, 15:22-16:22, 20:6-14, 28:4-20. Indeed, his "academic interest" in KFTC investigations and his limited "experience" with document destruction issues in criminal cases involving government employees cannot establish that he is as an expert on a private party's document

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

retention obligations relating to a KFTC investigation of a civil matter. *See id*. at 28:21-29:23, 31:3-38:12. His interpretation of the provisions of the FTA are therefore based purely on "subjective belief" and "unsupported speculation." *See Icon-IP*, 87 F. Supp. 3d at 939.

Mr. Lee has no experience as an expert witness. Nugent Decl., Ex. B at 40:17-20, 41:12-42:3; Nugent Decl. Ex. A at ¶ 1. He has never been designated as an expert, testified as an expert in any trials or depositions, submitted a declaration in any case, or provided any expert consultation services in connection with litigation. *Id*. Mr. Lee also has no training, experience, or involvement with KFTC investigations. Nugent Decl. Ex. B at 29:14-18 ("Q. But you don't have any experience or involvement with the KFTC investigation; correct? A. That's correct"). Indeed, he has never (1) published anything about the KFTC (*id*. at 15:12-15), (2) represented any clients in connection with a KFTC investigation (*id*. at 20:6-10), (3) represented clients against the KFTC (*id*. at 20:11-14), (4) represented the KFTC (*id*. at 28:4-7), (5) acted as a consultant for the KFTC (*id*. at 28:8-11), or (6) presided as a judge over any case in which the KFTC was a party (*id*. at 28:14-20). Instead, Mr. Lee's purported knowledge about the KFTC stems solely from his "academic interest" in it. *Id*. at 28:21-29:13. He describes his purported "experiences" with KFTC investigations as (1) having a personal interest in the laws and regulations of the KFTC and "studying up on those issues," and (2) participating in a research institute "regarding the KFTC-related laws" when he was serving as a judge. *Id*. These experiences did not extend to writing about the KFTC. *Id*. at 15:12-15.

Likewise, Mr. Lee has no practical experience or training with a party's document preservation obligations in a civil matter under U.S. or Korean law. *Id*. at 15:22-16:22 (admitting he has never published anything about the FTA or about document preservation obligations under Korean or U.S. law), 19:13-21 (admitting he has never received any education or training in U.S. discovery rules or document preservation obligations), 29:24-31:15 (admitting that his experience with document preservation obligations under Korean law is limited to criminal cases), and 29:19-23 (admitting that he has never represented any clients in matters involving the FTA). Mr. Lee concedes that his only experience with the destruction of evidence under Korean law "does

not relate to any civil cases, but it involves criminal cases or disciplinary actions." *Id*. at 31:3-38:12. Mr. Lee's touted experience with the destruction of evidence in criminal cases under Korean law is, however, belittled by his inability to explain whether "disciplinary actions in connection with destruction of evidence" apply to employees of private companies, or just government employees. *Id*. at 35:5-38:12. Indeed, Mr. Lee concedes that he is "not 100 percent sure about this" because his experience is limited to five or six criminal cases exclusively involving Korean government employees. *Id*. at 38:3-12, 31:23-32:2; *see also id*. at 36:3-14 (admitting that the cases he has worked on involving an destruction of evidence issue were limited to those where "public servants" were involved).

**B. Mr. Lee is Not Qualified to Provide Expert Testimony on KFTC Investigations or on the Meaning of Any Provision of the FTA**

Mr. Lee must have knowledge, skill, or experience with KFTC investigations or the FTA to be qualified to offer an opinion about the FTA or KFTC investigations. *See* Fed. R. Evid. 702; *Chang*, 207 F.3d at 1172 ("To qualify as an expert, a witness must have 'knowledge, skill, experience, training or education', relevant to such evidence or fact in issue"). Mr. Lee is not qualified to give "expert" opinions on KFTC investigations or on the meaning of the FTA in the context of KFTC investigations because he does not have any experience, training, knowledge, or formal education in either of these subject areas. *See Bitumenes Orinoco, S.A.*, 2007 U.S. Dist. LEXIS, at *63, n.21 (expert testimony on Venezuelan law was excluded because of expert's admission that he lacked expertise on the particular topic he was offering an opinion on); *Chang*, 207 F.3d at 1172 ("To qualify as an expert, a witness must have 'knowledge, skill, experience, training or education', relevant to such evidence or fact in issue."); *see also* Nugent Decl., Ex. B at 15:12-15 (never published anything about the FTA), 15:22-16:1 (never published anything about the KFTC), 20:6-14 (admitting he never represented clients in litigation against the KFTC), 28:4-29:23 (admitting he has never represented the KFTC, acted as a consultant for the KFTC, presided as a judge over a case where the KFTC was a party, or represented any clients in matters involving the KFTC); 29:19-23 (admitting he has never represented a client in a matter involving

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

the FTA), and 136:1-22 (admitting he is unaware of specific facts to support his "presumption" of how the KFTC conducts its investigations).

Neither Mr. Lee's "academic interest" in KFTC investigations nor his so-called "experience" with document destruction issues in some *criminal* cases may overcome his lack of experience, training, knowledge, or formal education in KFTC investigations or the FTA. *See* Nugent Decl. Ex. B at 28:21-29:23, 31:3-38:12; *see also Bostrom*, 225 F. Supp. at 230 ("It takes more than…a general interest in the subject…to make a real expert witness on whose opinions a court can rely with reasonable safety."). Indeed, Mr. Lee concedes that this "academic interest" is limited to "studying up" on laws and regulations of the KFTC and participating in a research institute "regarding KFTC-related laws" when he was serving as a judge. Nugent Decl. Ex. B at 28:21-29:13. At most, his touted experience shows a "general interest" in the KFTC and related regulations, which is not sufficient to qualify him as an "expert" in that subject. *See Bostrom*, 225 F. Supp. at 230.

Moreover, the mere fact that Mr. Lee is an attorney admitted to practice law in Korea does not qualify him to opine on KFTC investigations or the FTA. *See Whiting*, 891 F. Supp. at 24 ("[A] lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law"). In other words, his profession as a lawyer is not sufficient to overcome the fact that Mr. Lee admittedly has no prior experience, let alone an "expertise" in KFTC investigations or the FTA. *See Bostrom*, 225 F. Supp. at 230 ("It takes more than some schooling in law, custody of law books, a general interest in the subject, and a willingness to testify on any phase of the laws of any foreign country to make a real expert witness on whose opinions a court can rely with reasonable safety"). This is particularly problematic here because Mr. Lee does not base his opinions on any specific statute or Supreme Court precedents. Instead, he opines on what he thinks the law should be based on his unsupported beliefs about how KFTC investigations are conducted. The entirety of Mr. Lee's report includes unqualified opinions about KFTC investigations and/or the FTA, each of which should be excluded under Federal Rule of Evidence 702.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

### C. Mr. Lee is Not Qualified to Provide Expert Testimony on the Non-Existent but Purported "Duty to Preserve Evidence" Under the FTA

Mr. Lee also admittedly lacks any experience, training, knowledge, or formal education relating to a private party's document retention obligations in a civil matter under Korean law. Nugent Decl., Ex. B at 16:13-22 (never published anything about document preservation obligations under Korean or U.S. law), 29:24-31:15 (admitting that his experience with document preservation obligations under Korean law is limited to criminal cases) 31:3-38:12 (again limiting his experience with document preservation to criminal cases). As was the case with his opinions on KFTC investigations and the FTA, Mr. Lee's profession as a lawyer is insufficient to overcome his lack of experience in this subject. *See Whiting*, 891 F. Supp. at 24; *Bostrom*, 225 F. Supp. at 230.

Nonetheless, Mr. Lee took it upon himself to concoct the following legal standard that would create an obligation to preserve documents under the FTA:

> [S]anctions are to be applied under the [FTA] if a business subject to an investigation destroys material at the time that a KFTC investigation is anticipated or does so during a certain period after the launch of the investigation.

Nugent Decl., Ex. A at ¶ 9; *see* Nugent Decl., Ex. B at 88:22-89:12, 133:23-135:24; *see also* Nugent Decl., Ex. A at ¶ 11 (applying this concocted standard to his understanding of the facts of this case and suggesting that based on this standard, certain acts by Nongshim and Ottogi could violate the FTA). Without more, Mr. Lee argues that the addition of a criminal punishment to the amended version of Article 69-2, paragraph 1, subparagraph 7, shows that "the standard in regard to the destruction of evidence in the criminal case is **certainly applicable** to document destruction under the [FTA]." Nugent Decl., Ex. B at 159:2-17. (emphasis added). Mr. Lee then discredits his own opinion when he admits that "these precedents that are described here in connection with the criminal cases or disciplinary actions, whether these precedents can be readily applicable to…the cases that might be relevant to the [FTA], **I cannot be sure of that**." *Id*. at 155:19-25; *see also id.* at 191:4-7 (admitting that when his homespun document preservation obligation ends "is outside the scope of my opinion"); 194:24-195:2 (again admitting

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

that when his homespun document preservation obligation ends "is something that falls outside the scope of [his] report").

Mr. Lee's concocted legal standard admittedly does not appear in any Korean civil law or Supreme Court precedent. *See id.* at 89:16-20 and 136:23-137:15 ("So as to any obligation in a general sense when it comes to document retention, there isn't any statute that would directly specify that [] nor is there any case law that was rendered by the Supreme Court."). Instead, this purported legal standard is *entirely* based on Mr. Lee's unsupported belief that "we can refer to precedents in criminal cases that relate to the crime of destroying evidence" and apply that standard to the FTA. Nugent Decl., Ex. A at III, A, ¶ 9; *see also* Nugent Decl., Ex. B at 152:21-155:17 (admitting that the "precedent" that he believes "shall" apply to document retention obligations under the FTA relates to criminal or disciplinary acts).

Mr. Lee must invent a law because he is unable to identify any actual provision of the FTA that any defendant here violated. *See Nabulsi*, 2009 U.S. Dist. LEXIS 49661, at *10 (testimony of purported expert on U.A.E. service of process laws was excluded because he could not cite to any U.A.E. law that authorized service of process in a manner that he described as proper in his statement). Such unsupported conjecture under the guise of an "expert" opinion should be excluded in its entirety because Mr. Lee is not even qualified to interpret the FTA let alone invent a legal standard that should be applied to it. *See* Fed. R. Evid. 702.

Mr. Lee's opinion that his concocted standard "conforms with the purpose of a 'litigation hold' in the United States" should also be excluded because he admittedly has no experience in U.S. document preservation laws and can identify no other basis for his opinion. Nugent Decl., Ex. A at III, A, ¶ 10; *see also* Nugent Decl., Ex. B at 16:18-22 (never published anything about document preservation obligations under U.S. law); and 19:13-21 (never received any education or training in U.S. discovery rules or document preservation obligations). Moreover, this opinion should also be excluded as irrelevant under Federal Rules of Evidence 401 and 402 because Mr.

Lee concedes that "the litigation hold is not something that is directly related to the issues that we're discussing." Nugent Decl., Ex. B at 170:6-21.

**D. None of Mr. Lee's Opinions Will Offer Assistance to the Trier of Fact**

Because Mr. Lee is undeniably unqualified to offer each of the opinions provided in his report, "it follows that his opinion[s] cannot assist the trier of fact with regard to th[e] particular question[s] or subject[s]" for which he offers an opinion. *See Morin v. United States*, 534 F. Supp. 2d at 1185. Accordingly, his testimony is prohibited under Federal Rule of Evidence 702.

If, however, the Court determines that Mr. Lee *is* qualified to opine on the subjects in his report, which Defendants submit that he is not, Mr. Lee's testimony will not offer "appreciable help" to the jury because it is completely confusing and entirely misleading. *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991) ("It is particularly appropriate for the trial judge carefully to weigh the potential for confusion in the balance when expert testimony is proffered"); *Daubert*, 509 U.S. at 595 (Federal Rule of Evidence 403 invests "more control over experts than over lay witnesses" given expert evidence's potential to "be both powerful and quite misleading.").

Mr. Lee's deposition testimony is littered with inconsistent explanations for his opinions and admissions that he lacks "analytically sound bases" for his them. *See DePaepe*, 141 F.3d at 720 (stating that each expert opinion must have "analytically sound bases"); Nugent Decl., Ex. A at III, A, ¶ 9 (admitting there is no relevant legal authority to support his concocted standard that imposes a sanction on companies for failure to preserve documents at certain times during a KFTC investigation); Nugent Decl., Ex. B at 89:16-20, 136:23-137:15, 155:19-25, and 194:24-195:2 (admitting the same); *id*. at 190:4-191:7 (admitting that when the obligation to preserve documents that he invented ends is a subject that is outside the scope of his opinion); *id*. at 103:10-105:1 (admitting that he does not know of any conduct by Nongshim America or Ottogi America that impacted the Korean market); *id*. at 105:2-10 (admitting he does not know in what circumstances the FTA would apply to foreign conduct by a foreign corporation other than if it affected the Korean domestic market); Nugent Decl., Ex. A at III, B, ¶ 2 (providing an opinion

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

that the FTA would apply to Nongshim America and Ottogi America even if their conduct did not affect the Korean market so long as they destroyed documents relevant to the alleged price-fixing); *id*. (his report refers to Article 2-2 in his opinion about the FTA applying to Nongshim America and Ottogi America); Nugent Decl., Ex. B at 110:4-111:1 (testifies that his argument about the applicability of the FTA to U.S. subsidiaries "is not based upon [Article 2-2]"); *id*. at 93:19-94:22, 106:12-107:4, and 110:4-9 (Mr. Lee's convoluted and inconsistent explanation of the purported bases for his concocted standard for application of the FTA to foreign conduct by foreign corporations); *id*. at 107:17-24, 110:18-111:1, and 113:9-20 (admitting there is no basis in fact or law to support his concocted standard for application of the FTA to Nongshim America and Ottogi America).

Barring any "analytically sound bases" for any of the opinions in his report, Mr. Lee offers nothing more than his *ipse dixit* and, therefore, his testimony must be excluded. *See General Electric Co.*, 522 U.S. at 146 (affirming the district court's exclusion of expert testimony where there was "simply too great an analytical gap between the data and the opinion proffered.")

## V. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Exclude the Testimony of Sang Hun Lee.

Dated: October 17, 2017

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Mark C. Dosker*
Mark C. Dosker

Attorneys for Defendants
NONGSHIM CO., LTD. and NONGSHIM AMERICA, INC.

Dated: October 17, 2017

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel S. Brass*
Rachel S. Brass

Attorneys for Defendants
OTTOGI AMERICA, INC. AND
OTTOGI CORPORATION, LTD.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 22 -
DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF SANG-HUN LEE
CASE NO. 3:13-CV-04115-WHO

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

**ATTESTATION**

I hereby attest that I have on file written authorization for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

*/s/ Mark C. Dosker*

Mark C. Dosker

- 1 -

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF SANG-HUN LEE
CASE NO. 3:13-CV-04115-WHO