# EXHIBIT A



STATE of NEW YORK          )
                           )                    ss:
COUNTY of NEW YORK         )


**_CERTIFICATE OF ACCURACY_**


I, Sean Lee, declare under penalty of perjury that I have competent knowledge of the languages being translated, _Korean to English_, and truthfully and correctly translated the document "Expert Report of Sang-Hun Lee", to the best of my knowledge in accordance with Fed. R. Evid. 901.


_____
Sean Lee



Dated: 8/18/2017

_____
Stephanie Dahl
Senior Projects Manager
Consortra Translations

Sworn to and signed before ME
This 18th day of August, 2017

_____
Notary Public

JAMES G. MAMERA
Notary Public- State of New York
No. 01MA6157195
Qualified In New York County
My Commission Expires December 4, 2018

Your
legal
translation
partner

# Expert Opinion

## I. Background and Qualifications

I am the Managing Partner of Samwoo, a law firm located in Seoul, South Korea. After graduating from the Department of Law at Seoul National University in 1985 with a Bachelor of Law degree, I completed my graduate study in law at the same university in 1987. In 1999, I attended Duke University Law School in the United States and acquired the LLM degree. Since the completion of training provided by the Judicial Research and Training Institute in 1990, I have been a judge in active service in many courts, including the Seoul High Court until 2011, and have worked for the Judicial Research and Training Institute as a professor for three years since 2007. I entered private practice in February 2011 and have been working as the Managing Partner of Samwoo ever since. Attached as Exhibit 1 is my resume containing my publications in the recent ten years. I have not testified as an expert in any trials or depositions.

## II. Range of Review

I was asked to submit an opinion about the report written by Professor Dae-Shik Hong on July 21, 2017. Professor Dae-Shik Hong presented his view that there exists no duty to preserve documents in Korean law, as is the case with a "litigation hold" in U.S. case law. Accordingly, I hereby submit my opinion referring to U.S. case law as well as decisions of the Korea Fair Trade Commission (hereinafter referred to as "KFTC") and precedents of the Supreme Court of Korea. My hourly compensation in this matter is $500.

## III. Results of Review

**A. Regarding Professor Hong's argument that the duty to preserve documents is limited to the case of "onsite investigations" under Korean law**

1. According to Subparagraph 7,[1] Paragraph 1 of Article 69-2 of the 「Monopoly Regulation

---

[1] **Paragraph 1 of Article 69-2 (Penal Provisions):** Any business or business related organization that falls under any of Subparagraphs 1 through 6 or Subparagraph 8, shall be liable for the payment of a fine not exceeding 100 million KRW; a fine not exceeding 200 million KRW for Subparagraph 7; in the case of management, employees or other

and Fair Trade Act」 (hereinafter referred to as "the previous Fair Trade Act") prior to the amendment on April 18, 2017, any person who refuses, obstructs or avoids the investigation of the Korea Fair Trade Commission by concealing, destroying, denying access to, forging or altering etc. documents shall be punished. In this reference, Professor Dae-Shik Hong argued in the report dated July 21, 2017 that the said provision with respect to denying, obstructing or avoiding acts through document concealment, destruction, access denial, forgery or alteration etc. applies only when these acts occurred during the "onsite investigation" by the KFTC.[2] Furthermore, Professor Hong claimed that should the said provision give rise to a duty to preserve documents, that duty is limited to the duration of the "onsite investigation".

2.   However, as described in the statement dated October 5, 2016 by attorney Jung-Eun Choi, there is no legal basis to interpret the said provision as applying only during the "onsite investigation". The said provision reads "in the case of the investigations in accordance with Paragraph 2 of Article 50." As shown below, "the investigations in accordance with Paragraph 2 of Article 50" do not refer to "onsite investigations" only. Likewise, the KFTC has also never limited its interpretation of the said provision to onsite investigations only. In most of the KFTC decisions cited by attorney Jung-Eun Choi in her statement dated September 7, 2016, sanctions were imposed for the act of concealing, destroying, forging or altering documents, thereby obstructing the KFTC investigation before and after the onsite investigation (including when the onsite investigation was imminent), as opposed to "during onsite investigations".

---

concerned parties who fall under any of Subparagraphs 1 through 6 or Subparagraph 8, will be liable for the payment of a fine not exceeding 10 million KRW; and a fine not exceeding 50 million KRW for Subparagraph 7.

**Subparagraph 7**: Anyone who has refuses, obstructs or avoids an investigation by concealing, destroying, refusing access to, altering or forging material during the investigation as set forth in Paragraph 2 of Article 50.

[2] Professor Dae-Shik Hong developed his argument by referring to Subparagraph 10 of Article 67 in the existing law. However, the corresponding provision was amended on April 18, 2017 and was implemented on July 29, 2017. Because the law effective at the time of the act is applicable in this matter, the provision prior to the amendment shall be applicable to this expert opinion.

3. In particular, among the cases in which sanctions were imposed for obstructing the KFTC's investigation, there is the Samsung Electronics case resolved on December 2, 2005. There, Samsung was fined for distributing guidelines to employees that were drawn up and finalized in **2000, which is prior to the start of the KFTC's investigation, including the onsite investigation in November of 2004,** in order to direct the employees to obstruct the investigation by concealing or destroying relevant material prior to the investigation and by intercepting access to the intranet during the investigation in accordance with the above guidelines (Resolution No. 2005-243, 2005HaGi0095 Samsung Electronics).

4. As was done in the above Samsung Electronics case, the KFTC imposed a fine on SK Communications for distributing in advance guidelines and a check-list to employees in October of 2006 and March of 2007 to prepare against the KFTC's investigations. In accordance with the guidelines and check-list, the employees destroyed relevant material and replaced computer hard drives and external hard drives, thereby obstructing the KFTC's investigation conducted in May of 2007 (Resolution No. 2008-226, 2007SeoYi 3010 SK Communications). In this case, **the KFTC stated, "Even prior to the start of the KFTC's onsite investigation, if in anticipation of a future onsite investigation, the subject company conceals, destroys, modifies or alters relevant documents or items with the intent and purpose of obstructing the investigation activities, thereby actually making smooth investigation difficult, such acts are deemed to fall under the category of activities that obstruct the investigation stipulated under Subparagraph 7, Paragraph 1 of Article 69-2 of the Fair Trade Act."** Also, refer to Resolution No. 2010-0121 (2010 SeoGyung1337, 1338, eBay Gmarket), Resolution No. 2012-036 (2011 SeoGam2592 Samsung Electronics), and Resolution No. 2012-171 (2011 SeoGyung2211 LG Electronics).

5. Furthermore, there is a case in which the **KFTC imposed a fine on the respondent company for not complying with the three official requests for production of documents and in which the KFTC did not conduct any onsite investigation.** (Resolution No. 2012-001 2011SeoChong3015 ShinHan Life Insurance).   This shows that the KFTC's sanction in relation to the obstruction of investigation is not linked with onsite investigations. Namely, the "onsite investigation" that Professor Hong emphasizes constitutes only a part of the KFTC's entire investigation process. The KFTC, without special treatment of the onsite investigation, imposes sanctions for acts obstructing the investigation such as concealing, destroying, failing to submit documents, etc. during the entire investigation process regardless of whether it is an onsite investigation or not.

3

6. If Subparagraph 7, Paragraph 1 of Article 69-2 of the previous Fair Trade Act should be applied to "onsite investigations" only as claimed by Professor Hong, it would not systematically correspond with the provision of Subparagraph 6,[3] Paragraph 1 of Article 69-2 (Subparagraph 9, Article 67 of the current Fair Trade Act) and Subparagraph 3, Paragraph 1 of Article 50[4] which Professor Hong refers to along with the said provision. According to Subparagraph 3, Paragraph 1 of Article 50 of the previous Fair Trade Act, the KFTC may order the business to submit material etc. whenever necessary during the investigation. If the material is not submitted in violation of this order, sanctions are imposed according to Subparagraph 6, Paragraph 1 of Article 69-2. If the provision of Subparagraph 7, Paragraph 1 of Article 69-2 which prohibits the concealing, destroying, etc. of documents only applies to "onsite investigations," businesses would be allowed to conceal or destroy the relevant material when a KFTC investigation is anticipated[5] or is ongoing, as long as they are not in the middle of an onsite investigation. Such an interpretation would incapacitate the investigation of the KFTC based on Subparagraph 3,

---

[3] **Paragraph 1 of Article 69-2 (Penal Provisions):** Businesses or business related organizations that that fall under any of Subparagraphs 1 to 6 or Subparagraph 8 shall be liable for the payment of a fine not exceeding 100 million KRW; a fine not exceeding 200 million KRW for Subparagraph 7; in the case of management, employees or other concerned parties who fall under any of the Subparagraphs 1 to 6 or Subparagraph 8, such persons will be liable for the payment of a fine not exceeding 10 million KRW; and a fine not exceeding 50 million KRW for Subparagraph 7.

**Subparagraph 6**: In accordance with <u>Subparagraph 3, Paragraph 1 of Article 50 (Investigation of Violations, etc.)</u> or Paragraph 3, any person who fails to report or submit required materials or items or made a fraudulent report or submit fraudulent materials or items.

[4] **Paragraph 1 of Article 50 (Investigation of Violations, etc.):** The Korea Fair Trade Commission may, <u>if it deems it necessary to enforce this Act</u>, take the following measures in accordance with the procedures set forth in the Presidential Decree:

**Subparagraph 3**: Issuance of an order to a business, a business related organization, officers or employees thereof, for the submission of a report on the cost and business situation or for the presentation of other necessary materials or things, or detention of presented materials or things.

[5] Many cases cited in the statement by attorney Jung-Eun Choi dated September 7, 2016, are the precedents in which sanctions were imposed against acts of concealment, destruction, modification and denial of access concerning relevant materials at the time of imminent or in anticipation of an investigation by the KFTC.

4

Paragraph 1 of Article 50 of the previous Fair Trade Act. As follows, the KFTC does not interpret the related provisions of the Fair Trade Commission as claimed by Professor Hong. In addition, it is difficult to find any attorneys or scholars who share the same view as Professor Hong. This claim that companies subject to investigation shall preserve documents only during the onsite investigation conducted by a government agency, but not before and after, goes against the general logic of laws or common sense.

7. Professor Hong claims that the provision of Subparagraph 7, Paragraph 1 of Article 69-2 should be applied to the case of "onsite investigations" only. His main basis for this claim is that he interpreted the said provision to limit the situation in which acts of denying, obstructing, or evading the investigation can be established to only "the investigations in accordance with Paragraph 2 of Article 50[6]". However, such an argument of Professor Hong differs from the actual law. Paragraph 2 of Article 50 presumes both cases of "investigation by physically entering the workplace of the business "as well as "hearing testimonies of the concerned parties, interested parties or witnesses in a designated location." That is, "the investigation in accordance with Paragraph 2 of Article 50" refers to "the overall investigation process" including attending to the testimonies provided by the concerned parties etc. as well as the onsite investigations. Consequently, Subparagraph 7, Paragraph 1 of Article 69-2, which prohibits any act of obstructing the investigation such as concealing or destroying documents, should be viewed as applicable to "the overall investigation process", as opposed to "during the onsite investigation" only. For that reason, the KFTC imposed sanctions against all acts obstructing investigations including concealment or destruction of documents during the overall investigation process and not restricted to "onsite investigations" as shown in the above cases.

8. On the other hand, Professor Hong contends that there is no legal basis to continuously

---

[6] **Paragraph 2 of Article 50 (Investigation of Violations, etc.):** The Fair Trade Commission may, where it deems it necessary to enforce this Act, have public officials under its control [including those under the control of agencies as entrusted under Article 65 (Entrustment, assignment of Authority)]access the office or place of business of businesses or business related organizations in order to examine the business and management situation, books of account, documents, electronic materials, voice-recording materials, video materials, and other materials or items as prescribed by Presidential Decree, and hear statements from the parties concerned, interested parties or witnesses at a designated place under conditions prescribed by Presidential Decree.

preserve relevant material under Korean law just because an investigation has been launched by the KFTC. Thus, he opines that the concealment and destruction of material in accordance with their regular business practice by the directors and employees of the defendant companies including Ottogi, Nongshim, etc. are not to be considered a violation of Korean law in any way.

9. Nevertheless, the above claim of Professor Hong does not conform with the duty to preserve evidence (material) recognized in Korean law. Even though there is no Supreme Court precedent directly stipulating the duty to preserve documents under the Fair Trade Act, we can refer to precedents in criminal cases that relate to the crime of destroying evidence. According to these precedents, "destroying any relevant evidence in advance, even prior to an investigation or a disciplinary proceeding, shall be subject to punishment for the destruction of evidence if the case was likely to advance to a criminal or disciplinary proceeding in the future."[7] Both the above precedent and this case concern acts of destroying documents related to the investigation when an investigation was expected to be launched or during the investigation on the acts subject to sanction or punishment. Therefore, the same standard in the above precedent shall be applied with respect to the punishment for destruction of documents under the Fair Trade Act. That is, sanctions are to be applied under the Fair Trade Act if a business subject to an investigation destroys material at the time that a KFTC investigation is anticipated or does so during a certain period after the launch of the investigation. In particular, prior to the amendment of the Fair Trade Act, the acts of obstructing the investigation stipulated in Subparagraph 7, Paragraph 1 of Article 69-2 (Subparagraph 10 of Article 67 of the current Act) led to the imposition of a fine, which is an administrative disposition. However, the law was amended to its current version in which criminal punishment may be imposed with no more than two years of imprisonment or with a fine not exceeding 150,000,000 KRW for such an act. In light of the purpose of such an amendment, the standard in regard to the

---

[7] Supreme Court Verdict No. 2011 Do 5329, dated November 28, 2013: The crime of destroying evidence shall be established in the event that a person destroys relevant evidence in the criminal or disciplinary cases of others, but shall not be established when he/she destroys evidence for his/her own criminal or disciplinary case. However, the sanctions clause that prohibits document destruction under the Fair Trade Act shall apply when directors or employees of a business subject to investigation destroyed materials. In both cases, the duty to preserve documents shall be triggered at the time that an investigation or examination by the government or investigating agency is reasonably foreseeable.

destruction of evidence in the criminal case is certainly applicable to document destruction under the Fair Trade Act.

10. In light of the aforementioned Supreme Court precedent concerning the destruction of evidence, the document preservation obligation under the Fair Trade Act in which the same standard is applicable, conforms with the purpose of a "litigation hold" in the United States. According to U.S. law concerning a litigation hold, the concerned parties are obligated to preserve material that may be relevant to a legal action when the legal action is sufficiently anticipated or possibly anticipated from the reasonable point of view. (Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746, 8th Cir. 1993). In light of the precedent of the Supreme Court of Korea that "destroying relevant evidence in advance, even prior to the start of an investigation or a disciplinary proceeding, shall be subject to punishment for the destruction of evidence if the case was likely to advance to a criminal or disciplinary proceeding in the future at the time of destruction of evidence," in a situation in which it is foreseeable that the KFTC will launch an investigation under the Fair Trade Act (or in the circumstance that the investigation is already ongoing), the company subject to investigation is obligated to preserve material. If the company destroys documents in violation of such obligation, a sanction will be imposed under the Fair Trade Act. While a litigation hold as implemented in the U.S. would not apply to the same extent in a civil litigation in Korea, a duty to preserve that matches the level of a litigation hold does exist when it comes to criminal proceedings and fair trade procedures, at a minimum.

11. Among the defendant companies, if Nongshim and Ottogi destroyed relevant e-mails or documents (including electronic files) after the start of the KFTC's investigation in June 2008 concerning ramen price collusion, for example, if their employees in charge of communicating with competitors deleted relevant emails or documents (including electronic files), such acts would clearly be in violation of Subparagraph 7, Paragraph 1 of Article 69-2 of the previous Fair Trade Act.[8]  Additionally, if the computer systems of

---

[8]  With respect to this matter, attorney Song Ryu claimed in Paragraph 7 of his statement dated September 26, 2016, that companies should bear the duty of destroying materials of retired employees in order to comply with personal information protection set forth in the "Privacy Protection Act" in Korea. However, as described in Paragraph 5 in the statement by attorney Jung-Eun Choi dated October 5, 2016, the Privacy Protection Act was implemented in 2011 and the protected information under the corresponding law is limited to personal information including names, national identification numbers, pictures, etc. only. Thus, companies are

those employees under investigation by the KFTC were upgraded without any changes in their duties or positions, thereby destroying their emails or documents that were subject to the investigation, or if the company installed a program during the KFTC investigation which automatically deletes emails after a certain time period from the sent date, this shall be considered an act violating the said provision. In addition, if it is true that Ottogi obstructed investigation by submitting to the KFTC during the investigation process documents that were tampered with, such an act could also be considered as an act that violates Article 69-2, Paragraph 1, Subparagraph 7 of the previous Fair Trade Act.

12. Furthermore, Professor Hong cites to a Samsung case where employees of Samsung Electronics obstructed the investigation, stating that the decision made by the court in the said precedent supports his argument of a limited duty to preserve documents. However, in the aforementioned Samsung Electronics precedent, the court ruled that the public servants of the KFTC were not allowed to acquire log-in authority for the internal networks of a company subject to investigation in order to gain unlimited access to information. Instead, the KFTC should have identified the material to which they seek access. That is, the investigation should be conducted within the bounds of what is necessary, as provided in a provision of Article 50-2[9] of the Fair Trade Act. Thus, the KFTC may not log on to the internal network which may contain trade secrets in order to unlimitedly research and read the material without identifying the relevant documents subject to the investigation. In the situation in which KFTC officers wish to access any materials which is assumed to be in the internal network, the gist of the court decision was that it is necessary to "restrict the investigation method" by making a request to submit such materials.

13. In contrast, the issue here is not the method of the KFTC's investigation but whether or not a company subject to investigation is allowed to destroy material relevant to the

---

not obligated to destroy non-personal information such as the e-mails relevant to their work duties.

[9]  Article 50-2 **(Prohibition on Abusing Investigation Authority)** Public officials in charge of the investigation shall conduct their investigations within the bounds of necessity in order to enforce this Act, and they shall be prohibited from abusing their investigative authority for any other purpose.

investigation. That is, the main actor here is not the KFTC, but "the company subject to the investigation". Also, the conduct at issue here is not unlimited access, but the "destruction of material." Professor Hong interpreted the aforementioned ruling by the court stating, "The investigation method of the KFTC shall be restricted to the method of identifying certain material and requesting for their submission" as meaning "it is allowed to destroy material as long as they were not specified by the KFTC." He interpreted the said court decision in a distorted way. The KFTC specifying those materials which need to be investigated and asking the company to submit them for investigation is one matter and the company destroying relevant documents during the KFTC investigation at their own discretion is clearly another. Hence, the precedent quoted by Professor Hong relates to a completely different issue and cannot be applied to this case.

**B. Regarding Professor Hong's claim that no duty to preserve documents shall be imposed on overseas corporations**

1. Professor Dae-Shik Hong asserts that Korean law is not applicable to overseas corporations including Nongshim America or Ottogi America, that these companies are not subject to the investigation by the KFTC and thus, no duty to preserve documents is imposed on them under Korean law.

2. However, the said assertion by Professor Hong does not comport with the provisions of the Fair Trade Law. The KFTC launched an investigation against "the businesses"[10] including "Nongshim," "Ottogi," etc. under the Fair Trade Law. The Fair Trade Law does not limit the meaning of said "businesses" to domestic corporations in Korea. Nongshim America and Ottogi America are the local corporations located in the U.S. and are subsidiaries of the Korean domestic corporations "Nongshim Co., Ltd." and "Ottogi Co., Ltd." respectively. Certainly, as subsidiaries of the parent businesses, they can be seen as covered by the Fair Trade Act. If such an interpretation is not applied, any business can conceal relevant material with their overseas local subsidiaries in anticipation of a KFTC investigation on unfair trade acts. If so, they would be able to avoid sanctions in accordance

---

[10]  Subparagraph 1, Paragraph 1 of Article 2 of the Fair Trade Act defines "business" applicable to the said law as "manufacturer, service business, or other businesses."

with the Fair Trade Act even though their overseas local subsidiaries fail to submit relevant materials upon request of the KFTC. This is an extremely unfair interpretation. Accordingly, the Fair Trade Act sets forth in Article 2-2 that "this act shall be also applied to the case where the act committed overseas influence the Korean market." As a result, as long as the documents destroyed by the U.S. local corporations of Nongshim and Ottogi respectively are relevant to the collusive acts in the Korean market, it certainly violates the provisions of the Fair Trade Act in Korea.

3. The Supreme Court also ruled that "**where a foreign business enters into an agreement to restrict competition jointly with other businesses in a foreign country, the Fair Trade Act shall apply to the extent that the agreement influenced the domestic market due to the domestic market's inclusion in the subjects of the agreement**." (Verdict 2003D11124 ruled on March 23, 2006). As described earlier, the argument claimed by Professor Hong that overseas local corporations of Korean businesses shall be immune to the Fair Trade Law is completely contrary to the said precedent of the Supreme Court, taking into consideration that the Fair Trade Act of Korea may apply to foreign businesses.

Date:   Aug. 18, 2017              Signature:

Attorney Sang Hoon Lee

10

# 전문가 진술서

## I. 배경 및 자격

본인은 현재 대한민국 서울에 있는 법무법인 삼우의 대표변호사입니다. 본인은 1985년 서울대학교 법학과에서 법학 학사학위를 받았으며 1987년 동 대학 대학원에서 법학 석사과정을 수료하였습니다. 또한 본인은 1999년 미국 Duke University Law School에서 LLM 학위를 받았습니다. 본인은 1990년 사법연수원을 수료한 이후 2011년까지 서울고등법원을 포함한 여러 법원의 판사로 재직하였고, 2007년부터 3년간 사법연수원의 교수를 역임하였습니다. 2011. 2. 변호사로 개업하여 현재 법무법인 삼우의 대표변호사로 재직하고 있습니다. 최근 10년 동안 본인의 출판물들을 나열한 본인의 이력서를 별첨 1로 첨부 하였습니다. 본인은 재판이나 deposition에서 전문가 자격으로 증언한 바는 없습니다.

## II. 검토의 범위

본인은 홍대식 교수가 작성한 2017. 7. 21. 자 보고서에 대한 의견서를 제출해 달라는 요청을 받았습니다. 홍대식 교수는 미국 판례법상의 litigation hold와 같은 자료보존의무가 한국법 상 존재하지 않는다는 취지로 의견을 피력하고 있습니다. 이에 본인은 미국 판례를 참조하였고, 한국 공정거래위원회(이하 '공정위')의 의결 및 대법원 판례 등을 참고하여 본 의견서를 작성하였습니다. 본 건에 대한 본인의 시간당 보상액은 $500 입니다.

## III. 검토 결과

## A. 한국법 상 자료보존의무가 '현장조사 시'로 한정된다는 홍 교수의 주장에 대하여

1. 2017. 4. 18. 개정 전의 「독점규제 및 공정거래에 관한 법률」(이하 '구 공정거래

1

법'이라 함) 제69조의2 제1항 제7호[1]에 의하면, 자료의 은닉, 폐기, 접근거부 또는 위조, 변조 등을 통해 공정거래위원회의 조사를 거부, 방해 또는 기피한 자는 제재를 받게 됩니다. 이에 관하여 홍대식 교수는 2017. 7. 21.자 보고서에서, 자료의 은닉, 폐기, 접근거부 또는 위조, 변조 등을 통한 조사의 거부, 방해 또는 기피행위가 공정위의 '현장조사 상황'에서 발생한 경우에만 위 조항이 적용되는 것이라고 주장합니다. [2] 아울러 홍 교수는 동 규정에 따른 자료의 보존의무가 발생하더라도 그 의무는 어디까지나 현장조사 상황에서만 적용된다고 주장합니다.

2. 그러나 최정은 변호사의 2016. 10. 5.자 진술서에서 언급한 바와 같이, 위 조항을 "현장조사 시"에만 적용되는 것으로 해석할 법적 근거가 없습니다. 위 조항은 "제50조제2항에 따른 조사 시"로 규정하고 있으나, 아래에서 보는 바와 같이 "제50조제2항에 따른 조사"란 '현장조사'만을 의미하지 않습니다. 공정위 역시 위 조항을 현장조사 시의 경우로만 한정 해석한 바 없습니다. 최정은 변호사의 2016. 9. 7.자 진술서에서 인용된 공정위 의결 사례들의 대부분은 "현장조사 시"가 아닌 현장조사 전후의(현장조사가 임박한 시점 포함) 공정위 조사 과정에서 자료를 은닉, 폐기, 위·변조하는 등으로 조사를 방해한 행위에 대하여 제재를 가하였던 사례입니다.

3. 특히, 공정위의 조사방해행위에 대한 제재 사례 중 2005. 12. 2. 의결된 삼성전자

---

[1] **제69조의2(과태료) 제1항** 사업자 또는 사업자단체가 제1호 내지 제6호 및 제8호에 해당하는 경우에는 1억원 이하, 제7호에 해당하는 경우에는 2억원 이하, 회사 또는 사업자단체의 임원 또는 종업원 기타 이해관계인이 제1호 내지 제6호 및 제8호에 해당하는 경우에는 1천만원 이하, 제7호에 해당하는 경우에는 5천만원 이하의 과태료에 처한다.

    **제7호** 제50조제2항에 따른 조사 시 자료의 은닉·폐기, 접근거부 또는 위조·변조 등을 통하여 조사를 거부·방해 또는 기피한 자

[2] 홍대식 교수는 위 보고서에서 현행 법 제67조 제10호를 상정하여 논의를 전개하고 있으나, 당해 규정은 2017. 4. 18. 개정되어 2017. 7. 19.부터 시행된 것이고, 본 사안에서는 행위 시 법률을 기준으로 하여야 할 것이므로, 본 의견서에서는 개정 전의 조항을 전제로 논합니다.

사례의 경우, **공정위가 2004. 11월 현장조사를 포함한 조사에 착수하기 전인 2000년부터 삼성전자는 미리 작성, 확정하여 둔 사전지침을 직원들에게 배포하여** 직원들로 하여금 그 사전지침에 따라 조사 전에 관련 자료를 은닉, 폐기하고 조사 당시에는 내부 전산망 접속을 차단하게 함으로써 조사 방해한 행위에 대하여 과태료를 부과 받았습니다(의결 제2005-243호 2005하기0095 삼성전자).

4. 위 삼성전자 사례와 마찬가지로, 에스케이 커뮤니케이션즈(SK Communications)가 2006. 10월과 2007. 3월에 미리 공정위 조사에 대비하여 직원들에게 사전 지침과 점검 리스트를 배포하고, 직원들로 하여금 위 지침 및 리스트에 따라 관련 자료를 삭제하고 컴퓨터 본체 및 외장 하드를 교체하게 함으로써 2007년 5월에 실시된 조사를 방해한 행위에 대하여 공정위가 과태료를 부과한 사례가 있습니다(의결 제2008-226호 2007서이3010 에스케이 커뮤니케이션즈). 본 사건에서 공정위는 "**공정거래위원회의 현장조사 개시 전이라도 향후에 있을 현장조사를 대비하여 조사활동을 방해하려는 의도와 목적으로 관련 자료나 물건을 위·변조, 은닉, 훼손하는 등의 행위를 통해 실제 조사의 순조로운 진행을 어렵게 하는 데까지 이르렀다면 공정거래법 제69조의2 제1항 제7호에서 규율하는 조사방해행위의 범주에 포함된다고 봄이 상당하다.**"고 하였습니다. 그 밖에 의결 제2010-0121호 (2010서경1337, 1338 이베이 지마켓), 의결 제2012-036호(2011서감2592 삼성전자), 의결 제2012-171호(2011서경2211 엘지전자)도 참조하시기 바랍니다.

5. 나아가 공정위가 조사 대상 회사에 대한 **현장조사를 실시하지 않고 3회에 걸친 공문만으로 자료의 제출을 요구한 경우**에 대상 회사가 이를 제출하지 않은 행위에 대하여 과태료를 부과한 사례도 있습니다(의결 제2012-001호 2011서총3015 신한생명보험). 이는 공정위의 조사방해행위에 대한 제재가 현장조사와 결부되지 않음을 의미합니다. 즉, 홍 교수가 강조하는 "현장조사"는 공정위의 전반적인 조사 과정의 일부에 해당할 뿐이며, 공정위는 현장조사와 무관하게 전반적인 조사 과정에서의 자료 미제출, 은닉, 폐기, 조작 등의 조사방해행위에 대하여 제재를 가하고 있는 것입니다.

6. 홍 교수의 주장대로 구 공정거래법 제69조의2 제1항 제7호를 '현장조사 시'에만 적용되는 것으로 해석한다면, 홍 교수가 위 규정과 함께 언급하고 있는 구 공정거래법 제69조의2 제1항 제6호[3](현행 공정거래법상으로는 제67조 제9호) 및 제50조 제1항 제3호[4]의 규정과 체계적으로 맞지 않습니다. 구 공정거래법 제50조 제1항 제3호에 따라 공정위는 조사 과정 중에 필요에 따라 수시로 사업자에게 자료 등의 제출을 명할 수 있습니다. 이를 위반하여 자료를 제출하지 않을 시에는 제69조의2 제1항 제6호에 따라 제재를 받게 됩니다. 그럼에도 자료의 은닉·폐기 등을 금지하는 제69조의2 제1항 제7호의 규정이 '현장조사 시'에만 적용된다면, 사업자로서는 공정위 조사가 예상되거나[5] 이미 진행되고 있는 상황에서 현장조사 시만 아니면 관련 자료를 은닉, 폐기할 수 있게 됩니다. 이러한 해석은 구 공정거래법 제50조 제1항 제3호에 근거한 공정위 조사를 무력하게 할 것입니다. 따라서 한국 공정위는 홍 교수의 주장처럼 공정거래법 관련 규정을 해석하지 않습니다. 아울러 홍 교수의 주장과 동일한 다른 변호사나 학자의 견해도 발견하기 어렵습니다. 정부기관이 현장조사를 할 경우에만 조사대상기업이 자료를 보존하면 되고

---

[3] **제69조의2(과태료) 제1항** 사업자 또는 사업자단체가 제1호 내지 제6호 및 제8호에 해당하는 경우에는 1억원 이하, 제7호에 해당하는 경우에는 2억원 이하, 회사 또는 사업자단체의 임원 또는 종업원 기타 이해관계인이 제1호 내지 제6호 및 제8호에 해당하는 경우에는 1천만원 이하, 제7호에 해당하는 경우에는 5천만원 이하의 과태료에 처한다.

**제6호** 제50조(위반행위의 조사등)제1항제3호 또는 제3항의 규정에 의한 보고 또는 필요한 자료나 물건의 제출을 하지 아니하거나, 허위의 보고 또는 자료나 물건을 제출한 자

[4] **제50조(위반행위의 조사 등) 제1항** 공정거래위원회는 이 법의 시행을 위하여 <u>필요하다고 인정할 때에는</u> 대통령령이 정하는 바에 의하여 다음 각호의 처분을 할 수 있다.

**제3호** 사업자, 사업자단체 또는 이들의 임직원에 대하여 원가 및 경영상황에 관한 보고, 기타 필요한 자료나 물건의 제출을 명하거나 제출된 자료나 물건의 영치

[5] 최정은 변호사의 2016. 9. 7.자 진술서에서 인용된 다수의 사례가 위와 같이 공정위 조사가 예상되거나 임박한 시점에서 관련 자료를 은닉, 폐기, 조작, 접근 거부한 것에 대한 제재 사례입니다.

4

그 전후로는 보존하지 않아도 된다는 주장은 법의 일반 논리나 상식에도 반합니다.

7. 홍 교수가 제69조의2 제1항 제7호의 규정이 '현장조사 시'에만 적용된다고 주장하는 주된 근거는, 위 규정이 "<u>제50조제2항⁶에 따른 조사 시</u>"로 조사의 거부·방해 또는 기피행위가 성립하는 상황을 한정하고 있다는 것입니다. 그러나 이러한 홍 교수의 주장은 실제 법률의 규정과 다릅니다. 제50조제2항은 '사업자의 사업장에 출입하여 조사하는 경우'와 '지정된 장소에서 당사자, 이해관계인 또는 참고인의 진술을 듣는 경우'를 모두 상정하고 있습니다. 즉, "제50조제2항에 따른 조사"란 현장조사뿐만 아니라 당사자 등의 진술을 듣는 절차를 포함한 '전반적인 조사 과정'을 의미하는 것입니다. 그러므로 자료의 은닉, 폐기 등으로 인한 조사의 방해행위를 금지하는 제69조의2 제1항 제7호는 '현장조사 시'만이 아니라, '전반적인 조사 과정'에 적용되는 것으로 보아야 합니다. 이러한 이유로 공정위도 위의 의결 사례들에서 "현장조사 시"에 국한되지 않고 전반적인 조사 과정에서의 자료 은닉·폐기 등으로 인한 조사방해행위에 대하여 제재를 가하였던 것입니다.

8. 한편, 홍 교수는 한국 법령상 공정위의 조사 착수로 인하여 관련 자료를 지속적으로 보존해야 할 근거가 없다고 주장합니다. 따라서 오뚜기, 농심 등 피고 회사의 임직원들이 통상적인 업무 관행상 자료를 은닉·폐기한 행위가 한국 법령에 위반되는 행위가 전혀 아니라는 것입니다.

9. 그러나 위와 같은 홍 교수의 주장은 한국 법령상 인정되는 증거(자료)보존의무에 부합하지 않습니다. 공정거래법상의 자료보존의무와 관련하여 직접적으로 규

---

⁶ **제50조(위반행위의 조사 등) 제2항** 공정거래위원회는 이 법의 시행을 위하여 필요하다고 인정할 때에는 그 소속공무원[제65조(권한의 위임·위탁)의 규정에 의한 위임을 받은 기관의 소속공무원을 포함한다]으로 하여금 사업자 또는 사업자단체의 사무소 또는 사업장에 출입하여 업무 및 경영상황, 장부·서류, 전산자료·음성녹음자료·화상자료 그 밖에 대통령령이 정하는 자료나 물건을 조사하게 할 수 있으며, 대통령령이 정하는 바에 의하여 지정된 장소에서 당사자, 이해관계인 또는 참고인의 진술을 듣게 할 수 있다.

정하고 있는 대법원 판례가 존재하지 않더라도, 형법상 증거인멸죄에 관한 판례를 참고할 수 있습니다. 이에 의하면, '수사 또는 징계절차가 개시되기 전이라도 증거인멸 행위 당시 장차 형사 또는 징계사건으로 전환 가능성이 있는 경우에 관련 증거를 미리 인멸한 것도 증거인멸죄의 처벌 대상에 포함'됩니다.[7] 위 판례와 본 사안은 공통적으로 제재 또는 처벌 대상인 행위에 대하여 조사가 예상되는 때 또는 조사가 진행되는 중에 그 조사와 관련된 자료를 폐기하는 행위에 관한 것입니다. 따라서 공정거래법상 자료폐기 시의 처벌과 관련해서도 위 판례와 동일한 기준이 적용되어야 할 것입니다. 즉, 공정위 조사의 시작이 예상되는 시점이나 조사가 시작되고 일정 기간이 지난 시점에서 조사대상기업이 자료를 폐기하면 공정거래법상 제재를 받는다고 보아야 합니다. 특히, 공정거래법은 개정 전에는 제69조의2 제1항 제7호(현행 법 제67조 제10호)의 조사방해행위에 대하여 행정처분인 과태료만을 부과하였습니다. 그런데 현행법에서는 그러한 행위에 대하여 2년 이하의 징역 또는 1억 5천만 원 이하의 형사처벌을 가할 수 있도록 개정되었습니다. 이러한 개정 취지에 비추어 보면 더욱 공정거래법의 자료폐기 시에도 형사상 증거인멸과 동일한 기준이 적용될 수 있을 것입니다.

10. 위의 증거인멸에 관한 대법원 판례에 비춰볼 때, 동일한 기준이 적용되는 공정거래법상의 자료보관의무는 미국에서의 litigation hold와도 그 취지가 일치합니다. 미국법 상 litigation hold는 당사자로서는 합리적인 관점에서 소송이 제기될 가능성이 충분히 예견되었거나 예견될 수 있었던 경우, 그 예견이 가능한 시기부터 그 소송과 관련된 자료를 증거로서 보존할 의무가 있다는 것입니다 (Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746 8th Cir. 1993)". 한국의 대법원 판례상 '수사 또는 징계절차가 개시되기 전이라도 증거인멸 행위 당시

---

[7] 대법원 2013. 11. 28. 선고 2011도5329 판결. 증거인멸죄는 타인의 형사사건이나 징계사건 관련 증거를 인멸하는 경우에 성립되고 자신의 형사사건이나 징계사건 관련 증거를 인멸하는 경우에는 성립되지 않습니다. 한편 공정거래법상 자료폐기 시 제재 조항은 조사대상 기업의 임직원들이 자료를 폐기할 때 적용됩니다. 양 법령상 자료보존의무는 정부 또는 수사기관의 조사나 수사가 합리적으로 예상되는 시점에 발생한다고 보아야 합니다.

장차 형사 또는 징계사건으로 발전할 가능성이 있는 경우에 관련 증거를 미리 인멸하는 것도 증거인멸죄의 처벌대상이 될 수 있는 점'에 비춰볼 때, 공정거래 법상 공정위의 조사가 충분히 예견되는 상황이라면(또는 조사가 진행중인 상황이라면) 조사대상 기업은 자료를 보존할 의무가 발생합니다. 해당 기업이 이를 위반하여 자료를 폐기하면 공정거래법에 따라 제재를 받게 되는 것입니다. 한국의 민사소송절차에서는 미국과 같은 수준의 litigation hold가 적용되지는 않지만, 적어도 형사절차나 공정거래관련 절차에는 litigation hold와 같은 수준의 자료보존의무가 존재합니다.

11. 피고 회사 중 농심과 오뚜기가 2008년 6월 공정위의 라면 가격 담합에 관한 조사 착수 이후 조사가 진행되던 중에 공정위 조사와 관련된 업무, 예컨대 경쟁 업체와의 대외연락 등을 담당하던 직원들의 조사 대상 기간 동안의 관련 이메일 이나 문서(전자문서 포함)을 폐기하였다면, 이는 명백히 구 공정거래법 제69조의 2 제1항 제7호에 반하는 행위라 볼 수 있습니다.[8] 또한, 아무런 인사변동이 없었음에도 공정위 조사 진행 중에 조사와 관련된 업무를 담당하던 직원들의 컴퓨터가 업데이트 되어 이메일이나 보관 문서가 폐기되었던 사실이 있거나, 조사 기간 중에 수신일로부터 일정 기간이 지난 이메일을 자동으로 삭제되게 하는 프로그램을 회사 차원에서 설치하게 한 사실이 있다면, 이는 위 규정에 반하는 행위로 보아야 합니다 이에 더하여, 오뚜기가 조사 진행 중에 관련 자료를 위·변조한 뒤 공정위에 제출함으로써 조사를 방해한 사실이 있다면, 이러한 행위도 역시 구 공정거래법 제69조의2 제1항 제7호에 반하는 행위라고 할 것입니다.

12. 나아가 홍 교수는 삼성전자 임직원들의 조사방해행위 사례를 인용하면서, 동 사

---

[8] 이와 관련하여, 류송 변호사는 2016. 9. 29.자 진술서 7번 단락에서 한국의 「개인정보보호법」 상 개인정보의 보호를 위하여 회사가 퇴직한 직원들의 개인정보 보호를 위한 자료·정보의 폐기 의무를 부담함을 주장한 바 있습니다. 그러나 최정은 변호사의 2016. 10. 5.자 진술서 5번 단락에서 언급한 것처럼 개인정보보호법은 2011년에야 시행되었고, 해당 법률에 따른 보호의 대상도 개인의 성명, 주민등록번호, 사진 등 당해 개인에 관한 정보에 국한될 뿐입니다. 따라서 이와 관련 없는 업무 관련 메일까지 폐기할 의무가 발생하는 것이 아닙니다.

례에서의 법원의 판단이 특정된 자료에 한하여 제한적인 자료보존의무가 발생한다는 주장을 뒷받침하는 것이라고 합니다. 그러나 위 삼성전자 사례에서 법원의 판단은, 공정위 소속 공무원이 조사 대상 회사의 내부 전산망에 대한 접속 권한을 얻어 무제한적으로 전산망 내 정보를 열람하는 것은 허용될 수 없고, 조사를 위하여 요청하는 자료가 특정되어야 한다는 것입니다. 즉, 필요한 최소한의 범위 안에서 조사를 행하여야 한다는 공정거래법 제50조의2[9] 규정에 따라, 공정위가 조사의 대상이 되는 관련 문서 등을 특정하지 않고 조사 대상 회사의 영업비밀 등이 포함되어 있을 수 있는 내부 전산망에 접속하여 무제한적으로 자료를 검색, 열람하는 행위는 허용될 수 없다는 것입니다. 공정위 소속공무원으로서는 내부 전산망에 있을 것으로 짐작되는 자료가 있다면 그 자료의 제출을 명하여 조사를 진행하는 식으로 '조사 방법의 제한'이 필요하다는 것이 법원 판단의 요지입니다.

13. 반면, 본 사안에서는 공정위의 조사 방법이 문제되는 것이 아니라, 조사 대상 회사가 조사와 관련된 자료를 폐기하는 것이 허용되는지를 논하고 있습니다. 즉, 본 사안의 행위 주체는 공정위가 아닌 '조사 대상 회사'이고, 문제가 되는 행위 역시 무제한적인 열람이 아닌 '자료 폐기'입니다. 홍 교수는 "공정위의 조사 방법은 자료를 특정하여 제출을 요구하는 방식으로 제한되어야 한다"는 위 법원의 판단을, "공정위가 특정한 자료가 아니면 폐기하여도 된다"는 것으로 해석하고 있습니다. 이는 위 법원의 판단을 왜곡하여 해석한 것입니다. 공정위가 조사하고자 하는 자료를 특정하여 조사 대상 회사에게 제출을 요구하여야 하는 것과 조사 대상 회사가 공정위 조사 중에 관련 자료를 임의로 폐기하는 것은 엄연히 다른 문제입니다. 따라서 홍교수가 인용한 위 사례는 이 사건에 적용될 수 없는, 전혀 별개의 사안입니다.

---

[9] **제50조의2(조사권의 남용금지)** 조사공무원은 이 법의 시행을 위하여 필요한 최소한의 범위 안에서 조사를 행하여야 하며, 다른 목적 등을 위하여 조사권을 남용하여서는 아니 된다.

B. 해외법인들에게는 자료보존의무가 발생하지 않는다는 홍 교수 주장에 대하여

1. 홍대식 교수는 농심 아메리카나 오뚜기 아메리카와 같은 해외 법인들은 한국법
   의 관할 대상이 아니고, 공정위의 조사 대상도 아니어서 한국 법령에 기초한 어
   떠한 자료보존의무도 부담하지 않는다고 주장합니다.

2. 그러나 위와 같은 홍 교수의 주장은 공정거래법의 규정과 부합하지 않습니다. 공
   정위가 조사에 착수한 대상은 '농심'과 '오뚜기' 등의 공정거래법상 '사업자'[10]입니
   다. 공정거래법은 위 '사업자'의 의미를 한국 국내법인으로 한정하지 않습니다. 농
   심 아메리카나 오뚜기 아메리카가 미국 현지법인으로서 한국 국내법인인 '주식회
   사 농심'과 '주식회사 오뚜기'의 각 자회사인 이상, 당연히 각 사업자에 포함되어
   공정거래법의 적용을 받는 것으로 볼 수 있습니다. 만약 이와 같이 해석하지 않
   는다면, 각 사업자가 불공정거래행위에 대한 공정위의 조사가 예상될 시에 미리
   자회사인 해외현지법인에 관련 자료를 은닉할 수 있게 됩니다. 이후 그 해외현지
   법인이 공정위의 요구에 따라 관련 자료를 제출하지 않아도 공정거래법에 따른
   제재를 받지 않게 되는 것입니다. 이는 매우 부당한 해석입니다. 이에 공정거래법
   은 제2조의2에서 명문으로 "이 법은 국외에서 이루어진 행위라도 국내시장에 영
   향을 미치는 경우에는 적용한다."고 규정하고 있습니다. 결국, 농심과 오뚜기의
   각 미국 현지법인에서 이루어진 문서의 폐기 등은 그 행위가 한국 시장에서의 담
   합행위와도 관련이 있는 한, 당연히 한국의 공정거래법 규정에 반하는 것입니다.

3. 대법원도 "외국사업자가 외국에서 다른 사업자와 공동으로 경쟁을 제한하는 합의
   를 하였더라도, 그 합의의 대상에 국내시장이 포함되어 있어서 그로 인한 영향이
   국내시장에 미쳤다면 그 합의가 국내시장에 영향을 미친 한도 내에서 공정거래법
   이 적용된다고 할 것이다"라고 판시하였습니다(2006. 3. 23. 선고 2003두11124
   판결). 이처럼 한국의 공정거래법이 외국사업자에 대하여도 적용될 수 있는 점을

---

10 공정거래법 제2조제1항제1호는 동법의 적용대상인 "사업자"를 '제조업, 서비스업, 기타 사업을
   행하는 자'로 규정하고 있습니다.

감안할 때, 한국사업자의 해외현지법인에 적용되지 않는다는 홍 교수의 주장은
위 대법원 판례에도 정면으로 반합니다.

날짜: 2011. 8. 18.                                   서명: 이 상 훈

변호사 이 상 훈

10

# EXHIBIT 1

# Sang Hun, LEE

138, Banpo-daero, Seocho-gu, Seoul, Republic of Korea ● Phone: 02-536-8100

## QUALIFICATION

- Admitted to the Korean Bar Association (1993)

## EDUCATION

- Duke University School of Law, LL.M (1999)
- Judicial Research and Training Institute, the Supreme Court of Korea (1993)
- Seoul National University, Graduate School of Law, LL.M. (1987)
- Seoul National University, LL.B. (1985)

## LEGAL EXPERIENCE

- Representative Attorney, Samwoo Law Firm (2012 – present)
- Presiding Judge, Seoul Central District Court (2010 – 2011)
- Head of Branch, Kunsan Branch of Jeonju District Court (2006-2007)
- Presiding Judge, Kunsan Branch of Jeonju District Court (2005-2006)
- Judge, Seoul High Court (2002-2005)
- Judge, Seoul Family Court (1999-2002)
- Judge, Western Branch of Seoul District Court (1997-1999)
- Judge, Cheongju District Court (1994-1997)
- Judge, Seoul Criminal District Court (1992-1994)
- Judge, Northern Branch of Seoul District Court (1990-1992)

## TEACHING EXPERIENCE

- Professor, Judicial Research and Training Institute, the Supreme Court of Korea (2007 - 2010)

## PUBLICATION WITHIN THE LAST 10 YEARS

None

<u>List of References</u>

1. Dae-Shik Hong Expert Report

2. All briefing and supporting documents in relation to Plaintiffs' Motion to Sanction Nongshim Defendants for Spoliation of Evidence

3. All briefing and supporting documents in relation to Plaintiffs' Motion to Sanction Ottogi Defendants for Spoliation of Evidence

4. Se-Chang Lee Deposition Transcript

5. Current and pre-amendment versions of the Monopoly Regulation and Fair Trade Act

6. KFTC resolutions identified in the report

7. Korea Supreme Court precedents identified in the report

8. U.S. case law identified in the report