# EXHIBIT B

1          UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3           SAN FRANCISCO DIVISION

4

   Case No. 3:13-cv-04115-WHO

5   _____

                                    )

6   IN RE KOREAN RAMEN ANTITRUST    )

   LITIGATION                      )

7                                   )

   _____)

8   This Document Relates to:       )

                                    )

9   ALL ACTIONS                     )

                                    )

10  _____)

11

12

13

14

15

16          VIDEOTAPED DEPOSITION OF

17              SANG-HUN LEE

18          SUNDAY, OCTOBER 1, 2017

19

20

21

22

23   DATE TAKEN:

24   REPORTED BY:   PAUL J. FREDERICKSON, CCR, CSR

25

```
                                            Page 15
 1                  [Pause for interpretation.]
 2          A.      Yes, it does.
 3          Q.      And does this document have a
 4     complete and accurate account of your
 5     publications from the last ten years as of
 6     today?
 7                  [Pause for interpretation.]
 8          A.      There wasn't anything in the last
 9     ten years, so -- which is the reason why there
10     isn't anything that isn't listed here.  So in
11     that regard, it is accurate.
12          Q.      Have you ever published anything
13     about the Korean Fair Trade Commission?
14                  [Pause for interpretation.]
15          A.      I have not.
16          Q.      And for the rest of today, I'm
17     just going to refer to the Korean Fair Trade
18     Commission as the KFTC.
19                  Do you understand that?
20                  [Pause for interpretation.]
21          A.      Yes.
22          Q.      And have you ever published
23     anything about the Korean Monopoly Regulation
24     and Fair Trade Act?
25                  [Pause for interpretation.]
```

```
                                       Page 16
```

 1            A.      I haven't.
 2            Q.      And for the rest of today, I'm
 3     going to refer to the Korean Monopoly
 4     Regulation and Fair Trade Act as the Fair Trade
 5     Act.
 6                    Do you understand that?
 7                    [Pause for interpretation.]
 8            A.      Could you repeat the acronym
 9     again?
10            Q.      The Fair Trade Act.
11            A.      Oh, okay.
12                    Yes.
13            Q.      Have you ever published anything
14     about document preservation obligations under
15     Korean law?
16                    [Pause for interpretation.]
17            A.      I haven't.
18            Q.      And have you ever published
19     anything about document preservation
20     obligations under US law?
21                    [Pause for interpretation.]
22            A.      I haven't.
23            Q.      And does this document have a
24     complete and accurate account of your teaching
25     experiences as of today?

```
                                            Page 17

 1                    [Pause for interpretation.]

 2          A.      Yes, it does.

 3          Q.      Mr. Lee, what year did you pass

 4      the Korean bar exam?

 5                    [Pause for interpretation.]

 6          A.      That was in 1987.

 7          Q.      This document says that you were

 8      admitted to the Korean Bar Association in 1993.

 9      Is that inaccurate?

10                    [Pause for interpretation.]

11          A.      Oh, I see that.  This is -- this

12      will not be accurate.

13          Q.      Okay.

14                    Mr. Lee, do you speak English?

15                    [Pause for interpretation.]

16          A.      A little.  I do.

17          Q.      Would you consider yourself fluent

18      in spoken English?

19                    [Pause for interpretation.]

20          A.      I wouldn't.

21          Q.      Can you read English?

22                    [Pause for interpretation.]

23          A.      To a certain degree, yes.

24          Q.      Would you consider your

25      proficiency at a professional level?
```

```
                                        Page 18
 1                    [Pause for interpretation.]
 2          A.      No, not to that extent.   To a
 3      certain degree, I can read English.
 4          Q.      And can you write in English?
 5                    [Pause for interpretation.]
 6          A.      Likewise, a little.
 7          Q.      So you would not consider that to
 8      be at a professional level; correct?
 9                    [Pause for interpretation.]
10          A.      That is correct.
11          Q.      Mr. Lee, you have an LLM degree
12      from Duke University School of Law; correct?
13                    [Pause for interpretation.]
14          A.      That's right.
15          Q.      And how long were you at Duke?
16                    [Pause for interpretation.]
17          A.      One year.
18          Q.      What type of courses did you take
19      in your LLM program?
20                    [Pause for interpretation.]
21          A.      There were many things.
22      Intellectual property rights, antitrust law,
23      enterprise-related laws, among others.
24          Q.      And was the antitrust law course
25      pertaining to US antitrust law?
```

```
                                        Page 19

 1                     [Pause for interpretation.]
 2          A.      It was.
 3          Q.      Okay.
 4                  Did you study any specialized
 5     field of law while pursuing your LLM degree?
 6                     [Pause for interpretation.]
 7          A.      I didn't.
 8          Q.      So other than your time at Duke,
 9     did you receive any other education or training
10     in US law?
11                     [Pause for interpretation.]
12          A.      I didn't.
13          Q.      Did you ever receive any education
14     or training in US discovery rules?
15                     [Pause for interpretation.]
16          A.      I didn't.
17          Q.      And did you ever receive any
18     education or training in US document
19     preservation obligations?
20                     [Pause for interpretation.]
21          A.      I didn't.
22          Q.      Do you have any other experience
23     with US law?
24                     [Pause for interpretation.]
25          A.      I don't.
```

Page 20

```
 1          Q.      Mr. Lee, you are currently in
 2    private practice; correct?
 3                  [Pause for interpretation.]
 4          A.      That is correct.
 5          Q.      Okay.
 6                  And have you ever represented any
 7    clients in connection with an investigation by
 8    the KFTC?
 9                  [Pause for interpretation.]
10          A.      I have not.
11          Q.      And have you ever represented any
12    clients in litigation against the KFTC?
13                  [Pause for interpretation.]
14          A.      I haven't.
15          Q.      Have you ever represented any
16    clients in an administrative proceeding?
17                  [Pause for interpretation.]
18          A.      Yes, I have a number of those
19    cases.
20          Q.      How many cases?
21                  [Pause for interpretation.]
22          A.      I wouldn't be able to give you an
23    exact number in that regard, but approximately
24    I would think ten more or less.
25          Q.      Can you name the clients you
```

```
                                              Page 28
 1    issue in that case?
 2                    [Pause for interpretation.]
 3         A.      No, not at all.
 4         Q.      Have you ever represented the
 5    KFTC?
 6                    [Pause for interpretation.]
 7         A.      I haven't.
 8         Q.      Have you ever acted as a
 9    consultant for the KFTC?
10                    [Pause for interpretation.]
11         A.      I haven't.
12         Q.      And when you were presiding as a
13    judge, did you -- strike that.
14                When you were a judge, did you
15    preside over any case in which the KFTC was a
16    party?
17                    [Pause for interpretation.]
18         A.      To my recollection, I don't think
19    there was any case in which the KFTC was a
20    party.
21         Q.      Do you have any other experiences
22    with KFTC investigations?
23                    [Pause for interpretation.]
24         A.      Personally I am very much
25    interested in the laws and regulations
```

Page 29

```
1      involving the KFTC and the cases involving
2      KFTC, so I have been studying up on those
3      issues.  And when I was working -- when I was
4      serving as a judge, there was a research
5      institute that would be involved in laws
6      involving enterprises, and in association with
7      that institute, I have worked together with the
8      members of the institute regarding the
9      KFTC-related laws.
10          Q.     So is it fair to say that you had
11     an academic interest in KFTC?
12               [Pause for interpretation.]
13          A.     It is.
14          Q.     But you don't have any experiences
15     or involvement with the KFTC investigation;
16     correct?
17               [Pause for interpretation.]
18          A.     That's correct.
19          Q.     Have you ever represented any
20     clients in matters involving the Fair Trade
21     Act?
22               [Pause for interpretation.]
23          A.     Not to my recollection.
24          Q.     Did any matters in which you
25     served as counsel ever involve document
```

Page 30

1    preservation obligations under Korean law?

2                   [Pause for interpretation.]

3         A.      Under the Korean criminal law,

4    there is a crime that is associated with the

5    destruction of evidence, and this would be

6    applicable to both criminal cases as well as

7    civil cases.  And of the cases that I've worked

8    on, there were some cases that were involved in

9    that regard.

10                  MS. YU:  Madam Interpreter, did he

11        say civil cases?

12                  THE INTERPRETER:  Uh-huh.

13                  The way I heard it is --

14                  [Pause for interpretation.]

15                  THE INTERPRETER:  Okay.  That's

16        what I heard.

17                  So the civil cases, that part

18        would be withdrawn.

19                  MS. YU:  Okay.  Could you

20        restate -- could you restate what you

21        meant?

22                  MS. CHO:  Minae, why don't you

23        re-ask the question.

24                  MS. YU:  Can you reread the

25        question?

```
                                        Page 31
 1                   [Discussion.]
 2    BY MS. YU:
 3          Q.      Did any matters in which you
 4       served as counsel ever involve document
 5       preservation obligations under Korean law?
 6                   [Pause for interpretation.]
 7          A.      There were several cases that I
 8       worked on that involved the crime of
 9       destruction of evidence in -- in criminal
10       cases, in some criminal cases that I worked on.
11          Q.      Okay.
12                   So your experiences in that regard
13       involved criminal proceedings; correct?
14                   [Pause for interpretation.]
15          A.      That's correct.
16          Q.      How many cases were you involved
17       in?
18                   [Pause for interpretation.]
19                   MS. CHO:  Objection, vague.
20                   MS. YU:  I'll rephrase that
21          question.
22    BY MS. YU:
23          Q.      How many cases were you involved
24       in in which document preservation was an issue?
25                   [Pause for interpretation.]
```

Page 32

```
 1          A.      I can't remember the exact number,
 2     but I believe five or six approximately.
 3                  [Pause for interpretation.]
 4          Q.      And can you name any of the
 5     clients you represented in those cases?
 6          A.      The most recent one that I
 7     handled, the client's name was Jae Bong Noh.
 8          Q.      Any others?
 9                  [Pause for interpretation.]
10          A.      Other than that, we're talking
11     about some years ago, so I wouldn't remember to
12     the extent of exact name.
13          Q.      Were there any corporate clients
14     that you represented in which document
15     preservation was an issue?
16                  And this is a criminal case;
17     correct?
18                  [Pause for interpretation.]
19          A.      And the name that I just
20     mentioned, Mr. Jae Bong Noh, he's a -- one of
21     the executive members of a big enterprise, a
22     Korean company, and before investigation by the
23     prosecution, the -- the alleged crime was that
24     he replaced all of the PCs of the associates
25     who were involved, and his indictment was
```

Page 33

1     construction of -- on the account of

2     destruction of evidence.  And it's currently --

3     the trial is currently ongoing.

4          Q.     And I apologize.  I just realized

5     that I asked the question before the --

6     Madam Interpreter had an opportunity to

7     interpret his last response.  Okay.

8                [Pause for interpretation.]

9          A.     Yes, it is.

10         Q.     So the other cases in which you

11    were involved that involved a document

12    preservation issue, do you recall what that

13    case was about?

14               [Pause for interpretation.]

15               MS. CHO:  Objection, vague.

16         A.     I don't think I would be able to

17    remember all the details, but the one that

18    comes to mind is that it was relating to a case

19    involving taxation.  So the charges were they

20    removed some of the books that were involved

21    and some altercation of the records and things

22    of that sort.

23         Q.     Was that a criminal proceeding?

24               [Pause for interpretation.]

25         A.     That is correct.

1          Q.      Mr. Lee, I think you mentioned

2     something called a disciplinary action earlier.

3     Is that correct?

4                  [Pause for interpretation.]

5          A.      When it comes to destruction of

6     evidence under the Korean law, that does not

7     relate to any civil cases, but it involves

8     criminal cases or disciplinary actions.  What

9     that is related to, that when a case -- when a

10    case is ongoing or -- when a case is ongoing,

11    if you are removing some of the evidences or

12    tampering with evidences, this would be

13    applicable.

14                 [Pause for interpretation.]

15         A.      So when I said when a case is

16    ongoing, as well as when there is an

17    anticipation of a case to be ongoing.

18         Q.      Mr. Lee, what's a disciplinary

19    action?

20                 [Pause for interpretation.]

21         A.      For example, when there's a public

22    servant who is in violation of the law or if

23    there was some wrongdoing on his part or her

24    part, he will be sanctioned.  And the types of

25    sanctions that he or she might be subjected to

Page 35

1      would be his -- he will not be -- discontinued

2      employment, and he will be laid off, or he will

3      experience reduced salary or also discontinue

4      the employment.

5            Q.     So is it fair to say that a

6      disciplinary action only involves a government

7      employee?

8                  [Pause for interpretation.]

9                  MS. CHO:  Objection, outside of

10          scope.

11           A.     The way I think of it as well, I

12     believe this is a quite distance from what we

13     are here to discuss, but still if you want an

14     answer, I will try my best to give an answer to

15     the best of my knowledge.

16                 MS. YU:  Ms. Cho, are you

17          instructing your witness not to answer?

18                 MS. CHO:  No, I am not.

19   BY MS. YU:

20           Q.     And I'm just trying to understand

21     what disciplinary actions are because I'm not

22     familiar with such action, so I'm trying to

23     explore your background.  So if you could

24     explain whether disciplinary actions pertained

25     only to government employees, that would be

Page 36

```
1    very helpful.
2                    [Pause for interpretation.]
3         A.      When it comes to destruction of
4    evidence, charges involving destruction of
5    evidence, it's not something that is applicable
6    to public servants only.  It can be applicable
7    to employees working in private companies as
8    well.
9                    However, when -- when it comes to
10   cases that I have worked on, when the issue of
11   obstruction of -- or destruction, rather, of
12   evidence was an issue, I haven't seen any other
13   cases other than the cases where the public
14   servants were involved.
15                    MS. YU:  I just want to note for
16           the record I think part of that
17           interpretation was rendered incorrectly.
18           But I'll ask my question to clarify
19           that.
20   BY MS. YU:
21        Q.      Mr. Lee, so is it true that
22   disciplinary actions are not limited to
23   government employees?
24                    [Pause for interpretation.]
25                    MS. CHO:  Objection, outside of
```

Page 37

```
 1          scope.
 2          A.      As I mentioned earlier, when it
 3    comes to the disciplinary actions, it is
 4    also -- it can be applicable to private
 5    companies as well.  But when it comes to the
 6    charges of destruction of evidence, as far as
 7    I'm aware, I am aware of the cases where that
 8    was an issue to the government employees in
 9    connection with the criminal -- the relevant
10    criminal cases.
11                  MS. YU:  Madam Interpreter?
12                  THE INTERPRETER:  Mm-hmm.
13                  MS. YU:  Didn't he say "I am only
14          aware of the cases where that was an
15          issue to the government employees"?
16                  THE INTERPRETER:  The way I heard
17          it, he might have meant that, but I
18          think he said --
19                  [Speaking in Korean.]
20                  MS. YU:  That's not the part I'm
21          asking about.
22                  I'm asking about he said that he's
23          aware only of cases where it applied to
24          government employees.
25                  THE INTERPRETER:  May I inquire?
```

```
                                                    Page 38
 1                    MS. YU:   Sure.
 2                    [Pause for interpretation.]
 3         A.        Yes, that is correct, that it
 4     would be -- the only ones that I'm aware of
 5     would be relevant to the government employees.
 6     But I'm not sure about this exactly, but as far
 7     as I know, the disciplinary actions in
 8     connection with destruction of evidence might
 9     not be applicable to employees working in
10     private companies.  That's as far as I know.
11     But I'm not 100 percent sure about this.  I'm
12     not really certain about that.
13         Q.        Mr. Lee, you're currently one of
14     the representative attorneys of Samwoo law
15     firm; correct?
16                    [Pause for interpretation.]
17         A.        That's correct.
18         Q.        And is that how you spell your law
19     firm?
20                    [Pause for interpretation.]
21         A.        S-A-M-W-O-O.  That's correct.
22         Q.        When was Samwoo founded?
23                    [Pause for interpretation.]
24         A.        It was in February of 2012.
25         Q.        Are you one of the founding
```

```
 1                    [Pause for interpretation.]
 2          A.      I gave counsel my business card,
 3      and website address should be listed there, I
 4      believe.
 5          Q.      Okay.
 6                    And we can confirm that during the
 7      break, and then, you know, we -- I'll re-ask
 8      that question later.
 9                    Does your firm have any practice
10      areas that it specializes in?
11                    [Pause for interpretation.]
12          A.      We do not have any particular
13      specialized practice areas, but we do deal with
14      many different cases, general cases, civil
15      cases, criminal cases, administrative cases,
16      and also family cases as well.
17          Q.      Have you ever been designated as
18      an expert before?
19                    [Pause for interpretation.]
20          A.      No.
21                    MS. CHO:  Counsel, we've been
22              going for almost an hour now.  Would you
23              like to take a break?
24                    MS. YU:  Sure.
25                    Do you want a break?
```

1                    THE WITNESS:  Yes.

2                    THE VIDEOGRAPHER:  We're going off

3          the record at 10:05 a.m.

4                    [Recess at 10:05 a.m.]

5                    [Resuming at 10:26 a.m.]

6                    THE VIDEOGRAPHER:  We're back on

7          the record at 10:26 a.m., and this marks

8          the beginning of media number 2 in the

9          deposition of Sang-Hun Lee.

10                  EXAMINATION CONTINUING

11   BY MS. YU:

12          Q.     Okay.  Mr. Lee, have you ever

13     provided expert consultant services in

14     connection with litigation before?

15                    [Pause for interpretation.]

16          A.     I have not.

17          Q.     Have you ever submitted a

18     declaration in any case before?

19                    [Pause for interpretation.]

20          A.     Have I ever submitted my

21     declaration?

22          Q.     Yes.

23                    [Pause for interpretation.]

24          A.     I haven't.

25          Q.     Have you ever testified as a

```
                                         Page 42
 1      witness in any lawsuit?
 2                     [Pause for interpretation.]
 3            A.      I haven't.
 4            Q.      Have you ever been a party to a
 5      lawsuit?
 6                     [Pause for interpretation.]
 7            A.      I have.
 8            Q.      How many times?
 9                     [Pause for interpretation.]
10            A.      On two or three different
11      occasions where the clients did not keep their
12      promises as to the compensation when they were
13      able to win the case for them -- when we were
14      able to win the case for them.
15            Q.      So the two or three times all
16      involved compensation issues; is that correct?
17                     [Pause for interpretation.]
18            A.      That is correct.
19            Q.      Mr. Lee, which law firm retained
20      you to serve as an expert in this case?
21                     [Pause for interpretation.]
22                     THE INTERPRETER:  Interpreter
23            needs to clarify what the English name
24            for that law firm is.
25                     [Pause for interpretation.]
```

Page 59

```
 1    after that he participated in the judicial
 2    education, research and training, and completed
 3    the course and was admitted to the bar.
 4         Q.     Do you know if Mr. Cha is admitted
 5    to practice law anywhere other than Korea?
 6                [Pause for interpretation.]
 7         A.     Not to my understanding.
 8         Q.     And do you know if Mr. Cha speaks
 9    English?
10                [Pause for interpretation.]
11         A.     To my understanding, I don't
12    believe he's quite competent in speaking
13    English.
14         Q.     Do you know if he had any prior
15    employment experience before working for your
16    law firm?
17                And I would like to limit that to
18    experience as a lawyer.
19                [Pause for interpretation.]
20         A.     Not to my understanding.
21         Q.     Do you know if he ever presented
22    as a judge before joining your law firm?
23                [Pause for interpretation.]
24         A.     No.  He did not because he joined
25    my firm after -- immediately after completing
```

1        important opinions are reflected here.  But
2        when we talk about documents, it's not like you
3        would be able to include all of the details in
4        a document.  So what I'm saying is that there
5        can be some additional things that I might say,
6        I might talk about.
7                        [Pause for interpretation.]
8               Q.      Are there additional topics that
9        you might offer your expert opinions about in
10       this case that is not covered in your rebuttal
11       report?
12                       [Pause for interpretation.]
13                       MS. CHO:  Objection, asked and
14            answered.
15              A.      I'm not talking about any topics
16       here -- I'm not talking about any additional
17       topics here, but I am talking about the bases
18       or the logic as to those topics.
19    BY MS. YU:
20              Q.      Okay.
21                       Could you describe for me your
22       understanding of the scope of your assignment
23       for this report?
24                       [Pause for interpretation.]
25              A.      My understanding of it is that I

Page 74

```
1     am to discuss the topic as to whether or not

2     there is any document or material preservation

3     obligation under the Korean laws, especially

4     the Fair Trade Act, under the Fair Trade Act.

5          Q.     Okay.

6                 And you are offering your opinion

7     as a rebuttal to the report of Professor Dae

8     Sik Hong dated July 21, 2017; correct?

9                 [Pause for interpretation.]

10         A.     That is correct.

11         Q.     Which portions of his report are

12    you rebutting?

13                [Pause for interpretation.]

14                MS. CHO:  Objection, vague.

15         A.     As part of rebuttal, I raised some

16    issues in my opinion, but the important one is

17    that under the Korean law, under the Fair Trade

18    Act, he was saying that there is no obligation

19    as to document preservation unless we are

20    talking about under the circumstances of

21    on-site investigation.  I believe that was --

22    that was the important point of my rebuttal.

23    And there were others as well.

24                [Pause for interpretation.]

25         Q.     And what are the others that you
```

                                          Page 75

1      reference?

2                      [Pause for interpretation.]

3           A.      For example, Professor Hong said

4      that when it comes to the US subsidiaries, such

5      as Nongshim America or Ottogi America, those

6      entities would not be subject to the Korean

7      Fair Trade law because there is no

8      jurisdiction.  So they are not subject to any

9      investigation.  And so that law would not be

10     applicable to those entities.  And I made a

11     point in terms of rebuttal to that.

12                     [Pause for interpretation.]

13          Q.      Any other points that you are

14     rebutting?

15                     [Pause for interpretation.]

16                     MR. BIRKHAEUSER:  Objection,

17          vague.

18          A.      Those were the important points

19     that I made as part of my rebuttal.  But other

20     than those, there were other details that I --

21     that were raised as part of my rebuttal.

22          Q.      Could you please summarize for me

23     the opinions that you express in your rebuttal

24     report?

25                     [Pause for interpretation.]

Page 76

```
 1                MS. CHO:   Objection, vague.
 2        A.      First of all, relating to the
 3   document preservation obligation, that would be
 4   pursuant to the Korea Fair Trade Act.  As to
 5   the current provisions, that would be
 6   applicable to Article 67, paragraphs 9 and 10.
 7   But if you're talking about the laws before the
 8   amendment, we're talking about Article 69-2,
 9   paragraph 1, subparagraphs 6 and 7.
10                [Pause for interpretation.]
11        A.      And it's kind of confusing because
12   the applicable laws have changed, so -- but to
13   simplify this, let's just talk about the -- the
14   laws that are effective as of present time,
15   which is the Article number 67, paragraphs 9
16   and 10.
17                [Pause for interpretation.]
18                MS. YU:   Okay.  One clarification
19        question.
20                Did the witness say that the
21        applicable laws have changed or the
22        applicable statutory reference has
23        changed?
24                THE INTERPRETER:  Is this question
25        posed to the interpreter?
```

Page 77

1          MS. YU:  Pose it to him.

2          [Pause for interpretation.]

3          MS. YU:  I have no objection to --

4     oh, wait.  I'll let you translate that.

5     Sorry about that.

6     A.     So to be exact, before the

7     incident at issue occurred, we're talking about

8     the -- the prior laws, which is Article Number

9     69, paragraph 1 and subparagraphs 6 and 7, and

10    that was the reference that was given in my

11    expert report.

12          [Pause for interpretation.]

13    A.     However, there is an amendment of

14    the laws, and the proposed amendment, the

15    article number we're talking about, is Article

16    Number 67, paragraphs 9 and 10.

17          [Pause for interpretation.]

18    A.     However, when it comes to the

19    details involving the violation that is at

20    issue, it is the same.  But in the current --

21    under the laws that are presently applicable at

22    this time, we're talking about the change in

23    terms of the punishment that could be given,

24    which is a combination of incarceration and

25    fine, fines.  But before the amendment, we were

1      talking about just fine.

2                  [Pause for interpretation.]

3           A.     And -- but the difference we're

4      talking about is to that extent only.  So for

5      the purposes of our discussion, I don't think

6      it would make an issue, so we can just go ahead

7      and do so by just referring to the applicable

8      articles and paragraphs under the current laws,

9      which is Article Number 67, paragraphs 9 and

10     10.  But if you wish to discuss this by

11     referencing the article numbers in the old

12     laws, we can also do that.  It's up to you.

13          Q.     Yeah, I have no objection to using

14     whichever reference you feel comfortable.  But

15     let me just clarify.

16                  [Pause for interpretation.]

17          Q.     So when you say paragraph 9,

18     you're referring to preamendment, Article 69,

19     section 2, provision 1, paragraph 6; correct?

20                  [Pause for interpretation.]

21          A.     That's correct.

22          Q.     Okay.

23                  And when you refer to paragraph 10

24     of the current law, you're referring to the

25     preamendment, Article 69, section 2, provision

Page 79

```
 1      1, paragraph 7; correct?

 2              [Pause for interpretation.]

 3      A.      That's correct.

 4      Q.      Okay.

 5      A.      If I could continue.

 6      Q.      Thank you.

 7      A.      So under the article, under

 8      article number -- withdrawn.

 9              Under Article 67, paragraph 9,

10      if -- there is an instruction to submit

11      documents, and when you fail to submit

12      documents as instructed or when you submit

13      falsified documents, then you're subject to

14      punishment.

15              [Pause for interpretation.]

16      A.      Under Article 67, paragraph 10,

17      when you are concealing, destructing --

18      withdrawn.

19              When you are concealing,

20      destroying, denying access of and/or altering

21      or falsifying documents, those acts would be

22      subject to punishment.

23              [Pause for interpretation.]

24      A.      And if you were to make a

25      comparison between those two, the acts that
```

Page 82

```
 1     paragraph 10 of Article 67, is what he is
 2     claiming.
 3               [Pause for interpretation.]
 4         A.     And when it comes to this
 5     investigation that is described under paragraph
 6     2 of Article 50, basically it may appear that
 7     it is talking about onsite investigation.
 8     However, you cannot say that it would be
 9     applicable to -- applicable to -- applicable
10     necessarily only to the onsite investigation.
11     It would be necessarily applicable to onsite
12     investigations only.
13               [Pause for interpretation.]
14               THE INTERPRETER:  Let me clarify.
15               [Pause for interpretation.]
16         A.     However, you cannot say that it
17     would be necessarily applicable only to the
18     onsite investigations only.
19               [Pause for interpretation.]
20         A.     And when you look at the -- the
21     later portion of paragraph 2 under Article 50,
22     it includes some description as to that you can
23     summon the relevant people or the party so that
24     you can hear their testimony.  That is also
25     included in the latter portion of paragraph 2
```

Page 83

1    of Article 50.  And that particular

2    investigation you cannot necessarily say that

3    it is applicable only to onsite investigations.

4            [Pause for interpretation.]

5        A.    And the details in regards to that

6    portion, it would be subject to the

7    presidential decree.  And when it comes to this

8    presidential decree, the location of where you

9    can summon the witnesses to -- can submit

10   witnesses to can be the business location of

11   the company, but it can also be any location

12   that is requested when the Fair Trade

13   Commission is requiring the attendance of the

14   party so that they can hear the testimony.

15           [Pause for interpretation.]

16       A.    And the biggest issue that can be

17   raised when you try to understand Professor

18   Hong's opinion is that when there is a heavier

19   or greater degree of obstruction of

20   investigation, which is indicated under

21   paragraph 10 of Article 67, when you commit

22   those activities, which are heavier in terms of

23   the obstruction or -- obstruction of

24   investigation, heavier than that of paragraph 9

25   of Article 67, he is saying that those are not

Page 84

1     subject to any punishment unless they occur at

2     the time of onsite investigation.

3                    [Pause for interpretation.]

4          A.     If that is the case indeed then

5     the relevant people at a company can evade any

6     investigation that could be conducted by the

7     Fair Trade Commission by concealing or

8     destructing materials in advance or in

9     anticipation of an onsite investigation.

10                   [Pause for interpretation.]

11         A.     In addition, if you look at

12    Article 67, paragraph 10, the felonies, felony

13    charges, such as altering or falsification of

14    documents, are included under the -- under the

15    criminal law.  And when Professor Hong is

16    claiming that those are okay, unless you find

17    that at the time of onsite investigation, that

18    is something that cannot be understood.

19                   [Pause for interpretation.]

20         A.     The Fair Trade Commission's

21    interpretation in this regard is that this

22    provision is not something that is applicable

23    only at the time of investigation, onsite

24    investigation.  That's their interpretation as

25    well.

Page 85

```
 1              [Pause for interpretation.]
 2         A.      The actual cases that I cited in
 3    my expert report of the resolutions that were
 4    rendered by the Fair Trade Commission include
 5    the case involving Samsung Electronics back in
 6    2005, and although I'm not sure of the exact
 7    year, whether it was 2007 or 2008, there was a
 8    case involving SK Communications.
 9              All of these cases -- both of
10    these cases actually involved destruction,
11    concealment, and/or altering of the documents
12    before the onsite investigation commenced.  And
13    those were subject to -- in both cases, the
14    companies were subject to punishment.  Those
15    were the cases that were cited.
16              [Pause for interpretation.]
17         A.      And there was a resolution that
18    was rendered against CJ, and what was included
19    in the details involving the violations was
20    that they had been requested to submit
21    documents to the Fair Trade Commission after
22    the onsite investigation was conducted, and
23    pursuant to that request, what they did is to
24    delete some the computer files in submission of
25    their documents.  That was what was included.
```

Page 88

```
 1     intervals, there are several months that are
 2     involved, which is quite lengthy a period.
 3                    [Pause for interpretation.]
 4          A.      So during that period of time, if
 5     they were -- withdrawn.
 6                    During that period of time, if it
 7     were possible for them to engage in any
 8     concealment or destruction of any relevant
 9     material, then the purpose of the second or the
10     third onsite investigation would not be
11     achieved at all.
12                    [Pause for interpretation.]
13          A.      Therefore my opinion is that
14     Professor Hong's view in that regard is not
15     right.
16                    [Pause for interpretation.]
17          A.      Generally speaking, it would be
18     difficult for me to say that a company would be
19     obligated to preserve documents continuously.
20                    However --
21                    [Pause for interpretation.]
22          A.      If there is a reasonable
23     anticipation of an investigation when there is
24     an alleged illegal activities or when there --
25     when there is an investigation that has
```

Page 89

1    commenced already, my opinion in that regard is

2    that until the time when you can reasonably be

3    assured that such investigation is completely

4    finalized, there is an obligation to hold on to

5    the relevant material.  That is my opinion.

6                    [Pause for interpretation.]

7         A.      So my opinion in that regard is

8    that at least until the time when you can

9    reasonably be assured that such investigation

10   is completely finalized, there is an obligation

11   to hold on to the relevant material.  That is

12   my opinion.

13                   [Pause for interpretation.]

14        A.      There isn't --

15                   [Pause for interpretation.]

16        A.      There aren't any laws that would

17   clearly specify the -- this type of obligation

18   as I described.  And so far, there hasn't been

19   any case law as rendered by the Supreme Court

20   as to this point as of yet.

21                   [Pause for interpretation.]

22        A.      But if you were to interpret in a

23   reasonable manner as to the regulations that

24   are related to the Fair Trade Commission or the

25   Fair Trade Act, I believe you would be able to

1    come to a conclusion that there is such an

2    obligation.   That is my view.

3                    [Pause for interpretation.]

4         A.      Would you want me to summarize my

5    opinion as to the overseas corporations as well

6    as to what they -- what their obligations are?

7         Q.      How long do you think it would

8    take for you to summarize your opinions in that

9    regard?

10                   [Pause for interpretation.]

11        A.      But shorter than the summary that

12   I just gave you.

13        Q.      Okay.

14                   Why don't you summarize it?

15                   And then we'll go off the record

16   and take our lunch break.

17                   THE VIDEOGRAPHER:   This marks the

18          end of media number 2 --

19                   MS. YU:   No, no.   I said after he

20          summarizes.

21                   [Pause for interpretation.]

22        A.      Professor Hong is claiming that

23   the entities, namely Nongshim America and

24   Ottogi America, and others, since they do not

25   have any jurisdiction as they are foreign

```
                                      Page 91
 1     entities or foreign subsidiaries when it comes
 2     to the Korean -- Korea Fair Trade Commission.
 3                 [Pause for interpretation.]
 4          A.      And he's also claiming that they
 5     are not subject to any investigation by the
 6     Fair Trade Commission because -- Fair Trade
 7     Commission.  So, therefore, they do not have
 8     any relevance when it comes to this particular
 9     litigation is what Professor Hong is claiming.
10                 [Pause for interpretation.]
11          A.      However, the -- the Fair Trade Act
12     was amended in 2004, and if you look at Article
13     2-2, that provision was newly added to address
14     things that would occur overseas.  But those
15     things, if they would have -- would implicate
16     the Korean market, then those incidents --
17     incidents would also be subject to the Korea
18     Fair Trade law is what the law sets forth.
19                 [Pause for interpretation.]
20          A.      And there is a new addition of
21     Article 36-2, which indicates that an execution
22     of the Fair Trade law, that would be subject to
23     the protocol that is established with other
24     foreign government.
25                 [Pause for interpretation.]
```

```
                                        Page 93
 1     regard can be subject to that law is my
 2     decision and determination.
 3                    [Pause for interpretation.]
 4          A.      This case law that I am citing has
 5     to do with the formation of an international
 6     cartel relating to graphite electrode bar --
 7                    THE INTERPRETER:  Is that right?
 8          A.      -- graphite electrode bar pricing
 9     involving overseas corporations.
10                    THE INTERPRETER:  Interjection by
11          the interpreter.
12                    Graphite electronic -- electrode
13          bar is subject to verification later on.
14          It's a sometimes technical term that was
15          used.
16                    [Pause for interpretation.]
17          A.      And in this present
18     investigation -- withdrawn.
19                    In the case that we are talking
20     about, the Fair Trade Commission did conduct an
21     investigation as to price fixing with respect
22     to the ramen manufacturers involved.  And when
23     it comes to price fixing, that would be
24     something that would implicate the ramen that
25     would be exported from Korea -- implicates the
```

Page 94

```
 1    ramen pricing that would be exported from
 2    Korea.
 3                [Pause for interpretation.]
 4         A.     Also, when it comes to Nongshim
 5    America and Ottogi America, these are
 6    subsidiaries of the companies located in Korea,
 7    and there were close interaction in terms of
 8    the employees, and there were -- the work --
 9    there was relevance in terms of their work as
10    well.
11                [Pause for interpretation.]
12         A.     Under these circumstances, the
13    main office can send so that the relevant
14    material can be concealed there.
15                [Pause for interpretation.]
16         A.     Therefore, those US subsidiaries
17    can be subject to the Korean Fair Trade Act and
18    can be subject to its investigation.  However,
19    the way Professor Hong expressed it was as if
20    there isn't any such possibility even.  And
21    what I'm saying in that regard is that it is
22    not right.
23                That was the -- that was my
24    summary.
25                [Pause for interpretation.]
```

```
 1          A.     Accordingly, the Fair Trade Act
 2     sets forth in Article 2-2 that this act will be
 3     also applied to cases, even if the act taking
 4     place overseas influences the Korean market.
 5                 [Pause for interpretation.]
 6                 MS. YU:  I disagree with the --
 7            just noting for the record, I disagree
 8            with the placement of the word "even" in
 9            there.
10                 I believe that the rendering
11            should be, "Accordingly, the Fair Trade
12            Act sets forth in Article 2-2 that even
13            conduct that takes place overseas will
14            be subject to the Fair Trade Act if the
15            act has an impact on the Korean domestic
16            market."
17                 MS. CHO:  I agree with that
18            rendition.
19                 THE INTERPRETER:  Yeah, I agree
20            with that too.  Sorry.
21                 MS. YU:  Okay.
22                 THE INTERPRETER:  I thought it
23            was -- okay.
24     BY MS. YU:
25            Q.     So isn't it -- is it fair to say
```

```
 1    that conduct abroad will be subject to the
 2    Korean Fair Trade Act if there is an impact on
 3    the Korean domestic market; correct?
 4                    [Pause for interpretation.]
 5         A.      That's right.
 6         Q.      Okay.
 7                    Can you refer to paragraph 3 and
 8    read out loud the underlined sentence.
 9                    [Pause for interpretation.]
10                    THE INTERPRETER:   Interjection by
11            the interpreter.
12                    I just read the Korean version as
13            well as the English version, and I am in
14            agreement with the English version that
15            is as rendered in the translation.   So
16            if I may.
17         A.      Where a foreign business enters
18    into an agreement to restrict competition
19    jointly with other businesses in a foreign
20    country, the Fair Trade Act shall apply, to the
21    extent that the agreement influenced the
22    domestic market due to the domestic market's
23    inclusion in the subject of the agreement.
24                    [Pause for interpretation.]
25         Q.      And, again, the domestic market
```

```
 1      referenced here refers to the Korean domestic
 2      market; correct?
 3                     [Pause for interpretation.]
 4           A.      That's correct.
 5           Q.      So the Korean Fair Trade Act would
 6      apply if there is conduct abroad that has an
 7      impact on the Korean domestic market; correct?
 8                     [Pause for interpretation.]
 9           A.      That is right.
10           Q.      Mr. Lee, what conduct by Ottogi
11      America do you believe had an impact on the
12      Korean domestic market?
13                     [Pause for interpretation.]
14                     MS. CHO:  Objection, outside of
15           scope.
16                     [Pause for interpretation.]
17           A.      As to what actually happened, I do
18      not know, and that was my answer to your
19      question.  But I am thinking that you are
20      asking this question to ask me if what is
21      indicated here would be applicable to the issue
22      that we are talking about.
23                     [Pause for interpretation.]
24           A.      If that is the case, the reason
25      why I wrote what I wrote is because even the
```

1      companies that are located abroad can be

2      subject to the Korea Fair Trade Act as an

3      example, and this was indicated here as an

4      example in a comprehensive sense.

5                    [Pause for interpretation.]

6           A.     But it is not something that I

7      intended to mean that what we are talking about

8      here is exactly applicable to this regulation

9      or law that we're talking about.

10                   [Pause for interpretation.]

11          Q.     Okay.

12                   And you are also not aware of any

13     conduct by Nongshim America that you believe

14     had an impact on the Korean domestic market;

15     correct?

16                   [Pause for interpretation.]

17                   MS. CHO:  Objection, outside the

18          scope of his report.

19                   [Pause for interpretation.]

20          A.     As I just indicated to you

21     earlier, it's not like I wrote this report

22     based on facts, so I don't think I can say

23     that -- withdrawn.

24                   [Pause for interpretation.]

25          A.     So I'm not saying that I am aware

1      of any such facts.

2              Q.      So other than instances where

3      foreign conduct by foreign corporations have an

4      impact on the Korean domestic market, are there

5      any other instances when the Korean Fair Trade

6      Act would apply to foreign conduct or foreign

7      corporations?

8                      [Pause for interpretation.]

9              A.      As I indicated to you earlier, as

10     to what occurred in actuality, I do not know.

11                     [Pause for interpretation.]

12             A.      But if we were to discuss what we

13     were talking about as an example, what I'm

14     saying is that under the presumption that

15     such -- such a conduct could occur, under that

16     assumption, since the Korean companies, the

17     Korean ramen companies, and in between the

18     Korean ramen companies and their US

19     subsidiaries, if there are any price fixing

20     conduct that occurred, then there can be in

21     depth -- or there can be relationship,

22     considerable relationship in between the two,

23     because -- therefore, as I said earlier, if

24     setting forth the pricing of the -- for the

25     products, ramen products in Korea, can have an

Page 106

```
 1      impact on the -- the pricing of ramen that are
 2      being exported.
 3                    [Pause for interpretation.]
 4          A.      So there can be significant
 5      likelihood that there is a correlation in
 6      between those two in terms of the pricing of
 7      the product, the ramen product.
 8                    [Pause for interpretation.]
 9          A.      And also between the employees of
10      the Korean companies and the employees of the
11      US subsidiaries, there can be communication
12      that could occur between those employees.
13                    [Pause for interpretation.]
14          A.      And in that regard, the managers
15      who are managing the operation of the overseas
16      market at the main office in Korea can be
17      involved in the management of the work that is
18      performed by the US subsidiaries, so there can
19      be some control in that regard.
20                    [Pause for interpretation.]
21          A.      And because those relevant
22      materials can be communicated in between those
23      two, when you look at the circumstances from
24      the perspective of the Fair Trade Commission,
25      if they deem it's necessary, they -- the
```

Page 107

1    subsidiaries, overseas subsidiaries can be

2    subject to Fair Trade Commission's

3    investigation because there is a high relevance

4    in terms of their work.

5                    [Pause for interpretation.]

6         A.      Therefore, in such circumstances,

7    if there is any conduct that is taking place on

8    the part of the subsidiaries' companies as to

9    the document concealment, destruction and/or

10   altercation or tampering with of any such

11   material, then those conducts can be subject to

12   punishment.

13                    [Pause for interpretation.]

14                    MR. DOSKER:  I make a motion to

15        strike the answer.

16   BY MS. YU:

17        Q.      You are not contending that any of

18   these things actually happened; correct?

19                    [Pause for interpretation.]

20                    MR. BIRKHAEUSER:  Objection,

21        vague.

22        A.      I'm not aware of any facts here,

23   so I am not contending that these things

24   actually happened.

25        Q.      A couple of quick followup

1    time of 2004 when the amendments were being

2    made to the law.

3                    [Pause for interpretation.]

4         A.      The main basis that I have when I

5    made an argument about the applicability of the

6    Korea Fair Trade Act to US subsidiaries or

7    corporations is the relevance of the -- the

8    main office is located in Korea when it comes

9    to setting forth pricing.

10                   [Pause for interpretation.]

11        Q.      What do you mean by relevance to

12   the main office located in Korea when it comes

13   to setting forth pricing?

14                   [Pause for interpretation.]

15        A.      Actually, I provided a pretty

16   detailed explanation about that earlier.  So

17   should I go back and explain that again?

18        Q.      My understanding was that your

19   opinion was that Korean Fair Trade Act can have

20   an impact on foreign conduct when there is an

21   impact on the Korean domestic market; correct?

22                   [Pause for interpretation.]

23        A.      That is something that is set

24   forth in Article 2-2.  But when I make this

25   argument, it is not based upon that

1    particular -- that article.

2         Q.     Then what are you basing it on?

3                [Pause for interpretation.]

4         A.     If the Fair Trade Commission

5    believes that the price fixing as to the ramen

6    products is something that affected the

7    domestic market in Korea only, then the

8    Korea -- the ramen companies that are located

9    in Korea would be subject to its investigation,

10   the ramen companies that are located in Korea

11   only.

12               [Pause for interpretation.]

13        A.     However, on the contrary, if the

14   Korea Fair Trade Commission considers or

15   believes that such price fixing would have an

16   impact on the overseas subsidiaries as well, if

17   they believe that to be the case --

18               [Pause for interpretation.]

19        A.     -- then the commission would deem

20   it's necessary that the overseas corporations

21   or the subsidiaries would be subject to its

22   investigation.

23               [Pause for interpretation.]

24        A.     Because when it comes to the

25   pricing of ramen products in overseas market,

1    subsidiaries.

2                    [Pause for interpretation.]

3         A.      So in that regard, overseas

4    subsidiaries, subsidiaries can be subject to

5    the investigation is what I'm saying.  But what

6    I'm not saying is that it would be based upon

7    the impact in the foreign market.

8                    [Pause for interpretation.]

9         Q.      Mr. Lee, are you aware that the

10   KFTC issued a public statement stating that US

11   ramen products were not the subject of this

12   investigation?

13                   [Pause for interpretation.]

14                   MS. CHO:  Objection, states -- to

15          the extent it mischaracterizes the

16          KFTC's statement.

17                   [Pause for interpretation.]

18        A.      I am not aware of any facts here,

19   and nor am I aware of any announcement like

20   that.

21        Q.      Okay.

22                   [Pause.]

23        Q.      Okay.  Could you please turn to

24   section A in your rebuttal report, and

25   specifically to paragraph 1?

```
                                            Page 115
 1                 [Deposition Exhibit 2 marked for
 2          identification.]
 3                 [Discussion while marking
 4          exhibit.]
 5   BY MS. YU:
 6          Q.    Please let me know once you've had
 7     a chance to review that document.
 8                 [Pause for interpretation.]
 9          A.    Yes.
10          Q.    Okay.
11                 Are you familiar with this
12     document?
13                 [Pause for interpretation.]
14          A.    Yes.
15          Q.    Can you describe what it is?
16                 [Pause for interpretation.]
17          A.    I read it on a few different
18     occasions.  Yeah.
19                 [Pause for interpretation.]
20          A.    Simply put, this is setting forth
21     the opinions by Professor Hong.  And, generally
22     speaking, what he is claiming is that under the
23     Korean law, generally speaking, there isn't any
24     obligation to preserve documents or material,
25     especially under the Korea's Fair Trade Act,
```

1    Article 67-10.  Article 67, paragraph 10, those

2    conducts that are described under that

3    provision, when those conducts occurred at the

4    time of an onsite investigation, to that extent

5    only, those conducts would be subject to

6    punishment.  That would be the summary, I would

7    say.

8          Q.     So this is the report to which

9    your rebuttal report is submitted as a

10   rebuttal; correct?

11               [Pause for interpretation.]

12         A.     That's right.

13         Q.     And earlier you testified that you

14   did not review Professor Hong's other expert

15   report submitted in this case in preparation

16   for your deposition; correct?

17               [Pause for interpretation.]

18         A.     That's correct.

19         Q.     Did you ever review Professor

20   Hong's other expert report submitted in this

21   case?

22               MS. CHO:  Objection to the extent

23         it asks for communications with counsel.

24               [Pause for interpretation.]

25   BY MS. YU:

```
                                           Page 129
 1      And specifically I am referring to the Korean
 2      version of your rebuttal report.
 3                  [Pause for interpretation.]
 4          A.      Yes.
 5          Q.      Could you please read the first
 6      sentence of paragraph 5?
 7                  [Pause for interpretation.]
 8                  [Reading in Korean.]
 9          A.      Furthermore, there is a case in
10      which the KFTC imposed a fine on the respondent
11      company for not submitting the document as
12      requested for production of documents in which
13      the KFTC did not conduct any onsite
14      investigation and the respondent company did
15      not comply with the three official requests for
16      production.  Resolution No. 2012-001
17      2011SeoChong3015 ShinHan Life Insurance.
18                  [Pause for interpretation.]
19          Q.      And the precedent you're
20      describing in that sentence relates to a
21      company's failure to submit specific documents
22      requested by the KFTC; correct?
23                  [Pause for interpretation.]
24          A.      That's correct.
25          Q.      And the statute cited by this
```

```
                                          Page 130
 1     precedent was Article 67, Paragraph 9; correct?
 2                [Pause for interpretation.]
 3          A.     That's correct.
 4          Q.     And that case specifically
 5     mentions the KFTC's authority to request
 6     submission of specific documents that arise
 7     from Article 50, section 1, provision 3;
 8     correct?
 9                [Pause for interpretation.]
10          A.     That's correct.
11          Q.     And there is no mention of
12     investigation under Article 50, section 2 in
13     that decision; correct?
14                [Pause for interpretation.]
15          A.     Although I do not have an exact
16     recollection, I would believe that to be the
17     case.
18          Q.     And there is no mention of Article
19     67, paragraph 10 in that decision; correct?
20                [Pause for interpretation.]
21          A.     That is, is my understanding.
22          Q.     So this case involved a violation
23     of duty to submit specific documents requested
24     by the KFTC that Professor Hong describes in
25     paragraph 11 of his report; correct?
```

Page 133

```
1           Q.     And I'm not asking with specific
2      facts in mind -- wait, strike that.
3                  [Pause for interpretation.]
4           Q.     And I'm -- my question is a
5      hypothetical.
6                  With that in mind, in your
7      opinion, would it be fair for a company to
8      believe that the KFTC investigation has been
9      completed when the KFTC informs the company
10     that it's ending its investigation?
11                 MS. CHO:  Objection, vague, asked
12         and answered.
13                 [Pause for interpretation.]
14          A.     As I just indicated to you
15     earlier, it may be at that point in time.  Then
16     again, it may not be under -- depending on the
17     circumstances.
18          Q.     Okay.
19                 MR. BIRKHAEUSER:  I want to assert
20         an additional objection that the
21         hypothetical was incomplete.
22     BY MS. YU:
23          Q.     Mr. Lee, is it also your opinion
24     that once there is an onsite investigation, the
25     investigated companies are required to suspend
```

Page 134

1    all normal document retention practices and

2    policies?

3              MS. CHO:  Objection, vague.

4              [Pause for interpretation.]

5         A.   Under -- withdrawn.

6              [Pause for interpretation.]

7         A.   Generally speaking, unless there

8    is any special circumstances, it would be fine

9    for a company to maintain its normal policies

10   or practices when it comes to destruction of

11   documents.  Generally speaking, again, I don't

12   think that would create any issue.

13             [Pause for interpretation.]

14        A.   However, if there is investigation

15   that was commenced by the KFTC or if there is

16   any anticipation that investigation by KFTC is

17   to -- is to begin as to any relevant documents,

18   if a company tries to destroy documents on

19   account of or based on the reasons that it is

20   the company practice or the policy, I don't

21   think that can be justified.

22        Q.   So is it your opinion then that

23   once a company is investigated or is

24   anticipating that it may be investigated, they

25   cannot discard any documents whatsoever?

Page 135

```
 1                    MS. CHO:   Objection, vague and
 2          mischaracterizes prior testimony.
 3                    [Pause for interpretation.]
 4          A.      I believe I addressed that -- this
 5      very pending question or earlier when I gave
 6      that answer because I mentioned any relevant
 7      documents that are subject to the
 8      investigation.  I don't think I said anything,
 9      any document whatsoever.
10          Q.      And how is a company supposed to
11      ascertain what document is relevant?
12                    MS. CHO:   Objection, vague --
13                    [Pause for interpretation.]
14                    MS. CHO:   I'm not done yet.
15          Sorry.
16                    MR. BIRKHAEUSER:   Incomplete
17          hypothetical.
18                    MS. CHO:   Yeah.
19                    MS. YU:   Tag team.
20                    [Pause for interpretation.]
21          A.      As to your question, there hasn't
22      been anything that I myself experienced on hand
23      in that regard, so if I could just tell you my
24      thoughts.
25                    [Pause for interpretation.]
```

```
 1          A.     My thinking is that when the Fair
 2     Trade Commission is conducting its
 3     investigation, I don't believe that they will
 4     be secretive as to their investigation so that
 5     nobody would know as to -- know as to what.
 6     So, of course, this is my presumption.  This is
 7     some assumption that I am -- maybe go here.
 8     But from the company's perspective, I would
 9     think that we're talking about some of the
10     issues that they would be aware of.  So -- but,
11     then again, not knowing the specific facts, I'm
12     not saying that I would know as to any specific
13     facts in that regard, but --
14                THE INTERPRETER:  Just one
15          quick -- may I inquire as to the last?
16          I couldn't read.
17                MS. YU:  Sure.
18                [Pause for interpretation.]
19          A.     I'm not saying that I would know
20     as to any specific facts in that regard, and
21     nor am I aware of any specific facts in
22     connection with this case either.
23          Q.     In going back to your prior
24     testimony that there is a duty to suspend
25     normal document retention practices and
```

Page 137

1    policies, once a KFTC investigation has

2    commenced or is anticipated, what is the

3    statutory basis for that opinion?

4              MS. CHO:  Objection to the extent

5         it mischaracterizes prior testimony.

6              [Pause for interpretation.]

7         A.    I believe I mentioned this when I

8    gave you the summary in my answer in the

9    morning.

10             So as to any obligation in a

11   general sense when it comes to document

12   retention, there isn't any statute that would

13   directly specify that or -- nor is there any

14   case law that was rendered by the Supreme

15   Court, to my understanding.

16             [Pause for interpretation.]

17        A.    So when -- what I was describing,

18   if I were to tell you in terms of any statute

19   in terms of the number of articles, I can cite

20   to you Article 67-10 in the sense that the

21   conducts that are described under that article,

22   which has to do with destruction of documents,

23   concealing of documents, altering or tampering

24   with any documents, those conducts are

25   described there.

```
                                        Page 140
 1      interpret such provision as applying only at
 2      the time of the onsite investigation.
 3                     Said provision reads:
 4                     In the case of the investigations
 5      in accordance with paragraph 2 of Article 50.
 6      As shown below, the investigations in
 7      accordance with paragraph 2 of Article 50 do
 8      not refer to onsite investigations only.
 9           Q.     Okay.
10                     And this provision that is
11      referenced in that, in those two sentences,
12      refer to Article 67, paragraph 10; correct?
13                     [Pause for interpretation.]
14           A.     That's correct.
15           Q.     Okay.
16                     Could you please turn to paragraph
17      7 under section A of your rebuttal report,
18      please?  And I'm still talking about the Korean
19      version.
20                     [Pause for interpretation.]
21           Q.     Could you please read out loud the
22      sentence I believe is the third sentence of
23      paragraph 7?  And it starts with Article 50
24      provision -- or Article 50, section 2.
25                     [Pause for interpretation.]
```

```
                                        Page 141

 1                [Reading in Korean.]
 2        A.      Paragraph 2 of Article 50 presents
 3   both cases of investigation by physically
 4   entering the workplace of the business as well
 5   as hearing testimonies of the concerned
 6   parties, interested parties or witnesses in a
 7   designated location.
 8        Q.      And the phrase "investigation by
 9   physically entering the workplace of the
10   businesses" is in reference to onsite
11   investigation; correct?
12                [Pause for interpretation.]
13        A.      Yes, that's correct.
14        Q.      And the phrase that says "hearing
15   testimonies of the concerned parties,
16   interested parties or witnesses in a designated
17   location" refers to testimony; correct?
18                [Pause for interpretation.]
19        A.      I would believe so.
20                [Pause for interpretation.]
21        A.      But I don't think it would
22   necessarily mean any testimony in a courtroom
23   setting, but I believe this is referring to
24   testimony in the process of an investigation.
25        Q.      But it pertains to testimonial
```

1    evidence; correct?

2              [Pause for interpretation.]

3        A.    That is referring to testimony, it

4    is correct.   That it is referring to testimony,

5    it is correct.

6        Q.    Isn't it true that Article 50,

7    section 2 only specifies these two

8    investigative tactics?

9              [Pause for interpretation.]

10       A.    If you're talking about Article

11   50, section 2, it is correct that it specifies

12   these two methods only.

13             THE INTERPRETER:  If I could

14        rerender, please.

15       A.    If you're talking about Article

16   50, section 2, it is correct that it specifies

17   these two only.

18       Q.    Okay.

19             So is it fair to say that the only

20   investigative method involving documentary

21   evidence under Article 50, section 2 relates to

22   onsite investigation?

23             MR. BIRKHAEUSER:  Objection,

24        vague.

25             [Pause for interpretation.]

Page 143

```
 1           A.      I don't believe so.
 2           Q.      And then what is your belief?
 3                   [Pause for interpretation.]
 4           A.      Because if you look at the -- the
 5      portion that comes later under Article 50,
 6      section 2, it says -- it talks about instances
 7      where you would hear testimonies by witnesses,
 8      interested parties or the parties in a
 9      designated location.  And actually this would
10      be specified by presidential decree.
11                   [Pause for interpretation.]
12           A.      So if you were to look at the
13      details involved in the presidential decree as
14      to the location where you could hear the
15      testimonies given, the locations can be offices
16      or a place that is designated by the Fair Trade
17      Commission by summoning these witnesses.
18                   So it doesn't necessarily have to
19      be an onsite investigation, so I don't think it
20      is referring to an onsite investigation only
21      here.
22           Q.      But that investigative tactic
23      relates to testimony; correct?
24                   [Pause for interpretation.]
25           A.      That is correct.
```

1    filed a suit with the courts.

2           Q.      Okay.

3                   Finished?

4                   [Discussion off the record.]

5                   THE VIDEOGRAPHER:  Going off the

6           record at 4:11 p.m.  This marks the end

7           of media number 4.

8                   [Recess at 4:11 p.m.]

9                   [Resuming at 4:22 p.m.]

10                   THE VIDEOGRAPHER:  We're back on

11           the record at 4:23 p.m., and this marks

12           the beginning of media number 5 in the

13           deposition of Sang-Hun Lee.

14                   MS. YU:  Ready?  Okay.

15                 EXAMINATION CONTINUING

16    BY MS. YU:

17           Q.      Mr. Lee, does Korean law have

18    civil procedures that apply to civil

19    litigation?

20                   MS. CHO:  Objection, outside of

21           scope.

22                   [Pause for interpretation.]

23           A.      There are various proceedings,

24    civil litigation proceedings, criminal

25    litigation proceedings, as well as

1    administrative litigation proceedings.

2         Q.    Okay.

3              So there is different laws that

4    apply to civil litigation versus criminal

5    litigation versus administrative proceedings;

6    correct?

7              [Pause for interpretation.]

8         A.    Basically, yes is the answer.  But

9    when it comes to administrative proceedings,

10   the cases are -- those cases refer to civil

11   litigations in many respects.

12        Q.    Okay.

13             Can you turn to paragraph 9 under

14   Section A of your rebuttal report?  And I am

15   still referencing the Korean version.

16             [Pause for interpretation.]

17        Q.    Could you please read the

18   underlined portion?

19             [Pause for interpretation.]

20             [Reading in Korean.]

21        A.    It says:  Destroying any relevant

22   evidence in advance, even prior to an

23   investigation or a disciplinary proceeding,

24   shall be subject to punishment for the

25   destruction of evidence if there is a

Page 153

1      possibility that the case might advance to a
2      criminal or disciplinary proceeding in the
3      future.
4              Q.      So the underlined portion
5      contained in paragraph 9 of your rebuttal
6      report relates to criminal or disciplinary
7      actions; correct?
8                      [Pause for interpretation.]
9              A.      That's correct.
10             Q.      So can you please read the
11     paragraph that begins with, "Therefore, under
12     the Korean Fair Trade Act..."?
13                     It's the second sentence after --
14                     [Reading in Korean.]
15                     [Pause for interpretation.]
16             A.      Therefore, the same standard in
17     the precedent that's described above shall be
18     applied with respect to punishment for
19     destruction of documents under the Fair Trade
20     Act.
21             Q.      Are you saying that the standard
22     in the precedent, in fact, applies to the Fair
23     Trade Act?
24                     [Pause for interpretation.]
25                     MR. BIRKHAEUSER:  Objection,

Page 154

1    vague.

2              [Pause for interpretation.]

3         A.    The reason why I described these

4    -- or this precedent here is because when there

5    is a conduct -- a conduct involving destruction

6    of evidence in connection with a criminal case

7    or disciplinary action case, I -- I believe

8    that that was quite similar to those cases

9    where destruction of evidence such as

10   destruction of documents and whatnot that could

11   occur in connection with the Fair Trade Act.

12             [Pause for interpretation.]

13        A.    However, from the perspective of

14   the Supreme Court, even if you are talking

15   about a time point where -- time point before

16   any disciplinary action or investigation

17   occurs, the Supreme Court considers that if

18   there is any destruction of relevant material

19   or evidence in advance, that would constitute

20   destruction of evidence from the perspective of

21   the Supreme Court.

22             [Pause for interpretation.]

23        A.    And I believe that, that logic

24   should be applicable to the investigations as

25   carried out by the KFTC or even before such an

1    investigation is to occur if you are talking

2    about a time point where you can anticipate

3    such an investigation to occur, of course, let

4    alone at the time point where an actual

5    investigation has occurred.

6              [Pause for interpretation.]

7         A.    So in other words, if you are

8    talking about a time point where you can

9    reasonably anticipate such an investigation to

10   occur, you know, from the point on, there

11   shouldn't be any document destruction, any

12   relevant document destruction or concealment of

13   such document forgering or tampering with any

14   such documents.  And that is the interpretation

15   that I can come up with.  And that was what I

16   was trying to convey here by explaining that

17   logic.

18             [Pause for interpretation.]

19        A.    However, these precedents that are

20   described here in connection with the criminal

21   cases or disciplinary actions, whether these

22   precedents can be readily applicable to the

23   cases that occur -- the cases that might be

24   relevant to the Fair Trade Act, I cannot be

25   sure of that.

1          Q.      Okay.

2                  So in that opinion, are you saying

3     that the standard in regard to the destruction

4     of evidence in the criminal case is certainly

5     applicable to document destruction under the

6     Fair Trade Act, or are you saying that it may

7     be applied?

8                  [Pause for interpretation.]

9          A.      I'm not saying that it is

10    certainly applied or not, but what I'm saying

11    is that the basic logic is the same.  So the

12    logic that is applied to the document

13    destruction under the criminal law can be a

14    valid basis in coming up with the

15    interpretation of the Fair Trade Act that we

16    are discussing here.  That was the perspective

17    from which I was opining my view.

18         Q.      Okay.

19                 And you've stated that a duty to

20    preserve documents may commence when an onsite

21    investigation is imminent.  Could you describe

22    what you mean by "imminent"?

23                 [Pause for interpretation.]

24         A.      First of all, when I was

25    describing this, I was not limiting this --

1    limiting it to onsite investigations only.  So

2    be that onsite investigation or general

3    investigation.  What I'm talking about here is

4    that at a time point where it is -- where you

5    can reasonably anticipate investigation to

6    commence, the obligation to preserve documents

7    may arise from that point on.

8               [Pause for interpretation.]

9         A.    And as to the time point where you

10   can expect -- reasonably expect an

11   investigation to occur, when would that be?

12   That would depend on the specificity of an

13   issue that you are dealing with.  So I don't

14   think I can give you any one-size-fits-all type

15   of an answer.

16        Q.    So what are some of the factors

17   that you would consider in determining whether

18   or not an investigation is imminent, as you use

19   that word?

20               [Pause for interpretation.]

21               MS. CHO:  Objection to the extent

22        it calls for speculation.

23               [Pause for interpretation.]

24        A.    As to that, for me to come up with

25   any such specific examples, I don't know if

Page 161

```
 1      that's proper or not because I didn't -- I
 2      don't have on-hand experience in that regard.
 3      So it would be difficult for me.
 4                   [Pause for interpretation.]
 5           A.      But as I explained to you earlier,
 6      you would have to consider many different --
 7      you would have to consider various
 8      circumstances comprehensively and at a certain
 9      point in time where you can reasonably
10      anticipate that an investigation is to occur.
11                   [Pause for interpretation.]
12           A.      Of course, I don't know when that
13      specific point in time might be depending on
14      the circumstances.  But when you can expect an
15      investigation to commence more or less would be
16      the time point that I'm thinking of.  But, you
17      know, for me to describe to -- as to the
18      specific factors in that regard, it would be
19      rather difficult.
20                   [Pause for interpretation.]
21           A.      If I were to venture -- to give
22      you one example --
23                   [Pause for interpretation.]
24           A.      -- let's say there's a rumor that
25      there was some pricing cartel that has been
```

1              [Pause for interpretation.]

2      A.      I think that's how we should

3   consider things.

4      Q.      Are you --

5              [Pause for interpretation.]

6      A.      So if I were to answer your

7   question that was pending, so on the basis of

8   someone claiming that he or she didn't know

9   anything about investigation that was under

10  way, I am not aware of any decision being made

11  under that assumption of the -- of a person not

12  being knowledgeable or being aware of any

13  investigation.  Any such investigation.

14     Q.      Mr. Lee, do you understand that

15  the KFTC investigation in Korea started with an

16  onsite investigation on June 3, 2008?

17             [Pause for interpretation.]

18     A.      When it comes to the ramen

19  manufacturers we were discussing, yes, that's

20  my understanding.

21     Q.      And thank you for clarifying that.

22             Do you have any reason to believe

23  that any of the investigated companies knew

24  about the investigation before that time?

25             MS. CHO:  Objection, outside of

```
                                              Page 165
 1          scope.
 2                    [Pause for interpretation.]
 3          A.     I don't know about anything
 4     factual.  I think I've related to you on
 5     several different occasions so far, but the
 6     same answer here as well.
 7                    [Discussion off the record.]
 8          Q.     Could you please turn to paragraph
 9     10 under section A of your rebuttal report.
10                    And in that paragraph, you discuss
11     litigation hold duties under US law; correct?
12                    [Pause for interpretation.]
13          A.     That's correct.
14          Q.     And you reference a specific case
15     that is titled Stevenson v. Union Pacific
16     Railroad Company; correct?
17                    [Pause for interpretation.]
18          A.     That's correct.
19          Q.     How did you find this precedent?
20                    [Pause for interpretation.]
21          A.     As I remember, I believe I became
22     aware of this case through the assistance of
23     the attorney that I mentioned earlier that I
24     received assistance from.
25          Q.     And that's Mr. Cha; correct?
```

```
 1                    [Pause for interpretation.]
 2          A.      That is correct, but I don't know
 3     whether Mr. Cha was able to research on this
 4     himself or whether he received some assistance
 5     from his acquaintances or not.
 6          Q.      Mr. --
 7          A.      I don't know to that extent.
 8          Q.      Okay.
 9                  Mr. Lee, did you review an order
10     from Judge Orrick in this case denying
11     plaintiffs' motion to sanction Nongshim
12     defendants and Ottogi defendants?
13                    [Pause for interpretation.]
14          A.      I did.  I saw it.
15          Q.      Oh, and going back to the
16     precedent that we just talked about, Stevenson
17     v. Union Pacific Railroad, did you review that
18     case in English or did you review that case in
19     Korean?
20                    [Pause for interpretation.]
21          A.      I saw it in English.
22          Q.      Did you review any other US case
23     law in forming your opinions?
24                    [Pause for interpretation.]
25                    THE INTERPRETER:  Withdrawn.
```

```
                                             Page 170

 1      not either Nongshim or Ottogi was in violation

 2      with the Korea's Fair Trade Act, which is the

 3      issue that we were discussing here.

 4                   So I didn't feel any particular

 5      need to review any other decisions.

 6           Q.     But you reviewed the Stevenson

 7      case, even though that did not relate to duty

 8      under Korean law; correct?

 9                   [Pause for interpretation.]

10           A.     I did.

11                   [Pause for interpretation.]

12           A.     The reason for that was --

13                   [Pause for interpretation.]

14           A.     Although the litigation hold is

15      not something that is directly related to the

16      issues that we're discussing here, but the --

17      the logic behind it, behind this decision that

18      is rendered, it is something -- that is

19      something that I believed would be similar to

20      the logic that I thought would be supporting my

21      argument.  So that's the reason why.

22                   [Pause for interpretation.]

23           A.     My understanding of this case law

24      was --  is --

25                   [Pause for interpretation.]
```

Page 182

```
 1              "The Fair Trade Commission's
 2      interpretation in this regard is that this
 3      provision is not something that is applicable
 4      only at the time of investigation, onsite
 5      investigation.  That's their interpretation as
 6      well."
 7                      MR. DOSKER:  I'll pause for the
 8          translation.
 9                  [Pause for interpretation.]
10   BY MR. DOSKER:
11          Q.    So my question is, is that
12      actually the KFTC's interpretation, or is that
13      your opinion about what the KFTC's
14      interpretation would be?
15                      MS. CHO:  Objection, vague.
16                      MR. BIRKHAEUSER:  Compound.
17                  [Pause for interpretation.]
18          A.    That was KFTC's actual
19      interpretation.
20          Q.    And what is your basis for saying
21      that that is the KFTC's actual interpretation?
22                  [Pause for interpretation.]
23          A.    Those cases that I mentioned
24      earlier, the case involving Samsung Electronics
25      in 2005 as well as those cases involving SK
```

1    Communications and the company CJ, the

2    decisions made by the FTC as to their

3    interpretations of the decisions are clearly

4    indicated in those decisions.

5              [Pause for interpretation.]

6         A.    What that sets forth as far as I

7    remember was that even if you're talking about

8    a time point where an investigation is yet to

9    begin, if there is any conduct that has been

10   carried out for the purposes of destroying or

11   concealing documents with -- with the purpose

12   to interrupt an investigation which is yet to

13   begin, those conducts would be subject to

14   punishment.  And that is something that is

15   clearly indicated in the decisions involving

16   all of those three cases.

17              MS. CHO:  Madam Interpreter, you

18         translated "pong hey" as "interrupt."

19         Under the context of this translation,

20         would "obstruct" be a better, more

21         accurate translation?

22              THE INTERPRETER:  Oh, yes.

23         Obstruct, yes, that's right.  Thank you.

24   BY MR. DOSKER:

25         Q.    Mr. Lee, I'm now going to ask you

1                  THE WITNESS:  Right.

2          A.     That's right.

3          Q.     Please assume that in 2012 the

4    KFTC issued its order, stating the conclusions

5    of its investigation of the ramen companies.

6                  [Pause for interpretation.]

7          Q.     Now, in your role as an expert

8    witness in this US litigation, you do not offer

9    any opinion about whether the ramen companies

10   were required by Korean law to preserve

11   documents after the KFTC issued its 2012 order,

12   do you?

13                 MS. CHO:  Objection -- I'm sorry.

14                 [Pause for interpretation.]

15                 MS. CHO:  Objection, vague.

16                 MR. BIRKHAEUSER:  Incomplete

17        hypothetical.

18                 [Pause for interpretation.]

19         A.     As I indicated to you earlier, the

20   obligation to preserve documents continues at

21   least until a reasonable person, assumed that

22   there is a reasonable person, that he or she

23   believes that the investigation is completely

24   finalized.

25                 [Pause for interpretation.]

Page 189

```
 1          A.    And as to your question, when such
 2     a decision was rendered by the KFTC, if the
 3     time point where they reached that -- where
 4     they rendered the decision coincides with the
 5     time point that I was describing earlier, I
 6     don't think I can say anything definitive in
 7     that regard.  I believe it is an issue that
 8     needs to be determined considering various
 9     factors.
10               [Pause for interpretation.]
11          A.    I think there was a phrase that
12     was missing in the -- the last sentence of the
13     interpretation that was just rendered.
14               So I believe it is an issue that
15     needs to be determined considering various
16     factors comprehensively.
17               [Pause for interpretation.]
18          A.    And as to my role in terms of the
19     US litigation, although I am serving the role
20     of an expert witness in this litigation, but
21     when it comes to the issue or issues that I am
22     dealing with, I think it is something that is
23     limited to whether there was a -- there was a
24     violation of the Korea Fair Trade Act.
25               If the ramen manufacturers did
```

Page 190

```
 1     destroy or -- and/or conceal documents at the
 2     time that is alleged by the plaintiff that they
 3     did.
 4          Q.     So in your role as an expert
 5     witness for the plaintiffs in this US
 6     litigation, does the scope of your opinion
 7     about Korean law also include when in this case
 8     the duty under Korean law ended?
 9               MS. CHO:  Objection, vague.
10               [Pause for interpretation.]
11          A.     Under the Korean law, up until
12     when the obligation to preserve documents
13     continues, I don't think I can give any
14     definitive answer to that issue.
15               [Pause for interpretation.]
16          A.     In connection with the case, to my
17     understanding, the plaintiffs are alleging that
18     the ramen manufacturers were engaged in
19     destruction and/or concealment of materials
20     during the time of the Fair Trade Commission's
21     investigation was still going on after the
22     onsite investigation was conducted on June the
23     3rd, 2008.  That is my understanding.
24               [Pause for interpretation.]
25          A.     And in that, in that particular
```

Page 191

1      case, if it is indeed the case that they did

2      occur, would that constitute the violation or a

3      violation of the Korea's Fair Trade Act?  My

4      job is to opine on that issue.  However, when

5      it comes to the obligation to preserve

6      documents when that would end, it is something

7      that is outside of the scope of my opinion.

8                    [Pause for interpretation.]

9                    MR. DOSKER:  Let's take a short

10         break.

11                   THE VIDEOGRAPHER:  Going off the

12         record at 6:21 p.m.

13                   [Recess at 6:21 p.m.]

14                   [Resuming at 6:32 p.m.]

15                   THE VIDEOGRAPHER:  We're back on

16         the record at 6:32 p.m.

17                   MR. DOSKER:  I have no further

18         questions for the moment.  Thank you,

19         Mr. Lee.

20                   [Pause for interpretation.]

21                   THE WITNESS:  Thank you.

22                   THE INTERPRETER:  Thank you.

23                   MS. CHO:  All right.

24                        EXAMINATION

25      BY MS. CHO:

```
 1    obligation of the preservation would not be
 2    ending.
 3              [Pause for interpretation.]
 4              MS. CHO:  I have no further
 5         questions.
 6              MR. DOSKER:  So a couple of
 7         further questions then in view of your
 8         redirect.
 9              THE INTERPRETER:  Let me rerender
10         the last sentence.
11              There's a high likelihood of the
12         preservation obligation would not be
13         ending.  A likelihood that the
14         preservation obligation would not be
15         ending.
16              FURTHER EXAMINATION
17    BY MR. DOSKER:
18         Q.    Your written expert report does
19    not mention anything about what would happen if
20    there were an appeal, does it?
21              [Pause for interpretation.]
22         A.    That is correct.
23              [Pause for interpretation.]
24         A.    As I said earlier, as to when that
25    preservation obligation would be ending, that
```

Page 195

1    is something that falls outside the scope of my
2    report.  However, I answered the questions
3    because the questions were posed by both of the
4    attorneys.
5           Q.    Regarding the answer that you gave
6    to the question by plaintiffs' counsel on
7    redirect, is there any Korean statute that says
8    what you just testified?
9                 [Pause for interpretation.]
10          A.    I don't believe that there would
11   be any.
12          Q.    Likewise, regarding the answer
13   that you gave to the question by plaintiffs'
14   counsel on redirect, is there any Korean court
15   decision or precedent that says what you have
16   just testified?
17                [Pause for interpretation.]
18          A.    As to the punishment that could be
19   rendered in the case of obstruction of
20   investigation, it used to be a fine that was
21   imposed before, and now it's a criminal penalty
22   that it would be subject to.  However, my
23   understanding is that there is rarely a case
24   that has been filed with the court relating to
25   that.  So apparently I -- my answer is that I

```
                                    Page 197

 1              ***********************
 2               C E R T I F I C A T E
 3              ***********************
 4
 5              I, PAUL J. FREDERICKSON, CA
 6      Certified Shorthand Reporter No. 13164 and
 7      WA Certified Court Reporter No. 2419, do
 8      hereby certify:
 9                  That prior to being examined,
10      the witness named in the foregoing
11      deposition was by me duly sworn or affirmed
12      to testify to the truth, the whole truth and
13      nothing but the truth;
14                  That said deposition was taken
15      down by me in shorthand at the time and
16      place therein named, and thereafter reduced
17      to print by means of computer-aided
18      transcription; and the same is a true,
19      correct and complete transcript of said
20      proceedings.
21                  I further certify that I am not
22      interested in the outcome of the action.
23                  Witness my hand this 2nd day of
24      October 2017.
25
```

Page 198

1

2

3

4

PAUL J. FREDERICKSON, CCR, CSR

5      WA CCR 2419   CA CSR 13164

Expiration date:  March 31, 2018

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25