# EXHIBIT C

**EXPERT REPORT**

**OF**

**DAE SIK HONG, PH.D.**
**PROFESSOR OF LAW**


**in connection with**

**In re: Korean Ramen Antitrust Litigation**


**United States District Court**

**Northern District of California**

**San Francisco Division**


Civil Action No. C-13-04115-WHO


**July 21, 2017**


**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

I. BACKGROUND AND QUALIFICATIONS

1. I am a tenured professor at Sogang University Law School located in Seoul, Republic of Korea. I received a bachelor of laws degree in 1990 from the Seoul National University and an LL.M. degree in 1996 and a Ph.D. degree in 2006 from the Seoul National University, Graduate School of Law. I was a visiting scholar at the University College London in the United Kingdom and the University of California, Berkeley in the United States. I specialize in various competition law issues, including abuse of market-dominant position, cartel, unfair trade practices, private enforcement, issues related to intellectual property, and regulated industries.

2. Prior to joining the faculty at Sogang University, I served as a judge in several district courts in Korea from 1993 to 2003 and was a partner at Yulchon Law Firm from 2003 to 2007. I have also served as an advisor to the Korea Fair Trade Commission ('KFTC'), the Korea Communications Commission ('KCC'), the Ministry of Science, ICT, and Future Planning ('MSIP'), the Korea Information Society Development Institute ('KISDI'), the Korea Development Institute ('KDI'), the National Information Society Agency ('NIA'), and the Korea Internet Securities Agency ('KISA'). I am a member of the executive committee of the Korea Competition Law Association, the operating committee of the Seoul National University Competition Law Centre, the Korea Economic Law Association, the Korea Law & Economics Association, and Korea Competition Forum.

3. My resume, which lists my publications over the last ten years, is attached to this report as Exhibit 1. I have not testified at trial or deposition as an expert witness.

4. I have been asked to serve as an expert witness in this case by counsel for Defendants Ottogi Corporation, Ltd. (Ottogi) and Ottogi America, Inc.'s (Ottogi America) (collectively "Ottogi Defendants"), and Defendants Nongshim Co. Ltd. (Nongshim) and Nongshim America, Inc.'s (Nongshim America) (collectively "Nongshim Defendants"). My hourly compensation is $550.

II. Scope of Assignment and Materials Relied On

5. I have been asked to opine on document preservation obligations under the laws of the Republic of Korea. Specifically, I have been asked to review and analyze the conduct of the employees of Nongshim Defendants and Ottogi Defendants in connection with an investigation by the KFTC and opine on whether they have violated any applicable Korean law through their document retention practices. A list of materials I have relied on in preparing this report is attached as Exhibit 2.

III. Findings and Opinion

6. I understand that the Plaintiffs in this case contend that, as a result of the KFTC's on-site investigation of Ottogi and Nongshim on June 3, 2008, a general duty to preserve documents was imposed on Ottogi, Nonshim and their U.S. subsidiaries and continued

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

up to the filing of this lawsuit.[1]  There is no such general duty to preserve documents under Korean law. Moreover, the U.S. corporations, Nongshim America and Ottogi America, were not the subjects of the KFTC investigation and are not under the jurisdiction of Korean law. Thus no duty to preserve documents could be imposed on them based on Korean law. Accordingly, contrary to the Plaintiff's contention, Ottogi Defendants' and Nongshim Defendants' did not violate Korean law in any way by discarding documents in the ordinary course of business without implementing a document preservation process similar to "litigation hold" based on U.S. discovery rules.

7.   The Monopoly Regulation and Fair Trade Act of Korea (the "Fair Trade Act") is primarily enforced through administrative procedures by the KFTC, a central administrative agency. The administrative procedures by the KFTC can be classified into (i) the investigative and audit procedures, which fall under its investigative function; and (ii) the deliberative and adjudicatory procedures, which fall under its adjudicatory function. The KFTC's authority to conduct investigations derives from two types of legal provisions. One is Provision 1 of Article 50 of the Fair Trade Act, which sets forth the general investigative authority of the KFTC. The other is found in Provisions 2 and 3 of same Article, which sets forth the authority of the KFTC to delegate its on-site investigation function to public servants employed by the agency.

8.   The general methods of investigation can be categorized into summoning the parties, etc. to appear; designating experts and soliciting their opinions; and ordering the submission of documents and physical objects and taking the submitted documents and objects into custody. Practically, investigations are primarily conducted by requesting submission of documents and summoning the relevant witnesses. Request for submission of documents refers to the KFTC requesting submission of relevant documents and such from the company subject to investigation. In contrast, on-site investigation refers to the KFTC employees personally coming to the company that is subject to the investigation, and requesting submission of documents and questioning company officers and employees to obtain answers. On-site investigations primarily involve requesting submission of documents and having company officers and employees prepare confirmation statements and witness statements.

9.   On-site investigations of the KFTC is distinguishable from the search and seizure that requires a bench warrant. Accordingly, even if company officers and employees refuse, interfere with, or evade the investigation conducted by the investigative officers of the KFTC, the investigative officer cannot use physical force to coerce them. However, if any such act constitutes obstruction of the investigation, the KFTC may cause legal disadvantages through its decisions or impose punishments and/or fines on the company and/or the offending person. This is called "indirect" compulsory power.[2]

---

[1]  Plaintiffs' Motion to Sanction Ottogi Co., Ltd. and Ottogi America, Inc. for Spoliating Evidence and Memorandum of Points and Authorities in Support Thereof ("Ottogi Sanctions Motion") at 19.

[2]  Dae Sik Hong, Soo Hee Choi, "A review into the procedures employed by the KFTC in handling the acts in violation of the Fair Trade Act," Studies on the Competition Laws Vol. 13 (2006), 296.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

10. The legal framework governing the act of obstructing investigation or withholding cooperation is Article 67 of the Fair Trade Act. Actions constituting obstruction of investigation subject to punishments under Article 67 of the Act are: (1) failure to submit requested information or objects or submission of false documents or physical objects (Paragraph 9); and (2) refusal of, interfering with, and evading an on-site investigation (Paragraph 10). These two types of acts share the common feature of being related to submission of information. But these acts are clearly different in their scope of application and required elements.3

11. Acts proscribed by Paragraph 9 (pre-amendment Article 69, Section 2, Provision 1, Paragraph 6) corresponds to the order from the investigative official for submission of documents and/or physical artifacts in the general setting as set out in Article 50.1.3 of the Act or to the order from the investigative official for submission of documents and/or physical artifacts in the on-site investigation as set out in Paragraph 3 of the aforementioned article. In cases where such orders are handed down to seek submission of documents and/or physical artifacts, the investigative official specifies the documents and/or physical artifacts required for investigation in handing down his or her order, so failure to submit such specified documents or submitting false documents and/or physical artifacts constitute an act of violation. Accordingly, with respect to the specific documents and/or physical artifacts ordered to be submitted, an obligation may occur to the company officers and employees to preserve it as-is and not to alter its content if they have those specific documents and/or physical artifacts.

12. By contrast, acts proscribed by Paragraph 10 (pre-amendment Article 69, Section 2, Provision 1, Paragraph 7) corresponds to the on-site investigative authority pursuant to Article 50.2 of the Act. Paragraph 10 clearly states "when conducting an investigation in accordance with Article 50.2," thereby limiting the circumstances to which its authority governing an act of refusing, interfering with, and evading an on-site investigation applies. Only under such circumstances of on-site investigation, an act of "refusing, interfering with, and evading an investigation through such things as concealment, disposal, denial of access, or falsification or tampering" shall become an illegal. In this context, unlike Paragraph 9, the scope of documents subject to violation has no limitation. However, an act of violation can occur only from the time when the on-site investigation has commenced; thus, even if an obligation to preserve documents

---

3 The Declarations of Hey Sook Seo, Song Ryu and Jung Eun Choi all cite to Article 69, Section 2, Provision 1, Paragraph 7. *See, e.g.,* Declaration of Jung-eun Choi In Support of Plaintiffs' Motion for Spoliation ("Choi Decl.") ¶ 3; Declaration of Song Ryu in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions ("Ryu Decl.") at ¶ 9; Declaration of Hye Sook Seo In Support of Nongshim Co. Ltd.'s and Nongshim America, Inc.'s Opposition to Plaintiffs' Motion to Sanction Nongshim Defendants for Spoliating Evidence ("Seo Decl.") ¶ 4. However, due to amendments of law effective April 18, 2017, this provision has been deleted. Instead, Article 67, Paragraph 10, which corresponds to the old Article 69, Section 2, Provision 1, Paragraph 7, was created and subjects the same conduct to penalty. Moreover, old Article 69, Section 2, Provision 1, Paragraph 6 was also deleted and a corresponding Article 67, Paragraph 10 was created and subjects the same conduct to penalty. There is no substantive difference between the old statutes and the new statutes in terms of what conduct they proscribe.

may arise, the duration of that obligation only lasts as long as the onsite investigation is ongoing.

13. In this regard, in the declaration of attorney Jeong-eun Choi, she argues that, based on the content of a written statement (OTGKR-0018191) that the KFTC sent to ramen manufacturers, including Ottogi and Nongshim, requesting submission of information, the KFTC recognized that the old Article 69-2.1 of the Act (amended as of April 18, 2017) was also applicable to the interference with the investigations after the initiation of the on-site investigation.[4] However, this written statement of request for document submission was based on pre-amendment Article 69, Section 2, Provision 1, Paragraph 6, which corresponds to the Article 67, Paragraph 9 of the current Act, and this provision is only applicable where specific documents were ordered to be submitted.[5] Attorney Choi cites the content of the same document to argue that pre-amendment Article 69, Section 2, Provision 1, Paragraph 7, which corresponds to the Article 67, Paragraph 10 of the current Act, is not limited to acts of interference during an onsite investigation.   But this interpretation completely ignores the difference in scope between Paragraphs 6 and 7 of the pre-amendment Article 69, Section 2, Provision 1.[6] Furthermore, Attorney Choi's argument is premised on the assumption that the pre-amendment Article 69, Section 2, Provision 1, Paragraph 7 serves as the basis for a general duty to preserve documents, but as explained above, even if a duty to preserve is triggered under this provision, such duty would be limited to the circumstances of the on-site investigation.   After the end of the onsite investigation, the duty to preserve would not continue and the argument that such duty continued to 2012 after the termination of the entire KFTC investigation is baseless.

14. Prior to 2016, there had been no guidance provided by the laws and decrees, or by the internal regulations of the KFTC in regards to the methods and procedures of on-site investigation. The investigative officials of the KFTC had the customary practice of conducting on-site investigation without prior notification or explanation about the investigative target and scope. In particular, in case of unjust concerted acts, in most cases, they took the approach of a surprise raid for on-site investigations, employing the so-called Dawn Raid. This is an investigative technique to address the concern that companies might conceal relevant documents when they are given prior notice of the scheduled on-site investigation. However, as a result of such practice, the on-site investigation was frequently conducted in a manner like search and seizure by way of bench warrant, which on occasion stirred up legal controversies.

15.   An exemplary case in point is the case of investigation obstruction acts on the part of the officers and employees of Samsung Electronics. In this case, while conducting an on-site investigation, the investigative official requested a Samsung Electronics employee to allow viewing of Single, i.e. the intranet for Samsung Electronics, to check

[4] Supplemental Declaration of Jung-eun Choi In Support of Plaintiffs' Reply to Its Motions to Sanction Nongshim and Ottogi Defendants for Spoliation of Evidence (Choi Supp. Decl.) ¶ 6.

[5] OTGKR-0018191.

[6] Choi Supp. Decl. ¶ 6

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

on the suspected violation of subcontracting laws. However, the employee refused it on grounds of protecting company's confidential information and his/her own personal information. The KFTC imposed a fine on the employee on grounds that this act falls into an act of refusing, interfering with, and evading an investigation. In the appeal procedure for dissatisfaction, the court of first instance once again imposed a fine, but the appeals court revoked the decision made by the court of first instance based on its determination that the refusal to the investigation was not an act of violation since the on-site investigation of the KFTC exceeded the purview of its investigative authority.[7] The reasons for the determination made by the appeals court are as follows. First, the viewing as requested by the investigative official targeted the entirety of the company internal communications network, and as such it was closer to the search requiring a bench warrant, rather than the legally sanctioned investigation of computerized documents or request for submission of documents. Secondly, in case an investigative official suspects that relevant documents are conveyed and stored by using the company's internal computer network, aside from investigating the concerned documents or computerized documents by demanding those documents, etc., an investigative official of the KFTC is not granted with the authority to the extent of gaining access to the company's internal computer network itself and having unlimited viewing of it to search for those documents, etc. on his/her own, and also, there are concerns that such granting of unlimited authorization to view the internal computer network might expose company's trade secrets or the employee's personal information, etc. outside of the company. So it is a stretch to see it as an "investigation within the necessary minimum scope" as set out in Article 50.2 of the Fair Trade Act. The Supreme Court also accepted the appeals court decision as fair and just, and thereby dismissed the appeal filed by the prosecution.[8] Such determination by the courts supports that, even when the KFTC conducts an on-site investigation, there would not arise a general open-ended obligation to preserve all of the documents that might be related to the investigation, but instead, there would occur a limited obligation to preserve those specific documents that are requested by the investigative official for submission or preservation within the scope of being required for the investigation.

16. The KFTC has the discretion as to when to take general investigations and the on-site investigations and in what sequence of steps. In case of investigating an unjust concerted act that typically requires secrecy of the investigation, on many occasions, a surprise raid type of on-site investigation is conducted in the first place so as not to give the corporations the time to respond to the investigation and the suspected charges are constructed based on the documents obtained during the on-site investigation, and then, a general investigative method is employed to order the corporations to submit additionally specified documents.

17. According to the declarations of Young Hyun Doh and Bangwan Ku, employees of

---

[7] Suwon District Court decision on August 3, 2010. 2008 *Ra* 609.

[8] Supreme Court decision on October 20, 2014. 2010 *Ma* 1362.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

Ottogi, the KFTC first conducted an on-site investigation on Ottogi Korea corporate office on June 3, 2008 beforehand in this case as well, and then, on June 27, 2008, requested that Ottogi submit the final papers used for their internal approval of price changes during the period between 2001 and 2008.[9]  Since the on-site investigation by KFTC came as a surprise raid, Ottogi and Nongshim were not in a position to anticipate any such on-site investigation in advance and there is absolutely no basis to believe that acts were taken during the on-site investigation that could be suspect of interference with the investigation. Moreover, Ottogi and Nongshim's obligations were merely to maintain the documents specifically requested by the KFTC on June 27, 2008 if they were in their possession.

18. Following three (3) rounds of on-site investigations, to accommodate KFTC's demand for submission of documents, Ottogi searched the documents kept internally but was only able to locate a portion of the documents generated in the price-increase decision-making processes in 2002 and 2004. In light of the on-site investigation where KFTC conducted the investigation practically in a manner of search and seizure and did not specify what documents they had in possession, Ottogi was neither incentivized nor capable of withholding documents or discarding them.   If Ottogi claimed it did not have certain documents when in fact it had those documents, a review by KFTC of the documents it had already obtained during the on-site investigation would easily reveal that Ottogi was lying. In particular, KFTC demanded that Ottogi submit its internal proposals for approval and the memos attached thereto which serve as the direct evidence of price increase decision; I think that KFTC was seeking convenience of corroborating a situation where it had already secured circumstantial evidence for price increase decision through their on-site investigations. In response to the repeated demands from the KFTC investigators, the employees and officers of Ottogi submitted documents by reproducing those similar to the final memos on the basis of earlier drafts of the memos saved in computer files in connection with the internal proposals for approval in 2002 and 2004 or by restoring the documents that bear maximum similarity to the final memos by using the descriptions from the employees or work correspondence documents.[10]  Such are unavoidable acts to cooperate with the investigative practices of KFTC that favors direct evidence; and as such, they are in no way comparable to concealing or discarding documents. The documents so reproduced or restored were cited in the written resolution by KFTC as the evidence for recognizing the completion of Ottogi's internal price increase proposals for approval in 2002.[11]

---

[9]  Declaration of Young Hyun Doh in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions ("Doh Decl.") at p. 2-4; Declaration of Bangwan Ku in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions ("Ku Decl.") at p. 1-5.

[10]  Ku Decl. at p. 3-4; Doh Decl. at 3-4.

[11]  It was cited as the Exhibit 81 Ottogi's 2002 price increase proposal for approval in KFTC Resolution #2012-107 dated July 12, 2012.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

19. I believe that the practice of on-site investigation by KFTC has been substantially improved after the implementation of institutionalized practices in October 2015. However, at least at the time of the investigation of this case, it had procedural problems wherein, more often than not, the KFTC obtained documents by way of de facto search and virtual seizure without specifying and demanding documents during the on-site investigation, and the KFTC failed to provide a list of obtained documents to the concerned corporation. The decision by the court in the case of Samsung Electronics shows it well, the true state of things. I believe that the situation at the time of this case was no different. In such a situation, Ottogi and Nongshim would not have been incentivized or capable of discarding or altering the documents required for the investigation. In case of reproducing or restoring the final memos that they did not have in their possession in response to the KFTC's demand for submission, these acts were to cooperate with the KFTC's repeated demands to secure officially approved final request for approval to use as direct evidence even though the KFTC had already obtained similar evidence. Such acts should not be viewed as an act of violating a general open-ended obligation to preserve documents at large, when such obligation does not exist in Korean laws and decrees or an act similar thereto.

20. Under the laws of Korea, the commencement of an investigation by the KFTC does not trigger a general obligation to preserve documents or refrain from discarding documents pursuant to routine practices. Moreover, as discussed above, even the duty to preserve documents specifically requested by the KFTC ends upon the termination of the investigation. There is no basis in Korean law for Plaintiffs' contention that there exists an ongoing duty to preserve all documents relating to the KFTC investigation. Moreover, foreign corporations that were not subject to the KFTC investigations are not even within the jurisdiction of Korean law. Accordingly, Ottogi Defendants and Nongshim Defendants discarding of documents and information in the ordinary course of business does not violate Korean law in anyway.

Date: _____    Signature: _____

                                            Dae Sik Hong, Ph. D

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

# CERTIFICATION OF TRANSLATION

# and

# DECLARATION

State of California        )
                                      )     S. S.

Los Angeles County     )

      I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the foregoing **8** pages of **Declaration of Dae Sik Hong** from Korean to English in accordance with Fed. R. Evid. 901 and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 21, 2017

Soomi Ko
California State Certified Court Interpreter
#300732
Direct: (213) 999-7848
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

**EXPERT REPORT**

**OF**

**DAE SIK HONG, PH.D.**
PROFESSOR OF LAW

**in connection with**

**In re: Korean Ramen Antitrust Litigation**

**United States District Court**

**Northern District of California**

**San Francisco Division**

Civil Action No. C-13-04115-WHO

**July 21, 2017**

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

I.   배경 및 자격

1.   본인은 서울에 있는 서강대 법학전문대학원 (Law School) 교수로 재직 중입니다. 본인은 서울 대학교 법학과에서 1990 년 학사 학위를, 그리고 서울 대학교 법학 대학원에서 1996 년 LL.M 과 2006년 박사 학위를 수여하였습니다.   본인은 영국의 있는 University College London 과 미국의 Berkeley 대학에서 방문 학자였습니다. 본인은 시장 지배적 지위의 남용, 카르텔, 불공정 거래 행위, 사적 집행, 지적 재산권 관련 문제 및 규제 산업등 을 포함한 다양한 경쟁법 문제에 관한 전문가 입니다.

2.   서강대 교수진에 합류하기 이전, 1993 년부터 2003 년까지 한국의 여러 지방 법원에서 판사로 재직했으며, 2003 년부터 2007 년까지 법무법인 율촌 파트너였습니다. 또한 한국 공정 거래 위원회 ("KFTC" 또는 "공정위"), 방송 통신위원회 ("KCC"), 과학 기술 정보 통신부 ("MSIP"), 한국 정보 통신 정책 연구원 ("KISDI"), 한국 개발원 ("KDI"), 한국정보화진흥원으로 ("NIA"), 한국 인터넷 진흥원 ("KISA") 등에 고문으로 활동 하였습니다. 본인은 한국 경쟁법 협회 집행위원회 위원, 서울대학교 경쟁법센터 운영위원회 운영 위원, 한국 경제법 학회, 한국 법 경제 학회, 한국 경쟁 포럼등의 회원입니다.

3.   최근 10년 동안 본인의 출판물들을 나열한 본인의 이력서를 별첨 1 로 첨부 하였습니다.   본인은 재판이나 deposition 에서 전문가 자격으로 증언을 한 바는 없습니다.

4.   본인은 이 사건의 피고인 오뚜기 주식회사 ("오뚜기") 와 오뚜기 아메리카 (함께 "오뚜기 피고들") 와 주식회사 농심 ("농심")과 농심 아메리카 (함께 "농심 피고들") 의 변호인으로부터 전문 증인을 해달라는 요청을 받았습니다.   본인의 시간당 보상액은 $550 입니다.

II.   과제의 범위 및 참고자료

5.   본인은 대한민국 법률 아래 문서 보존 의무에 대한 의견을 피력해 달라는 요청을 받았습니다. 구체적으로, 공정위의 조사와 관련하여 농심 피고와 오뚜기 피고의 임직원의 행동을 검토하고 분석하여, 문서 보존 관행을 통해 관련 한국 법을 위반했는지 여부를 검토해 달라는 요청을 받았습니다. 이

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

보고서를 준비 할 때 본인이 참고한 자료 목록은 별첨 2로 첨부하였습니다.

III.   결과와 견해

6. 본 사건에서 원고는 공정위가 2008 년 6 월 3 일경 오뚜기와 농심을 상대로 진행한 현장조사로 인해, 오뚜기 와 농심, 그리고 이들의 미국 자회사들에게 일반적인 자료 보존 의무가 부여되었으며 본 소송이 제기될 때까지 지속 되었다고 주장 하는 것으로 알고 있습니다.[1]   이러한 일반적인 자료 보존 의무는 한국법에는 존재하지 않습니다. 또한 미국 법인인 농심 아메리카나 오뚜기 아메리카는 공정위의 조사 대상이 아니었으며 한국법의 관할 대상도 아니므로 한국법에 기초한 그 어떠한 자료 보존 의무도 부여되지 않습니다.   따라서, 원고들이 주장 하는 것과 달리, 오뚜기 피고들이나 농심 피고들의 임직원들이 미국 discovery 법에 기초된 "litigation hold"와 유사한 자료 보존 제도를 도입 하지 않고 통상적인 업무 관행상 문서 및 정보를 폐기한 행위는 한국법에 전혀 위반되는 행위가 아닙니다.

7. 한국의 공정거래법은 주로 중앙행정기관인 공정위에 의한 행정절차에 의하여 집행됩니다. 공정위에 의한 행정절차는 행정조사에 속하는 (1) 조사 및 심사절차와 (2) 심판 업무에 속하는 심의 및 의결절차로 구분됩니다. 공정위가 조사절차에서 조사를 행하는 권한은 두 가지 유형의 규정에서 유래합니다. 하나는 공정거래법 제50조 제1항으로서 여기서는 공정위의 일반적인 조사권한을 규정하고, 다른 하나는 같은 조 제2항, 제3항으로서 여기서는 공정위의 현장조사권한을 소속 공무원에게 위임할 수 있는 근거를 규정합니다.

8. 일반적인 조사의 방법은 당사자등의 출석 요구, 감정인의 지정 및 감정위촉, 자료나 물건의 제출 명령 및 제출된 자료나 물건의 영치로 구분됩니다. 실제 조사는 주로 자료제출 요구, 소환조사의 형태로 이루어집니다. 자료제출 요구란 공정위가 조사 대상 회사에게 관련 문서 등의 제출을 요구

---

[1] Plaintiffs' Motion to Sanction Ottogi Co., Ltd. and Ottogi America, Inc. for Spoliating Evidence and Memorandum of Points and Authorities in Support Thereof ("Ottogi Sanctions Motion") at 19.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

하는 것을 말합니다. 이에 대해 현장조사란 공정위 직원들이 조사 대상 회사에 직접 와서 자료제출을 요구하거나 임직원들에게 질문하고 답하는 것을 말합니다. 현장조사에서는 자료제출요구 및 임직원들에 대한 확인서 및 진술서의 작성이 주로 이루어집니다.

9. 공정위의 현장조사는 영장을 요하는 압수수색과는 구별됩니다. 따라서 조사현장에서 회사 임직원들이 공정위 조사공무원의 조사를 거부, 방해 또는 기피하더라도 조사공무원이 이를 물리력으로 제압할 수는 없습니다. 다만 그 행위가 조사방해행위에 해당하면 공정위 결정으로 회사 및/또는 행위자에게 법적인 불이익 또는 형벌, 과태료를 부과할 수 있습니다. 이를 '간접적' 강제력이라고 합니다.[2]

10. 조사방해나 비협조행위에 대한 법적 근거는 공정거래법 제67조입니다. 법 제67조에서 형벌 대상으로 하고 있는 조사방해행위는 (1) 자료나 물건의 제출 명령에 따른 필요한 자료 미제출이나 허위 제출 (제9호)와 (2) 현장조사 시 조사 거부, 방해, 및 기피 (제10호)입니다. 이 두 행위는 자료 제출과 관련된 행위라는 공통점을 갖고 있습니다. 그러나 두 행위의 적용범위나 요건은 분명히 구별됩니다.[3]

11. 제9호(개정 전 법 제69조의2 제1항 제6호)의 행위는 법 제50조 제1항 제3

---

[2] 홍대식·최수희, "공정거래법 위반행위에 대한 공정거래위원회의 사건처리절차에 관한 검토", 경쟁법연구 제13권 (2006), 296.

[3] 서혜숙, 류송, 최정은 변호사의 진술서에는 법 제69조의2 제1항 제7호를 인용하고 있습니다. *See, e.g.,* Declaration of Jung-eun Choi In Support of Plaintiffs' Motion for Spoliation ("Choi Decl.") ¶ 3; Declaration of Song Ryu in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions ("Ryu Decl.") at ¶ 9; Declaration of Hye Sook Seo In Support of Nongshim Co. Ltd.'s and Nongshim America, Inc.'s Opposition to Plaintiffs' Motion to Sanction Nongshim Defendants for Spoliating Evidence ("Seo Decl.") ¶ 4. 그러나 2017. 4. 18. 법 개정으로 이 조항은 삭제되었습니다. 그 대신에 개정 전 법 제69조의2 제1항 제7호에 상응하는 제67조 제10호가 신설되어 동일한 행위가 형벌 부과 대상이 되었습니다. 또한 개정 전 법 제69조의2 제1항 제6호도 삭제되었으며 그에 상응하는 67조 제9호가 신설 되어 동일한 행위가 형벌 부과 대상이 되었습니다.  이전 법과 새로운 법 사이에 위반행위 관련ㄹ애서 실질적인 차이는 없습니다다.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

호에 정한 일반적인 조사공무원의 자료나 물건 제출 명령 또는 같은 조 제3항에 정한 현장조사 시 조사공무원의 자료나 물건 제출 명령에 대응합니다. 이러한 자료나 물건 제출 명령의 경우 조사공무원이 조사에 필요한 자료나 물건을 특정하여 제출할 것을 명하기 때문에, 특정된 그 자료를 제출하지 않거나 거짓의 자료나 물건을 제출하는 것이 위반행위가 됩니다. 따라서 제출을 명한 특정 자료나 물건에 대하여는 회사 임직원이 그 특정 자료나 물건을 갖고 있는 경우 현상 그대로 보존할 의무가 발생할 수 있습니다.

12. 이에 대하여 제10호(전 법 제69조의2 제1항 제7호)의 행위는 법 제50조 제2항에 따른 현장조사권한에 대응합니다. 제10호에는 분명히 "제50조 제2항에 따른 조사 시"라고 규정하여 조사 거부, 방해 또는 기피 행위가 성립하는 상황을 한정하고 있습니다. 그러한 현장조사 상황에서만 "자료의 은닉, 폐기, 접근거부 또는 위조, 변조 등을 통하여 조사를 거부, 방해 또는 기피하는" 행위가 위법이 됩니다. 여기서 위반의 대상이 되는 자료의 범위에는 제9호와 달리 제한이 없습니다. 그러나 위반행위가 현장조사가 개시된 상황에서 비로소 성립할 수 있으므로, 자료를 현상 그대로 보존하거나 변경하지 않을 의무가 발생한다고 하더라도 그 시점은 현장조사가진행되는 당시만 이라고 보아야 합니다.

13. 이와 관련하여 최정은 변호사의 진술서에서는 공정위가 오뚜기와 농심을 포함한 라면제조회사에게 자료제출을 요청하며 보낸 서면(OTGKR-0018191)의 내용을 근거로 하여 개정 전 법 제69조의2 제1항이 현장조사가 이루어질 때 발생하는 조사방해행위에도 적용된다는 것을 공정위가 인식하고 있다고 주장하고 있습니다.[4] 그러나 이 자료제출 요청 서면은 현행법 제67조 제9호에 상응하는 개정 전 법 제69조의2 제1항 제6호에 근거한 서면이고, 이 조항은 필요한 자료를 특정하여 제출을 명하는 경우에만 적용되는 조

---

[4] Supplemental Declaration of Jung-eun Choi In Support of Plaintiffs' Reply to Its Motions to Sanction Nongshim and Ottogi Defendants for Spoliation of Evidence (Choi Supp. Decl.) ¶ 6.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

항입니다.[5] 최변호사는 또한 현행법 제67조 제10호에 상응하는 개정 전 법 제69조의2 제1항 제7호가 현장조사 시에 발생하는 조사방해행위에 한정되는 것으로 해석되지 않는다고 주장하면서 이 서면의 내용을 들고 있는데, 이는 개정 전 법 제69조의2 제1항 제6호와 제7호의 적용범위의 차이를 무시한 해석입니다.[6] 더욱이 최변호사의 주장은 개정 전 법 제69조의2 제1항 제7호가 일반적인 자료 보존의무의 발생 근거라는 전제를 갖고 있지만, 이미 설명한 바와 같이 이 조항에 의하여 자료 보존의무가 발생한다고 하더라도 현장조사 당시의 상황을 주로 상정한 것입니다.  현장조사가 종료된 후에는 해당 보존의무가 지속되지 않으며, 모든 공정위 조사가 끝난 2012 이후에도 이런 보존의무가 지속되었다는 주장은 아무런 근거가 없는 주장입니다.

14. 2016년 전까지 현장조사의 방법과 절차에 대하여는 법령이나 공정위의 내부규정에도 아무런 지침이 없었습니다. 공정위 조사공무원들은 사전 통보나 조사 대상 및 범위에 대한 설명 없이 현장조사에 임하는 관행이 있었습니다. 특히 부당한 공동행위 사건의 경우 대부분 기습적인 현장조사, 이른바 Dawn Raid 방식을 취했습니다. 이는 미리 현장조사 예정 사실을 통보할 경우 기업들이 관련 자료를 은닉할 가능성을 염두에 둔 조사기법입니다. 그러나 그로 인하여 현장조사가 사실상 영장에 의한 압수수색을 방불하게 하는 방식으로 이루어지는 경우가 빈번하게 발생하여 법적인 논란이 야기되기도 하였습니다.

15. 대표적인 사건이 삼성전자 소속 임직원들의 조사방해행위 사건입니다. 이 사건에서 공정위 조사공무원은 삼성전자 현장조사 시 하도급법 위반 혐의 내용을 확인하기 위하여 삼성전자 직원에게 삼성전자의 사내 통신망인 싱글의 열람을 요구하였으나, 그 직원은 회사의 기밀 및 개인정보 보호를 이유로 이를 거부하였습니다. 공정위는 이 행위가 조사를 거부, 방해 또는 기피한 행위에 해당한다는 이유로 그 직원에 대한 과태료를 부과하였습니다.

---

[5] OTGKR-0018191.

[6] Choi Supp. Decl. ¶ 6

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

이에 대한 이의제기절차에서 제1심법원은 다시 과태료를 부과하였으나, 항고법원은 공정위의 현장조사가 조사권의 범위를 넘는 것이므로 그 조사를 거부하더라도 위반행위가 되지 않는다고 판단하여 원심결정을 취소하였습니다.[7] 항고법원의 판단 이유는 다음과 같습니다. 첫째, 조사공무원이 요구한 내부 통신망 전체를 대상으로 한 열람은 법에서 예정하고 있는 전산자료의 조사나 자료의 제출요구라기보다는 영장의 대상인 수색에 더 가까운 행위라는 것입니다. 둘째, 서류가 회사의 내부전산망을 통하여 전달. 보관되고 있다는 의심을 가지게 된 경우, 그 서류 내지 전산자료에 대한 제출을 요구하여 이를 조사함은 별도로 하더라도, 공정거래위원회의 조사공무원이 스스로 그 서류 등을 찾기 위하여 내부전산망에 대한 접근권한을 얻어 무제한적으로 이를 열람할 권한까지는 부여되어 있지 아니할 뿐만 아니라, 내부전산망에 대한 무제한적인 열람권의 부여로 인하여 회사의 영업비밀이나 관련 직원의 개인정보 등이 외부로 노출될 우려도 있어 이를 공정거래법 제50조의2에 규정된 '필요한 최소한의 범위 안에서의 조사'라고 보기 어렵다는 것입니다. 대법원 역시 항고법원의 판단을 정당한 것으로 받아들여 검사의 상고를 기각하는 결정을 하였습니다.[8] 이러한 법원의 판단은 공정위가 현장조사를 하더라도 조사와 관련될 수 있는 모든 자료에 대한 일반적인 보존의무가 발생하는 것이 아니라 조사공무원이 조사에 필요한 범위에서 특정하여 제출 또는 보존을 요청한 자료에 한정된 보존의무만이 발생할 수 있음을 뒷받침합니다.

16. 공정위가 일반적인 조사와 현장조사를 언제, 어떤 순서로 행사할 것인지는 재량에 맡겨져 있습니다. 통상적으로 조사의 비밀성을 요하는 부당한 공동행위 조사의 경우에는 기업들이 조사에 대응할 시간을 주지 않기 위하여 기습적인 현장조사를 먼저 실시하고 현장조사에서 얻게 된 자료를 토대로 하여 혐의 내용을 구성한 후 일반적인 조사 방식으로 추가적인 자료를 특정하여 제출을 명하는 경우가 많습니다.

---

[7] 수원지법 2010. 8. 3.자 2008라609 결정.

[8] 대법원 2014. 10. 30.자 2010마1362 결정.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

17. 오뚜기 임직원인 도영현, 구방완의 진술서에 의하면, 이 사건에서도 공정위는 2008. 6. 3. 오뚜기 코리아 본사에 대한 현장조사를 먼저 실시한 후 2008. 6. 27. 2001년부터 2008년까지 가격 변동에 대하여 내부적으로 승인하기 위하여 사용된 최종 기안용지의 제출을 요구하였습니다.[9]  공정위의 현장조사가 기습적으로 이루어졌던 만큼 오뚜기와 농심으로서는 현장조사 전에 이를 예상할 수 있는 상황이 아니었고 현장조사 기간 중에도 조사방해행위로 의심될 만한 행위가 발생하였다는 근거는 전혀 없습니다.  또한 오뚜기와 농심으로서는 2008. 6. 27.에 공정위가 특정하여 제출을 요청한 자료에 한정하여 그 자료를 갖고 있다면 현상 그대로 보존하여 제출할 의무를 부담하게 될 뿐이었습니다.

18.  오뚜기는 모두 3차례에 걸친 현장조사에 뒤이어 제기되는 공정위의 자료 제출요구에 응하기 위하여 내부에 보관하고 있는 자료를 찾아보았지만 2002년과 2004년의 경우 가격인상결정 과정에서 생성되는 자료 중 일부만을 찾을 수 있었습니다.[10] 오뚜기로서는 공정위가 자료를 특정하여 요구하지 않고 사실상의 압수수색의 방식으로 진행하는 현장조사에서 어떤 자료를 입수하였는지 알 수 없는 상황에서 공정위가 요구하는 자료를 제출하지 않거나 폐기할 유인이나 능력을 갖고 있지 못했습니다. 만일 어떤 자료를 갖고 있으면서도 갖고 있지 않다고 할 경우 공정위가 이미 현장조사에서 입수한 자료와 대조해볼 때 거짓임이 쉽게 드러날 수도 있는 상황이었기 때문입니다. 공정위는 특히 가격인상결정의 직접적 증거가 되는 내부 품의서와 그에 첨부된 메모의 제출을 요구하였는데, 이는 공정위가 이미 현장조사를 통해 가격인상결정에 관한 정황증거를 확보한 상황에서 증명의 편의를 도모하기 위한 것으로 생각 됩니다. 오뚜기 임직원들은 공정위 조사공무원의 거듭된 요구에 2002년과 2004년의 내부 품의서와 관련하여

---

[9]  Declaration of Young Hyun Doh in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions ("Doh Decl.") at p. 2-4; Declaration of Bangwan Ku in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions ("Ku Decl.") at p. 1-5.

[10]  Ku Decl. at p. 3-4; Doh Decl. at 3-4.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

컴퓨터 파일로 보관된 메모 초안에 근거하여 최종 메모에 유사한 자료를 재생하거나 회사 직원의 설명 내용 및 업무연락 서류를 사용하여 최종 메모와 최대한 유사한 자료를 복원하여 제출하였습니다.[11] 이러한 행위는 직접적 증거를 선호하는 공정위의 조사 관행에 협조하기 위한 부득이한 행위로서 자료의 은닉이나 폐기와는 전혀 유사하지 않은 행위입니다. 이렇게 재생 또는 복원된 자료는 공정위 의결서에서 2002년의 오뚜기의 가격인상 내부 품의 결재 완료 사실을 인정하는 증거로 인용되었습니다.[12]

19.  공정위의 현장조사 관행은 2015. 10. 제도 개선 이후로 많이 개선되고 있는 것으로 생각 되지만, 이 사건 조사 당시에만 해도 현장조사에서 자료를 특정하여 제출을 요구하지 않고 사실상의 압수수색을 행하여 자료를 입수하고 입수된 자료의 목록을 해당 기업에 제공하지 않는 경우가 적지 않을 정도로 절차적인 문제점을 갖고 있었습니다. 삼성전자 사건에 대한 법원의 판결이 그 실제 모습을 잘 보여줍니다. 이 사건 당시에도 상황이 다르지 않았던 것으로 생각됩니다. 이러한 상황에서 오뚜기와 농심은 조사에 필요한 자료를 폐기하거나 변경할 유인이나 능력을 갖지 못했을 것입니다. 공정위의 자료제출요구에 대하여 갖고 있지 않은 최종 메모를 재생 또는 복원한 행위의 경우 이미 유사한 증거를 확보하였음에도 공식적으로 승인이 난 최종 품의서와 같은 직접적 증거를 선호하는 공정위의 거듭된 요구에 협력하기 위한 행위로서, 이 행위가 한국 법령에서 있지 않은 일반적인 자료보존의무의 위반행위 또는 그에 유사한 행위로 평가되어서는 안 될 것입니다.

20. 한국법에는 공정위의 조사 착수로 인해 발생되는 광범위한 자료 보존 의무나 업무상 통상적인 자료 폐기를 모두 멈추어야 할 의무가 없습니다. 또한 앞서 얘기한 공정위가 특정하여 요청한 자료에 관한 제한된 보존 의무도  조사가 끝날 무렵 모두 종료 됩니다.  원고가 주장하는 공정위의 조

---

[11] Ku Decl. at p. 3-4; Doh Decl. at 3-4.

[12] 공정위 2012. 7. 12.자 제2012-107호 의결에 증거 81호 오뚜기 2002년 가격인상 품의서에 첨부된 라면류 가격 인상검토안 으로 인용되었습니다.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

사와 관련된 모든 자료를 지속적으로 보존해야 하는 의무는 한국 법령에는 아무런 근거가 없습니다.  또한, 공정위의 조사 대상도 아닌 해외법인들 경우는 한국법의 관할권 자체가 발생 하지 않습니다.  따라서 오뚜기 피고들이나 농심 피고들의 임직원들이 통상적인 업무 관행상 문서 및 정보를 폐기한 행위는 한국법에 전혀 위반되는 행위가 아닙니다.

날짜: July 22, 2017                 서명: _Dae Sik Hong_____

홍대식 법학박사

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

Exhibit A

# Dae Sik HONG

Professor

Law School, Sogang University

35 Baekbeom-ro (Sinsu-dong), Mapo-gu, Seoul 04107, Korea

E-mail: dshong@sogang.ac.kr

View my research on my SSRN Author page: http://ssrn.com/author=581185

Homepage : http://lawschooleng.sogang.ac.kr

Tel : 82-2-705-8867

Fax : 82-2-705-7834

---

Prof. Dae Sik Hong is currently a professor of Economic Law at Sogang University Law School. He is also the founding director of ICT Law & Economy Institute. Prior to joining the academia, he had an experience serving as judge at various courts for a decade and an experience practicing as partner at Yulchon law firm for about 5 years. He received LL.B., LL.M. and Ph.D. degrees from Seoul National University and was a visiting scholar at the University College London in the UK and the University of California, Berkeley in the US. His academic interest reaches to antitrust laws, consumer laws, law of regulation, particularly involving media and telecommunications sectors, and law and economics. He has published a variety of articles in many journals and conferences in Korea. He is frequently consulting as an expert advisor to the Korea Fair Trade Commission ('KFTC'), the Korea Communications Commission ('KCC'), the Ministry of Science, ICT, and Future Planning ('MSIP'), the Ministry of Public Administration and Security ('MOPAS'), the National Assembly, the Korea Information Society Development Institute ('KISDI'), the Korea Development Institute ('KDI'), the National Information Society Agency ('NIA'), and the Korea Internet Securities Agency ('KISA').

## EDUCATION

-Seoul National University, LL.B. (1990)

-Judicial Research and Training Institute, the Supreme Court of Korea (1993)

-Seoul National University, Graduate School of Law, LL.M. (1996)

-University College London in the United Kingdom (Visiting Scholar, 2001-2002)

-Seoul National University, Graduate School of Law, Ph.D. (2006)

-University of California, Berkeley in the United States (Visiting Scholar, 2013-2014)

## ADMITTED TO THE BAR

-Republic of Korea (1993)

## LEGAL EXPERIENCE

-Judge, Chunchon District Court (1993 - 1996)

-Judge, Kangnung Branch of Chunchon District Court (1996 - 1997)

-Judge, Suwon District Court (1997 - 2000)

-Judge, Seoul District Court (2000 - 2003)

-Partner, Yulchon Law Firm (2003 - 2007)

## TEACHING EXPERIENCE

-Adjunct Professor, Judicial Research and Training Institute, the Supreme Court of Korea (2003 - 2012)

-Lecturer, Seoul National University College of Law and Graduate School of Law (2003 - 2007)

-Associate Professor, Department of Law and Law School, Sogang University (2006 – 2011)

-Professor, Law School, Sogang University (2011 – present)

-Faculty Director, Legal Clinic Center, Law School, Sogang University (2012 –

present)

-Director, ICT Law & Economy Institute, Sogang University (2016 – present)

### LANGUAGES

-Korean and English

### PUBLICATIONS

#### Books

-*Monopoly Regulation and Fair Trade Act* (Co-author), Seoul: Judicial Research and Training Institute (annually updated, 2003 – 2012)

-*Monopoly Regulation and Fair Trade Act* (Co-author), Seoul: Bubmoonsa (1st Ed., 2010), (2nd Ed., 2012)(3rd Ed., 2013)(4th Ed., 2015)

-*Comprehensive Study on Cartel* (Co-author), Seoul: Korea Economic Research Institute (2010), with abstract in English

-*Data Economy* (Co-author), Seoul: Hans Media (2017)

#### Book Chapters

-Merger and Acquisition of the Insolvent Companies, Ohseung Kwon Ed., *Lectures on Competition Law Vol. 2*, Seoul: Bubmoonsa (2000)

-Administrative Fine under the Korean Fair Trade Law, Ohseung Kwon Ed., *Fair Trade and Rule of Law*, Seoul; Bubmoonsa (2004)

-Study on Unfair Commercial Practices Directive in the EU, Seoul National University Competition Law Center Research Book Series Vol. 1 (2010)

-The Standard for Determining Illegality of Exclusionary Abuse, Chulkyu Kang Ed., *The Systems for Anticorruption and Fair Trade* (2011)

-Civil Law, Commercial Law and Competition Law, Ohseung Kwon Ed., *30*

3

*Years of Korean Antitrust Law*, Seoul: Bubmoonsa (2011)

-The Standard for Determining Illegality and Criteria for Computing Antitrust Fine of Interference with the Business Activities by a Market Dominant Enterprise, Corporate Law Research Association Ed., *100 Selected Case Studies on Korean Competition Law*, Seoul: Judicial Development Foundation (2011)

-Legal Issues and Legislation Directions for Enacting the Broadcasting and Telecommunications Business Act of Korea, Jongsu Park Ed., *Information and Telecommunication Law Forum 2011*, Seoul: Sechang Publishing Company (2011)

-User Choice and User Protection in the Internet Market, Korea Association for Informedia Law Ed., *The Internet at the Crossroads*, Seoul: JungAng Books (2012)

-Competition Advocacy of Korean Competition Authority, D. Daniel Sokol and Ioannis Lianos Eds., *Competition Law and the Role of the State*, Global Competition Law and Economics Series, Stanford University Press (2014), written in English

-Developments in Legislation and Practice of Competition Advocacy, *China-Korea IP & Competition Law Annual Report 2014* (MRLC, 2015), written in English

-Developments in Legislation and Practice of Private Litigation, China-Korea IP & Competition Law Annual Report 2015 (MRLC, 2016), written in English

Articles

-Unfair Trade Practices under the Monopoly Regulation and Fair Trade Act of Korea and their Enforceability as Contracts under Contract Law, *Supreme*

4

*Court Law Review* Vol. 30 (1999)

-The Requirements for Commencement of Corporate Reorganization Proceedings, *Korean Lawyers Association Journal* Vol. 512 (1999)

-Merger Control in Korea, *Court Trial Materials* Vol. 87 (2000)

-The Criteria for Unlawfulness of Abuse of Superior Bargaining Power, *Korean Competition Law Journal* Vol. 8 (2001)

-Damages Claim under the Korean Antitrust Law, *Korean Business Law Journal* Vol. 13-2 (2003)

-Presumption of an Agreement and its Rebuttal in the Oligopolistic Markets, *Economic law Case Studies* No. 1 (2004)

-Commentary on M&A Review Guidelines under the Korean Fair Trade Law(Co-author), *BFL* Vol. 9, Seoul National University Financial Law Center (2005)

-Enforcement of Cartel Regulation, *Korean Competition Law Journal* Vol. 12 (2005)

-Merger Regulation under the Korean Competition Law-Based on M&A Review Guidelines and KFTC's Decisions-(Co-author w/Sai-Ree Yun), *Journal of Korean Law*, Vol. 4, No. 2 (2005), written in English, available at SSRN: http://ssrn.com/abstract=1333150

-Commentary on Case Management Procedure of Korea Fair Trade Commission regarding Korean Fair Trade Law infringements (Co-author), *Korean Competition Law Review*, Vol. 13 (2006)

-Criteria for Computing Administrative Fines under the Telecommunications Business Act of Korea, *Sogang Law Review*, Vol. 8 (2006), with abstract in English

-Unfair Trade Practices in Relation to Public Order and Good Moral,

*Comparative Private Law*, Vol. 14, No. 1 (2007), with abstract in English

-The Present Situation and Improvement Scheme of Administrative Fine System in the Fair Trade Act of Korea, *Administrative Law Review*, No. 18 (2007), with abstract in English

-Calculation of Damages Caused by Cartel: Theory and Practice, *Comparative Private Law*, Vol. 14, No. 3 (2007), with abstract in English

-Commentary on Revision to the M&A Review Guidelines: With a Focus on the Assessment of Competition-restrictiveness, *Lawyers Association Journal*, No. 622 (2008)

-The Problems and Improvement Scheme of Regulation of Prohibited Activities in the Korean Broadcasting Markets, *Journal of Law and Economic Regulation*, Vol. 1, No. 1 (2008), with abstract in English

-Constitution of Unfair Subsidy relating to Capital Transaction, *Korean Competition Law Review*, Vol. 17 (2008), with abstract in English

-Constitution of Unreasonable Collaborative Acts: Case Study, *Sogang Law Review*, Vol. 10, No. 1 (2008), with abstract in English

-Korean Competition Law from a Private Law Perspective: Focused on Abuse of Market-dominant Position, *Commercial Law Review*, Vol. 27, No. 2 (2008), with abstract in English

-Unfair Trade Practices from a Private Law Perspective, *Korean Competition Law Review*, Vol. 18 (2008), with abstract in English

-Challenges and Prospects of the Would-be Consolidated Broadcasting and Telecommunications Law: From the Competition Law Perspective, *IT & Law Review*, Vol. 3, Kyungbuk National University (2009. 2.), with abstract in English

-Competition Law and Intellectual Property Laws: Claim against Competition

Law Infringement and Lawsuit requesting Prohibition of Injury to Intellectual Property Right, *Civil Cases Review*, Vol. 31 (2009. 2.), with abstract in English

-Creating Competitive Markets and Competition Law: The Case of the Ubiquitous City Service Markets, *Korean Competition Law Review*, Vol. 19 (2009. 5.), with abstract in English

-Trends and Issues about the Private Enforcement of Korean Competition Law, *Competition Journal*, Vol. 145 (2009. 7.)

-Competition Law Problems and Countermeasures relating to the Provision of the Premium Broadcasting Content in the Multichannel Pay Broadcasting Market, *Journal of Korea Informedia Law*, Vol. 13 No. 2 (2009. 8.), with abstract in English

-Convergence of Broadcasting and Telecommunications and Improvements in User Protection System: Introductory Review, *Administrative Law Review*, No. 25 (2009. 12.), with abstract in English

-The Standard for Computing Administrative Fines Regarding Abuse of Market-dominant Position, *Sogang Law Review*, Vol. 11 No. 2 (2009. 12.), with abstract in English

-Improvement Scheme of Standard for Determining Abuse of Market-dominant Position, *Korean Competition Law Review*, Vol. 21 (2010. 5.), with abstract in English

-Study on the System of the Wholesale Provision of Telecommunications Services, *Korean Journal of Law and Economics*, Vol. 7 No. 1 (2010. 6.), with abstract in English

-Issues on Administrative Fine Systems in the Broadcasting and Telecommunications Laws, *Journal of Law and Economic Regulation*, Vol. 3. No. 2 (2010. 11.), with abstract in English

-*Ex Post* Behavioral Regulation System on Telecommunications Business Operators, *Korean Competition Law Review*, Vol. 22 (2010. 11.), with abstract in English

-Issues on Cartel Regulation under the Korean Competition Law: Focused on Substantive Law Issues, *Journal of Regulation Studies*, Vol. 19 No. 2 (2010. 12.), with abstract in English

-Private Enforcement of Antitrust Law in Korea (Co-author w/Sung Moo Jung & Suejung Alexa Oh), *International Antitrust Committee: The Newsletter*, ABA Section of International Law (2011. 1.), written in English

-Improvement Scheme of Criteria for Calculating Administrative Fines for Prohibited Activities under the Telecommunications Business Act of Korea, *IT & Law Review*, Vol. 5, Kyungbuk National University (2011. 2.), with abstract in English

- Review of Major Issues on Defining Relevant Market: Focused on Necessity of and Standard for the Market Definition by Conduct Types (Co-author), *Korean Competition Law Review*, Vol. 23 (2011. 5.), with abstract in English

-Roles and Tasks of the Korean Fair Trade Commission as an Enforcer: with Administrative Legislation as a Material for Discussion, *Seoul Law Journal*, Vol. 52, No. 2, Seoul National University (2011. 6.), with abstract in English

-Is it Possible to Decide whether Royalty Rates are Excessive based on Competition Law? (Co-author w/Kwon, Namhoon), *Competition Journal*, No. 156 (2011. 6.)

-How to make Decision based on Competition Law on Issues surrounding Standardization and Exercise of Patent Rights, (Co-author w/Kwon, Namhoon), *Competition Journal*, No. 157 (2011. 7.)

-Institutions for Protection of User Rights and Improvement Schemes thereof in

the Korean Pay TV markets, *Digital Media Trend*, No. 63 (2011. 7.)

-Royalty Rates for Intellectual Property Rights and the Role of Antitrust Law (Co-author w/Kwon, Namhoon), *Journal of Korea Informedia Law*, Vol. 15, No. 2 (2011. 8.), with abstract in English

-Exclusive Dealing, Competition-restrictiveness Standard or Coercion Standard?, *Lawyers Association Journal*, No. 661 (2011. 10.)

-Status and Role of Necessity of Business Administration in Determining the Unfairness of Unfair Subsidy, *Korean Competition Law Review*, Vol. 24 (2011. 11.), with abstract in English

-Establishment Method of the Regulatory Framework for Communications Reflecting the Ecosystem Elements (Co-author), *Journal of Legislation Research*, 41th Issue (2011. 12.), with abstract in English

-Exercise of Standard-related Patents and Application of Korean Competition Law-with a Focus on Critical Review on the IPR Guidelines (Co-author w/Kwon, Namhoon), *Korea Law Review*, Vol. 63 (2011. 12.), with abstract in English

-Reestablishment of the Concept of Broadcasting in the Smart Media Environment (Co-author), *Journal of Broadcasting and Telecommunication Research*, Vol. 78 (2012. 4), with abstract in English

-Calculation of Damages caused by Price-fixing Cartel in the Antitrust Damages Claim Litigation: With a focus on the Admission Case of Empirical Economic Analysis Evidence by the Court and its standard, *Comparative Private Law*, Vol. 19, No. 2 (2012. 5.), with abstract in English

-Direct and Indirect Purchasers' Damages of Collusion in Intermediate Product Market: Legal Perspectives and Economic Methods (Co-author w/Jeon, Seonghoon and Hahnsik Lee), *Korean Journal of Law and Economics*, Vol. 9

9

No. 1 (2012. 6.), with abstract in English

-The Study on Systematization of Legislation for Internet-based Services Promotion (Co-author w/Lim, Duk Gi), *Sogang Journal of Law and Business*, Vol. 2 No. 1 (Sogang University, 2012. 6.), with abstract in English

-Competition Advocacy of the Fair Trade Commission, *Commercial Law Review*, Vol. 31, No. 4 (2013. 2.), with abstract in English

- Consumer Choice Standard for the Application of Competition Law into the Internet Platform Market, *Korean Competition Law Review*, Vol. 24 (2013. 5.), with abstract in English

- Competition and Diversity: Perspective of Objectives of Broadcasting-related Laws, *Journal of Legislation Research*, 44th Issue (2013. 6.), with abstract in English

- Meaning of and Standard for Providing Unfair Advantage to Specially Related Persons under the Korean Competition Law, *Comparative Private Law*, Vol. 21, No. 2 (2014), with abstract in English

-Fair Trade Regulation by Co-regulatory Methods in the Internet Service Market, *Korean Competition Law Review*, Vol. 29 (2014), with abstract in English

-Reciprocity of Connection of Wills among Enterprises as an Element for Proving an Agreement-Focused on Information Exchange-, *Korean Competition Law Review*, Vol. 30 (2014), with abstract in English

-Narrowing the Gap: Convergence to or Divergence from Global Competition Law-Focusing on Korean Competition Law Regulations on Unilateral Conduct-, *Korean Competition Law Review*, Vol. 31 (2015), with abstract in English

-A Critical Approach to the Introduction of Punitive Damages in Korean

Competition Law, *Sogang Journal of Law & Business*, Vol. 5 No. 2 (Sogang University, 2015), with abstract in English

-Legal Analysis on SEP Holders' Abuse of Patent Rights Case-Focused on *Qualcomm* Case-, *Lawyers Association Journal*, Vol. 64 No. 11 (2015), with abstract in English

-Issues in Practice regarding Calculating Administrative Fine against Unreasonable Concerted Acts, *Korean Competition Law Review*, Vol. 32 (2015), with abstract in English

-A Review of Korean Competition Law and Guidelines for Exercise of Standard-related Patents, *Journal of Korean Law,* Vol. 15 No. 1 (Seoul National University, 2015), written in English, , available at SSRN: http://s-space.snu.ac.kr/handle/10371/97152

-Criteria for Calculating Administrative Fines relating to Cartel Agreement arising from Bidding Type Transactions, *Competition Journal*, No. 184 (2016)

-The Application of the Competition Law to Platform Economy-Focused on Online Platform-, *Korean Journal of Law and Economics*, Vol. 13 No. 1 (2016), with abstract in English

-Online Platform Markets and Competition Law Issues, *Korean Competition Law Review*, Vol. 34 (2016), with abstract in English

-Procedural Defects and Effects of Administrative Measure in the Case Management Procedure of the KFTC under the Korean Competition Law, *Specialized Law Review*, Vol. 14 (Judicial Development Foundation, 2017)

-Analysis of Recent KFTC's cases regarding Merger & Acquisition under the Korean Competition Law, *Korean Competition Law Review*, Vol. 35 (2017), with abstract in English

Theses

- A Study on the Merger Control in the EC, Seoul National University, Graduate School of Law, LL.M. Thesis (1996), with abstract in English

- A Study on the Administrative Fine System under the Korean Competition Law, Seoul National University, Graduate School of Law, Ph.D. Dissertation (2006), with abstract in English

## HONORS

- Presidential Citation (2011, 2016)

- Citation awarded by the Chairman of the Korea Communications Commission (2008)

- Citation awarded by the Chairman of the Korea Fair Trade Commission (2006)

## RESEARCH INTERESTS

Competition Law, Consumer Law, Law of Regulation, Communications Law, Privacy Law

Exhibit B

**Exhibit 2: List of References**

1.  Plaintiffs' Motion to Sanction Ottogi Co., Ltd. and Ottogi America, Inc. for Spoliating Evidence and Memorandum of Points and Authorities in Support Thereof dated September 7, 2016.

2.  The Declaration of Jung-eun Choi In Support of Plaintiffs' Motion for Spoliation dated September 7, 2016.

3.  Plaintiffs' Reply In Support of Motion to Sanction Ottogi Korea and Ottogi America For Spoliating Evidence dated October 5, 2016.

4.  Supplemental Declaration of Jung-eun Choi In Support of Plaintiffs' Reply to Its Motions to Sanction Nongshim and Ottogi Defendants for Spoliation of Evidence dated October 5, 2016.

5.  The Declaration of Hye Sook Seo In Support of Nongshim Co. Ltd.'s and Nongshim America, Inc.'s Opposition to Plaintiffs' Motion to Sanction Nongshim Defendants for Spoliating Evidence dated September 27, 2016.

6.  Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion to Sanction Ottogi Co., Ltd. and Ottogi America, Inc. dated September 28, 2016.

7.  The Declaration of Young Hyun Doh in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions dated September 28, 2016.

8.  The Declaration of Bangwan Ku in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions dated September 28, 2016.

9.  The Declaration of Se Chang Lee in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions dated September 28, 2016.

10. The Declaration of Bangwan Ku in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions dated September 28, 2016.

11. The Declaration of Song Ryu in Support of Ottogi America, Inc. and Ottogi Corporation, Ltd.'s Opposition to Plaintiffs' Motion for Sanctions dated September 28, 2016.

12. OTGKR-0018191.

13. Dae Sik Hong, Soo Hee Choi, "A review into the procedures employed by the KFTC in handling the acts in violation of the Fair Trade Act," Studies on the Competition Laws Vol. 13 (2006), 296.

14.     Suwon District Court decision on August 3, 2010. 2008 *Ra* 609.

15.     Supreme Court decision on October 20, 2014. 2010 *Ma* 1362.

16.     Exhibits 81 and 95 to the Resolution of the KFTC, No. 2012-107, dated July 12, 2012.