SQUIRE PATTON BOGGS (US) LLP
Mark C. Dosker (CA Bar #114789)
Joseph P. Grasser (CA Bar #255156
Maria A. Nugent (CA Bar #306074)
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:   (415) 954-0200
Facsimile:   (415) 393-9887
E-Mail:      mark.dosker@squirepb.com
             joseph.grasser@squirepb.com
             maria.nugent@squirepb.com

Attorneys for Defendants
NONGSHIM CO., LTD and
NONGSHIM AMERICA, INC.

GIBSON, DUNN & CRUTCHER LLP
Rachel S. Brass (CA Bar # 219301)
Minae Yu (CA Bar # 268814)
Julian W. Kleinbrodt (CA Bar #302085)
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone:   (415) 393-8200
Facsimile:   (415) 393-8206
e-mail:      rbrass@gibsondunn.com
             myu@gibsondunn.com
             jkleinbrodt@gibsondunn.com

Attorneys for Defendants
OTTOGI CORPORATION, LTD., and
OTTOGI AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE KOREAN RAMEN ANTITRUST LITIGATION | Case No. 3:13-cv-04115-WHO |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF STEPHAN HAGGARD** |
| THIS DOCUMENT RELATES TO: | |
| All Actions | Date:     January 26, 2018<br>Time:     2:00 p.m.<br>Place:    Courtroom 2, 17th Floor |

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1

**TABLE OF CONTENTS**

2

3                                                                                                    **PAGE**

I.      INTRODUCTION ................................................................................................................. 1

4

II.     ARGUMENT ...................................................................................................................... 2

5       A.      Prof. Haggard's Reliance on Ethnic Stereotypes Renders His Opinions
                Unreliable .................................................................................................................. 2

6

7       B.      Prof. Haggard's Neglect of the Record Also Renders His Opinions
                Unreliable .................................................................................................................. 3

8       C.      Prof. Haggard Incorporated and Reproduced Inadmissible Legal
                Conclusions ............................................................................................................... 6

9

10      D.      Prof. Haggard's Improper Legal Opinions Are Not Relevant to Show
                What Role (If Any) Nongshim Korea and Ottogi Korea Played in Setting
11              Prices For Products Sold by Their Respective U.S. Subsidiaries in the
                U.S. Market .............................................................................................................. 10

12

III.    CONCLUSION ................................................................................................................. 14

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE THE TESTIMONY OF SANG-HUN LEE
CASE NO. 3:13-CV-04115-WHO

1

**TABLE OF AUTHORITIES**

PAGE(S)

2    **Cases**

3    *AT & T Co. v. Compagnie Bruxelles Lambert,*
4        94 F.3d 586 (9th Cir. 1996)............................................................................6

5    *Burkhart v. Wash. Metro. Area Transit Auth.,*
         112 F.3d 1207 (D.C. Cir. 1997) ..................................................................7, 8
6
     *Crow Tribe of Indians v. Racicot,*
7        87 F.3d 1039 (9th Cir. 1996)......................................................................8, 10

8    *In re CRT Antitrust Litig.,*
         No. 3:07-cv-05944-JST, (ECF 5136) (N.D. Cal. Apr. 5, 2017) ...........3, 8, 9, 10
9
     *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
10       509 U.S. 579 (1993) .................................................................................13

11   *Docusign, Inc. v. Sertifi, Inc.,*
12       468 F. Supp. 2d 1305 (W.D. Wash. 2006)..................................................7, 8, 9

13   *Frost v. LG Elecs. Inc.,*
         No. 16-CV-05206-BLF, 2017 WL 1425919 (N.D. Cal. Apr. 21, 2017) .................13
14
     *Jinro America Inc. v. Secure Investments, Inc.,*
15       266 F.3d 993 (9th Cir. 2001)........................................................................2, 3

16   *Kumho Tire Co. v. Carmichael,*
17       526 U.S. 137 (1999) ...................................................................................4

18   *Mullins v. Premier Nutrition Corp.,*
19       178 F. Supp. 3d 867 (N.D. Cal. 2016) ...........................................................13

20   *In re Rezulin Prods. Liab. Litig.,*
         369 F. Supp. 2d 398 (S.D.N.Y. Mar. 14, 2005) ...........................................4, 12
21
     *Royal Printing Co. v. Kimberly Clark Corp.,*
22       621 F.2d 323 (9th Cir. 1980)....................................................................2, 8, 9, 10

23   *Sonora Diamond Corp. v. Superior Court,*
         83 Cal. App. 4th 523 (2000).........................................................................6
24
     *In re Toyota Motor Corp. Unintended Aceleration Mktg., Sales Practices, &*
25       *Prods. Liab. Litig.,*
26       978 F. Supp. 2d 1053 (C.D. Cal. 2013).........................................................13

27   *U.S. v. Binder,*
         769 F.2d 595 (9th Cir. 1985).......................................................................3
28

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ...................................................................................................13

*Villalpando v. Exel Direct Inc.*,
    161 F. Supp. 3d 873 (N.D. Cal. 2016) ...................................................................13

**Statutes**

Federal Rule of Evidence
    402...............................................................................................................................11
    403.......................................................................................................................... *passim*
    702.................................................................................................................................1

**Other Authorities**

29 Victor James Gold, Fed. Prac. & Proc. Evid. § 6268 (2d ed. 2017) ............................................4

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

# I.    INTRODUCTION

The issue raised by this motion is not whether Prof. Haggard has taught enough classes or written enough papers to have a generalized academic expertise on the so-called chaebol, nor is it whether his opinions offered in another case were relevant to the legal question there.  Rather, the question raised by Defendants' motion involves a more limited and specific inquiry regarding utility to the jury—the fit between Prof. Haggard's expertise and his opinions with respect to the Nongshim Defendants' and Ottogi Defendants' U.S. price decisions.  Prof. Haggard's own testimony in this case makes the answer to this inquiry clear: neither his background nor his haphazard and partial review of the record in this case qualifies him to (a) offer meaningful opinions regarding whether Defendants' U.S. prices were proximately caused by alleged price-fixing in Korea or (b) to characterize the veracity of Defendants' witnesses sworn testimony on that same question.  Instead, Plaintiffs seek to use Prof. Haggard to prove their case through ethnic stereotypes, rather than the facts of this case.

Prof. Haggard himself admitted during deposition that his "report doesn't claim to make – or reveal any documents that provide evidence that Ottogi Korea or Nongshim Korea is deciding the price of any given American product."  ECF 618-4 at 83:4-8; *see also id.* at 35:17-22, 36:14-37:16, 42:12-16, 48:21-49:1, 66:3-22, 75:21-23, 76:10-11, 82:19-22 (stating that he does not draw an inference, from his opinion that these are chaebol groups, about what relationships of control actually exist or not).  Moreover, he admits he reviewed just 6% of the depositions taken of Nongshim and Ottogi witnesses in this case, to reach his conclusions about the relationships between the parent companies and their respective subsidiaries.  ECF 618-1 at ¶ 5 (admitting that he only reviewed 4 of the 64 depositions for Nongshim and Ottogi witnesses); *see also* ECF 618-2 at ¶¶ 53-64; ECF 618-4 at 17:1-21.  His "opinions," divorced from the reality of the record of this case, are unreliable and unduly prejudicial and thus of no use to the jury.  *See* Fed. R. Evid. 403, 702.

Separate and apart from those defects, Prof. Haggard peppered his declaration with inadmissible opinions on the law.  But, here too, Plaintiffs' opposition misses the point.  While no doubt a single legal reference does not render all opinions inadmissible, Prof. Haggard does not

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    simply reference a statute or law.  Instead, he opines about the comparative strength of Korea's

2    corporate governance regulations and goes so far as to tell the Court which legal arguments are

3    important and whether they have merit.  *See* ECF 618 at 19 (describing his impermissible legal

4    conclusions that can be found at paragraphs 35, 45, 60, 63, and 75-85 of Prof. Haggard's report).

5    Prof. Haggard also attempts to offer impermissible legal opinions relating to whether Plaintiffs

6    are able to establish "control" by the Korean parents over their U.S. subsidiaries under the

7    exception described in *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 326 (9th Cir.

8    1980).  As to these questions of law, the Court is the sole decision maker; Prof. Haggard is neither

9    qualified nor permitted to usurp that role – or even advise on it.   He has no legal training or

10   license or experience.

11          Prof. Haggard's opinions provide no value to the Court and, accordingly, should be

12   excluded.

13                            **II.    ARGUMENT**

14   **A.    <u>Prof. Haggard's Reliance on Ethnic Stereotypes Renders His Opinions<br>Unreliable</u>**

16          Rather than defend their expert's reliance on cultural stereotypes, Plaintiffs dismiss the

17   issue as "baseless and without merit."  Opposition [ECF 632] at 8.  A plain reading of Prof.

18   Haggard's report, and in particular the section entitled "The Cultural Dimension: Hierarchy and

19   Familism," demonstrates otherwise.  *See* ECF 618-2 at ¶¶ 86-88.  There, Prof. Haggard infuses

20   his beliefs regarding corporate structure with what he believes to be Korean "culture and norms"

21   of "hierarchy and familism," "emotional distance," "hesitan[ce] to question orders," and

22   "obeisance to elders."  *Id*. at ¶¶ 86-88.  Importantly, Prof. Haggard also opines that "[t]hese twin

23   cultural dimensions of hierarchy and familism would not necessarily pertain to American

24   employees of Korean subsidiaries."  *Id*. at ¶ 88.  This is the precise kind of ethnically charged

25   opinions the Ninth Circuit rejected in *Jinro America Inc. v. Secure Investments*, Inc., 266 F.3d

26   993 (9th Cir. 2001).

27          Plaintiffs attempt to distance Prof. Haggard from the expert in *Jinro*, but their focus on

28   relative credentials again misses the point.  Opposition [ECF 632] at 9.  In the first instance,

SQUIRE PATTON BOGGS (US) LLP<br>275 Battery Street, Suite 2600<br>San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

nothing about an advanced degree in political science renders Prof. Haggard an expert on the veracity of testimony he never read. *See Jinro Am. Inc.,* 266 F.3d at 1005-09; *U.S. v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985). But the Ninth Circuit went much further in rejecting the use of ethnic stereotypes as the basis for expert opinion. *Jinro*, 266 F.3d at 1006; *see also id.* at 1010 (Wallace, J., concurring) ("[S]uch testimony, by its very nature, is prejudicial. That ends the matter."); Fed. R. Evid. 403. It explained that generalizations about Korean business prey on potential xenophobia, and other invitations to "distrust [the Korean company] by invoking an ethnic, national stereotype" are nothing more than "guilt-by-ethnic association testimony condemned by [the Ninth Circuit] and other courts." *Id.* at 1008-09.[1] Accordingly, the Court should reject Plaintiffs attempt to introduce ethnic stereotypes and improper generalizations under the guise of "expert" opinion.

What is more, Prof. Haggard admitted that he did not know whether any ethnic Koreans ever worked at Nongshim America or Ottogi America and, if they did, whether they adhered to Korean cultural norms. ECF 618-3 at 86:5-87:22, 89:9-17, 90:3-22, 115:13-18. Plaintiffs have thus failed to confront the very real and present flaw in Prof. Haggard's stereotypical and unreliable opinions, which is that he lacks *any* evidentiary basis to opine that the "deeply embedded" aspects of ethnic "Korean culture" described in his report should trump, and are sufficient to discredit, the sworn testimony in this case—the vast majority of which he admittedly never bothered to read. *See* ECF 618-2 at ¶¶ 86-88; ECF 618-4 at 16:11-17:16; *see also* ECF 618-2 at ¶¶ 60, 75-85 (challenging the veracity of "claims" and testimony about operational independence). His opinions are outside the scope of proper expert testimony and Plaintiffs cannot overcome this. *Binder*, 769 F.2d at 602.

**B.    Prof. Haggard's Neglect of the Record Also Renders His Opinions Unreliable**

Plaintiffs do even less to defend Prof. Haggard's slipshod review of the record. They dismiss and essentially ignore Defendants' well-founded argument that Prof. Haggard had documents cherry-picked for him and neglected 94% of the sworn testimony of the Nongshim

---

[1] Prof. Haggard did not use cultural and ethnic stereotypes to similarly discount testimony in his other case. *See In re CRT Antitrust Litig.*, No. 3:07-cv-05944-JST, (ECF 5136) (N.D. Cal. Apr. 5, 2017). The admission of his testimony in that case therefore has no bearing on the issues here.

and Ottogi Defendants' witnesses in this case.  *See* ECF 618-2 at 53-64 (listing only four

deposition transcripts (all Ottogi witnesses) as references); ECF 618-3 at 14:4-8, 22:6-25:1, 31:3-

24 (confirming that Prof. Haggard did not review deposition transcripts and relied on his research

assistant's interpretation of Korean-language documents); *see also* ECF 618-4 at 16:11-17:16.

That cursory effort and failure to read even the materials he purportedly "relied" upon falls short

of what would be expected in the field.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152

(1999); 29 Victor James Gold, Fed. Prac. & Proc. Evid. § 6268 (2d ed. 2017) ("If an expert

'cherry picks' favorable data in this manner but ignores a significant quantity of other important

facts, the trial court would be justified in concluding that the expert's testimony is not based on

sufficient facts or data.").

In an apparent effort to defend Prof. Haggard's incorrect assumptions and guesses based

on his "review" of the record, Plaintiffs now claim that he reviewed "the declarations submitted

by Nongshim employees, but did not find them credible."  Opposition [ECF 632] at 6.[2]

Plaintiffs' argument again misses the point.  Prof. Haggard's review of an unspecified number of

Nongshim witness *declarations* submitted at summary judgment does not overcome his failure to

review 94% of the sworn *deposition testimony* of Nongshim and Ottogi witnesses in this case.

*See* ECF 618-2 at 53-64; ECF 618-3 at 14:4-8, 22:6-25:1, 31:3-24; ECF 618-4 at 16:11-17:16.

And here, where the unreviewed deposition testimony (as well as the testimony he reviewed)

flatly contradicts Prof. Haggard's assumptions, views and conclusions, failure to review it at all,

much less adjust his views in light of it, requires exclusion.  *See In re Rezulin Prods. Liab. Litig.*,

369 F. Supp. 2d 398, 425 (S.D.N.Y. Mar. 14, 2005) (holding opinions inadmissible when

"experts have ignored a large amount of information that calls many aspects of [the plaintiffs'

theory] into question").

Nonetheless, the claimed reason for Prof. Haggard's failure to consider the Nongshim

witnesses' testimony, *i.e.*, that they lacked credibility, is untenable given the lack of rigor behind

that blanket conclusion.  For example, Plaintiffs explain why Prof. Haggard found the testimony

---

[2] Prof. Haggard has no expertise that would permit him to render opinions about the credibility of
sworn declarations, nor has he provided any rationale for discarding them (aside from the fact that
they contradict his *a priori* assumptions).

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

lacking credibility for only a single witness (Young Lee), but somehow still claim that Prof.

Haggard disregarded multiple declarations on the same basis.[3]  More important, Prof. Haggard's

"reasoning" for why Young Lee's testimony lacked credibility shows just how unreliable and

prejudicial Prof. Haggard's opinions are.  His first attempt to explain the lack of credibility of

Young Lee's testimony is that it did not align with the "indicia of control noted in the scholarly

literature on [chaebols]."  Opposition [ECF 632] at 6:20-24.  In so doing, Prof. Haggard admits

that the testimony in this case does not support his conclusion that the Defendants are chaebols,

and, because the facts of the case do not align with his assumptions, he ignores them.  Indeed, the

most logical conclusion to be drawn from the misalignment of the sworn testimony given by

persons with first-hand and intimate knowledge of how the Defendant corporations actually

operate and the "indicia of control noted in the scholarly literature on [chaebols]" is that neither

the Nongshim Defendants nor the Ottogi Defendants *are* chaebols—at least not how Prof.

Haggard uses that term.

His second attempt to explain the lack of credibility of Mr. Lee's testimony is to say that it

is "contradicted…by the other evidence in the case."  Opposition [ECF 632] at 6:16-24.  The

extent of the "other evidence in the case" that Plaintiffs cite to as support for this assertion is an

opinion expressed in one paragraph of Prof. Haggard's report that generally states:

> "[T]he record seems to indicate that [Young Lee's] assessment" of Nongshim
> America as a wholly independently operated and managed entity with little or no
> overlap between the employees, managers, and officers of Nongshim America
> and Nongshim Korea "requires some significant qualification given the level of
> top directorial and managerial personnel which do appear to show such overlap."

ECF 618-2 at ¶ 60.  But, this critique does not even square with Prof. Haggard's own testimony

that the Nongshim and Ottogi Defendants did ***not*** employ executives or managers in both Korea

---

[3] Four Nongshim witnesses prepared declarations in support of the Nongshim Defendants' summary judgment motions.  *See* ECF 541-29 (Young Lee); ECF 541-30 (Won Joon Lee); ECF 541-32 (Byung Chul Park); ECF 541-31 (Moon Ho Hong).  Aside from Young Lee, Prof. Haggard has never identified which other declaration he reviewed but disregarded because he somehow thinks it lacked credibility.  ECF 618-4 at 17:17-21 ("I believe I did review two declarations.  But as I didn't rely on them or use information from them, they are not cited in the reference list"); *see also* Opposition [ECF 632] at 6 (stating generally that Prof. Haggard reviewed declarations submitted by Nongshim employees in support of Nongshim's motion for summary judgment).

and the U.S. simultaneously.  ECF 618-3 at 83:13-84:3, 90:23-91:22.  In other words, even Prof.

Haggard agrees with Mr. Lee that there was little or no overlap between the employees,

managers, and officers of Nongshim America and Nongshim Korea during the class period but

puzzling maintains that Mr. Lee's testimony on this issues lacks credibility.  In fact, Plaintiffs are

able to cite to only one example of such overlap in their Opposition.  *See* Opposition [ECF 632] at

7:1-13 (offering as an example of "overlap" that Dong-Won Shin was the Vice Chairman and

Chair of Nongshim Korea's Board of Directors at Nongshim Korea while he was a Director at

Nongshim America in 2005); ECF 618-2 at ¶ 52 (Prof. Haggard offering the same example in his

report).  This one example of overlap does not make Mr. Lee's testimony that there was "little or

no overlap" untrue or indicate a lack of credibility.

In sum, Prof. Haggard's decision to ignore the sworn testimony in this case, the vast

majority of which he admittedly did not read, from persons with first-hand knowledge of how the

Defendant entities operate, defies logic, is outside the scope of expert testimony, and if admitted

would highly prejudice the Defendants in this case.  *See* Fed. R. Evid. 403.

## C.   Prof. Haggard Incorporated and Reproduced Inadmissible Legal Conclusions

The entire thrust of Prof. Haggard's opinion is that the Court and the jury should disregard

the separateness of the U.S.-based subsidiary Defendants from their Korea-based parent

corporations.  *See* ECF 618-2 at ¶¶ 49-50, 81-85; *see also* ECF 618-3 at 116:3-117:3.  He bases

this legal opinion on the fact that the parent corporations are Korean and without regard to the

factors relevant to piercing the corporate veil of the subsidiary Defendants.  *See and compare id.*

*with AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (finding that

piercing the corporate veil requires a showing "(1) that there is such unity of interest and

ownership that the separate personalities [of the parent and subsidiary] no longer exist and (2) that

the failure to disregard [their separate identities] would result in fraud or injustice."); *Sonora*

*Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538-39 (2000) ("Among the factors to

be considered in applying the [alter ego] doctrine are commingling of funds and other assets of

the two entities, the holding out by one entity that it is liable for the debts of the other, identical

equitable ownership in the two entities, use of the same offices and employees, and use of one as

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 6 -

1   a mere shell or conduit for the affairs of the other."); *see also* ECF 618 at 10.  That legal opinion

2   alone warrants exclusion.  Plaintiffs' response that Prof. Haggard merely "examines and explains

3   corporate governance issues" misses this point and, in any event, misstates Prof. Haggard's

4   opinions.  Opposition [ECF 632] at 9-10.

5        In fact, a review of his actual opinions reveals that he not only purports to opine on

6   whether the Court should ignore Defendants' corporate forms (without even attempting to

7   articulate the relevant showing to an unpled alter ego theory) but also "evaluates" the quality and

8   strength of the parties' respective legal arguments.[4]  *See* ECF 618-2 at ¶¶ 60, 63, 75, 76.  But

9   these are topics wholly inappropriate for expert testimony:  "[t]echnical experts are not qualified

10  to make legal conclusions and arguments, and where a party elects to include legal arguments in a

11  technical declaration, rather than in a brief, those arguments may appropriately be disregarded."

12  *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 n.3 (W.D. Wash. 2006); *see also*

13  *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each

14  courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone

15  to instruct the jury on the relevant standards.").

16       For example, Prof. Haggard, based upon his evaluation of the merits of the parties' legal

17  arguments, offers the impermissible legal conclusion that "claims made by defendants in the

18  case…require[] some significant qualification."  ECF 618-2 at ¶ 60.  Then, again based upon that

19  same analysis, he challenges the veracity of Young Lee's testimony about the organizational

20  independence of Nongshim America and Nongshim Korea.  *Id*.  He draws the same

21  impermissible legal conclusion about arguments made in the Ottogi Defendants' summary

22  judgment motion relating to the operational independence of Ottogi Korea and Ottogi America.

23  *See id*. at ¶ 63 (concluding that the Ottogi Defendants' argument "would not extend to claims

24  with respect to those exercising wider directional or managerial control over the two

25  companies").  Prof. Haggard continues to evaluate the strength of legal arguments relating to

26

27  [4] Further, Plaintiffs' contention that Defendants point only to two paragraphs in Professor
    Haggard's report as evidence of these inappropriate legal conclusions is just plain wrong.  *See*
28  ECF 618 at 19 (Defendants cite to ¶¶ 45, 60, 63, *and* 75-85 of Prof. Haggard's report as evidence
    of opinions that incorporate and reproduce inadmissible legal conclusions).

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   operational independence made by the Defendants throughout his report.  *See id*. at ¶ 75 (opining

2   that "Defendants make particularly strong claims" about "[a]n important issue in this case…the

3   extent to which managerial decisions of Nongshim America and Ottogi America were undertaken

4   independently of their parent companies"); *id*. at ¶ 76 (making the same judgment about the

5   Ottogi Defendants' claims of operational independence).

6          Tellingly, Plaintiffs make no effort to defend Prof. Haggard's attempts to pick out the

7   "core arguments" made by the parties in this case, or evaluate the strength of those arguments

8   found in other paragraphs in his report.  *See* ECF 618-3 at 28:11-21; ECF 618-2 at ¶¶ 60, 63, 75-

9   76; ECF 618-4 at 43:25-45:4; *see also Burkhart*, 112 F.3d at 1213.  Prof. Haggard is not

10  qualified, nor is his report the appropriate forum, to assess the parties' legal arguments or offer

11  his own conclusions about them.  *Docusign, Inc.*, 468 F. Supp. 2d at 1307 n.3.

12         Prof. Haggard also improperly opines about how the Court should evaluate the

13  Defendants' corporate forms based upon his evaluation of the relative strength, robustness, and

14  effect of Korean corporate governance laws despite having no expertise in U.S. or Korean law—

15  substantive legal judgments that are the properly evaluated by the Court, not an expert witness.

16  *See* ECF 618-2 at ¶¶ 35, 45 (Prof. Haggard opines on the relative strength of Korean corporate-

17  governance laws as well as the specific scope of a 2015 Korean law regulating certain "related-

18  party transactions"); ECF 618-3 at 14:15-16:7 (admitting no expertise in U.S. or Korean law);

19  *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Experts interpret and

20  analyze factual evidence.  They do not testify about the law.") (internal quotation marks omitted);

21  *see also Burkhart*, 112 F.3d at 1213 (the Judge is the expert on the law).

22         Finally, Plaintiffs' reliance on Judge Tigar's decision in *In re Cathode Ray Tube Antitrust*

23  *Litigation*, *In re CRT Antitrust Litig. ("CRT")*, No. 3:07-cv-05944-JST, (ECF 3172) (N.D. Cal.

24  Apr. 5, 2017) is inappropriate here.  As an initial matter, Plaintiffs assert that Prof. Haggard's

25  opinions are directly relevant to establishing "'control' by the Korean parents over their U.S.

26  subsidiaries relating to the Direct Purchasers' claims of standing under *Royal Printing Co. v.*

27  *Kimberly Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980)."  Opposition [ECF 632] at 5.  The

28  *Royal Printing* exception has been described as follows:

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE THE TESTIMONY OF STEPHAN HAGGARD
CASE NO. 3:13-CV-04115-WHO

[T]he Royal Printing exception is triggered wherever either the price fixer or the direct purchaser can "exercise restraint or direction over, dominate, regulate, … command, … guide or manage" the other such that a realistic possibility of suit by the direct purchaser is foreclosed.

*CRT*, (ECF 3172) at *2 (internal citations omitted).  In *CRT*, the defendants moved to exclude Prof. Haggard's "testimony regarding the means by which, and the degree to which, the Samsung *chaebol* exercises control over its constituent parts [because it was] irrelevant."  *Id.* at *3.  The motion was denied, in part, because Prof. Haggard "identifie[d] a variety of control mechanisms, ***explain[ed] why the evidence shows the Samsung Defendants use[d] those mechanisms***, and explains how those mechanisms enable[d] them to exercise the kind of control that establishes the Royal Printing exception."  *Id.* (emphasis added).

Here, however, Prof. Haggard concedes that his "report doesn't claim to make—or reveal any documents that provide evidence that Ottogi Korea or Nongshim Korea is deciding the price of any given American product."  ECF 618-4 at 83:2-8; *see id.* at 82:19-22 ("Q:  So you're not saying that they were consulting about U.S. prices, correct?  A:  Not in – not here [in his report]. I—that's not what this is about.");  ECF 618-3 at 115:19-24, 117:6-22 (admitting that he did not see any documents suggesting that Nongshim Korea or Ottogi Korea directed their respective U.S. subsidiaries to charge their U.S. customers a particular price).  In other words, unlike his opinions in *CRT*, here Prof. Haggard has not explained (1) why the evidence shows that either the Nongshim Defendants or Ottogi Defendants used identified control mechanisms or (2) how the control mechanisms enabled them to exercise the kind of control that establishes the *Royal Printing* exception.  *See CRT*, (ECF 3172) at *3.  The opinions offered by Prof. Haggard in this case are therefore distinct from those offered in *CRT* such that Judge Tigar's reasoning for permitting his testimony is inapplicable here.

While, in the most general sense, Prof. Haggard's unqualified opinions about the exertion of control by a Korean parent over its U.S. subsidiary may be relevant to establishing the *Royal Printing* exception, the only way in which Prof. Haggard purports to offer such an opinion is through an inadmissible legal opinion.  *Docusign, Inc.*, 468 F. Supp. 2d at 1037, n. 3.  As discussed, his opinions, at base, are divorced from the rigorous analysis that must be applied

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE THE TESTIMONY OF STEPHAN HAGGARD
CASE NO. 3:13-CV-04115-WHO

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    when determining whether to pierce the corporate veil, and, instead, are based solely on his

2    understanding of "chaebols" based upon academic literature (not the facts of this case) and the

3    fact that the parent companies are Korean.  *See also*, Section II.D, *infra*.  In other words, Prof.

4    Haggard's opinions are not based on an interpretation or analysis of the factual evidence in this

5    case, and should accordingly be dismissed.  Where an expert purports to reach a legal conclusion

6    (e.g., Korean companies' wholly-owned subsidiaries are not entitled to be treated as separate

7    corporate entities) it is properly excluded as impermissible legal opinions which, if allowed into

8    evidence, would unduly prejudice the Defendants.  *See Crow Tribe of Indians*, 87 F.3d at 1045

9    ("Experts interpret and analyze factual evidence.  They do not testify about the law."); Fed. R.

10   Evid. 403.[5]

11        Accordingly, the Court should grant this motion and exclude these improper opinions on

12   the law.

13        **D.    Prof. Haggard's Improper Legal Opinions Are Not Relevant to Show What**
             **Role (If Any) Nongshim Korea and Ottogi Korea Played in Setting Prices For**
14           **Products Sold by Their Respective U.S. Subsidiaries in the U.S. Market**

15        Prof. Haggard ultimately concludes that the U.S. Defendants' assertions of independent

16   price decisions are inconsistent with his opinion as to how Korean companies operate.  Haggard

17   Report [ECF 620-3] at ¶ 89.  In other words, Prof. Haggard intends to opine that the jury should

18   not believe sworn testimony from Defendants' witnesses explaining that prices for products sold

19   in the U.S. market were determined independently of Korean parent influence simply because the

20

21   [5] Furthermore, Plaintiffs' reliance on *CRT* is also inappropriate because in *CRT*, Judge Tiger
     permitted Prof. Haggard's opinions over objections by defendants that they improperly relied on
22   Korean law only because, in that case, Prof. Haggard's "references to" Korean law were
     "ancillary to the ultimate issues" in the case as to whether the Defendants there fit into the *Royal*
23   *Printing* exception.  *See CRT*, 2017 WL2616916, at *2; Opposition [ECF 632] at 10-11
     (Plaintiffs' citing the same in their opposition).  Here, however, Prof. Haggard's does not merely
24   reference Korean law in ways ancillary to the ultimate issues in this case and his opinion.  Rather,
     he attempts to pick out the parties' "core arguments" and evaluate their strength.  *See* ECF 618-2
25   at ¶ 60 (concluding that claims made by Defendants "require significant qualification"), ¶ 63
     (concluding that the Ottogi Defendants' claims of operational independence "would not extend to
26   claims of those exercising wider directorial or managerial control over the two companies"), ¶ 75
     (opining on the strength of Defendants' claims about "[a]n important issue in this case"), ¶ 76
27   (same).  These issues, the parties' arguments and legal bases, go directly to the ultimate issues in
     this case and these opinions are therefore improper and should be struck from the record.
28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   parent companies are Korean. *See id.* But, causation in this case turns on whether ramen sold in

2   the U.S. market during the class period was impacted by allegedly collusive pricing decisions by

3   Nongshim Korea or Ottogi Korea, and, by his own admission, Prof. Haggard's putative testimony

4   has no direct bearing on that question. It is therefore irrelevant and unhelpful and should be

5   excluded. *See* Fed. R. Evid. 402, 403.

6          Prof. Haggard's opinions are not even arguably relevant to establishing a connection

7   between the way ramen prices were set by the Korean parent corporations and the way ramen

8   prices were set by their respective U.S. subsidiaries. Assume, *arguendo*, that Prof. Haggard were

9   correct that "the documentary record" shows that "Nongshim Korea and Ottogi Korea provided

10   guidance and direction," suggesting "implicit[ly]" that there "would be some expectations about

11   their capacity to sell a product at a particular volume" and other "certain goals." ECF 618-3 at

12   116:3-117:3.[6] That opinion still says nothing about what direction was in fact provided to the

13   U.S. subsidiary on U.S. pricing, and it certainly does not mean that U.S. prices would

14   automatically follow Korean prices. Prof. Haggard even concedes this point by explaining that

15   his "report doesn't claim to make – or reveal any documents that provide evidence that Ottogi

16   Korea or Nongshim Korea is deciding the price of any given American product." ECF 618-4 at

17   83:2-8; *see also id.* at 82:19-22 (Q: "So you're not saying that they were consulting about U.S.

18   prices, correct?  A: Not in – not here [his report].  I –that's not what this is about."); ECF 618-3 at

19   115:19-24, 117:6-22 (admitting that he did not see any documents suggesting that Nongshim

20   Korea or Ottogi Korea directed their respective U.S. subsidiaries to charge their U.S. customers a

21   particular price). Not surprisingly then, Prof. Haggard cites to no evidence in which one of the

22   Korean parent companies did in fact instruct its U.S. subsidiary how to set its prices, much less

23   issue a directive to set U.S. products' prices with reference to the prices of products sold in

24

25   _____

26   [6] *See also* ECF 618-4 at 83:10-84:16 (opining that evidence allegedly shows Nongshim Korea
     and Ottogi Korea provide firm-wide (i.e., not specific to ramen) sales and profit targets to their
27   respective subsidiaries); ECF 618-2 at ¶ 47 (opining that Nongshim Korea and Ottogi Korea are
     "exemplary" in regard to "maintain[ing] effective managerial control over other firms in the
28   group"); ECF 618-2 at ¶ 85 (opining that Nongshim Korea and Ottogi Korea "had clear
     expectations about performance").

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE THE TESTIMONY OF STEPHAN HAGGARD
CASE NO. 3:13-CV-04115-WHO

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1  Korea.  And, if anything, the record shows the contrary is true.[7]

2          Furthermore, Professor Haggard disregarded or failed to consider the record evidence, and

3  his academic generalizations about chaebols cannot contradict it.  *Compare* Opposition [ECF

4  632] at 6 ("[a] review of Professor Haggard's report (and the opinions actually rendered)

5  demonstrates the large amount of evidence he examined") *and*  ECF 618-2 at ¶ 60 (claiming that

6  the "record" indicates Nongshim America employee, Young Lee's, testimony about employee

7  overlap with Nongshim Korea "requires some significant qualification") *with* ECF 618-4 at

8  16:11-17:21 (admitting that he did not review *any* deposition transcripts from any of the

9  Nongshim Defendants' witnesses and further conceding that the *only* deposition transcripts he

10  reviewed in preparing his report were from four Ottogi Korea witnesses, despite the fact that 64

11  fact depositions were taken in this case) *and* ECF 618-3 at 22:6-25:1 (admitting that he only

12  relied on the materials cited in his report in formulating his opinions); *see In re Rezulin Prods.*

13  *Liab. Litig.*, 369 F. Supp. 2d at 425 (holding opinions inadmissible when "experts have ignored a

14  large amount of information that calls many aspects of [the plaintiffs' theory] into question").

15  Prof. Haggard concedes that his general knowledge about chaebols will not answer how

16  Nongshim Korea or Ottogi Korea set prices for products sold in the U.S.[8]  His opinions therefore

---

[7] ECF 548-3 (Seo Decl.) at ¶ 4; ECF 549 (Yu Decl. Ex. 13-Young Wook Ham) at 278:10-279:22, 324:5-328:23, (Yu Decl. Ex. 14-Kang Sik Hong) at 69:1-20, (Yu Decl. Ex. 15-Seung Yub Lee) at 51:11-52:13; ECF 585-2 (Yu Reply Decl. Ex. H-Min Hwan Choi) at 55:12-56:12 (explaining that Ottogi America set its prices without any input from Ottogi Korea because Ottogi America's sales people set prices through negotiation with their respective customers, resulting in a multitude of different prices that changed at different times by different amounts depending on the local market conditions); ECF 541-29 (Y.H. Lee Decl.) at ¶¶6-13  ECF 541-30 (W.J. Lee. Decl. at ¶ 5) (explaining that Nongshim America manufactured its U.S. ramen products domestically and set its prices without input from Nongshim Korea); *see also* ECF 618-4 at 35:17-22, 36:14-37:16, 42:12-16, 48:21-49:1, 66:3-22, 75:21-23, 76:10-11, 82:19-22, 83:4-8 (generally stating that he does not draw an inference from the fact that these are chaebol groups about what relationships of control actually exist or not).

[8] *See* ECF 618-4 at 35:17-22, 36:14-37:16, 42:12-16, 48:21-49:1, 66:3-22, 75:21-23, 76:10-11, 82:19-22, 83:4-8 (generally stating that he does not draw an inference from the fact that these are chaebol groups about what relationships of control actually exist or not); ECF 618-3 at 115:19-24, 117:6-22 (admitting that he did not see any documents suggesting that Nongshim Korea or Ottogi Korea directed their respective U.S. subsidiaries to charge their U.S. customers a particular price); *see also* ECF 438-3 (Seo Decl.) at ¶ 4; ECF 549 (Yu Decl. Ex. 13-Young Wook Ham) at 278:10-279:22, 324:5-328:23, (Yu Decl. Ex. 14-Kang Sik Hong) at 69:1-20, (Yu Decl. Ex. 15-Seung Yub Lee) at 51:11-52:13; ECF 585-2 (Yu Reply Decl. Ex. H-Min Hwan Choi) at 55:12-56:12

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   have no value in determining whether prices for products sold in the U.S. were linked to prices of

2   products sold in Korea—the crux of the proximate causation question.  *See Daubert v. Merrell*

3   *Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate

4   to any issue in the case is not relevant and, ergo, non-helpful.").  Allowing Plaintiffs to present

5   Prof. Haggard's testimony to the jury for the purpose of establishing control by the Korean

6   Defendants over the prices of ramen sold in the U.S. by their respective U.S. subsidiaries (in the

7   face of admissions by Prof. Haggard that he has seen no evidence that supports this conclusion)

8   would mislead the jury and substantially prejudice the Defendants.  *See* Fed. R. Evid. 403.

9          Finally, merely labeling a group of companies as "conglomerate," "keiretsu" or "chaebol"

10   does not provide basis to override established legal rules and does not overcome the legal

11   presumption of separateness as between distinct corporations.  *See United States v. Bestfoods*, 524

12   U.S. 51, 61-64 (1998); *Frost v. LG Elecs. Inc.*, No. 16-CV-05206-BLF, 2017 WL 1425919, at *1

13   (N.D. Cal. Apr. 21, 2017).  Prof. Haggard's academic views add nothing to the evidence

14   regarding U.S. pricing determinations and cannot overcome the legal presumption that the parents

15   and their subsidiaries are distinct legal entities.  *See In re Toyota Motor Corp. Unintended*

16   *Aceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1068 (C.D. Cal.

17   2013) (finding an expert's "general overview" irrelevant when it did "not sufficiently fit the facts

18   of this case"); *Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016) ("[A]n

19   expert's reliance on incorrect legal assumptions would warrant exclusion.").  At bottom, Prof.

20   Haggard's abstractions about chaebols have no utility in this case generally, much less to the

21   questions of proximate causation or the issue of how Defendants set the price of products sold in

22   the U.S. market.[9]

23   _____

    (explaining U.S. pricing process); ECF 583 (Nongshim MSJ Reply) at 13 (explaining the
24   analogous process for Nongshim Korea and Nongshim America).

    [9] Plaintiffs misplace their reliance on *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867,
25   904 (N.D. Cal. 2016) to support their assertion that Prof. Haggard's opinions are admissible
    because they go to the weight of his testimony.  Opposition [ECF 632] at 8:3-9.  The expert
26   challenged in *Mullins* relied on industry-funded studies and allegedly mischaracterized meta-
    analyses.  *Mullins*, 178 F. Supp. 3d at 904.  Those critiques concerned the relative quality of the
27   sources used, not the expert's methodology.  *See id.*  But Prof. Haggard's choice and
    characterization of academic studies is not in not the basis of Defendants' challenge here.  The
28   issue here is more fundamental: Prof. Haggard's partial review of the record was insufficient,

- 13 -

III.    CONCLUSION

The entire thrust of Prof. Haggard's report is to inject into this case his unqualified legal opinions regarding the parties' corporate relationships.  Moreover, he does so in a manner that ignores governing law, and is divorced from the record of this case, all in attempt to comport his ultimate opinions with his ethnically based stereotypes regarding Korean companies. Accordingly, for the reasons set forth above and in Defendants' initial moving papers, the Court should grant Defendants' Motion to Exclude the Declaration of Stephan Haggard and prohibit its introduction at trial.


Dated: December 19, 2017                    Respectfully submitted,

                                            SQUIRE PATTON BOGGS (US) LLP


                                            By:      /s/ Mark C. Dosker
                                            _____
                                                     Mark C. Dosker

                                            Attorneys for Defendants
                                            NONGSHIM CO., LTD. and NONGSHIM
                                            AMERICA, INC.

Dated: December 19, 2017                    GIBSON, DUNN & CRUTCHER LLP


                                            By:      /s/ Rachel S. Brass
                                            _____
                                                     Rachel S. Brass

                                            Attorneys for Defendants
                                            OTTOGI AMERICA, INC. and
                                            OTTOGI CORPORATION, LTD.

buoyed by false assumptions, and transformed into opinions through speculative generalizations. These *methodological* errors require exclusion.

- 14 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1

## **ATTESTATION**

2       I hereby attest that I have on file written authorization for any signatures indicated by a

3   "conformed" signature (/s/) within this e-filed document.

4

5                                                              */s/ Mark C. Dosker*

6                                                              Mark C. Dosker

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 1 -

010-8563-5716/4/AMERICAS