Alan R. Plutzik (State Bar No. 77785)
Daniel E. Birkhaeuser (State Bar No. 136646)
**BRAMSON, PLUTZIK, MAHLER& BIRKHAEUSER LLP**
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
dbirkhaeuser@bramsonplutzik.com

*Co-Class Counsel for Indirect Purchaser Plaintiffs*

Christopher L. Lebsock (State Bar No. 184546)
Stephanie Cho (State Bar No. 291903)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
bsweeney@hausfeld.com
clebsock@hausfeld.com
scho@hausfeld.com

*Co-Class Counsel for Direct Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE KOREAN RAMEN ANTITRUST LITIGATION | Case No. 3:13-cv-04115-WHO |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT OTTOGI'S MOTIONS IN LIMINE** |
| This Document Relates to:<br><br>ALL ACTIONS | Date:        January 26, 2018<br>Time:        2:00 p.m.<br>Courtroom:  2, 17th Floor<br>Judge:       Hon. William H. Orrick |

# TABLE OF CONTENTS

1.    Opposition to Motion in Limine Number 1: Ottogi's  Motion To PrecludeEvidence of Spoliation Should be Denied .............................................................................................. 1

2.    Opposition to Motion In Limine No. 2: Ottogi's Motion To Exclude Any Reference To The Korea Fair Trade Commission's Investigation Should Be Denied........................7

3.    Opposition  to Motion In Limine No. 3:  Ottogi's Motion to Exclude Signed Statements Should Be Denied ............................................................................... 10

4.    Opposition  to Motion In Limine  No. 4:  Ottogi's Motion to Exclude "References To Unrelated Business Practices, Corruption, And Politics" ................................................. 14

5.    Opposition  to Motion In Limine  No. 5:  Ottogi's Motion to Exclude References To Ottogi America's Former Attorney, Stephan Y. Kang...................................................... 14

1

## TABLE OF AUTHORITIES

2

<u>CASES</u>

3

*Alsabur v. AutoZone, Inc.*
    No. 13-CV-01689-KAW, 2014 WL 3841042 (N.D. Cal. Aug. 1, 2014) ....................................... 11

4

5

*Alvarez v. King Cty.*
    No. C16-0721RAJ, 2017 WL 3189025 (W.D. Wash. July 27, 2017) ........................................... 13

6

7

*DeVore v. United States*
    368 F.2d 396 (9th Cir. 1966) ....................................................................................................... 6

8

9

*Dobosz v. Quaker Chem. Corp*
    No. 2:15-CV-203-PRC, 2016 WL 4376528 (N.D. Ind. Aug. 16, 2016) ...................................... 11

10

11

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*
    2009 WL 1949124 ......................................................................................................................... 3

12

13

*Grimmett v. Brown*
    75 F.3d 506 (9th Cir. 1996) ......................................................................................................... 2

14

15

*In re Animation Workers Antitrust Litig.*
    123 F. Supp. 3d 1175 (N.D. Cal. 2015) ...................................................................................... 2

16

17

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*
    782 F.Supp. 487 (C.D. Cal. 1991) .............................................................................................. 2

18

19

*Lopos v. City of Meriden Bd. of Educ.*
    No. CIV.304CV00352AWT, 2006 WL 1438612 (D. Conn. May 16, 2006) ................................ 11

20

21

*Mosely v. City of Chicago,*
    252 F.R.D. 421 (N.D. Ill.) ........................................................................................................... 11

22

23

*Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*
    682 F.2d 802 (9th Cir. 1982) ....................................................................................................... 3

24

25

*Roxbury-Smellie v. Florida Dep't of Corr.*
    324 F. App'x 783 (11th Cir. 2009) .............................................................................................. 11

26

27

28

*Sears, Roebuck & Co.*
    784 F.3d 495 (9th Cir. 2015) ......................................................................................... 13

*Smith v. United States*
    348 U.S. 147 (1954) ........................................................................................................ 12

*Suuqa Bakaro Grocery v. United States Dep't of Agric.]*
    No. 2:16-CV-254-DBH, 2017 WL 3141919 (D. Me. July 24, 2017) ........................... 11

*TDN Money Systems, Inc. v. Everi Payments, Inc.*
    No. 15-2127, 2017 WL 5148359 (D. Nevada 2017). ................................................... 14

*Thorman v. Am. Seafoods Co.*
    421 F.3d 1090 (9th Cir. 2005). ........................................................................................ 2

*Trenier v. HMS Host, Inc.*
    681 F. App'x 597 (9th Cir. 2017) .................................................................................. 13

*United States v. Collins*]
    90 F.3d 1420 (9th Cir. 1996) ............................................................................................ 6

*United States v. Katakis*
    252 F. Supp. 3d 988 (E.D. Cal. 2017) .............................................................................. 5

STATUTES

1 Federal Evidence § 4:4 (4th ed.)..................................................................................... 5

Federal  Rules of Evidence 801(d)(2)(D) ....................................................................... 13

# I.   INTRODUCTION

Plaintiffs submit this memorandum of points and authorities in response to Defendant Ottogi's Motions in Limine [ECF 645].

## 1.     Opposition to Motion in Limine Number 1: Ottogi's  Motion To PrecludeEvidence of Spoliation Should be Denied

Defendants[1] ask this Court to preclude Plaintiffs from introducing any evidence that they destroyed or altered documents.  Defendants claim that this Court has already ruled that they did not engage in spoliation.  Defendants further claim that evidence of spoliation is irrelevant, speculative, and threatens to mislead the jury.  This motion should be denied.  The Court's prior order denying sanctions made no factual findings regarding Defendants' extensive efforts to destroy and alter documents.  Moreover, evidence of spoliation is directly relevant to Defendants' efforts to conceal their acts as well as to demonstrate their consciousness of guilt.

### a.        Evidence of Spoliation is Not Precluded by this Court's Prior Order

Defendants contend that this Court previously held that "there was no spoliation."  Ottogi Motion in Limine, [ECF  645], 2:20-21 ('Ottogi Motion").  That is not a fair characterization of the Court's order.  This Court did deny Plaintiffs' motion to sanction Defendants for their conduct. However, it never made any finding that Plaintiffs' evidence of document destruction or alteration was lacking in any respect.

The Court expressly declined to make any such finding; refraining from ruling either way on admissibility of this evidence. Indeed, the Court recognized that, "Plaintiffs may be able to argue in this action the negative implications of the evidence they believe they have uncovered, that Nongshim intentionally destroyed information relevant to the KFTC investigation and that Ottogi altered information in response to the KFTC's investigation.[2]"  Order Denying Plaintiffs' Motion for

---

[1] The Nongshim Defendants purport to join in Ottogi's Motions in Limine. [ECF 644] at 25.  To the extent this motion fails to identify the evidence *Ottogi* seeks to preclude, this failure is even more objectionable as to Nongshim.

[2] Defendants rely on *Lindsey v. Costco Wholesale Corp.*, No. 15-CV-03006-WHO, 2016 WL 5815286 (N.D. Cal. Oct. 5, 2016) in which this Court granted a motion in limine to preclude

Sanctions [ECF 502] 2:14-16.  The Court specifically declined to rule on the issue of admissibility of such evidence, indicating that issue could be addressed at summary judgment or trial.  *Id*. at 2:26-27, at n. 3 ("Admissibility of that evidence at summary judgment or trial will be addressed if plaintiffs seek to rely on it.").  Thus, contrary to Defendants' argument, the Court's spoliation order does not foreclose admissibility of evidence or argument concerning their destruction and alteration of documents.

### b.   Evidence of Spoliation is Relevant to Plaintiffs' Claim of Fraudulent Concealment

One of Plaintiffs' arguments for tolling the statute of limitations is fraudulent concealment.  To establish fraudulent concealment, usually mere silence is not enough.  *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1095–96 (9th Cir. 2005).  Plaintiffs must show that Defendants took "affirmative acts" to prevent their conduct from being discovered. *Grimmett v. Brown*, 75 F.3d 506, 515 (9th Cir. 1996) (fraudulent concealment requires conduct "affirmatively directed at deflecting litigation")(citations omitted).  Accordingly, the wholesale destruction of documents that plaintiffs have demonstrated here is relevant as an "affirmative act" constituting fraudulent concealment of defendants' conduct, thus tolling the statute of limitations.  *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1201 (N.D. Cal. 2015) ("*Animation*") ("affirmative efforts to eliminate a paper trail" among evidence relevant to show fraudulent concealment).  Importantly, however, it is not necessary to show that the Plaintiffs were targeted by Defendants' concealment activities. *See Animation*, 123 F. Supp. 3d at 1202; *E.W. French,* 885 F.2d at 1399 (plaintiff must simply show that defendant "concealed the conspiracy"); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 782 F.Supp. 487, 490 (C.D. Cal. 1991) ("[t]he proper focus . . . is not whether the *intent* was to conceal the information from plaintiffs, but whether the concealment . . . prevented [plaintiff] from being alerted") (citations).

---

evidence of document destruction.   There, however, this Court had "found that "plaintiff's accusations of spoliation and/or nonproduction are based on mischaracterizations of the deposition testimony." *Id.* at *5.

In their motion, Defendants do not address the issue of spoliation head on.  Rather, they claim that Plaintiffs' showing only consists of *speculation* regarding the content of the documents that were destroyed.  Ottogi Motion in Limine, [ECF 645], 4:8-5:2.

This argument[3] mischaracterizes the record.  For example:

- Ottogi destroyed various pricing memos referring to competitor contacts after the KFTC commenced its investigation and Ottogi altered other price memos to delete any reference to competitor information after the KFTC commenced its investigation. See Motion to Sanction Ottogi For Spoliation [ECF 420] at pp.4-12; Declaration of Stephanie Cho In Support of Motion to Sanction Ottogi for Spoliation [ECF 420-1], ("Ottogi Sanctions Cho Decl."), ¶¶ 11-62 and corresponding Exhs. ;

- Nongshim and Ottogi destroyed competitor communications concerning price and other sensitive information. See Motion to Sanction Ottogi For Spoliation [ECF No. 420] at pp.8-14; Ottogi Sanctions Cho Decl. [ECF No. 420-1] at ¶¶ 11-62 and corresponding Exhs.  Motion to Sanction Nongshim for Spoliation [ECF 416] pp.8-13; Declaration of Stephanie Cho In Support of Motion to Sanction Nongshim for Spoliation [ECF 416-1] ("Nongshim Sanctions Cho Decl."), ¶¶ 92-106 and corresponding Exhibits. As a result of this destruction, few or no documents from key witnesses were produced. Id. at ¶¶ 80-105; Ottogi Sanctions Cho Decl. [ECF 420-1] at ¶¶ 47, 54;

- Nine days after the KFTC's onsite investigation, Nongshim employee Sung-Soo Park began communicating with competitors via his personal email address, "pss0998@naver.com", to avoid detection. *See* Cho Decl.in Opposition to Summary Judgment ("Cho MSJ Decl.")[ECF 567-4], Exh. 2 (Nongshim's Supplemental Response to IPPs' Interrogatory No. 15), Exh. 3 (Sung-Soo Park Tr. (4-27-16) at 41: 11-18), and Exh. 4 (SHD00003117-59T at 57-58); Vaughn Decl. [ECF 567-2], ¶ 18;

---

[3] It is also contrary to Ninth Circuit precedent.  "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it."  *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (citing *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982)).

- Ottogi implemented a rigorous "auto-delete" protocol on its email servers after the KFTC commenced its investigation that destroyed substantial quantities of relevant documents. Declaration of Daniel E. Birkhaeuser in opposition to Ottogi Motions in Limine, Exh H (Se-Chang Lee Tr. (4-5-2016) at 13:5-16:2, 19:17-21:5; 28:10-19; 40:11-41-18); Ottogi Sanctions Cho Decl. [Dkt. 420-1], at ¶¶ 47, 54.

Plaintiffs can prove that the documents Defendants destroyed included emails evidencing competitor communications because Samyang **did** save them and produced them to the KFTC and Plaintiffs.  For example, Samyang's records indicate that Ottogi's Jae-Hwan Jung sent an email on February 29, 2008 with the "details of the price increase that is under discussion now."  Cho Decl. in Opposition to Summary Judgment [ECF 567-4], Exh. 4 at SHD00003131-T. On March 4, 2008, he followed up with "our newly priced Ramen item's production details."  *Id*. at SHD00003134-T. Internal Ottogi documents confirm that Mr. Jung was communicating with the Samyang Marketing Office. *See*, Cho Declaration in Support of Motion to Sanction Ottogi [ECF 420-2], Ex. 33 (OTGKR-0001012T) ("According to the Samyang Marketing Office, sales agents are circulating the +1 giveaway products in the market instead of using them as a tool for sales boosts, which the company is grappling with an internal countermeasure."). However, when Jung left Ottogi Korea on November 3, 2011, all of his documents, including emails, were destroyed.  Plaintiffs' Motion to Sanction Ottogi [ECF 420], Table 1 at 9:12; Cho Declaration in Support of Motion to Sanction Ottogi [ECF 420-2], Ex. 2 (Ottogi's Second Amended Response to IPPs' Interrogatory No. 17 at 10:21).

Samyang's records further confirm that Nongshim's Sung-Soo Park communicated with competitors from at least January 2008 until June 2008 using his Nongshim email account., Cho Decl. in Opposition to Summary Judgment [ECF 567-4], Exh. 4 (SHD00003117-59T at 3123T *et. seq.*).  He also communicated with competitors via his personal email address, pss0998@naver.com, *but only after the KFTC raided the Defendants on June 3, 2008. Id*. at 3157-8.  Nongshim produced none of Park's emails in this litigation. Cho Declaration in Support of Motion to Sanction Nongshim [ECF 416-1] at ¶ 93.

As another example, Samyang's records indicate that Mr. Hyun-Gyoon Choi, a member of Nongshim's Distribution Research Team, corresponded with competitors over 35 times between January and June, 2008 alone.  Cho Decl. in Opposition to Summary Judgment  [ECF 567-4], Exh. 4 (SHD00003117-59T).  However Nongshim produced a total of only 16 emails from Mr. Choi's custodial file in this litigation.  *See* Plaintiff's Motion For Sanctions against Nongshim, [ECF 416] at 9:13 (Table II); Cho Declaration in Support of Motion to Sanction Nongshim [ECF 416-1] at ¶ 92-93.

As these examples demonstrate, Plaintiffs do not merely speculate that the documents Nongshim and Ottogi destroyed were incriminating.  It has now been established, through other documents produced by Samyang, that many of these documents evidence communications among competitors about matters that are at the very heart of this case. Given this evidence, the jury should be allowed to make the reasonable inference that Defendants destroyed documents to cover up their conduct and avoid production of incriminating evidence of their illegal activities.

### c.      Evidence of Spoliation is Relevant to Show Consciousness of Guilt

Evidence that Defendants destroyed documents and altered others is also relevant to show Defendants' consciousness of guilt.  "From a guilty mind, guilt itself may be inferred. Behavior indicating a guilty mind encompasses a wide range of acts. … Other behavior indicating guilty mind includes … suborning perjury or fabricating evidence, destroying or concealing evidence…"  1 Federal Evidence § 4:4 (4th ed.).

Thus, in *United States v. Katakis*, 252 F. Supp. 3d 988 (E.D. Cal. 2017) the court denied a motion for a new trial where the defendant claimed that evidence of his attempts to delete emails had prejudiced the jury and led it to convict him of obstruction of justice.  The court held that the evidence would have been admitted for other purposes even if the defendant had not been charged with obstruction of justice: "Here, evidence regarding Katakis' attempts to delete emails after learning about the government investigation was highly probative in showing Katakis' consciousness of guilt, which outweighs any dangers of unfair prejudice." *Id*. at 995, *citing United*

*States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) (evidence of defendants' attempts to induce witnesses to lie is indicative of consciousness of guilt and is admissible); *see also*, *DeVore v. United States*, 368 F.2d 396, 397 (9th Cir. 1966); ("[f]alse exculpatory statements evidence a consciousness of guilt and are probative of unlawful intent."); *In re Urethane Antitrust Litig.*, 2016 WL 475339, *4 (D. N.J., Feb. 8, 2016) ("Acts of concealment, including document destruction, are relevant for determining whether a conspiracy existed.") *citing United States v. Smith*, 294 F.3d 473, 479 (3d Cir. 2002).

The facts adduced during discovery strongly indicate consciousness of guilt.  This includes the actions of Nongshim's Sung-Soo Park who, as noted above, was communicating with competitors from at least January 2008 until June 2008 using his Nongshim email account.  Cho Decl. in Opposition to Summary Judgment [ECF 567-4],  Exh. 4 (SHD00003117-59T).  Only nine days after the KFTC's initial onsite investigation, however, once it became clear that using his work account would be susceptible to disclosure , Mr. Park abruptly changed his manner of communicating with competitors using his personal email address, "pss0998@naver.com,".  *Id.* at SHD00003158-59T; *see* Cho Decl., Exh. 3 at 41:11-18. In addition, Nongshim claimed never to have received the KFTC's June, 27, 2008 document request addressed to the Ramen manufacturers.  Cho Decl. in Support of Motion to Sanction Nongshim [ECF No. 416-2],  Exh. 27 (Joong-Rak Lee Tr. (3-21-2016) at 68:21-69:8).  It then compounded that false assertion by submitting a declaration to the Court maintaining this position, even though the record reveals a draft response to the KFTC's letter in Nongshim's files.  Reply to Nongshim Sanctions Motion [ECF 448]  at 6-9 and evidence cited therein.

As another example, Ottogi altered (and submitted to the KFTC) internal memoranda to exclude any statements indicative of collusion.  Motion to Sanction Ottogi For Spoliation [ECF 420] at pp. 4-7; Declaration of Stephanie Cho In Support of Motion to Sanction Ottogi for Spoliation [ECF 420-1] at  ¶¶ 8-27 and Exhs. 6-23. These altered memos replace Ottogi's *actual* reason for increasing prices (its competitors' price increases) with the false exculpatory statement that the cost of raw materials had increased. *Id.* Ottogi Korea also destroyed original documents containing

evidence of communications with competitors, such as the originals of SoGaps 132 and 133, which were copied by the KFTC before Ottogi deleted them. *Id.*, [ECF 420-1], Ex. 33 (OTGKR-0001011T-1013) and Ex 41 (OTGKR-0001015T).

The fact that the Defendants destroyed thousands of documents[4] and removed incriminating evidence from others, evidences a guilty mind, and is therefore relevant evidence for the jury to consider when deciding whether Nongshim and Ottogi committed an antitrust violation.

> **2.    Opposition to Motion In Limine No. 2: Ottogi's Motion To Exclude Any Reference To The Korea Fair Trade Commission's Investigation Should Be Denied**

Defendants' overly broad motion seeks to preclude Plaintiffs from introducing any document, testimony, or other evidence even tangentially related to the Korean Fair Trade Commission's ("KFTC") investigation of Defendants, Samyang, and Yakult. The motion therefore lacks the requisite specificity as it does not describe exactly which evidence it desires to exclude, and seeks a vastly overbroad order from this Court. *TDN Money Systems, Inc. v. Everi Payments, Inc.,* No. 15-2127, 2017 WL 5148359, at *6 (D. Nevada 2017).  This sweeping, non-specific, motion in limine is improper and should be denied.

"Motions *in limine* must identify the evidence at issue and state with specificity why such evidence is inadmissible." *In re: Cathode Ray Tube (Crt) Antitrust*, No. C-07-5944 JST, 2016 WL 5871243, at *7 (N.D. Cal. Oct. 7, 2016) (citations omitted).  With respect to documents, Defendants do not identify a single document by deposition exhibit number, bates number, or even content. Defendants make matters worse when they attempt to describe the broad *categories* of documents they seek to preclude.  *See* Ottogi Motion [ECF 645], p. 7 (seeking to preclude any documents or exhibits that "explicitly or *implicitly*" reference the investigation).

---

[4] In this motion, Defendants do not dispute the overwhelming evidence of destruction Plaintiffs presented in their spoliation motions.  [ECF 416], pp. 7-16; [ECF 420], pp. 7-14.  Nor could they in light of facts such as Ottogi's rigorous email deletion protocol instituted in March, 2009 (Declaration of Daniel E. Birkhaeuser in Opposition to Ottogi Motions in Limine), Exh H (Se-Chang Lee (4-5-2016) at 13:5-16:2, 28:10-16) or the fact that Nongshim's senior executives produced so few emails while the bulk of emails produced were from low-level Nongshim America employees. [ECF 416], pp. 14-15.

The motion fares no better when it comes to testimony.  Although the parties exchanged designations (and counter-designations) of deposition testimony long ago, not a single line of testimony is identified.  Nor do Defendants single out any *witness* who explicitly (or "implicitly") mentioned the KFTC investigation in a manner that Defendants find objectionable.

Defendants' motion is too vague and too broad to be entered as an order by the Court and should be denied on that basis alone.

### a.   The Fact of the KFTC Investigation is Relevant, and its Probative Value Far Outweighs Any Unfair Prejudice

As a preliminary matter, Plaintiffs agree that the KFTC's July 2012 administrative order in which it found that "certain companies" (Ottogi Motion at 7:14-17) conspired to fix the price of Ramen Noodles should not be admitted into evidence.  Consistently,[5] and for the same reasons, Plaintiffs believe that the Korea Supreme Court's opinion, and the KFTC's orders after remand, should likewise be precluded.  However, the *fact* of the KFTC's investigation is relevant to several important issues in this case and can not be simply ignored as Defendants suggest.

The February 2010 *decrease* in Ramen pricing is a case in point.  Samyang lowered its Ramen pricing in 2010 because "we realized what we were doing is price fixing, and we realized that although we did not know that that was not what we were supposed to do, since we did that, we admitted our wrongdoing." Cho Decl. in Opposition to Summary Judgment [ECF No. 569-2], Exh. 12 (Jung-Soo Kim Tr.) at 93:4-17.

After a decade of price increases, Ottogi also lowered in prices in February 2010, although the reasons it gave are not as candid.  Ottogi's corporate representative, Bang-Wan Ku, testified that Ottogi lowered the price of Korean Ramen in 2010 *because the KFTC asked them to do so*., Cho MSJ Decl. [ECF No. 566-24], Exh. 82 (Bangwan Ku Tr.) at 85:23-86:15.  The approval document for this price decrease carbon copied "Bum-jin Park" who was Senior Manager of the Overseas Sales Team charged with managing Ottogi America. Cho MSJ Errata Decl. [ECF 569-2] at Exh. 87

---

[5] Defendants, on the other hand, believe that the Supreme Court's decision and the KFTC's order after remand are highly relevant and have indicated that they will oppose Plaintiffs' motion in limine to preclude them.

(OTGKR-0018885T). Notably, that price approval document stated that the reason for the price decrease was due to a drop in raw material costs, and not because of a request from the KFTC. A directive from Ottogi Korea to Ottogi America to lower U.S. prices shortly followed. *Id*. Cho MSJ Decl. [ECF 567-4], Exh. 88 (OTGAM-0035653T). Both Ottogi's reasons for the price increase as well as its immediate effect on U.S. pricing are highly relevant to prove the conspiracy as well as its effect on U.S. prices. Plaintiffs' class period ends on January 31, 2010 as a result of these price decreases, and the jury is entitled to understand why that date serves as the end date for the class. However, Defendants' motion in limine would preclude this evidence in its entirety.

Another example is found in the witness statements[6] that Defendants' employees gave to the KFTC investigators. These statements, given closer in time to the events at issue than depositions taken in this case, concede contacts and communications with competitors. Testimony from Defendants' employees about the circumstances under which the statements were given (often with lawyers present) are incredible and the explanations themselves infer guilt. The statements are highly relevant as to the admissions contained therein as well as to impeach inconsistent statements given at later depositions in this matter.

Moreover, many of the important documents unearthed during discovery were those gathered during the KFTC investigation. They exist only as KFTC "SoGaps" or "exhibits" because the Defendants destroyed them at some point thereafter. Without "explicitly or implicitly" mentioning the KFTC investigation, plaintiffs would be unable to show that Ottogi altered internal documents to remove discussion of its competitors' pricing. *See* supra at 6-7. Likewise, Plaintiffs would be prevented from introducing SoGap 133, Ottogi's July 18, 2007 price increase memo citing a telephone call with Samyang's Jong-Moon Yui as its source of information. Cho Decl. in Support of Motion to Sanction Ottogi [ECF 420-1], Ex 41 (OTGKR-0001014T). Similarly, Plaintiffs would be barred from introducing another price increase memo (SoGap 132) with sales information and

---

[6] These witness statements or "protocols of examination" are discussed in further detail below. *See*, infra at 10-14.

1   figures attributed to the Samyang Marketing Office.  *Id*. at Ex. 33 (OTGKR-0001011T).  This

2   evidence is directly relevant to plaintiffs' claims.

3       In determining whether to exclude evidence under Rule 403 "[c]ourts have considered

4   various factors, such as the importance of the evidence and the need for it in the context of the

5   litigation, including both the extent to which the evidence tends to establish the matter as to which it

6   is offered and the extent to which the matter is directly in issue." *Garcia v. Los Banos Unified*

7   *School District,* No. 04-cv-6059, 2007 WL 778640, at *2 (E.D. Cal., March 9, 2007). "If the

8   probative value and danger of prejudice, confusion, etc., are of relatively equal weight, the evidence

9   should be admitted." *Id.*

10      Here, the probative value of such evidence far outweighs any undue prejudice.  Evidence

11  relating to the KFTC investigation bears centrally on liability, the credibility and bias of witnesses,

12  and Defendants' efforts to conceal their activities.  Defendants' overbroad motion to prohibit all

13  evidence of the KFTC's investigation should be denied.[7]

14      **3.   Opposition to Motion In Limine No. 3:  Ottogi's Motion to Exclude Signed
15          Statements Should Be Denied**

16      During the KFTC investigation, numerous employees of Ottogi and Nongshim were

17  interviewed by KFTC investigators, and at the end of each session, signed summaries of the

18  testimony that they provided.  The statements, which are referred to as "Protocols of Examination"

19  in the deposition transcripts, contain numerous admissions and statements that contradict

20  Defendants' positions in the litigation.  Ottogi's motion to categorically exclude all such statements

21  – without even bothering to identify the specific documents it is attempting to exclude – should be

22  denied.

23      Ottogi's efforts to characterize the statements as no more than summaries prepared by

24  government investigators (Ott. Br. at 11-12) ignore the fact that the statements were signed by the

25  witnesses themselves, and often further authenticated with thumb- or finger-prints. *See, e.g.,*

26
27  [7] Plaintiffs are willing to stipulate to a jury instruction explaining to the fact-finders that they are not
    to speculate about the result of the KFTC's investigation and the result is not relevant to how they
28  should decide the facts of this case. Defendants have not asked for such an instruction.

Declaration of Daniel E. Birkhaeuser in Opposition to Ottogi Motions in Limine ("Birkhaeuser Decl."), Exh. A  (Il-Nyum Kim Tr. (4/26/16) at 111:16-112:9) (signed document and put fingerprint on each page, including after his signature); Birkhaeuser Decl., Exh. B (Ki-Soo Kim Tr. (4/18/16) at 46:8-11) (same); Birkhaeuser Decl., Exh. C (Hyun-Gyoon Choi Tr. (2/18/16) at 55:4-21) (signature and thumbprint); Birkhaeuser Decl., Exh. D (Min Sang Chan Tr. (3/28/16) at 46:3-47:9) (signature); Birkhaeuser Decl., Exh. E (Joong-Rak Lee Tr. (3/29/16) at 166:9-10) (signature).[8]  In the cases cited by Ottogi, in contrast, the statements were merely internal summaries prepared by government investigators.[9]  They were not signed by the witnesses, much less authenticated by the witnesses during their subsequent depositions under oath.  Indeed, it is unclear why Ottogi believes that Plaintiffs need KFTC witnesses to authenticate the documents when the witnesses did so themselves.  *See, e.g., Alsabur v. AutoZone, Inc.,* No. 13-CV-01689-KAW, 2014 WL 3841042, at *14 (N.D. Cal., Aug. 1, 2014) (documents properly authenticated by party's deposition testimony that he recognized the documents and confirmed his signature on them).

In Ottogi's telling, the Protocols of Examination should be treated as if they had been prepared by an agency of the Democratic People's Republic of Korea rather than the Republic of Korea.  This is especially ironic, given that Ottogi's *very next* Motion in Limine seeks to exclude references to "corruption" and "politics."  It is certainly true that most of Defendants' witnesses claimed to feel "intimidated" by the circumstances of their interviews.  Some testified that the room in which they were interviewed was "small" and the climate control was poor.  But this is true in government buildings the world over, including our own.  They did not care for the tenor of the

---

[8] Some of the witnesses made the same, somewhat remarkable claim that they did not "sign" the documents, but rather, just wrote their names in their own handwriting.  Birkhaeuser Decl., Exh. D (Min Sang Chan Tr.(3/28/16) at 46:3-47:9); Birkhaeuser Decl., Exh. C (Hyn Gyoon Choi Tr. (2/18/16) at 52:9-22); Birkhaeuser Decl., Exh. F (Sung-Soo Park Tr. (4/27/16) at 105:12-106:13).

[9] *See, e.g., Roxbury-Smellie v. Florida Dep't of Corr.,* 324 F. App'x 783, 785 (11th Cir. 2009) (EEOC investigator's records of interviews); *Dobosz v. Quaker Chem. Corp.,* No. 2:15-CV-203-PRC, 2016 WL 4376528, at *11 (N.D. Ind. Aug. 16, 2016) (same); *Mosely v. City of Chicago,* 252 F.R.D. 421, 436 (N.D. Ill.) (interviewer's notes); *Lopos v. City of Meriden Bd. of Educ.,* No. CIV.304CV00352AWT, 2006 WL 1438612, at *5 (D. Conn. May 16, 2006) (same); *Suuqa Bakaro Grocery v. United States Dep't of Agric.,* No. 2:16-CV-254-DBH, 2017 WL 3141919, at *5 (D. Me. July 24, 2017) (counsel's notes and summaries of customer interviews).

questions.  That, too, is scarcely an uncommon experience when a government is investigating potential violations of its laws.  Some testified that they were rushed when the time came to read and sign their statements.  *See, e.g.,* Birkhaeuser Decl., Exh. D (Min Sang Chan Tr. (3/28/16) at 42:16-20) (claiming that he "really wasn't able to review it fully" because he was "rushed"); Birkhaeuser Decl., Exh. E (Joong-Rak Lee Tr. (3/29/16) at 166:9-10) (felt pressure to sign because one of the investigators said "Look.  It's getting dark.  Please sign."); Birkhaeuser Decl., Exh. C (Hyun-Gyoon Choi Tr. (2/18/16) at 47:24-48:3; 55:4-21) (reviewed the document for less than five minutes, then signed because "all I wanted to do was just get the darn thing over with and go home.").  Defendants are, of course, more than welcome to offer these explanations to the jury.  But they cite no case which suggests a basis for exclusion.  In their primary case, *Smith v. United States,* 348 U.S. 147, 155 (1954), the Court analyzed an extrajudicial confession in light of "the realization that sound law enforcement requires police investigations which extend beyond the words of the accused."  *Id.* at 153.  However, the question was not whether the confession was ***admissible,*** but rather, whether corroboration of the confession was required to support the conviction of a criminal defendant.  *Id.* at 155.

The same may be said of Ottogi's claim that the witnesses were "prohibited aid of counsel." Ottogi Br. at 11.  As an initial matter, it is worth remembering that this is not a criminal trial. Moreover, as a factual matter Ottogi's claim is misleading at best; many of the witnesses testified that they ***were*** accompanied by an attorney.  *See, e.g.,* Birkhaeuser Decl., Exh. D (Min Sang Chan Tr. (3/28/16) at 38:16-17); Birkhaeuser Decl., Exh. C (Hyun-Gyoon Choi Tr. (2/28/16) at 47:13-16); Birkhaeuser Decl., Exh. F (Sung-Soo Park Tr. (4/27/16) at 8:12-17).  While the witnesses were uniformly unimpressed with their attorney's performance – for example, Sung-Soo Park testified that his attorney, was "tired" (*Id.* at 81:9-17; 83:6-15), the suggestion that their testimony was coerced while their attorneys looked on is absurd.  For all of his complaints, for example, Mr. Park was accompanied by an attorney from Kim & Chang (*Id.*), probably the foremost firm in Korea, and one with exceptional experience in the antitrust field. As this firm touts on its website:

> The Antitrust & Competition Practice is comprised of over 100 professionals, including attorneys specializing in antitrust law, renowned antitrust economists and advisors who are former senior officials from the Korea Fair Trade Commission ("KFTC"), who together have unrivalled experience and expertise in all aspects of Korean antitrust and competition law.

http://www.kimchang.com/frame2.jsp?lang=2&b_id=75&m_id=70&s_id=65&mode=view.  In short, if KFTC's investigators wanted to improperly extract confessions out of bullied and frightened corporate executives, they probably would not invite counsel from Kim & Chang to participate in the proceedings, even as witnesses.

Ottogi's argument that the Protocols must be excluded as hearsay is equally unavailing. Ottogi argues that the statements "are not party admissions when offered against all four defendants" (Ottogi Br. at 12), but Ottogi is seeking to exclude the statements *altogether.*  The negative pregnant in Ottogi's argument is that the statements *are* admissions of a party opponent as to the corporations that employed them, under the general rule that "statements made by an opposing party's agent or employee on a matter within the scope of employment" are not hearsay under Fed. R. Evid. 801(d)(2)(D).  *Trenier v. HMS Host, Inc.,* 681 F. App'x 597, 598 (9th Cir. 2017) (citing *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 498 (9th Cir. 2015)).  The Court can certainly provide a limiting instruction as to other Defendants, if necessary.

Moreover, other exceptions to the hearsay rule might apply to part, or all, of the Protocols of Examination.  The Protocols frequently contradict the testimony of the witnesses at their depositions, making them admissible as a prior inconsistent statement.  *Alvarez v. King Cty.,* No. C16-0721RAJ, 2017 WL 3189025, at *6 (W.D. Wash. July 27, 2017) (party may properly introduce statements made to investigators "for the purpose of impeaching the witness in accordance with Federal Rule of Evidence 801(d)").  Also, to the extent that a witness testifies that he no longer remembers factual information set forth in his Protocol of Examination, the Protocol could constitute a recorded recollection under Federal Rule of Evidence 803(5).  With respect to witnesses who are unavailable for trial because they elect not to travel from Korea – a category that could be extensive – statements in the Protocols of Examination could qualify as Statements Against Interest

under Federal Rule of Evidence 804(3).  In consequence, a blanket ruling that *all* of the Protocols be excluded in their entirety is wholly unwarranted.

### 4.   Opposition  to Motion In Limine  No. 4:  Ottogi's Motion to Exclude "References To Unrelated Business Practices, Corruption, And Politics"

Plaintiffs do not intend to make any arguments or introduce evidence "of generalized corruption, fraud, or malfeasance among Korean business or politicians." Thus, Plaintiffs do not oppose Ottogi's MIL No. 4 so long as it is clear that evidence regarding business structures, including chaebols, is permitted. This evidence will help the jury understand the operation of a common form of business group prevalent in Korea and how the organization of the Nongshim and Ottogi Groups fits within those models. That evidence can be introduced without any suggestion that "chaebols" are generally characterized by "corruption, fraud or malfeasance."

### 5.   Opposition  to Motion In Limine  No. 5:  Ottogi's Motion to Exclude References To Ottogi America's Former Attorney, Stephan Y. Kang

With a broad brush, Defendants prematurely ask the Court to preclude any mention of any facts that emanated from the lawsuit *Ottogi America v. Stephan Y. Kang, et al.*, Los Angeles Superior Court Case No. YC 070 067 (the "Kang Litigation").  This motion is overly broad and fails to specify what documents and pleadings should be excluded.  The motion to exclude lacks the requisite specificity as it does not set forth exactly which evidence it wishes to exclud, and seeks an overbroad order from this Court.  *TDN Money Systems, Inc. v. Everi Payments, Inc.,* No. 15-2127, 2017 WL 5148359, at *6 (D. Nevada 2017).

On August 29, 2014, Ottogi America filed a lawsuit against its former attorney Stephen Y. Kang ("Kang") and the law firm which previously employed Kang.  Since then, Ottogi has filed two additional amended complaints (the third amended complaint was filed on August 18, 2017) which include additional defendants.  In these complaints, Ottogi America and its C.E.O. Seung Yub Lee, assert that shortly after the class period ended, the company was defrauded to the tune of millions of dollars by Kang and his associates. *See* Birkhaeuser Decl., Exh. G (Third Amended Complaint). This raises a question relevant to this litigation—whether Ottogi America, through Mr. Lee, had

sufficient management controls in place, and whether the company was being run by a qualified, competent management team during the class period, and after.

Indeed, Defendants' economist, Dr. Alan Cox ("Cox"), analyzes Ottogi America's profitabililty "during" and "after" the conspiracy to infer that a conspiracy was not plausible in this case—and that makes Ottogi America's managerial controls during these periods directly relevant the reliability and force of that opinion. Specifically, Cox explains:

> Exhibits 15.1 - 15.15 illustrate Nongshim America's and Ottogi America's profit margins. These Exhibits show that, for both Ottogi America and Nongshim America, *there is no discernible difference in the respective companies' profit margins during the alleged conspiracy periods as compared to the years before and after the class period.* This is true regardless of whether profits are calculated for Nongshim America or Ottogi America as a whole, for individual products, or for an individual customer. *See* Updated Expert Report of Alan J. Cox, Dated July 31, 2017 [ECF No. 626-1] at ¶114 (emphasis added).

In light of Cox's opinion, Plaintiffs are surely entitled to test the assumptions that underpin it. What did Cox assume when constructing his "during" and "after" profitability analysis? Were there significant shortcomings within management that make such an analysis of questionable merit? By Ottogi America's own judicial admissions, it appears so. At least Plaintiffs should have the right to explore the issue at trial with Mr. Lee—if Ottogi America will bring him live—and certainly with Cox. At bottom, Ottogi America has not shown that there is a sufficient justification for its overbroad and premature motion in limine.

1   DATED: December 22, 2017                    /s/ Daniel E. Birkhaeuser

2                                               Alan R. Plutzik (State Bar No. 77785)
3                                               aplutzik@bramsonplutzik.com
                                                Daniel E. Birkhaeuser (State Bar No. 136646)
4                                               dbirkhaeuser@bramsonplutzik.com
                                                BRAMSON, PLUTZIK, MAHLER
5                                               & BIRKHAEUSER LLP
                                                2125 Oak Grove Road
6                                               Walnut Creek, CA 94598
                                                Telephone: (925) 945-0200
7                                               Facsimile: (925) 945-8792

8                                               Mark P. Kindall (State Bar No. 138703)
9                                               mkindall@izardnobel.com
                                                 Robert A. Izard (admitted *pro hac vice*)
10                                              rizard@izardnobel.com
                                                 IZARD KINDALL AND RAABE LLP
11                                              29 South Main Street, Suite 305
                                                West Hartford, CT 06107
12                                              Telephone: (860) 493-6292
                                                Facsimile: (860) 493-6290
13
                                                *Co-Lead Counsel for the Indirect Purchaser*
14                                              *Plaintiffs*

15                                              /s/ Christopher L. Lebsock
16                                              HAUSFELD LLP
                                                 Christopher L. Lebsock (SBN 184546)
17                                              Stephanie Y. Cho (SBN 291903)
                                                 600 Montgomery St., 32nd Floor
18                                              San Francisco, CA 94111
                                                Tel: (415) 633-1908
19                                              Fax: (415) 358-4980
                                                Email: clebsock@hausfeldllp.com
20                                                      scho@hausfeldllp.com

21

22                                              GLANCY PRONGAY & MURRAY LLP
                                                Lee Albert (admitted Pro Hac Vice)
23                                              lalbert@glancylaw.com
                                                Gregory B. Linkh (admitted Pro Hac Vice)
24                                              glinkh@glancylaw.com
                                                230 Park Avenue, Suite 530
25                                              New York, NY 10169
                                                Telephone: (212) 682-5340
26                                              Facsimile: (212) 884-0988

27
                                                *Co-Lead Counsel for Direct Purchaser Plaintiffs*
28

---