Alan R. Plutzik (State Bar No. 77785)
Daniel E. Birkhaeuser (State Bar No. 136646)
BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER LLP
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
dbirkhaeuser@bramsonplutzik.com

*Co-Class Counsel for Indirect Purchaser Plaintiffs*

Christopher L. Lebsock (State Bar No. 184546)
Stephanie Cho (State Bar No. 291903)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
bsweeney@hausfeld.com
clebsock@hausfeld.com
scho@hausfeld.com

*Co-Class Counsel for Direct Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE KOREAN RAMEN ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:13-cv-04115-WHO<br><br>**PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF PROFESSOR MICHAEL KLAUSNER**<br><br>Date:         November 14, 2018<br>Time:         2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge:        Hon. William H. Orrick |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................... - 1 -

MEMORANDUM OF POINTS AND AUTHORITIES PRELIMINARY STATEMENT ....... - 1 -

BACKGROUND ...................................................................................................................... - 1 -

ARGUMENT ............................................................................................................................ - 4 -

    I.     The Klausner Report Is Untimely ................................................................... - 4 -

    II.    The Klausner Report Does Not Meet The Requirements Of FRE 702, And Is Unfairly Prejudicial Under FRE 403 ....................................................... - 7 -

         A.     The Klausner Report's Selective Use Of Defendants' Corporate Books And Records Should Be Precluded Under Both FRE 702 and 403 ............................................................................................. - 8 -

         B.     The Klausner Report's Improper Use Of Interviews Should Be Precluded Under Both FRE 702 and 403 ............................ - 10 -

CONCLUSION ....................................................................................................................... - 12 -

# TABLE OF AUTHORITIES

**Statues and Rules**

Fed. R. Civ. P. 23(a)(i) ................................................................................................................. - 10 -

Fed. R. Civ. P. 26(e) ..................................................................................................................... - 4 -

Fed. R. Civ. P.  37(c)(1) ............................................................................................................... - 4 -

Fed. R. Civ. P. 26(a) ..................................................................................................................... - 4 -

Fed. R. Evid. 403 ............................................................................................................... - 10 -, - 12 -

Fed. R. Evid. 702 ................................................................................................................. - 1 -, - 12 -

**Cases**

*Bourjaily v. U.S.*,
   483 U.S. 171 (1987) .............................................................................................................. - 8 -

*Bridge Aina Le'a, LLC v. Hawaii Land Use Commission*,
   Civ. No. 11-00414 SOM-KJM, 2017 WL 5617463 (D. Haw. Nov. 21, 2017) ....... - 4 -, - 5 -

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................................- 1 -, - 2 -, - 7 -

*Fujifilm Corp. v. Motorola Mobility LLC*,
   2015 WL 1737951 (N.D. Cal. Apr. 8, 2015) ..................................................................... - 7 -

*Goodman v. Staples the Office Superstore LLC*,
   644 F.3d 817 (9th Cir. 2011) ............................................................................................... - 4 -

*Lanard Toys, Ltd. v. Novelty, Inc.*,
   375 Fed. Appx. 705 (9th Cir. 2010) ................................................................................... - 5 -

*Nationwide Transp. Fin. v. Cass Info. Sys, Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ............................................................................................. - 8 -

*Nihart v. Natl Park Serv.*,
   No. 2:12- CV-00291-APG, 2014 WL 1415198 (D. Nev. Apr. 10, 2014) ....................... - 5 -

*Ojmar U.S. LLC v. Security People, Inc.*,
   Case No. 16-cv-04948-HSG, 2018 WL 1640126 (Apr. 5, 2018) .................................... - 5 -

*Payne v. Exxon Corp.*,
   121 F.3d 503 (9th Cir. 1997) ............................................................................................... - 5 -

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ........................................................................................ - 7 -

*Schuetts v. City of Phoenix*,
    No. CV-08-2018, 2010 WL 1253193 (D. Ariz. Mar. 25, 2010) ..................................... - 6 -

*Star Ins. Co. v. Iron Horse Tools, Inc.*,
    Civ-16-48-BLG-SPW-TJC, 2018 WL 30778493 (D. Mt. Feb. 7, 2018) ................- 4 -, - 5 -

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    No. C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008) ........................ - 10 -

*U.S. v. Christophe*,
    833 F.2d 1296 (9th Cir. 1987) ....................................................................................... - 8 -

*U.S. v. Sandoval-Mendoza*,
    472 F.3d 645 (9th Cir. 2006) ......................................................................................... - 7 -

*Wendt v. Host Int'l, Inc.*,
    125 F.3d 806 (9th Cir. 1997) ......................................................................................... - 5 -

*Yeti by Molly Ltd., v. Deckers Outdoor Corp*,
    259 F.3d 1101 (9th Cir. 2001) ....................................................................................... - 4 -

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on November 14, 2018, before the Honorable William H. Orrick in Courtroom 2 on the 17th Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Direct Purchaser Plaintiffs ("the DPPs") and Indirect Purchaser Plaintiffs ("the IPPs") (collectively, "the Plaintiffs") hereby move the Court to strike the Expert Report of Professor Michael Klausner (the "Klausner Report"), served without leave of Court upon Plaintiffs on October 4, 2018. Plaintiffs make this motion based on this notice of motion and supporting memorandum of points and authorities, along with the concurrently filed Declaration of Gregory Linkh ("Linkh Declaration" or "Linkh Decl.") and the Proposed Order.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

The Klausner Report, served without leave of Court on October 4, 2018, should be stricken in its entirety. Defendants' eleventh-hour submission seems to be designed to prevent adequate vetting of the Professor Klausner, his sources, his report, and the issues raised therein. Furthermore, the Klausner Report does not pass the standards of FRE 702 or *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993)) ("*Daubert*"), and relies on (1) a seemingly cherry-picked selection of meeting minutes, and (2) interviews of Defendants' employees and agents that constitute inadmissible hearsay. For the totality of these reasons, the Klausner Report should be stricken in its entirety.

## BACKGROUND

On February 24, 2017, this Court issued a Case Management Order setting forth expert discovery. [ECF No. 528] Pursuant to the Case Management Order: (1) experts would be disclosed and expert reports would be served on July 21, 2017, (2) rebuttal experts would be disclosed and rebuttal experts would be served on August 18, 2017, (3) the deadline for deposition of experts and close of expert discovery would be September 22, 2017, (4) *Daubert* motions would be filed on October 17, 2017, (5) Oppositions to the *Daubert* motions would be filed on November 21, 2017,

1  and the hearing of *Daubert* motions would be at the pretrial conference on January 12, 2018, and

2  (5) trial would begin on February 20, 2018. *Id.*

3  On December 19, 2018, the Court continued the pretrial conference to January 26, 2018,

4  and moved the trial date to February 23, [ECF No. 653], and later continued the trial date to May

5  14, 2018 because the *Lidoderm* litigation was not resolved. [ECF No. 703]

6  On January 26, 2018, the parties argued whether the Court should permit Plaintiffs to

7  proceed on an alter ego theory. On April 24, 2018, the Court issued its final ruling on the parties'

8  *Daubert* motions. [ECF No. 740] In regards to allowing additional discovery on alter ego issues,

9  the Court held:

> I recognize that defendants have not had the opportunity to retain an expert on alter ego – although experts on that issue are not typical, as alter ego is a question of law based on facts – but defendants do have Daesik Hong to rebut Haggard on the issues of control by the Korean defendants over the American defendants. With respect to preparing witnesses or gathering documents, defendants did not make a persuasive showing that they would not be able to readily do so at this juncture. If defendants need to designate additional witnesses and/or rely on as-yet unproduced documents that are directly relevant to the issue of alter ego, they may do so.

At the time of the Court's ruling, "this juncture" was less than three weeks from the scheduled start of trial. However, on April 30, 2018, the Court rescheduled the trial for November at Defendants' request, due to a medical emergency involving counsel for Nongshim.[ECF No. 743].

In the weeks and months that followed, Defendants did not seek leave of the Court to add new fact or expert witnesses, or further discuss the issue with Plaintiffs. Instead, at 7:18 p.m. Pacific time on October 4, 2018, Defendants served the Expert Report of Professor Michael Klausner. Linkh Decl. at A. This report was served almost fifteen months after the expert disclosure deadline, more than five months after the Court decided *Daubert* motions on all the other experts, and less than six weeks before trial.

Professor Klausner specifically stated in his report that:

> The opinions I offer focus on whether Nongshim America and Ottogi America were formed and maintained in conformity with formal legal requirements, and managed in a way that is expected of separate parent and subsidiary corporations. Although I understand that my opinions relate to whether Nongshim America or Ottogi America was an alter ego of its respective parent corporation, I offer no opinion regarding that specific legal conclusion or any other legal conclusion.

Klausner Report, ¶ 15.

The tardy Klausner Report seems, in large part, to be designed to funnel inadmissible hearsay into the record, given that Professor Klausner cites to many interviews he conducted with Defendants' employees, attorneys, and an auditor, including persons that Plaintiffs never deposed.[1] *See* Klausner Report, App. D.

Furthermore, Professor Klausner broadly asserts that Nongshim America and Ottogi America observed corporate formalities such that they should be given the benefit of a presumption of independence from their Korean parents. Klausner Report ¶¶ 30, 49-4, 95-105. In reaching this opinion, Professor Klausner relies on select domestic Defendants' board meeting minutes to argue that Defendants complied with U.S. corporate formalities, but Defendants have refused to produce a comprehensive set of such meeting minutes so that Plaintiffs can evaluate whether such formalities were observed consistently.[2]

Upon receipt of the Klausner Report, Plaintiffs' Counsel immediately sent requests concerning the materials relied upon in the report. Linkh Decl. Ex. B. The next day, on October 5, 2018, Plaintiffs' Counsel wrote to Defendants' Counsel requesting meeting minutes "for the

---

[1] Persons that were interviewed but never disclosed by Defendants in their initial disclosures include: Hye Bong Jeon (CFO of Ottogi America since 2014); Judy Kim (an administrative assistant with Ottogi America since 2009); Michael Kim (head of Research and Development for Nongshim America); Eric Lindquist (attorney for Nongshim America since the late 1990s); Rufus Rhodes (tax attorney for Nongshim America and Nongshim subsidiaries since 2000); Christopher Park (auditor to Nongshim America and Nongshim subsidiaries since 2005); Ray Kim (CFO and General Manager of Nongshim Holdings and Nongshim America) (employee since 2005); and Jae Yoo (manager for training and legal teams at Nongshim America) (employee since 2006). Klausner Report, Appendix D.

[2] For example, Professor Klausner cites only to Nongshim America's corporate creation in 1994 and a 2009 board consent two months before the end of the class period. See Klausner Report ¶¶ 37, 54. For no other year of the class period is there any reference to Nongshim America's corporate books and records.

1  following categories of meetings occurring during the class period, whether referenced by Professor
2  Klausner or not: (1) organizational meetings, (2) shareholders meetings, and/or (3) board of directors
3  meetings. Alternatively, please confirm that no such additional documents exist." Linkh Decl. Ex. C.
4  Defendants' Counsel responded that they would only produce minutes relied upon in the Klausner
5  Report and that "the Court expressly authorized Defendants to designate additional witnesses, and
6  Defendants have done so sufficiently in advance of trial so that there is no prejudice to Plaintiffs."
7  Linkh Decl. Ex. D. On October 9, 2018, the parties had a meet-and-confer in an attempt to resolve or
8  at least limit the issues in this motion, but Defendants again refused Plaintiffs' request to produce a
9  complete set of board actions, including meeting minutes/ board actions, meeting notices. Linkh
10 Decl. ¶ 2.

## ARGUMENT

### I.  The Klausner Report Is Untimely

The parties are required to comply with the Federal Rules of Civil Procedure concerning the timely disclosure of expert witnesses. One of these is Rule 37(c)(1), which states that if a party fails to provide information or disclose a witness under Rule 26(a) or (e), "the party is not allowed to use that information or witness" at trial. "If a party fails to comply with the rules regarding expert witnesses under Rule 26(a) or (e), 'the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.'" *Star Ins. Co. v. Iron Horse Tools, Inc.*, Civ-16-48-BLG-SPW-TJC, 2018 WL 30778493, at *6 (D. Mt. Feb. 7, 2018) (quoting Fed. R. Civ. P. 37(c)(1)) (excluding an untimely expert report). "Rule 37(c)(1) is a 'self-executing' 'automatic' sanction designed to provide a strong inducement for disclosure." *Goodman v. Staples the Office Superstore LLC*, 644 F.3d 817, 827 (9th Cir. 2011). When considering exclusion of untimely expert reports, "[t]he burden is on the party facing Rule 37(c) sanctions to prove its failure to comply with Rule 26(a) was 'substantially justified or harmless.'" *Bridge Aina Le'a, LLC v. Hawaii Land Use Commission*, Civ. No. 11-00414 SOM-KJM, 2017 WL 5617463, at *9 (D. Haw. Nov. 21, 2017) (*quoting Yeti by Molly Ltd., v. Deckers Outdoor Corp*, 259 F.3d 1101, 1107 (9th Cir. 2001)).

The Ninth Circuit has identified four factors that should be considered when making the determination of whether untimely expert disclosure is substantially justified or harmless under Rule 37(c): "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010)).[3]

"The burden is on the party facing exclusion of its expert's testimony to prove the delay was justified or harmless." *Id.* Given that the Klausner Report was served after expert discovery was over, Defendants had the affirmative duty to move the Court for leave to file it, and should have addressed these issues in such a motion. Courts have routinely precluded expert reports when a party filing an untimely expert report has, like here, failed to obtain leave of court beforehand. *Yeti*, 259 F.3d at 1106 (affirming preclusion of untimely expert report because party could have requested and extension or produced a preliminary report); *Quevedo v. Trans-Pacific Shipping, Inc.,* 143, F.3d 1255, 1258 (9th Cir. 1998) (affirming district court's holding that an untimely

---

[3] While *Lanard Toys* is an unpublished opinion, courts in this circuit have relied on it. *See Star Ins. Co*, 2018 WL 30778493, at *6; *Bridge Aina Le'a, LLC,* 2017 WL 5617463, at *10. As stated in *Ojmar U.S. LLC v. Security People, Inc*., Case No. 16-cv-04948-HSG, 2018 WL 1640126, at *9, n.8 (Apr. 5, 2018):

> While it is not binding authority, the Court may rely on the Ninth Circuit's decision in *Lanard Toys* as persuasive authority. As other courts in this circuit have recognized, earlier published decisions of the Ninth Circuit articulate a substantially similar five factor test. *See Nihart v. Natl Park Serv.*, No. 2:12- CV-00291-APG, 2014 WL 1415198, at *1 n.10 (D. Nev. Apr. 10, 2014) (concluding that the court's Rule 37(c)(1) analysis would be same under Lanard Toys as under prior binding authority, because those factors "ask substantially the same questions"). In *Payne v. Exxon Corp.,* the Ninth Circuit articulated a balancing analysis including "the following five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." 121 F.3d 503, 507 (9th Cir. 1997); *accord Wendt v. Host Int'l, Inc*., 125 F.3d 806, 814 (9th Cir. 1997). The Court finds that it would reach the same outcome applying either test.

disclosure of an expert report was not justified when the party failed to seek an extension of time from the court); *Churchill v. U.S.*, No. 1:09-cv-01846(LJO)(JLT), 2011 WL 444849, at *5 (E.D. Cal. Feb. 8, 2011) (counsel providing late expert report "proceeded at his own peril in failing to request an extension of time from the Court and in assuming that his expert disclosures filed thirty-eight days past the deadline would be deemed timely"); *Schuetts v. City of Phoenix*, No. CV-08-2018, 2010 WL 1253193, at *3 (D. Ariz. Mar. 25, 2010) (expert report filed after deadline was precluded because "it was incumbent . . . to notify this Court and ask for more time"). Had Defendants sought leave of Court to file such a report, the Court likely would have denied the request or placed conditions on Defendants that would have included an earlier disclosure.

In fact, the timing of Defendants' eleventh-hour submission of this expert report seems to be designed to prevent adequate vetting of the Professor Klausner, his sources, his report, and the issues raised therein.[4] Plaintiffs are unfairly prejudiced in that they will be forced, in the six weeks before trial, to depose Professor Klausner, and determine whether they need to obtain a rebuttal expert, or if that is even possible given the proximity to trial. Accordingly, the timing of the Klausner Report raises an inference of bad faith and/or willfulness. Furthermore, under the timing

---

[4] Defendants have presumably contemplated using Professor Klausner or a similar expert for quite some time, as they have repeatedly argued, as far back as January of 2018, that they would have retained an expert on alter ego liability had they been aware of the importance of the issue in this case. *See* Transcript of January 26, 2018 Conference, at 45:1-5 ("[I]f it were me and I could back up, I'd go find an expert of my own to analyze these elements and come in and testify that of the 12 elements [of alter ego liability], they don't have anything to talk about here.") (Linkh Decl. Ex. E); Defendants' Brief Regarding Alter Ego Liability, Pursuant to the Court's Order Following January 26, 2018 Pretrial Conference, at 3:14-17. [ECF No. 699] ("If Defendants had been given notice of an alter ego theory, they could have identified and produced documents on the separation of funds, offices, and employees; the adequacy of their companies' capitalization; the recognition of corporate formalities; and the like. Defendants also would have retained an expert to render opinions based on this evidence."); Transcript of April 16, 2018 Conference, at 44:14-22. ("I would have hired an expert. I would have gotten somebody from Berkeley, across the river here, to come in and say, I've looked at this structure, and it is not an alter ego.") (Linkh Decl. Ex. F).  Appendix D to the Report indicated that Professor Klausner prepared it by interviewing executives, attorneys or accountants of Defendants; the interviews commenced on July 16 and continued on August 9; there followed a nearly seven-week hiatus until September 26. The interviews then continued until October 2. Thus, it appears that Professor Klausner may have not commenced his work until July, after this Court set a revised a trial date.

1  set forth by the Local Rules, unless this motion is expedited, it is scheduled to be heard 35 days
2  from the filing of this brief. This falls on November 14, 2018 – which is likely to be the first
3  substantive day of trial, when opening statements will be heard by the jury. Accordingly, issues
4  concerning Klausner's testimony have the potential of disrupting the trial.

5        Moreover, the Klausner Report spends several paragraphs criticizing Professor Haggard's
6  opinions concerning control or independence between parents and subsidiaries, and concludes that
7  (1) "[t]he fact that South Korean firms are organized as groups of subsidiaries does not distinguish
8  them from many public firms in the U.S. and elsewhere"; and (2) "Professor Haggard's opinions
9  regarding family control and a culture of loyalty and hierarchy also have no bearing non formal
10 and operational separation." Klausner Report at ¶¶ 133-140. As these opinions are specifically
11 rebuttals to Professor Haggard's opinions, they should have been provided in August of 2017,
12 when rebuttal reports were scheduled to be served. *See* Case Management Order dated February
13 24, 2017 [ECF No. 528]. Accordingly, in the event the Court does not strike the totality of the
14 Klausner Report, it should at the very least strike these paragraphs.

## II.  The Klausner Report Does Not Meet The Requirements Of FRE 702, And Is Unfairly Prejudicial Under FRE 403

The Klausner Report should be stricken, not only because it is untimely, but also because it fails to meet the requirements of FRE 702, and is unfairly prejudicial under FRE 403. A witness qualified as an expert by knowledge, skill, experience, training, or education, can offer an opinion if it will assist the trier of fact. FRE 702. The testimony of a qualified expert is admissible if it is "both relevant and reliable." *Fujifilm Corp. v. Motorola Mobility LLC*, Case No. 12–cv–03587–WHO, 2015 WL 1737951, at *1 (N.D. Cal. Apr. 8, 2015) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)) ("*Daubert*"). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), as amended (Apr. 27, 2010) (quoting *U.S. v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

The Court must serve as a "gatekeeper" in making this determination. *Barabin v. AstenJohnson, Inc*., 700 F.3d 428, 431 (9th Cir. 2012). The Court must determine "whether the jury will receive appreciable help from expert testimony." *U.S. v. Christophe*, 833 F.2d 1296, 1299 (9th Cir. 1987). Furthermore, expert opinions should not provide legal conclusions. *Nationwide Transp. Fin. v. Cass Info. Sys, Inc.,* 523 F.3d 1051, 1059 (9th Cir. 2008). The proponent has the burden of establishing that pertinent admissibility requirements are met and that the opinions offered are reliable. *Bourjaily v. U.S*., 483 U.S. 171, 172 (1987).

This Court specifically noted, in its April 24 Order, that "experts on that issue are not typical, as alter ego is a question of law based on facts." [ECF No. 740]. Here, Professor Klausner does not address directly the alter ego issue, but merely states that his report "relates" to that issue. The main purpose of his report appears to be to (1) serve as a vehicle to put in evidence the testimony of certain of Defendants' executives, attorneys, and accountants and (2) rely on cherry-picked documents, many of which have not heretofore been produced in discovery.

### A. The Klausner Report's Selective Use Of Defendants' Corporate Books And Records Should Be Precluded Under Both FRE 702 and 403

Professor Klausner relies on select corporate actions by Nongshim America and Ottogi America to support his opinion that they complied with U.S. corporate formalities. But one or two instances of compliance over the course of years hardly support such an opinion. Accordingly, Plaintiffs sought the complete set of such corporate actions, which Defendants have refused to provide thus far, so that Plaintiffs can evaluate whether such corporate formalities were observed consistently.

For example, the Klausner Report cites to the following meeting minutes in an attempt to demonstrate the Defendants' U.S. subsidiaries have observed corporate formalities[5] in a manner

---

[5] Klausner discusses the costs and benefits of a foreign company having a U.S. subsidiary:

> A drawback of operating through a US subsidiary rather than a branch is that a subsidiary must comply with corporate formalities. It must file articles of incorporation, adopt bylaws, pay franchise fees, hold board meetings or have the board act by written consent, and hold shareholder meetings. Certain decisions must be made through formal approval of the subsidiary's board of directors

that demonstrates independence:

**Nongshim America:**

- "Minutes of Organizational Meeting," October 30, 1994.
- An Agreement of Merger between Nongshim Foods [Second] and Nongshim America, November 20, 2009 and accompanying documents.

**Ottogi America:**

- "Minutes of Organizational Meeting," May 5, 2005.
- "Minutes of Special Meeting of Shareholders of Ottogi America, Inc.," March 6, 2006
- "Minutes of Special Meeting of Directors of Ottogi America, Inc.," March 14, 2006
- "Minutes of Annual Meeting of Directors of Ottogi America, Inc.," February 28, 2007 and "Minutes of Annual Meeting of Shareholders of Ottogi America, Inc.," February 28, 2007.
- "Minutes of the Meeting of Boards," September 30, 2009.

However, the Klausner Report makes no mention of any quarterly or annual meeting minutes for Nongshim America. For Ottogi America, the Klausner Report fails to include any annual directors' meetings from 2005, 2008, and 2010 onward, and fails to include any shareholders' meeting minutes for 2005 and 2008 onward. Upon receipt of the Klausner Report, Plaintiffs requested these minutes from Defendants, which Defendants refused to provide. Accordingly, there is a reasonable inference to be drawn that these additional minutes (1) do not exist, or (2) demonstrate that corporate formalities were <u>not</u> followed during these times. Without these documents, or without confirmation that such document do not exist, Defendants cannot establish the reliability of Professor Klausner's opinions. Moreover, given this inability for

---

> rather than by a division manager. In addition, transfers of assets and capital between a parent and subsidiary must be documented and priced. Especially for a large, well-advised company, however, these drawbacks may well be minor in relation to the benefits of operating through a subsidiary.

Klausner Report at ¶ 30.

Plaintiffs to properly assess these issues, the Klausner Report is more prejudicial than probative, and should be stricken under Fed. R. Evid. 403.

### B. The Klausner Report's Improper Use Of Interviews Should Be Precluded Under Both FRE 702 and 403

The Klausner Report is filled with citations to numerous interviews he conducted with Defendants' employees, attorneys, and an auditor, many of whom were never deposed—or ever disclosed (via initial disclosures)—in this case. Klausner Report ¶¶ 44-47, 62-75, 78, 81-82, 84-88, 90-94, 104, 111-114, 116-117, 119, 121-24, 128-29. As Professor Klausner interviewed the employees in July, Defendants clearly determined that these were "individual[s] likely to have discoverable information . . . that the disclosing party might use to support its claims or defenses." Fed. R. Civ. P. 23(a)(i). Yet over three months passed without Defendants supplementing their initial disclosures, as required by Fed. R. Civ. P. 23(e)(1). Even though this Court clearly indicated that "alter ego is a question of law based on facts" rather than an issue which generally requires expert testimony [ECF No. 740], Defendants were clearly unwilling to have their fact witnesses tested, either at trial or through deposition, and have attempted instead to introduce their testimony through the vehicle of an expert report. As Judge Alsup has rightly noted, "[o]ne of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion." *Therasense, Inc. v. Becton, Dickinson & Co.,* No. C 04-02123 WHA, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008).

The *Therasense* Court's description of this abusive tactic exactly mirrors how Defendants are attempting to use the Klausner Report:

> Ordinarily, if a fact witness tries to recount to the jury some "fact" earlier communicated to the witness, a hearsay objection would be sustained, at least when offered to prove the truth of the alleged fact. For example, if a fact witness wishes to testify that a coating was made from zinc rather than copper based solely on what someone told the witness, a hearsay objection would ordinarily be well-taken.
>
> To circumvent this and to manipulate the precise content of "facts," some lawyers hire experts to promulgate favorable hearsay to the jury. The

> expert is induced to "rely" on some factoid told to the expert by the client or someone else outside the courtroom.
>
> * * * *
>
> The source is almost always highly partisan, such as the client or another forensic witness on retainer. Everything is kept secret from the other side until the expert report, which almost always comes after the close of fact discovery. In this manner, the other side rarely learns of the supposed "fact" until after the close of fact discovery, thereby immunizing it from vetting via discovery. Secrecy is achieved by cloaking the factoid inside the work product or attorney-client privileges. What is more, the expert will only be told of the results of the client's work if it turns out favorably, the lawyer concealing all adverse or confidential test results and facts from the testifying expert.

*Id.* Here, too, Professor Klausner's report relies heavily on interviews with Defendants' employees, many of whom were never deposed or even disclosed, to attest to "facts" such as observance of corporate formalities, operational control over pricing and other decisions, and the basis for corporate decisions.

For example, Professor Klausner cites to numerous interviews to explain purported reasons for why Nongshim America and Ottogi America were set up in the manner they were. Klausner Report ¶¶ 44-48. Plaintiffs are unable to cross examine any of these interviewees to test the truthfulness of these purported "facts."

Professor Klausner also provides a cursory discussion of how Nongshim America accounted for related-party transactions and intellectual properly licensing, and how Ottogi America is purportedly independent because it does not share administrative services, IT services, payroll, or books and records services with Ottogi Korea. *Id.* at ¶¶ 81-82, 121-24. Plaintiffs are unable to cross examine any of these interviewees to further probe these issues or test Professor Klausner's opinions on them.

Professor Klausner also discusses the importance of transfer prices to demonstrate independence between Nongshim Korea and Nongshim America. Klausner Report ¶ 78. However, he admits that he only reviewed transfer price studies conducted <u>after</u> the class period, and relied on an interview of Nongshim America's lawyers and auditors to confirm that these studies were similar to studies conducted <u>during</u> the class period. *Id*. at ¶ 78, n. 92. Plaintiffs are unable to cross examine any of these interviewees to determine the accuracy of Professor Klausner's assertions.

1    Given Plaintiffs' inability to properly assess these issues, the Klausner Report is unhelpful
2    within the meaning of Fed. R. Evid. 702, and more prejudicial than probative, and should be
3    stricken under FRE 403.

## CONCLUSION

The tardy Klausner Report should be stricken, not only because it is untimely, but also because it fails to meet the requirements of FRE 702, and is unfairly prejudicial under FRE 403. For the totality of these reasons, the Klausner Report should be stricken in its entirety.

DATED: October 10, 2018

| *s/ Christopher L. Lebsock* | *s/ Daniel E. Birkhaeuser* |
|---|---|
| Michael P. Lehmann | Alan R. Plutzik (State Bar No. 77785) |
| Christopher L. Lebsock | Daniel E. Birkhaeuser (State Bar No. 136646) |
| Stephanie Cho | |
| HAUSFELD LLP | BRAMSON, PLUTZIK, MAHLER |
| 600 Montgomery Street, Suite 3200 | & BIRKHAEUSER LLP |
| Francisco, CA 94104 | 2125 Oak Grove Road |
| TEL: 415-633-1908 | Walnut Creek, CA 94598 |
| EMAIL: mlehmann@hausfeld.com | Telephone: (925) 945-0200 |
| clebsock@hausfeld.com | Facsimile: (925) 945-8792 |
| scho@hausfeld.com | aplutzik@bramsonplutzik.com |
| | dbirkhaeuser@bramsonplutzik.com |
| Michael Hausfeld (admitted *pro hac vice*) | |
| HAUSFELD LLP | Mark P. Kindall (State Bar No. 138703) |
| 1700 K Street, N.W., Suite 650 | Robert A. Izard (admitted *pro hac vice*) |
| Washington D.C. 20006 | Craig Raabe (admitted *pro hac vice*) |
| TEL: 202-540-7200 | IZARD, KINDALL & RAABE, LLP |
| EMAIL: mhausfeld@hausfeld.com | 29 South Main Street, Suite 305 |
| | West Hartford, CT 06107 |
| Brian P. Murray (admitted *pro hac vice*) | Telephone: (860) 493-6292 |
| Lee Albert (admitted *pro hac vice*) | Facsimile: (860) 493-6290 |
| Gregory B. Linkh (admitted *pro hac vice*) | mkindall@ikrlaw.com |
| GLANCY PRONGAY & MURRAY LLP | rizard@ikrlaw.com |
| 230 Park Ave., Suite 530 | craabe@irklaw.com |
| New York, NY 10169 | |
| TEL: (212) 682-5340 | ***Co-Class Counsel for the Indirect*** |
| bmurray@glancylaw.com | ***Purchaser Plaintiffs*** |
| lalbert@glancylaw.com | |
| glinkh@glancylaw.com | |

| | |
|---|---|
| Lionel Z. Glancy<br>GLANCY PRONGAY & MURRAY LLP<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>TEL: (310) 201-9150<br>lglancy@glancylaw.com<br><br>*Co-Class Counsel for the Direct Purchaser Plaintiffs* | Steven M. Sherman<br>SHERMAN BUSINESS LAW<br>220 Montgomery Street, Suite 1500<br>San Francisco, CA 94104<br>Email: steven@shermanbusinesslaw.com<br><br>Gerald S. Ohn<br>LAW OFFICES OF GERALD S OHN<br>1875 Century Park East Suite 700<br>Los Angeles, CA 90067<br>Email: gerald@ohnlaw.com<br><br>Marc Gene Reich<br>REICH RADCLIFFE AND KUTTLER LLP<br>4675 MacArthur Court, Suite 550<br>Newport Beach, CA 92660<br>Email: mgr@reichradcliffe.com<br><br>Thomas Henry Bienert, Jr.<br>BIENERT, MILLER AND KATZMAN, PLC<br>903 Calle Amanecer<br>Suite 350<br>San Clemente, CA 92673<br>Email: tbienert@bmkattorneys.com<br><br>Young W. Ryu<br>LAW OFFICES OF YOUNG W RYU<br>9595 Wilshire Boulevard Suite 900<br>Beverly Hills, CA 90212<br>Email: young.ryu@youngryulaw.com<br><br>Sydney J. Hall (Cal. Bar No. 158151)<br>SYDNEY J. HALL LAW OFFICE<br>1308 Old Bayshore Hwy #220<br>Burlingame, CA 94010<br>Email: sjhlaw@mail.com<br><br>*Additional Counsel for the Indirect Purchaser Plaintiffs* |

## CERTIFICATE OF SERVICE

I, Gregory B. Linkh, declare that I am over the age of eighteen (18) and not a party to the entitled action. I am a partner of the law firm of Glancy Prongay & Murray LLP, counsel for Direct Purchaser Plaintiffs in this action. On October 10, 2018, I caused to be filed the foregoing document with the Clerk of the Court of the United States District Court for the Northern District of California, using the official Court Electronic Document Filing System which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Gregory B. Linkh
Gregory B. Linkh