GIBSON, DUNN & CRUTCHER LLP
Scott A. Edelman (CA Bar # 116927)
Mark A. Perry (CA Bar # 212532)
Rachel S. Brass (CA Bar # 219301)
Minae Yu (CA Bar # 268814)
Julian W. Kleinbrodt (CA Bar # 302085)
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
Email:  sedelman@gibsondunn.com
        mperry@gibsondunn.com
        rbrass@gibsondunn.com
        myu@gibsondunn.com
        jkleinbrodt@gibsondunn.com

Attorneys for Defendants
OTTOGI CO., LTD., and
OTTOGI AMERICA, INC.

SQUIRE PATTON BOGGS (US) LLP
John R. Gall (Admitted N.D. Cal., Ohio Bar # 0011813)
Mark C. Dosker (CA Bar # 114789)
Joseph P. Grasser (CA Bar # 255156)
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: 415.954.0200
Facsimile: 415.393.9887
Email:  john.gall@squirepb.com
        mark.dosker@squirepb.com
        joseph.grasser@squirepb.com

Attorneys for Defendants
NONGSHIM CO., LTD., and
NONGSHIM AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE KOREAN RAMEN ANTITRUST LITIGATION | Case No. 3:13-cv-04115-WHO |
|---|---|
| | **DEFENDANTS' BRIEF REGARDING RELEVANCE OF EMBEZZLEMENT AT SAMYANG KOREA** |
| THIS DOCUMENT RELATES TO: | Date: November 16, 2018 (Friday Morning) |
| All Actions | Time: 7:30 a.m. |
| | Place: Courtroom 2, 17th Floor |

On November 14, 2018, the Court directed Defendants to explain how the embezzlement scheme to which Jung Soo Kim (J.S. Kim) pleaded guilty, and is awaiting sentencing in Korea, has continuing relevance given the Court's ruling excluding J.S. Kim's deposition testimony from being presented by Plaintiffs at trial. The short answer is that the embezzlement scheme remains relevant to the testimony of Bong Hoon Kim (B.H. Kim), a Samyang Korea officer who will be testifying live next week.

B.H. Kim is the only Samyang Korea representative who will be testifying pursuant to the company's cooperation agreement with Plaintiffs. He will testify, among other things, about Samyang Korea's two leniency applications. The embezzlement scheme is relevant to the company's motivation for filing those leniency applications.

Defendants have summarized herein one line of cross-examination, with which Plaintiffs and the Court are already familiar. Defendants have other good-faith bases on which to cross-examine B.H. Kim regarding the embezzlement scheme, but it would be unfair and prejudicial to require Defendants to disclose those lines of questioning in advance. Defendants respectfully submit that the embezzlement is relevant to cast doubt on Samyang Korea's motive in submitting the leniency applications, and Plaintiffs can object if they wish to the other lines of questioning as they occur in real time.

## Background

Defendants have already apprised the Court of the nature and structure of J.S. Kim's embezzlement scheme at Samyang Korea, but some recitation is necessary to put B.H. Kim's anticipated testimony into context.

As background, B.H. Kim is currently the CEO of Samyang Baker Tank Terminal, a company jointly owned by Samyang Korea and a U.S. company. Between 2009 and 2013, he was a Managing Director of Samyang Korea. Most relevant to this case, he was a Sales Strategy Team Leader from 1999 to 2006. His subordinates include Kyung Joo Kim and Jong Moon Yui, two witnesses whose deposition testimony was read into the record on November 15, 2018.

*Embezzlement*

J.S. Kim's misconduct through Samyang Korea began in April 2008, when Samyang Korea arranged to have Natural Samyang act as a middleman for Samyang Korea's sales of ramen products

to E-mart, the largest chain store in Korea. (Decl. of Minae Yu ("J.S. Kim Yu Decl.") Ex. C, at 10, 18–19 (Dkt. No. 759-4).) Even though Natural Samyang provided no economic value for those sales, Samyang Korea made payments to Natural Samyang—of which J.S. Kim and her family have 90.1% ownership—in the form of sales support and "passage fee[s]." (J.S. Kim Yu Decl. Ex. C (Dkt. No. 759-4).)

In August 2008, J.S. Kim and her husband used a fake company, Wide Awake Holdings, to embezzle money from Natural Samyang. As J.S. Kim has admitted in open court, she and her husband falsified records to make it appear as though Wide Awake was supplying paper goods to Samyang Korea when in fact, those goods were being supplied by Natural Samyang. (Decl. of Seokhyun Rhee ("Rhee Decl.") ¶ 5 (Dkt. No. 759-14).) J.S. Kim took part of her cut by arranging for herself and her son to receive salaries from Wide Awake without performing any work. (*Id.*) J.S. Kim and her husband perpetrated a similar scheme through a second paper company, RER Co., Ltd., during the same time period. (*Id.* ¶ 6.)

The timing of this embezzlement coincides with the KFTC's investigation of Samyang Korea for its alleged involvement in a conspiracy to fix Korean ramen prices in Korea. The KFTC conducted an onsite investigation of Samyang Korea in January 2010, and Samyang Korea submitted its first leniency application shortly thereafter, on January 25, 2010. (*See* J.S. Kim Yu Decl. Ex. G (Dkt. No. 759-8).) Although the investigation thereafter subsided, the KFTC renewed its investigation in 2011, under a newly appointed Commissioner who vowed to control inflation and induce lower ramen prices. (*See* J.S. Kim Yu Decl. Exs. H, I, J (Dkt. Nos. 759-9, 759-10, 759-11).) Samyang Korea then filed a second leniency application, this time providing new information and allegations, including J.S. Kim's now-excluded testimony about an alleged meeting among ramen companies. (J.S. Kim Yu Decl. Ex. K, at SYK002365T (Dkt. No. 759-12).) It was this second application that induced the KFTC to afford Samyang Korea leniency, and which led to the now-reversed KFTC order imposing fines on other Korean ramen companies.

As the Court is now well aware, J.S. Kim has pled guilty to two counts of criminal embezzlement in Korea. (Rhee Decl. ¶ 7; Decl. of Song Ryu ¶ 4 (Dkt. No. 759-18).) She has admitted to the criminal embezzlement, and has admitted to using Samyang Korea and its affiliates to divert money

2
DEFENDANTS' BRIEF IN SUPPORT OF RELEVANCE OF EMBEZZLEMENT AT SAMYANG KOREA
CASE NO. 3:13-CV-04115-WHO

Gibson, Dunn & Crutcher LLP

from Samyang Korea's shareholders into her pockets. The prosecutors are seeking 5 years of imprisonment for J.S. Kim. (Supplemental Decl. of Song Ryu ¶ 4 (Dkt. No. 781-1).) In her plea for leniency, J.S. Kim emphasized, among other things, that she did not embezzle the money all at once, but rather did so over a long period of time, and only stole from the company because she did not think her compensation appropriately reflected her contribution. (*Id.* ¶ 3.) Separately, J.S. Kim and her family are now under investigation for tax evasion for operation of foreign paper companies. (*See* News Article (Dkt. No. 781-2).)

### *Samyang Korea Settlement*

Samyang Korea was originally named as a defendant in this case. In September 2015, Samyang Korea settled with Plaintiffs for just $1 million. (Settlement Agreement Between the Direct Purchaser Plaintiffs and Samyang Foods Co., Ltd. (Dkt. No. 205-2).) As part of that settlement, Samyang Korea agreed to make available for live testimony at this trial up to two current employees. (*Id.* at 21.) Although Plaintiffs are entitled to call two witnesses, they have elected to call only one: B.H. Kim. And he is expected to testify next week as the sole live representative from Samyang Korea.

### Discussion

J.S. Kim's misuse of her authority at Samyang Korea is relevant to B.H. Kim's testimony because B.H. Kim is the only Samyang Korea witness coming to testify live on behalf of the company pursuant to its settlement agreement, and as this Court has already held, J.S. Kim's embezzlement is relevant to Samyang Korea's willingness to cooperate with the KFTC.

B.H. Kim is the sole witness Samyang Korea is offering for live testimony pursuant to its settlement agreement with Plaintiffs. B.H. Kim is the witness designated pursuant to the settlement agreement, and thus represents Samyang Korea's only active participation in this trial. Plaintiffs are presenting Samyang Korea as the "whistleblower." This Court has already ruled that "Samyang Korea's leniency petition to the KFTC could [be] explained by an intent to deflect KFTC attention from Samyang Korea's activities related to the admitted embezzlement." (*See* Civil Minutes 2 (Dkt. No. 785).) And much of B.H. Kim's deposition testimony relates to Samyang Korea's efforts to seek leniency from the KFTC. Other witness have confirmed B.H. Kim's role in preparing the Samyang Korea leniency application. Trial Tr. 444 (Nov. 15, 2018). If Plaintiffs intend to hold B.H. Kim out as a

representative of Samyang Korea coming to the United States to expose an alleged conspiracy and atone for his wrongdoing, Defendants should be entitled to cross-examine him on Samyang Korea's true motives for seeking leniency.

Plaintiffs settled with Samyang Korea in part to obtain testimony, because they have no actual evidence of an agreement. Samyang Korea's motivations in seeking leniency (and in adhering to that position in *this* litigation) are relevant. In fact, Plaintiffs put those motivations at issue in opening statements, telling the jury that Samyang Korea "admitted to participating in a price fixing conspiracy," and "also instructed its employees to stop sharing information." Trial Tr. 179 (Nov. 14, 2018). B.H. Kim is coming to testify pursuant to Samyang Korea's settlement agreement as its representative. The full circumstances of Samyang Korea's leniency application are relevant and should be explored during cross-examination. That includes Samyang Korea's motives in seeking leniency.

## Conclusion

J.S. Kim's criminal embezzlement is relevant to B.H. Kim's credibility as a witness, as he is testifying pursuant to Samyang Korea's settlement agreement with Plaintiffs.

Dated: November 15, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel S. Brass*
Rachel S. Brass

Attorneys for Defendants Ottogi Co., Ltd., and Ottogi America, Inc.

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Mark C. Dosker*
Mark C. Dosker

Attorneys for Defendants Nongshim Co., Ltd., and Nongshim America, Inc.

## **ATTESTATION**

I hereby attest that I have on file written authorization for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

                                        */s/ Joshua M. Wesneski*
                                          Joshua M. Wesneski