Alan R. Plutzik (State Bar No. 77785)
Daniel E. Birkhaeuser (State Bar No. 136646)
BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER LLP
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
dbirkhaeuser@bramsonplutzik.com

*Co-Class Counsel for Indirect Purchaser Plaintiffs*

Christopher L. Lebsock (State Bar No. 184546)
Stephanie Cho (State Bar No. 291903)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
bsweeney@hausfeld.com
clebsock@hausfeld.com
scho@hausfeld.com

*Co-Class Counsel for Direct Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE KOREAN RAMEN ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:13-cv-04115-WHO<br><br>**PLAINTIFFS' OPPOSITION BRIEF REGARDING RELEVANCE OF EMBEZZLEMENT AT SAMYANG KOREA AND MOTION IN LIMINE CONCERNING ANY MENTION OF EMBEZZLEMENT**<br><br>Date:         November 16, 2018 (7:30 am)<br>Courtroom: 2, 17th Floor<br>Judge:        Hon. William H. Orrick |

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants originally sought to question and/or impeach Mrs. Jung-Soo Kim concerning allegations of embezzlement (the "2018 Investigation"). This became moot when Mrs. Kim was excluded by this Court on November 11, 2018. ECF No. 785, at 2. However, Defendants have tried to keep the issue of Mrs. Kim's embezzlement alive. Defendants now seek to ask Bong-Hoon Kim about Mrs. Kim's alleged embezzlement, even though there is no reason to believe that Bong-Hoon Kim had any knowledge, personal or otherwise, about this issue.[1] However, Defendants have not disclosed why such testimony would be relevant or non-prejudicial. They have merely stated that "Defendants have other good-faith bases on which to cross-examine B.H. Kim regarding the embezzlement scheme, but it would be unfair and prejudicial to require Defendants to disclose those lines of questioning in advance." ECF No. 806, at 1:12-14.

Defendants state that "as this Court has already held, J.S. Kim's embezzlement is relevant to Samyang Korea's willingness to cooperate with the KFTC." Id. at 3:18-19. This is seemingly a misinterpretation of the scope of the Court's November 11, 2018 Order. The Court noted, for purposes of Mrs. Kim's testimony only , that "given defendants' more detailed timeline and theory as to why Samyang Korea's leniency petition to the KFTC could explained by an intent to deflect KFTC attention from Samyang Korea's activities related to the admitted embezzlement, Kim's testimony is also subject to attack for bias and motive." ECF No. 785, at *2. The Court excluded Mrs. Kim's testimony because she could no longer be cross examined on such subjects. The Court did not make any broader ruling regarding Samyang Korea's leniency petition as it relates to Mrs. Kim's alleged embezzlement.

---

[1] Defendants have already provided the Court with a declaration that summarizes Mrs. Kim's testimony at a November 9, 2018 hearing.CF No. 781-1. According to this declaration, Mrs. Kim admitted to embezzling money for her personal expenses, and did so "because she did not think that her compensation appropriately reflected her contribution to the company." Id. at ¶¶ 3-4. Given the highly personal nature of Mrs. Kim's conduct, it is highly unlikely that any Samyang employee besides her husband, including Bong Hoon Kim and the other witnesses from Samyang, assisted her in the alleged misconduct.

Back in April 2018, the Court issued a directive that evidence relating to the 2018 Investigation would be irrelevant unless Defendants could show a "factual connection between the allegations in this case and the 2018 Investigation." ECF No. 740, at 22-23. To keep this issue alive, on October 22, 2018, Defendants introduced a theory that Samyang admitted to price fixing only to keep the KFTC from discovering that Mrs. Kim and her husband Mr. Chun were embezzling from Samyang. The entire factual basis for this theory rests on a document from March 2014, titled the "Plenary Meeting Resolution" which irrelevant, prejudicial, and inadmissible for the reasons stated below.

### A. The Plenary Meeting Resolution Is Inadmissible

#### 1. The Plenary Meeting Resolution Provides No Reliable Information

This Court explicitly stated, on April 24, 2018 that it would consider evidence of the 2018 Investigation to be irrelevant unless there was "a factual connection between the allegations in this case and the 2018 Investigation." During the next six months, Defendants submitted no evidence of this factual connection. It was not until October 22, 2018 that they provided the Court and Plaintiffs with a theory of motive conjured from a sentence fragment in a "Plenary Meeting Resolution," dated March 3, 2014 (Trial Ex. 892) (attached hereto as Exhibit A). This 32-page document, which was dated over <u>four</u> years before allegations of Mrs. Kim's alleged embezzlement were made public, discusses allegations of Samyang "providing excessive financial gains" to one of Samyang's subsidiaries. On page 19 of this Plenary Meeting Resolution, at Table 11, is an "Excerpt from Examinee's Internal Material," which seemingly cites to a document provided to the KFTC by Samyang. One of seven bullet points in this table cites the words "highly likely to be detected by the KFTC when we are investigated by the KFTC." Defendants use this single sentence fragment to bootstrap their entire specious theory about Samyang's motive to cooperate concerning the KFTC's investigation into price fixing of ramen.

The Plenary Meeting Resolution provides no indication as to <u>who</u> wrote this internal material. There is no indication about <u>when</u> the internal material was written, or the context in which it is written. There is no indication that the quoted language refers to the KFTC's investigation

-
-

concerning the Korean ramen industry, as opposed to some other unrelated investigation, or even a hypothetical future investigation. And nothing in the KFTC's order suggests that Mrs. Kim or Mr. Chun ever saw this purported memo, or even knew of its existence.

The Plenary Meeting Resolution provides no connection between the KFTC's investigation of alleged self-dealing involving an unrelated subsidiary and the completely separate KFTC investigation of price-fixing communications among Korean Ramen companies. Similarly, this document provides no support for Defendants' theory that Samyang would admit to price-fixing allegations for the bizarre and poorly-conceived (and ultimately unsuccessful) motive of concealing other unrelated wrongdoing at an unrelated subsidiary.

**2. Defendants Cannot Publish The Plenary Meeting Resolution Into Evidence**

**a. The Plenary Meeting Resolution Is Not Subject To Judicial Notice**

As a more practical matter, Defendants cannot get the Plenary Meeting Resolution into evidence. There is nothing to suggest that any Samyang witnesses in this case had any involvement in any of the conduct at issue in the Plenary Meeting Resolution. Defendants recognize this, and have not designated a sponsoring witness for this document. Instead, they have stated that this is subject to a Request for Judicial Notice. While there are circumstances under which a court may apply Fed. R. Evid. 201 take judicial notice of public records of foreign court documents, *In re Ex Parte Application of Jommi*, No. C 13–80212 CRB (EDL), 2013 WL 6058201, at *1, n.1 (N.D. Cal., November 15, 2013), this Plenary Meeting Resolution does not fit the requirements of that Rule. For the reasons set forth above, there are serious questions as to the who, what, when, and why concerning the issues Defendants raise concerning the sentence fragment they quote. Under Fed. R. Evid 201, the facts that Defendants attempts to glean from this document cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

### b. The Plenary Meeting Resolution Constitutes Multiple Levels of Hearsay Without Exception

The Plenary Meeting Resolution is subject to two levels of hearsay. The first level of hearsay involves the document itself. This document is not self-authenticating, and Defendants cite to no witness, let alone anyone at the KFTC, who assisted in the preparation of the document, or can even explain what it means.[2]

Second, the internal material, which quotes unnamed Samyang employee during an unclear time period, constitutes an additional level of hearsay. Neither of these levels of hearsay are subject to any hearsay exception.

### B. Defendants Have No Basis To Question Bong –Hoon Kim About Mrs. Kim's Alleged Embezzlement

Defendants are not seeking to prove their theory. They are merely trying to introduce their theory's stink to the jury. If Defendants ask any questions to Bong Hoon Kim about embezzlement, it will not matter what the answer is. Defendants will have been able plant the insinuation in the jury's minds that not just Mrs. Kim or Mr. Chun, but Samyang and all of its employees, are liars. Defendants have made no secret of their intent to then use this insinuation to improperly attack the integrity and honesty of Samyang's live and video witnesses, who had nothing to do with the allegations of embezzlement. Defendants will then use this improper attack on Samyang's witness in an attempt to undermine the reliability of the evidence Samyang provided to the KFTC. Defendants have no factual or legal basis to do this, and any attempt by Defendants to engage in this tactic is improper.

Mr. Kim's actions cannot be used to impeach the credibility of individuals who are testifying as percipient witnesses in this trial. She was a shareholder and officer Samyang. The people who work for or with her are not tainted by association to this alleged embezzlement.

---

[2] While Professor Hong is providing an opinion as to certain practices of the KFTC, he has no personal knowledge of (1) this particular document, (2) the facts discussed therein, and/or (3) the underlying "internal material" listed on page 19 of the Plenary Meeting Resolution.

Plaintiffs' concern about this taint is not merely speculative or theoretical. Although trial has just begun, Ottogi's counsel has show a repeated reluctance to play fair. Even during the first few hours of trial, during opening statements, Ottogi's counsel (1) made repeated improper, prejudicial, and crass references to the Samyang Hard Drive as the "Porn Drive"; (2) characterized the KFTC Investigation as "debunked" in violation of this Court's rulings, resulting in a curative instruction to the jury; and (3) improperly raised argument in an opening statement. Ottogi's counsel has made it no secret that it wishes to infect the jury with irrelevant and prejudicial references to the alleged embezzlement, and it should not be permitted to do so.

## CONCLUSION

For the foregoing reasons, allegations concern Mrs. Kim's alleged embezzlement are irrelevant to the trial, and are likely to cause unfair prejudice. Any attempts to (1) inquire about Mrs. Kim's alleged embezzlement with Bong Hoon Kim or any other witness; (2) introduce the Plenary Meeting Resolution into evidence; and/or (3) make any reference during the trial concerning Mrs. Kim's alleged embezzlement without prior Court approval should be disallowed.

DATED: November 16, 2018   /s/ Daniel E. Birkhaeuser

    Alan R. Plutzik (State Bar No. 77785)
    aplutzik@bramsonplutzik.com
    Daniel E. Birkhaeuser (State Bar No. 136646)
    dbirkhaeuser@bramsonplutzik.com
    BRAMSON, PLUTZIK, MAHLER
    & BIRKHAEUSER LLP
    2125 Oak Grove Road
    Walnut Creek, CA 94598
    Telephone: (925) 945-0200
    Facsimile: (925) 945-8792

    Mark P. Kindall (State Bar No. 138703)
    mkindall@izardnobel.com
    Robert A. Izard *(admitted pro hac vice)*
    rizard@izardnobel.com
    IZARD KINDALL AND RAABE LLP
    29 South Main Street, Suite 305
    West Hartford, CT 06107
    Telephone: (860) 493-6292
    Facsimile: (860) 493-6290

    *Co-Lead Counsel for the Indirect Purchaser Plaintiffs*


    /s/ Christopher L. Lebsock
    HAUSFELD LLP
    Christopher L. Lebsock (SBN 184546)
    Stephanie Y. Cho (SBN 291903)
    600 Montgomery St., 32nd Floor
    San Francisco, CA 94111
    Tel: (415) 633-1908
    Fax: (415) 358-4980
    Email: clebsock@hausfeldllp.com
      scho@hausfeldllp.com

    GLANCY PRONGAY & MURRAY LLP
    Lee Albert (admitted Pro Hac Vice)
    lalbert@glancylaw.com
    Gregory B. Linkh (admitted Pro Hac Vice)
    glinkh@glancylaw.com
    230 Park Avenue, Suite 530
    New York, NY 10169
    Telephone: (212) 682-5340

Facsimile: (212) 884-0988

*Co-Lead Counsel for Direct Purchaser Plaintiffs*