Alan R. Plutzik (State Bar No. 77785)
Daniel E. Birkhaeuser (State Bar No. 136646)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER LLP
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
dbirkhaeuser@bramsonplutzik.com

*Co-Lead Counsel for Indirect Purchaser Plaintiffs*

Bonny E. Sweeney (State Bar No. 176174)
Christopher L. Lebsock (State Bar No. 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
bsweeney@hausfeld.com
clebsock@hausfeld.com
scho@hausfeld.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*
[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE KOREAN RAMEN ANTITRUST LITIGATION | Case No. 3:13-cv-04115-WHO<br><br>**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' OBJECTION TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN** |
| This Document Relates to:<br><br>ALL ACTIONS | Date: November 19, 2018<br>Time: 7:30 A.M.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick |

# INTRODUCTION

Plaintiffs submit this brief in response to Defendants' Brief Objecting To Introduction Of Samyang Hard Drive Exhibits Through James Vaughn [ECF No. 815]. As this Court held on November 16, 2018, the Samyang Hard Drive ("SHD") itself will be authenticated through the admissible testimony of Samyang's Jeong-Eun Park, and is admissible:

> Mr. Park has personal knowledge of his role in the company, what he did on the job, and what he did regarding the hard drive, the information that was conveyed to him by co-employees about events before he was hired. [Park's testimony about] third-party communications while on the job aren't offered for the truth but to explain his thoughts and actions. The hard drive itself is admissible.

Trial Tr. (11/16/18) at 458:5-11. However, the Court further noted that "[s]o far I haven't seen a basis for the admission of the documents themselves. So you'll need to prove that up with somebody else." *Id*. at 458:25-459:2. Plaintiffs will explain below how they plan to admit the relevant documents located on the SHD.

Plaintiffs seek to introduce into evidence two categories of documents from the SHD: (1) one exhibit (Trial Exhibit 44) that contains emails copied and pasted from Samyang's marketone@hanmail.net email account into a word processing program, and (2) documents in the SHD that originated from competitors, most with metadata indicating they were authored or modified by Nongshim or Ottogi. Plaintiffs will also seek to introduce into evidence three summary charts, pursuant to Fed. R. Evid. 1006, providing a list of documents on the SHD with metadata indicating the documents came from either Nongshim, Ottogi, or Yakult.

Samyang witnesses Jong-Moon Yui, Jeoung-Eun Park, and Jin-Woo Suh have already testified or will testify that employees in Samyang's market research team used the marketone email account to communicate with their competitors in the regular course of business, and that they copied emails from that account onto the SHD. Plaintiffs' computer forensics expert James Vaughn, in addition to testifying about data collection from the hard drive, will testify that the copied-and-pasted emails are consistent with expectations regarding web-based email copied into word documents. He will also testify that metadata in hundreds of documents on the SHD indicates

- 1 -

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' OBJECITON
TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN**
Case No. 3:13-cv-04115 WHO

that they originated from Nongshim, Ottogi, or Yakult. Thus, these witnesses have established or will establish the authenticity of the documents.

With respect to any hearsay objections, the documents are either non-hearsay or fall within one of the hearsay exceptions, as explained below.

A.     **Plaintiffs Have Already Provided The Authenticity Of The Documents On The SHD**

At the outset, it should be noted that most of Defendants' arguments are merely a reprise of arguments made at summary judgment and in motions in limine. See ECF No. 815, at 2:3-8:15. As the Court noted in its order denying summary judgment, "Plaintiffs have brought forth sufficient testimony about the creation and maintenance of the SHD and explanations about why some of the 'emails' were captured in the way they were (without native metadata)." *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 935 (N.D. Cal. 2017). While Defendants cite to supposed weakness or inconsistencies in Mr. Yui's testimony, ECF No. 815 at 2:17-5:6. this Court already considered such issues at Summary Judgment, and such issues did not prevent authentication. *Id.*[1] Defendants offer the same arguments now, and there is no reason for the Court to rule differently.[2]

---

[1] Defendants notes that Mr. Yui stated that SHD00001834 "was not sent." ECF No. 815, at 4:16-23. Plaintiffs are not seeking to introduce this document into evidence.

[2] The standard for authentication under Fed. R. Evid. 901 is not high. A party "need only make a prima facie showing of authenticity so that a reasonable juror could find in favor of authenticity or identification." *U.S. v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996), (quoting *U.S. v. Chu Kong Yin*, 935 F.2d 990, 996 (9th Cir. 1991)). "Once the *prima facie* case for authenticity is met, the probative value of the evidence is a matter for the jury." *Id*. For emails, a court need not find they "are necessarily what the proponent claims, only that there is evidence sufficient for the jury to make such a finding." *U.S. v. Safavian*, 435 F. Supp. 2d 36, 39 (D.D.C. 2006) ("*Safavian*").

Authenticity may be satisfied through examination of the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed. R. Evid. 901(b)(4), The Advisory Committee notes to this section state that "[t]he characteristics of the offered item itself, considered in the light of circumstances, afford authentication techniques in great variety." Emails can be authenticated entirely by circumstantial evidence, including the presence of a party's work e-mail address, content of which a party was familiar, use of a nickname, or testimony by witnesses that the defendant spoke to them about the subjects contained in the e-mail.

"Fed. R. Evid. 901 does not require personal knowledge of a document's creation, but rather only personal knowledge that a document was part of an official file." *U.S. v. Estrada-Eliverio*, 583 F.3d 669, 673 (9th Cir. 2009). In *Lorraine v. Market Am. Ins. Co.*, 241 F.R.D. 534,

- 2 -

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFEDANTS' OBJECITON
TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN**
Case No. 3:13-cv-04115 WHO

**B.     Plaintiffs Will Demonstrate That The Documents On The SHD Are Admissible**

**1.   Trial Exhibit 44: Emails Copied-And-Pasted Into Word Processing Document**

Plaintiffs seek to introduce into evidence Trial Exhibit 44 (Deposition Exhibit 159T/SHD00003117-59T), a multi-page document that contains emails copied and pasted into a word processing document. (This document is attached as Ex. A to the Declaration of Gregory Linkh ("Linkh Decl.") submitted herewith.) This document contains 69 separate email communications between January and June 2008. Vaughn Report at ¶¶ 71-72. Each email is numbered 1 through 69 in the document. The email address "marketone@hanmail.net" appears 95 times in this document. "Howl1@yakult.co.kr" appears 69 times in this document. "chk2002@nongshim.com" appears 40 times in this document. "jhjung@ottogi.co.kr" appears 5 times in this document. "sungsoo@nongshim.com" appears 13 times in this document. "pss0998@naver.com" (Nongshim employee Sung Soo Park's personal email account) appears 3 times in this document. None of these addresses have been questioned and, of course, the @nongshim.com and @ottogi.co.kr are email servers from which the Defendants have produced many of their own emails. *Id.* at ¶ 72.

Plaintiffs have introduced or will introduce testimony identifying the employees who used these email addresses. Hyun-Gyoon Choi will provide video testimony that he used the email

---

554 (D. Md. 2007), that court found that emails "may be authenticated by direct or circumstantial evidence."
> An e-mail message's distinctive characteristics, including its 'contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances' may be sufficient for authentication. . . . E-mails often contain information showing the origin of the transmission and identifying the employer-company. The identification marker alone may be sufficient to authenticate an e-mail under Rule 902(7).

*Id.* (quoting Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 900.07(3)(c) (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997). As demonstrated below, Plaintiffs can authenticate the SHD and the documents stored on it in a variety of ways, including the testimony of Samyang custodial witnesses and Plaintiffs' metadata expert, James Vaughn.

address chk2002@nongshim.com.³ Similarly, Sung-Soo Park will provide video testimony that he had the email accounts sungsoopark@nongshim.com and pss0998@naver.com.⁴ Emails to and from both of these email accounts are included in Trial Ex. 44.  Emails from Hyun-Gyoon Choi account for 37 of the emails in Trial Exhibit 44 (emails Nos. 1, 3-5, 7-11, 13-14, 18-19, 21-23, 26-27, 29-30, 32, 36, 38-39, 45, 47-48, 50-55, 57, 58, 61, 63-64). Similarly, emails between marketone and Sung-Soo Park account for 16 of the emails in Trial Exhibit 44 (emails Nos. 12, 15, 16, 28, 33, 35, 37, 41, 44, 56, 59, 65, 66-69).

      Samyang's Jong-Moon Yui has provided testimony, read to the jury on Thursday, about his use of Samyang's marketone@hanmail.net email account to communicate with Nongshim, Yakult, and Ottogi in the regular and ordinary course of business. Trial Tr. (11/15/18) at 391:1-13; 394:9-22. Mr. Yui exchanged "[g]eneral performance, sales trend, consumer event, new product launch" information with competitors, and, in particular, exchanged price information during the "season when the prices are raised." Id. at 386:10-387:16. Mr. Yui also testified about the use of an external hard drive to store documents from the marketone account. Id. at 402:2-9.

      Accordingly, Mr. Yui was able to provide a detailed account about the collection of the emails and documents, referencing the use of the marketone@hanmail.net account, on the SHD. Furthermore, Mr. Yui's September 2016 testimony is corroborated by his Witness Statement to the KFTC (Trial Ex. 346).⁵

---

³ Hyun-Gyoon Choi Tr. (2/17/16) at 40:18-25 ("Q. What email address did you select for yourself? A. It happens to be the same email address that I presently use, which is comprised of my English initials, "CHK," followed by the year 2002, because that was the year that I came on-board with the company, so chk2002@nongshim.com."). Linkh Decl. Ex. B.

⁴ Sung-Soo Park Tr. (4/27/16) at 38:6-8 ("Q. What is your email address, your 7 Nongshim email address? A. It's sungsoo@nongshim.com."); Tr. at 41: 11-13 ("Q. And tell me what the email address for the Naver account is, please. A. So it reads pss0998@naver.com."). Linkh Decl. Ex. C.

⁵ Mr. Yui's Witness Statement provides the following information:

- ¶ 11 (Mr. Yui was given "[t]he authority of managing the email account (marketone@hanmail.net) from Daum Communications, which was created in order to exchange information with competitors.")

- 4 -

Jin Woo Suh, in video testimony already provided at trial, corroborated Mr. Yui's testimony, and stated that the marketone emails were used by the "market research team to communicate with its competitors." This testimony is not mentioned in Defendants' brief.[6]

Jeong-Eun Park, a Samyang executive who conducted an internal investigation into competitor communications in response to the KFTC investigation, will provide video testimony that he interviewed Samyang employees about their competitor communications and about their storage of these communications on the SHD. He will also provide video testimony that he personally extracted data from the SHD and reviewed the contents of the SHD.[7]

---

- ¶ 14 ("I exchanged information with competitors' employees via phone calls and email account (marketone@hanmail.net) of 'Daum Communications,' which former Deputy Senior Manager Kyung-Joo Kim created and handed over to me. As I mentioned before, when former Deputy Senior Manager Kyung-Joo Kim was working at the company, we often used fax, but since I took over the market research tasks, I mainly used email and landline phone calls to exchange information.")

[6] Jin Woo Suh Tr. at 28:2-3; 28:7-10; 28:15-24 (attached as Ex. D to the Linkh Decl.):

Q. Okay. Are you aware of the marketone@hanmail.net account?
A. Yes, I am.
Q. Okay. Why don't you tell us what the marketone@hanmail.net account was used for.
A. You can consider it as a company email account in order to exchange information for the members market research team to communicate with its competitors.
Q. Okay. And were you aware of the existence of the marketone@hanmail.net account during the period from July 2006 to September of 2008?
A. Yes. I was aware of that.

[7] Jeong-Eun Park specifically interviewed Jong Moon Yui and learned "what kind of information that he exchanged with the competitors with respect to Ramen," and "where the information was stored, such as portable hard drive." Jeong-Eun Park Tr. (1/18/16) at 16:9-16. (Relevant excerpts of Jeung-Eun Park's transcript are attached as Ex. E to the Linkh Decl. A summary of his testimony follows:

- "I verified what I heard from employees from the interview and the materials that I found in their hard drive." *Id*. at 26:12-15.

- "In each directory -- well, the directory was organized such that by year, by company, and recipient and senders. So it was very well-organized." *Id.* at 26:23-27:2.

- 5 -

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFEDANTS' OBJECITON
TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN**
Case No. 3:13-cv-04115 WHO

This is confirmed by the testimony of Jin-Woo Suh, who was aware of the marketone email, and confirmed that Samyang's Market Research Team used an external hard drive to store documents. As with the Jin-Woo Suh's testimony about marketone, his testimony about the storage on the hard drive is not mentioned in Defendants' brief.[8]

To the extent these emails are offered for the truth of the matter asserted,[9] they are either non-hearsay (as a statement by a party's co-conspirator during and in furtherance of the conspiracy

---

- In the directory of the SHD labeled "competitors", it contained "[p]rice list, competitors weekly trend report, DAUM mailbox or -- and the competitors' events, advertising campaign, and personnel or organizational chart, competitors' regular event, competitors' price increase, competitors' new product, competitors' sales figures, competitors' strategy, Samyang sales figures, and what Samyang notified them, that is all. And I mentioned in -- one of the subdirectories has 'DAUM mailbox.' And under the DAUM mailbox, it was segregated as by year and by company." *Id.* at 65:10-65:22.

[8] Jin Woo Suh Tr. at 38:22-39:8; 39:13-22; 40:2; 40:23-41:3; 41:8-41:10 (attached as Ex. D to the Linkh Decl.):

> Q. Sir, did the market research team use an external hard drive to store documents during the period from July 2006 to September 2008?
> A. Yes.
> Q. Okay. So if we refer to that as the hard drive, you'll know what we're speaking about. Okay?
> A. Yes.
> Q. All right. What was stored on the hard drive, to your understanding?
> A. Although I did not verify all the files in that hard drive, but my understanding is that that hard drive has information related to what market research team did.
> Q. Okay. And that -- your understanding is based on your experience as the marketing team leader for the period of time from July 2006 to at least September of 2008; correct?
> A. Yes. That is correct.
> Q. Okay. Do you know if the market research team was storing material on the hard drive to ensure it had a record of the various communications that it had with Samyang's Ramen noodle competitors?
> A. Yes. My understanding is that that was the purpose of it, to have the record of the various communications.

[9] For example, an assertion that an emails document is attached and bears the title indicated is being offered for the truth.

- 6 -

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFEDANTS' OBJECITON
TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN**
Case No. 3:13-cv-04115 WHO

under Fed. R. Evid. 801(d)(2)(E) or as an admission of a party opponent under Fed. R. Evid. 801(d)(2)) or fall within one of the hearsay exceptions (as a business record under Fed. R. Evid. 803(6) or a statement against interest under Fed. R. Evid. 804(b)(3)). *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 906 F.3d 432, 458-59 (9th Cir. 1990) (quoting *Bourjaily v. U.S.*, 483 U.S. 171, 175 (1987)); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 973-74 (C.D. Cal. 2006).

Mr. Vaughn will also testify about these emails. He will testify that the communications were copied in an .hwp word processing format "because web-based email does not lend itself to being copied in a traditional email format." Vaughn Report at ¶ 73. The copied text includes not just the email messages themselves, but also "HTML tags", links and other data that are present when web email clients are used to send, receive, and view email. *Id*. This information can be used to connect the full email with the lines in the inboxes included in the SHD. *Id*. at ¶¶ 76-87.

**2. Other Documents Included On The SHD**

Mr. Vaughn has provided a list of documents on the SHD with metadata indicating the documents came from either Nongshim, Ottogi, or Yakult. He has created three charts, included as Trial Exhibits 197, 391, and 446, to summarize these documents. Each chart provides a list of documents with the following fields: (1) "Production Bates Begin"; (2) "Doc Author"; (3) "Doc Last Author"; (4) "Filename"; and (5) "Date Created". Plaintiffs will seek to introduce these three summary charts into evidence under Fed. R. Evid. 1006.

Most of the document listed below contain metadata (as described in either Exhibit 197, 391, or 446) indicating that they originated from the files of either Nongshim, Ottogi, or Yakult. These documents are nonhearsay because they are not being offered for the truth of the matter asserted. The documents are being offered merely to show that they were located in the files of a competitor, and thus presumably exchanged in furtherance of the conspiracy.[10]

---

[10] To the extent that Defendants are arguing that the authenticity of these emails is suspect, Vaughn will testify that many were downloaded in 2007, which pre-dates the KFTC investigation.

- 7 -

PLAINTIFFS' BRIEF IN RESPONSE TO DEFEDANTS' OBJECITON
TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN
Case No. 3:13-cv-04115 WHO

This analysis applies to the following documents[11]:

| Trial Ex. | Bates No. | Description |
|---|---|---|
| 42 | Deposition Exhibit 156T/SHD00001182T | Table entitled "Breakdown of Price Increase Details by Ramen Product" |
| 46 | Deposition Exhibit 28T/SHD00000576-77T and metadata | Document entitled "Appendix. 05 ' Price Increase proposals by product" with table of products and price adjustments |
| 52 | Deposition Exhibit 58T/SHD00002538-40T and metadata | February 2007 Specialty Contract Dealer Sales Promotion Plans |
| 440 | SHD00000774T and metadata | Document demonstrating Nongshim's 2007 1Q Performance |
| 441 | SHD00000945T and metadata | Nongshim document detailing various product shipment dates and old price support methods |
| 443 | SHD00000976T and metadata | Ottogi document demonstrating 2007 1Q performance data |
| 448 | SHD00001832T and metadata | Nongshim's 2003 price increase details |
| 449 | SHD00002079T and metadata | Ottogi's 2007 2Q performance data |

## CONCLUSION

For the foregoing reasons, the trial exhibits discussed above, which were found on the SHD, or are summaries created in accordance with Fed. R. Evid. 1006, are admissible and should be published to the jury when offered into evidence.

DATED: November 19, 2018

*s/ Christopher L. Lebsock*
Bonny E. Sweeney
Christopher L. Lebsock
Stephanie Cho
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104

*s/ Daniel E. Birkhaeuser*
Alan R. Plutzik (State Bar No. 77785)
Daniel E. Birkhaeuser
BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER LLP
2125 Oak Grove Road
Walnut Creek, CA 94598

---

[11] Several documents located on the SHD were also found Defendants' own files. For example, Trial Exhibits 52, 440, and 448, each located on the SHD, are in all material respects identical to Trial Exhibits 82, 180, and 304, found in Nongshim's files.

- 8 -

PLAINTIFFS' BRIEF IN RESPONSE TO DEFEDANTS' OBJECITON
TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN
Case No. 3:13-cv-04115 WHO

TEL: 415-633-1908
EMAIL: mlehmann@hausfeld.com
 clebsock@hausfeld.com
 scho@hausfeld.com

Michael Hausfeld (admitted pro hac vice)
HAUSFELD LLP
1700 K Street, N.W., Suite 650 Washington D.C. 20006
TEL: 202-540-7200
EMAIL: mhausfeld@hausfeld.com

Brian P. Murray (admitted pro hac vice)
Lee Albert (admitted pro hac vice)
Gregory B. Linkh (admitted pro hac vice)
GLANCY PRONGAY & MURRAY LLP
230 Park Avenue, Suite 530
New York, NY 10169
TEL: (212) 682-5340
EMAIL: bmurray@glancylaw.com
 lalbert@glancylaw.com
 glinkh@glancylaw.com

Lionel Z. Glancy
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100 Los Angeles, CA 90067
TEL: (310) 201-9150
EMAIL: lglancy@glancylaw.com
 mgoldberg@glancylaw.com

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Telephone: (925) 945-0200
Facsimile: (925) 945-8792
EMAIL: aplutzik@bramsonplutzik.com
 dbirkhaeuser@bramsonplutzik.com

Mark P. Kindall
Craig A. Raabe (admitted *pro hac vice*)
Robert A. Izard (admitted *pro hac vice*)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
EMAIL: mkindall@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com

*Interim Lead Counsel for the Indirect Purchaser Plaintiffs*

Steven M. Sherman
SHERMAN BUSINESS LAW
220 Montgomery Street, Suite 1500
San Francisco, CA 94104
EMAIL: steven@shermanbusinesslaw.com

Marc Gene Reich
REICH RADCLIFFE AND KUTTLER LLP
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
EMAIL: mgr@reichradcliffe.com

Gerald S. Ohn
LAW OFFICES OF GERALD S OHN
1875 Century Park East Suite 700
Los Angeles, CA 90067
EMAIL: gerald@ohnlaw.com

Thomas Henry Bienert, Jr.
BIENERT, MILLER AND

- 9 -

PLAINTIFFS' BRIEF IN RESPONSE TO DEFEDANTS' OBJECITON
TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN
Case No. 3:13-cv-04115 WHO

KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
EMAIL: tbienert@bmkattorneys.com

Young W. Ryu
LAW OFFICES OF YOUNG W RYU
9595 Wilshire Boulevard Suite 900
Beverly Hills, CA 90212
EMAIL: young.ryu@youngryulaw.com

Sydney J. Hall (Cal. Bar No. 158151)
SYDNEY J. HALL LAW OFFICE
1308 Old Bayshore Hwy #220
Burlingame, CA 94010
EMAIL: sjhlaw@mail.com

*Additional Counsel for the Indirect Purchaser Plaintiffs*

- 10 -

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFEDANTS' OBJECITON
TO INTRODUCING SHD EXHIBITS THROUGH JAMES VAUGHN**
Case No. 3:13-cv-04115 WHO