1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE KOREAN RAMEN ANTITRUST LITIGATION,

THIS DOCUMENT RELATES TO:

All Actions

Case No. 3:13-cv-04115-WHO

**FINAL JURY INSTRUCTIONS**

### Instruction No. 1 – Duty of the Jury

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

### Instruction No. 2 – Identification of the Parties

There are two classes of plaintiffs in this case. The Direct Purchaser Class ("DPPs") includes all persons and entities in the United States and its territories who purchased Korean Ramen Noodles—which they define as Nongshim and Ottogi branded bag, cup, or bowl ramen, including fried, dried, fresh and frozen noodle products—directly from Defendants Nongshim Co., Ltd., Nongshim America, Inc., Ottogi Co., Ltd., or Ottogi America, Inc. at any time from March 1, 2003 through January 31, 2010. The DPPs' Class excludes Samyang Foods Co., Ltd., Samyang (USA), Inc., Korea Yakult, Co., Ltd., Paldo Co., Ltd. and any of their current or former parents, subsidiaries or affiliates as well as all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action. This class is represented by the named plaintiffs Rockman Company (USA), Inc., Pacific Groservice, Inc. d/b/a/ Pitco Foods d/b/a Pitco Foods, the Plaza Market, and Summit Import Corp. The class of DPPs generally includes food distributors and supermarkets.

The Indirect Purchaser Class ("IPPs") includes all persons and entities that purchased Korean Ramen Noodles—which they define as Nongshim, Ottogi and Samyang branded bag, cup or bowl ramen, including fried, dried, fresh and frozen noodle products—in Arizona, California, Florida, Hawaii, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, and the District of Columbia for their own use and not for resale, from March 1, 2003 through January 31, 2010. The IPPs' Class excludes any Defendant; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant, as well as the judicial officers to whom this case is assigned and any member of such judicial officers' immediate family. This class is represented by Eleanor Pelobello, Christina Nguyen, Anthony An, Charles Chung, Kenny Kang, Ji Choi, Joyce Beamer, Yim Ha Noble, and Thu-Thuy Nguyen. The IPPs and the class that they represent consist of consumers of Korean Ramen Noodles.

Collectively, the class representatives, the DPPs' Class, and the IPPs' Class will sometimes be referred to as the Plaintiffs.

There are four defendants in this trial. Nongshim Co., Ltd. is a company incorporated and

1    headquartered in Korea.   Nongshim America, Inc., is a company incorporated in California is a

2    subsidiary of Nongshim Co. Ltd., and is headquartered in Rancho Cucamonga, California.  Ottogi Co.,

3    Ltd., is a company incorporated and headquartered in Korea.   Ottogi America, Inc., is a company

4    incorporated in California is subsidiary of Ottogi Co., Ltd., and is headquartered in Gardena, California.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Instruction No. 3 – Multiple Parties

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

### Instruction No. 4 – Corporate Equality

Many of the plaintiffs and defendants involved in this case are corporations. A corporation is entitled to the same fair trial as a private individual. All persons, corporations, partnerships, and other organizations stand equal before the law, and stand equal in this Court.

Therefore, in examining the issues in this case, it does not matter that some of the parties are corporations. You should consider and decide this case as a dispute between those of equal standing.

**Instruction No. 5 – Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

### Instruction No. 6 – What Is Evidence

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits that are admitted into evidence;

3.  any facts to which the lawyers have agreed; and

4.  any facts that I have instructed you to accept as proved.

## Instruction No. 7 – Direct and Circumstantial Evidence

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

### Instruction No. 8 – What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

### Instruction No. 9 – Evidence for a Limited Purpose

Some evidence may be admitted only for a limited purpose.

When I instructed you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

### Instruction No. 10 – Ruling on Objections

There are rules of evidence that control what can be received into evidence. At times, I sustained objections to questions or evidence. As I instructed you before, you must ignore those questions and must not guess what the answers might have been. When I ordered that evidence be stricken from the record, you must disregard and ignore that information. When you deliberate, you must not consider the stricken evidence for any purpose.

### Instruction No. 11 – Deposition Testimony

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Instruction No. 12 – Use of Interrogatories

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

## Instruction No. 13 – Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

### Instruction No. 14 – Use of Interpreters

You have heard testimony of witnesses who testified in the Korean language. Witnesses who do not speak English or are more proficient in Korean testify through an official court interpreter. Although some of you may know the Korean language, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

**Instruction No. 15 – Expert Witnesses**

You have heard testimony from expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of those witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witnesses' education and experience, the reasons given for the opinions, and all the other evidence in the case.

**Instruction No. 16 – Charts and Summaries**

During trial, the parties showed you various charts or summaries.  Some of those charts or summaries came into evidence, while others did not.

Charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of sales and other data, records, documents, or other evidence in the case.  Charts and summaries not admitted into evidence have also been shown to you in order to help explain the timeline of events.  Charts and summaries that are not admitted are not themselves evidence and must not be considered as such.  The underlying evidence that supports them is entitled to such weight as you think the underlying evidence deserves.

Charts and summaries that have been admitted into evidence reflect or summarize other admissible evidence that, for reasons of volume or complexity for example, may not have actually been admitted into evidence at trial.  As evidence, you may give them such weight as you think they deserve.

**Instruction No. 17 – Overview of Antitrust Claims**

The Direct Purchaser Class and Indirect Purchaser Class allege that Nongshim Company, Ltd.; Nongshim America, Inc.; Ottogi Company, Ltd.; Ottogi America, Inc. violated the antitrust laws by conspiring, contracting, or combining to raise or stabilize the prices of Korean Ramen Noodle products sold in Korea and that this alleged conspiracy caused an increase in the prices of Korean Ramen Noodle products sold in the United States and purchased by the Direct Purchaser Class and Indirect Purchaser Class.

To establish a violation of the antitrust laws, the Direct Purchaser Class and Indirect Purchaser Class must prove the following:

*First*, the existence of a conspiracy, contract, or combination among at least two entities to fix the prices of Korean Ramen Noodle products;

*Second*, that each defendant purposefully or knowingly became a party to that conspiracy, contract, or combination;

*Third*, that the alleged conspiracy, contract, or combination occurred in or affected interstate or import commerce; and

*Fourth*, the anticompetitive conduct was a substantial factor in causing the Direct Purchasers and/or the Indirect Purchasers to pay more for Korean Ramen Noodle products in the United States than they otherwise would have.

### Instruction No. 18 – Conspiracy, Contract, or Combination

Plaintiffs allege that Defendants Nongshim Company, Ltd., Nongshim America, Inc., Ottogi Company, Ltd., Ottogi America, Inc. conspired amongst themselves and/or with Samyang Foods Co., Ltd. and/or Korea Yakult Co., Ltd. to restrain trade by stabilizing and/or raising the price of Korean Ramen Noodles. Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1) that an agreement or mutual understanding between two or more persons to stabilize or raise the price of Korean Ramen Noodles existed; and

(2) that one or more Defendants knowingly participated in that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by plaintiff were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the alleged agreement to raise or stabilize the price of Korean ramen noodles that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

An agreement between competing firms to raise or stabilize prices violates the law even if there is not an agreement on the exact price to be charged.

## Instruction No. 19 – Participation and Intent

Before you can find that a defendant was a member of the conspiracy alleged by plaintiffs, the evidence must show that that defendant in question knowingly joined in the unlawful plan at its inception or at some later time with the intent to advance or further some object or purpose of the conspiracy.

To act knowingly means to act voluntarily and intentionally, and not because of mistake or accident or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular defendant's statements and conduct, including any evidence of that defendant's knowledge and participation in the events involved and any other evidence of that particular defendant's participation in the conspiracy alleged.

You may not find that a defendant was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether a defendant was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

## Instruction No. 20 – Corporations or Agency

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly-owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority. Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law

### Instruction No. 21 – Subsidiary Purpose

A subsidiary company that is owned by a parent shares a unity of purpose with its parent company whenever the two engage in coordinated activity.  Coordinated activity occurs where the parent and subsidiary act together in furtherance of the same price-fixing scheme.  If you find that coordinated activity is established, it is not necessary to find that the subsidiary actually knew of the existence of the conspiracy entered into by the parent.  Under such circumstances, the law provides that the subsidiary shares the parent's allegedly anticompetitive purpose, but only to the extent of any damages Plaintiffs establish are attributable to the subsidiary's furtherance of the coordinated activity at issue.

**Instruction No. 22 – Parallel or Similar Conduct**

Plaintiffs contend that Nongshim Co., Ltd.; Nongshim America, Inc.; Ottogi Co., Ltd.; Ottogi America, Inc., coordinated efforts to raise or stabilize the price of Korean Ramen, and that their conduct affected the price of Korean Ramen sold in the United States during the class period. Plaintiffs further contend that this conduct, when considered with other evidence, shows that a conspiracy existed among some or all of the Defendants.

The mere fact that Defendants have engaged in similar pricing conduct does not by itself establish the existence of a conspiracy among Defendants. Their behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas. A business may lawfully adopt the same prices, conditions of sale, or other practices, as its competitors as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors. Thus, a defendant may charge prices identical to those charged by its competitors without violating antitrust laws. A defendant may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of its competitors. Likewise, a defendant does not violate the antitrust laws by taking some action in the hope or belief that its competitors will follow, so long as it has not reached an agreement with its competitors. Parallel conduct, without more, does not violate the law. If Defendants acted similarly but independently of one another, without any agreement or understanding between two or more of them, then there would not be a conspiracy.

You must decide whether Defendants' similar conduct was, more probably than not, the result of an agreement or understanding among them. In doing so, you may consider defendants' similar conduct along with other evidence. You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely that Defendants had an agreement or understanding with one another than that they acted independently of one another. In making this determination, you should consider the similar conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you that it is more likely that Defendants' similar actions were the product of an agreement or understanding with one another than their own

1   independent decisions.

2          If after considering all of the evidence, you conclude that Plaintiffs have shown that it was more

3   likely than not that Defendants' similar conduct was the result of an agreement or understanding among

4   them than their independent decisions, you must find for Plaintiffs on the question of whether

5   Defendants participated in a conspiracy.  If, after considering all of the evidence, you conclude that

6   Plaintiffs failed to prove that a Defendants' similar conduct was more likely than not the result of an

7   agreement or understanding with one or more of the other defendants, then you must find against

8   Plaintiffs and in favor of that Defendant on the question of whether that Defendant participated in a

9   conspiracy.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Instruction No. 23 – Information Exchanges

Evidence has been introduced concerning the exchange of information among Defendants and their competitors about their prices for Korean Ramen Noodle products.  Plaintiffs have alleged that such exchanges were made in furtherance of a conspiracy to fix prices.

The fact that Defendants exchanged price information does not necessarily establish an agreement to fix prices.  There may be other, legitimate reasons that would lead competitors to exchange price information, and the law recognizes that exchanges of price information may enhance competition and benefit consumers. On the other hand, if you find that price information was exchanged and that Defendants offer no reasonable explanation as to why they were exchanging that information, you may consider whether it was being exchanged as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices.

### Instruction No. 24 – Evidence of Prices Charged

Evidence of the prices actually charged by Defendants for Korean Ramen Noodle products has been admitted to assist you in deciding whether Defendants agreed to stabilize or raise prices, as claimed by Plaintiffs. Such evidence may lead you to conclude that Defendants never entered into the alleged conspiracy. Or it may lead you to conclude that Defendants reached an agreement but undercut one another, offered prices different from those agreed upon to certain customers, or at certain times failed to live up to the agreement. If you find that Defendants agreed to stabilize or raise prices, the fact that they did not stick to their agreement on every occasion or for every customer is not a defense.

**Instruction No. 25 – Evidence of Competition**

Evidence that Defendants actually engaged in price competition with each other in some manner has been admitted to assist you in deciding whether they entered into the alleged conspiracy to stabilize or raise the price of Korean Ramen. If you find that such a conspiracy existed, it is no defense that Defendants actually competed in some respects with each other, or with their competitors, or failed to eliminate all competition between them. Similarly, an agreement or understanding between competitors is unlawful even if it did not extend to all products sold by Defendants or did not affect all of their customers or transactions.

## Instruction No. 26 – Proceedings in Korea

The Korean Fair Trade Commission, also known as the "KFTC," investigated whether Nongshim Co. Ltd., Ottogi Co. Ltd., Samyang Food Co. Ltd., and Korea Yakult Corporation violated the Korean Fair Trade Act with respect to the pricing of and other decisions regarding the sale of Korean ramen noodles. Applying Korean law – which is not the law you will be applying, you will be applying U.S. federal and state antitrust and unfair competition laws -- the KFTC found that those Korean ramen companies conspired to fix the price of Korean ramen noodles sold in the Korea domestic market and assessed fines against them. The Korean Supreme Court – applying Korean law -- reversed the KFTC's decision and the fines. The KFTC then revoked its prior findings and decision, and refunded the fines. The conclusions of the KFTC and the Korean Supreme Court's reversal of the KFTC decision are not relevant to the determinations that you must reach under U.S. federal and state antitrust and unfair competition laws regarding the sale of Korean ramen noodles in the U.S. domestic market.

### Instruction No. 27 – Document Preservation

You have heard testimony about the fact that Nongshim Co., Ltd. and Ottogi Co., Ltd. did not have certain documents at the time this litigation started.  You have also heard testimony regarding certain documents produced by Ottogi Co., Ltd., which Plaintiffs contend were altered, a characterization Ottogi Co., Ltd. disputes.  You have also heard and seen evidence about Nongshim Co., Ltd.'s and Ottogi Co., Ltd.'s document preservation policies and practices.

I instruct you that none of the four defendants, Nongshim Co., Ltd., Ottogi Co., Ltd., Nongshim America, Inc., and Ottogi America, Inc., violated any duty under U.S. law to preserve documents. Under Korean law, neither Nongshim Co., Ltd. nor Ottogi Co., Ltd. had a duty to preserve documents outside of an onsite investigation or specific request made by the Korean Fair Trade Commission.

## Instruction No. 28 – Causation & Injury

If you find that defendants have violated the antitrust laws, then you must decide if Plaintiffs are entitled to recover damages from defendants.

Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation. The term "business" includes any commercial interest or venture. A plaintiff has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of Defendants' alleged antitrust violation. The term "property" includes anything of value plaintiff owns, possesses, or in which plaintiff has a protectable legal interest. A plaintiff has been injured in its property if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of Defendants' alleged antitrust violation. A plaintiff has been injured in its property if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money as a result of Defendants' alleged antitrust violation.

The three elements of injury and causation are:

(1) Plaintiffs were in fact injured as a result of defendants' alleged violations of the antitrust laws;

(2) Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury; and

(3) Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of defendants' alleged violations of the antitrust laws. Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury. It requires only that Plaintiffs prove that they were in fact injured by Defendants' alleged antitrust violations. If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of Plaintiffs' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

Plaintiffs must also offer evidence that establishes by a preponderance of the evidence that

1  defendants' alleged illegal conduct was a material cause of Plaintiffs' injury.  This means that Plaintiffs

2  must have proved that some damage occurred to them as a result of Defendants' alleged antitrust

3  violations, and not some other cause. Plaintiffs are not required to prove that Defendants' alleged

4  antitrust violations were the sole cause of their injury; nor need Plaintiffs eliminate all other possible

5  causes of injury. It is enough if Plaintiffs have proved that the alleged antitrust violation was a material

6  cause of their injury.

7       Finally, Plaintiffs must establish that their injury is the type of injury that the antitrust laws were

8  intended to prevent.  This is sometimes referred to as "antitrust injury." If Plaintiffs' injuries were

9  caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that

10  would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries. On the other hand, if

11  Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts

12  that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not

13  recover damages for those injuries under the antitrust laws.

14       In summary, if Plaintiffs can establish that they were in fact injured by Defendants' conduct,

15  that Defendants' conduct was a material cause of their injury, and that Defendants' injury was the type

16  that the antitrust laws were intended to prevent, then Plaintiffs are entitled to recover damages for the

17  injury to their business or property.

18

19

20

21

22

23

24

25

26

27

28

### Instruction No. 29 – Substantial Effects Test

Where conduct primarily or wholly occurs outside of the United States, United States antitrust laws only apply to that conduct where the conspiracy to fix the prices was intended to have and had a substantial effect in the United States.

**Instruction No. 30 – Damages: Introduction & Purpose**

If you find that Nongshim Co., Ltd.; Nongshim America, Inc.; Ottogi Co., Ltd.; or Ottogi America, Inc. violated the antitrust laws and that this violation caused injury to the Plaintiff classes, then you must determine the amount of damages, if any, Plaintiffs are entitled to recover. The fact that I am giving you instructions concerning the issue of Plaintiffs' damages does not mean that I believe Plaintiffs should, or should not, prevail in this case. If you reach a verdict for defendants on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer – what we sometimes refer to as punitive damages – or to deter particular conduct in the future. Furthermore, you are not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit.

## Instruction No. 31 – Basis for Calculating Damages

You are permitted to make just and reasonable estimates in calculating Plaintiffs' damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages, not to exceed one dollar.

### Instruction No. 32 – Calculation of Damages

The Direct Purchaser Class is seeking to recover damages on behalf of a class of purchasers that includes all persons and entities in the United States and its territories who purchased Korean Noodles directly from Defendants Nongshim Co., Ltd., Nongshim America, Inc., Ottogi Co., Ltd., or Ottogi America, Inc. at any time from March 1, 2003 through January 31, 2010. The Class excludes Samyang Foods Co., Ltd., Samyang (USA), Inc., Korea Yakult, Co., Ltd., Paldo Co., Ltd. and any of their current or former parents, subsidiaries or affiliates as well as all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action. The Direct Purchaser Class claims that they were harmed because they purchased Korean Ramen Noodle products they purchased in the United States during this time period that were more expensive than they would have been in the absence of the alleged conspiratorial conduct.

The Indirect Purchaser Class is seeking to recover damages on behalf of a class of purchasers that includes all persons and entities that purchased Korean Ramen Noodles in Arizona, California, Florida, Hawaii, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, and the District of Columbia for their own use and not for resale, from March 1, 2003 through January 31, 2010. The class excludes any Defendant; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant, as well as the judicial officers to whom this case is assigned and any member of such judicial officers' immediate family. The Indirect Purchaser Class claims that they were harmed because they purchased Korean Ramen Noodle products they purchased in the United States during this time period that were more expensive than they would have been in the absence of the alleged conspiratorial conduct.

If you find that Defendants violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of Defendants. Plaintiffs bear the burden of showing that their injuries were caused by Defendants' antitrust violation, as opposed to any other factors. If you find that Plaintiffs' alleged injuries were caused in part by Defendants' alleged antitrust violation and in part by

1   other factors, then you may award damages only for that portion of Plaintiffs' alleged injuries that was

2   caused by Defendants' alleged antitrust violation.

3       Plaintiffs claim that they suffered injury because they paid higher prices for Korean Ramen

4   Noodles products than they would have paid if the alleged antitrust violation had not occurred.

5   Defendants claim that these higher prices occurred as a result of other factors that have nothing to do

6   with the alleged antitrust violation. These include the costs of raw materials, rise in demand for

7   particular products, government conduct, changing technology and production facilities, lawful follow-

8   the leader pricing behavior, shipping costs, and other legitimate cost factors.

9       Plaintiffs are not entitled to recover for changes in price that resulted solely from these or other

10  causes arising from the normal course of business activity. The presence of these factors does not mean

11  Plaintiffs did not suffer antitrust injury, but Plaintiffs are not entitled to recover for damages caused by

12  them. Plaintiffs only may recover for damages caused by the alleged antitrust violation.

13      Plaintiffs are not entitled to recover for changes in price that resulted solely from legitimate

14  business activity or from independent business decisions that were not the product of anticompetitive

15  activity. Each class of plaintiffs is entitled to recover damages attributable to the alleged antitrust

16  violation.

17      Plaintiffs bear the burden of proving damages by a preponderance of the evidence, including

18  apportioning damages between lawful and unlawful causes. If you find that Plaintiffs were injured by

19  Defendants' alleged antitrust violation, and there is a reasonable basis to apportion Plaintiffs' alleged

20  injury between lawful and unlawful causes, then you may award damages.

21      If you find that Plaintiffs' alleged injuries were caused by factors other than Defendants' alleged

22  antitrust violation, then you must return a verdict for Defendants. If you find that there is no reasonable

23  basis to apportion Plaintiffs' alleged injury between lawful and unlawful causes, or that apportionment

24  can only be accomplished through speculation or guesswork, then you may not award any damages at

25  all.

26

27

28

**Instruction No. 33 – Direct Purchaser Damages**

I will now explain to you the way in which you may calculate the damages, if any, for the Direct Purchaser Class.  The burden is on the Direct Purchaser Class to prove the difference between the prices they actually paid for Defendants' products and the prices they would have paid in the absence of the alleged conspiracy.  You should calculate the alleged overcharge, if any, related to sales made by each individual defendant that you find participated in the alleged conspiracy. Your calculation of damages to the Direct Purchaser Class must not be reduced by any amounts recouped from the customers of the Direct Purchaser Class.

**Instruction No. 34 – Indirect Purchaser Damages**

As to the Indirect Purchaser Class's "indirect" claims, if you conclude that the plaintiffs have met their burden on liability and are entitled to damages, the Indirect Purchaser Class is entitled to recover only to the extent that the alleged price-fixing conspiracy caused the prices that they paid for Korean brand ramen to be higher than those prices would have been in the absence of the price-fixing conspiracy. Because the Indirect Purchaser Class members did not purchase Defendants' products at issue in their indirect claims directly from the defendants or other companies that participated in the conspiracy, the Indirect Purchaser Class must prove that the alleged overcharges were passed through to them. This means that the Indirect Purchaser Class must show that there was an initial overcharge on each of the Defendant's products' prices and that the companies above the class members in the distribution chain then passed on some or all of the overcharge to the class members.

**Instruction No. 35 – Joint and Several Liability**

Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by an individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy.

If you find that Plaintiffs have proven the existence of the alleged conspiracy, that Defendants participated in the conspiracy, and that Plaintiffs are entitled to recover damages based on the other instructions in this case, then Defendants would be liable for all damages caused by the conspiracy, including any overcharges on purchases of the product.

Thus, in that event, Defendants would be liable for overcharges on all purchases of Korean Ramen Noodle products by Plaintiff from all members of the conspiracy, and not merely on purchases from a particular Defendant.

**Instruction No. 36 – Class Damages**

Plaintiffs are seeking to recover damages on behalf of two classes of purchasers that they represent. To award damages for the class, you do not need to determine the overcharge paid by each class member with mathematical certainty or precision. It is sufficient for you to determine the average overcharge paid by class members or estimate the overcharge paid by class members, as long as the average or estimate is based on evidence and reasonable inferences. You may not base your damages award on guesswork or speculation. If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.

**Instruction No. 37 – Statute of Limitations**

The statute of limitations for the antitrust laws does not permit recovery of damages for any injuries sustained by Plaintiffs prior to July 22, 2009.

If you find that Plaintiffs suffered injuries spanning both before and after July 22, 2009, then you must apportion the damages between the two periods and you may award damages only for the portion of the injuries suffered after July 22, 2009. When apportioning the damages between the two periods, you should be guided by the same principles I explained to you earlier.   That is, you are permitted to make just and reasonable estimates in apportioning Plaintiffs' damages.  You are not required to apportion damages with absolute mathematical certainty or precision. However, the apportionment of damages must have a reasonable basis in the evidence.  If you find that you cannot apportion the damages between the two periods without relying on guesswork or speculation, then you may not award damages at all.

### Instruction No. 38 – Fraudulent Concealment

The statute of limitations bars any recovery by Plaintiffs for overcharges that occurred before July 22, 2009, which is four years prior to the date Plaintiffs filed this lawsuit. However, there is an exception to this rule called "fraudulent concealment." If Plaintiffs prove that the Defendants' conspiracy to stabilize or raise the price of Korean Ramen was fraudulently concealed, the Plaintiffs may recover for overcharges that occurred before July 22, 2009.

To establish fraudulent concealment, Plaintiffs must prove each of the following three elements by a preponderance of the evidence:

(1) Any participant in the conspiracy to stabilize or raise the price of Korean Ramen, actively concealed that conduct;

(2) Plaintiffs did not discover the alleged conduct before July 22, 2009; and

(3) Plaintiffs exercised reasonable diligence in the circumstances and still did not discover the alleged conduct.

To establish the first element of fraudulent concealment – active concealment – Plaintiffs must show affirmative acts of concealment. Mere silence does not constitute fraudulent concealment. Rather, Plaintiffs must prove that a participant in the conspiracy took affirmative steps to prevent Plaintiffs from learning about their conduct, including by issuing false or materially misleading justifications for a price increase.

Defendants are responsible for their own acts of concealment as well as any acts of concealment committed by coconspirators as long as the act of concealment occurred during the course and in furtherance of the conspiracy. Plaintiffs need not establish concealment on a victim-by-victim basis; affirmative acts of concealment generally are considered to have an industry-wide effect.

In considering the third element of fraudulent concealment, if facts were reasonably available to Plaintiffs that should have aroused suspicion that the conduct had occurred, Plaintiffs must have made a reasonable investigation to discover the conduct. Parallel conduct or parallel pricing by itself does not give rise to the duty to investigate. If you conclude that a reasonable investigation would not have uncovered the conduct, then you must find that the third element has been established. If, under all the circumstances of the case, no suspicious facts were reasonably available to Plaintiffs, no

investigation was required.

If you find that Plaintiffs have proved all three elements of fraudulent concealment, then plaintiffs are entitled to recover for injuries that occurred before July 22, 2009. If you find that Plaintiffs have failed to prove any one of the three elements, then Plaintiffs may not recover for injuries that occurred before July 22, 2009.

**Instruction No. 39 – Duty to Deliberate**

I will now read to you some instructions giving you guidance on how you should deliberate in this case. Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Instruction No. 40 – Consideration of the Evidence: Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

•   Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

•   Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case

47

1   based on information not presented in court, you will have denied the parties a fair trial. Remember,

2   you have taken an oath to follow the rules, and it is very important that you follow these rules.

3        A juror who violates these restrictions jeopardizes the fairness of these proceedings.   If any

4   juror is exposed to any outside information, please notify the court immediately.

**Instruction No. 41 – Notes**

You may have taken notes to help you remember the evidence. Whether or not you have taken notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Instruction No. 42 – Communication with the Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Instruction No. 43 – Return of the Verdict**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.